David S. Bland
Matthew C. Guy
Leblanc Bland P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans LA 70112
(504) 528-3088

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE COMPANY, ONE BEACON INSURANCE COMPANY, NATIONAL LIABILITY AND FIRE INSURANCE COMPANY and QBE MARINE & ENERGY SYNDICATE 1036,**<br><br>                              Plaintiffs,<br><br>                    v.<br><br>**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, MAX SPECIALTY INSURANCE COMPANY and SIGNAL INTERNATIONAL, L.L.C.**<br><br>                              Defendants. | 10 civ 1653-JPO-JLC<br><br><br><br><br><br>ECF CASE |

**MEMORANDUM IN SUPPORT OF SIGNAL INTERNATIONAL, L.L.C.'S
<u>MOTION TO COMPEL MAX SPECIALTY/ARCH RE'S RESPONSE TO DISCOVERY REQUESTS</u>**

**MAY IT PLEASE THE COURT:**

　　　　Defendant Signal International, L.L.C. ("Signal") submits this Memorandum in Support of its Motion to Compel Max Specialty Insurance Company's ("Max Specialty") production of certain documents requested during discovery and to compel Max Specialty to produce the file of or allow Arch Re Facultative Insurance Company's ("Arch Re") response to the subpoena requesting the production of reinsurance file on the AFDB-5 Drydock.  Signal seeks production of:

1

- Any documents in Max's possession responsive to Signal's request for production of reinsurance communications or documents;

- Any documents responsive to the subpoena issued to Arch Re Facultative Insurance Company on June 30, 2011 that were turned over to Max Specialty and over which Max Specialty has asserted privilege;

- Max Specialty's complete claims file, including all file notes and the claim memorandum referenced by Mr. Cody Whittington during his deposition; and

- Any and all documents in Max Specialty's possession constituting reports or updates on Signal's claims from Nourse & Bowles law firm.

Signal specifically requests that this Court compel the production of the unredacted version of the documents identified by bates number as set forth in Exhibit A to Signal's Motion to Compel. In the event that the Court does not order an outright production of these documents, Signal requests that the Court conduct an *in camera* review of the documents to determine whether Max Specialty's assertion of privilege can be maintained.

## I.  INTRODUCTION

### A.  Reinsurance Documents

#### 1.  Documents Responsive to Requests for Production

Signal served Max Specialty with its second set of Requests for Production of Documents on May 3, 2011. All the requests therein requested documents or communications related to any policy of reinsurance or claims made against its reinsurance policy. Max Specialty produced very limited documents responsive to that request. Signal is entitled to <u>all</u> documents in Max Specialty's possession related to its procurement of and claims made on its policy of reinsurance.

      2.    <u>Arch Re Documents Responsive to Signal's Subpoena</u>

Signal served a subpoena on Arch Re requesting its entire file related to the reinsurance policy issued to Max Specialty and any communications or documents related thereto. Max Specialty objected to Arch Re's response to that subpoena, claiming that it and Arch Re shared a common interest, therefore the documents were shielded from production due to attorney client or work product privilege. Max Specialty, however, is clearly legally incorrect in this position. Nevertheless, Arch Re turned its files over to Max Specialty so that Max Specialty could determine what would and would not be produced. To date, Max Specialty has either not produced or claimed privilege over all of its communications with Arch Re. Max Specialty produced a privilege log related to Arch Re's file that asserted privilege <u>over the entire file</u>. *See* Max Specialty's Privilege Log of Arch Re's Documents, attached to the Motion to Compel as Exhibit B. Signal seeks an order from the Court declaring those documents to not be privileged and ordering Max Specialty to produce both its entire set of documents related to Arch Re and Arch Re's file which it turned over to Max Specialty.

    **B.**    **Max Specialty's Claim and Investigation File**

During the deposition of Max Specialty's claim manager, Mr. Cody Whittington, it became clear that Max Specialty had not produced its entire claims file, as it claimed to have. Specifically, certain file notes and internal memoranda prepared in investigation of the claims by Max Specialty were not produced. Signal made requests on the record for these documents to be produced and followed up with written requests thereafter. Max Specialty produced a portion of its project file but failed to produce un-redacted and complete file notes and has not produced the internal memoranda regarding its investigation. Signal seeks an order from the

Court directing Max Specialty to produce its entire unredacted claims file and specifically those documents identified in Exhibit A to Signal's Motion to Compel.

### C. Communications with Nourse & Bowles

Discovery revealed that former counsel for Max Specialty, Mr. Larry Bowles, acted as *de facto* adjuster for the AFDB-5 claims. Mr. Bowles maintained all of the information to support Max Specialty's claims that the EPI Policy should be voided due to fraud, misrepresentation and non-disclosure on the part of Signal. As Mr. Bowles was acting in an adjusting capacity rather than providing legal advice, no privilege attaches to communications between him and Max Specialty. Moreover, to the extent privilege may have attached, it was waived by Max Specialty during the deposition of Mr. Whittington. Signal seeks an order compelling Max Specialty to produce in unredacted form its communications with Mr. Bowles and/or Nourse and Bowles, LLP.

## II. SIGNAL IS ENTITLED TO THE PRODUCTION OF ARCH RE'S REINSURANCE FILE AND COMMUINCATIONS WITH ARCH RE IN MAX SPECIALTY'S POSESSION.

Signal moves to compel the production of documents in Max Specialty's possession regarding reinsurance on the AFDB-5 Drydock and Arch Re's reinsurance file on the AFDB-5 Drydock that was responsive to Signal's June 30, 2011 subpoena, which Arch Re turned over to Max Specialty. Signal issued a subpoena to Arch Re; Arch Re, however, turned its entire file over to Max Specialty. Max Specialty assumed responsibility for producing the requested documents and has asserted privilege over all of documents in the file. *See* Max Specialty's Privilege Log of Arch Re Documents, Exhibit B. Signal, therefore, moves to compel the file from Max Specialty instead of Arch Re. Max Specialty has claimed that the file is privileged on the basis of the common interest doctrine. Max Specialty alleges that all communications and all

documents exchanged between Arch Re and Max Specialty are privileged on the basis that they have a common interest as insurers and reinsurers.  Max Specialty is incorrect.

### A. Max Specialty Mischaracterizes the Common Interest Doctrine

Max Specialty's characterization of the common interest doctrine is not supported by the law.  In order for the common interest doctrine to protect to Arch Re's file from production, Max must first show that a privilege (attorney-client or work-product) attaches to the documents it refuses to produce.  The burden of establishing the privilege is on the party asserting it.  *See HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009).  A party invoking the attorney-client privilege has the burden of establishing: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996).  Once a privileged communication has been disclosed purposely to a third party, the attorney-client privilege is waived, unless the disclosed material falls under the common interest rule.  *United States v. United Technologies Corp.*, 979 F. Supp. 108, 111 (D. Conn. 1997)

The "common interest" doctrine, also called "common interest privilege" or "joint defense privilege", is the major exception to the rule that purposefully disclosing a communication to a third party waives any privilege.  *Sokol v. Wyeth, Inc.,* 2008 WL 3166662, *5 (S.D.N.Y.  2008). This doctrine applies to a common legal interest where the disclosures of confidential information or communications are made in the course of creating a common legal strategy during litigation or prior to litigation.  It "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a **joint**

5

**defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.**" *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989) (emphasis added).

Accordingly, the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege in a situation where the parties communicating: (1) have a common legal, rather than commercial, interest; **and** (2) the disclosures are made in the course of formulating a common legal strategy. *Id*. (emphasis added). As a threshold consideration, the party asserting the common interest rule bears the burden of showing that there exists an **agreement between the parties**, though not necessarily in writing, embodying a "cooperative and common enterprise towards an identical legal strategy." *Lugosch v. Congel,* 219 F.R.D. 220, 237 (N.D.N.Y 2003) (citing *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 893 (S.D.N.Y. 1999)) (emphasis added).

### B. No Joint Defense Agreement or Legal Strategy was Undertaken by Max Specialty and Arch Re

There is no evidence that Max Specialty and Arch Re came to an agreement - written or unwritten - that they would pursue a joint legal defense against Signal regarding the cause of action relating to the AFDB-5 Drydock. "What is important is not whether the parties theoretically share similar legal interests but, rather, whether they demonstrate actual cooperation toward a common legal goal." *The North River Ins. Co. v. Columbia Cas. Co.,* 1995 U.S. Dist. LEXIS 532518 (S.D.N.Y. 1995). In addition, a desire to succeed in an action does not create a "common interest". *Shamis v. Ambassador Factors Corp.,* 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999). Max Specialty and Arch Re's mere suggestion that they have interests in common is insufficient to maintain privilege.

Max Specialty must also prove that the documents and materials in the reinsurance file which they are refusing to produce were designed or created to further that common and mutual legal interest. *HSH Nordbank*, 259 F.R.D. at 71. There must be evidence that the disclosure of the communication or privileged material was made in connection with the common legal strategy, and the parties knew that the communications were furthering that joint legal strategy. *Denney*, 362 F. Supp. 2d at 415. The privilege will only protect communications made or documents disclosed for the purpose of seeking legal advice or sharing information to obtain legal advice. *Lugosch*, 219 F. R. D. at 238. Max Specialty cannot fulfill these requirements.

    **C.    Max Specialty and Arch Re do not share a common interest solely due to their Reinsurance Relationship.**

Max Specialty must affirmatively prove that the privilege it asserts applies in order to shield documents from production. It cannot properly assert a privilege solely on the basis that Arch Re is its reinsurer. *See Reliance Ins. Co. v. Am. Lintex Corp.,* 2001 WL 604080 (S.D.N.Y. 2001)(the court held that correspondence between an insurer and its reinsurer were not protected by the attorney client privilege due to a "unity of interest" between the insurer and reinsurer); *North River Insurance Co. v. Columbia Casualty Co .,* 1995 WL 5792, *5 (S.D.N.Y. 1995)(reasoning that the existence of a reinsurance relationship was insufficient to shield production due to the attorney-client privilege); *McLean v. Cont'l Cas. Co.,* 1996 WL 684209 (S.D.N.Y. 1996) (wherein the court granted a motion to compel production, holding that the attorney-client privilege was waived by disclosure to a reinsurer).

Max Specialty has claimed that Arch Re's file is privileged solely because it was Max Specialty's reinsurer. This is insufficient to shield the file from production. Max Specialty must

prove that the communications and documents that it is withholding from discovery were confidential communications or documents prepared or shared for the purpose of obtaining legal advice. Since it simply has no such evidence that this is the case, Arch Re's file should be produced in its entirety.

> **D. Even if the Common Interest Doctrine Applies, Arch Re and Max Specialty Must Prove the Documents were Initially Privileged to Shield them from Production**

The privilege afforded by the common interest doctrine only protects communications made in the course of an ongoing common enterprise when the communications were made with the intent to further that enterprise or strategy. *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989)(emphasis added). It is an extension of the attorney-client privilege, and it can only extend to protect documents or materials that are initially privileged materials. *Id*. By definition, that doctrine only precludes the waiver of an *already established privilege* when the documents or materials are disclosed to a third party. *Doctor's Associates, Inc v. QIP HOLDER, LLC,* 2009 WL 1683628, *4 (D. Conn. 2009) (emphasis added). The common interest doctrine "is not an independent source of privilege or confidentiality" and does not apply unless the communication is already privileged. *Sokol v. Wyeth, Inc.,* 2008 WL 3166662, *7 (S.D.N.Y. 2008).

The file at issue requested by Signal is Arch Re's reinsurance file on the drydock. The contents of this file are likely documents, notes, or communications kept within the ordinary course of the insurance business. Signal is entitled to the production of the reinsurance file regarding the AFDB-5. Max Specialty has not proven that any privilege attaches to the file and thus, it should be produced. Moreover, to the extent that a privilege may have existed, Max Specialty waived such privilege by its disclosure to a third party, Arch Re.

8

III.     **SIGNAL IS ENTITLED TO PRODUCTION OF MAX SPECIALTY'S ENTIRE CLAIMS FILE REGARDING THE AFDB-5 DRYDOCK**

Max Specialty has refused to produce an unredacted, full copy of its claims and investigation file, claiming that certain documents are either protected by the Attorney-Client Privilege or were prepared in anticipation of litigation. Specifically, Max has redacted certain documents identified by bates stamp in Exhibit A to Signal's Motion to Compel, claiming privilege where none exists. Moreover, Max Specialty has failed to produce a full copy of the file notes of Mr. Cody Whittington and an internal memorandum identified during Mr. Whittington's deposition. Signal is entitled to a production of the full, unredacted claims file of Max Specialty, including the above identified documents.

In order to prove that the attorney-client privilege applies, Max Specialty must demonstrate that the information at issue was a communication between client and counsel and that it was intended to be and was in fact kept confidential. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470-71 (S.D.N.Y. 1993). The communication between client and counsel must have been made in order to render legal advice or services to the client. *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008).

In order to claim protection under the work-product privilege, Max Specialty must prove that the documents or materials were generated in anticipation or in preparation of litigation. *Bowne of New York City, Inc. v. AmBase*, Corp., 150 F.R.D. 465, 471 (S.D.N.Y 1993); Fed. R. Civ. Proc. 26(b)(3). Accordingly, "if a party prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation." *Bowne,* 150 F.R.D at 471. The document must relate primarily to legal

advice, and will not be protected if focused on business decisions or ways to possibly avoid litigation. *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 2011 WL 5439046, *3 (S.D.N.Y. 2011).

In addition, there is a presumption against automatically protecting documents created in the ordinary course of the insurance business. *Weber v. Paduano*, 2003 WL 161340, *6 (S.D.N.Y. Jan. 22, 2003); *See, e.g., Insurance Co. of North America v. M/V Savannah,* No. 94 Civ. 8846(CSH), 1995 WL 608295, at *1 (S.D.N.Y. Oct.17, 1995). Overprotecting insurance documents would hinder the broad discovery allowed by the Federal Rules of Civil Procedure, while doing little to foster uninhibited deliberation concerning insurance claims, since insurers have a duty to carefully investigate every potential claim, whether or not it will be likely to turn into litigation. *See, e.g., Fine v. Bellefonte Underwriters Ins. Co.,* 91 F.R.D. 420, 422 (S.D.N.Y.1981).

Documents related to the investigation of an insurance claim are not privileged, even if the investigation was done by a lawyer. *Weber*, 2003 WL 161340 at *6. Insurance carriers prepare documents in the ordinary course of business. The assumption that an insurer anticipates that a lawsuit will result from every accident in which its insureds are involved fails to take into account a variety of factors and possibilities, including the possibility that the insurer will decide to avoid litigation altogether. *Id*. at *6. The insurers' documents may be protected from discovery only if they were prepared "in furtherance of a sufficiently identifiable resolve to litigate." *Fine,* 91 F.R.D. at 423. The insurer has the burden of demonstrating specifically that each document was prepared in anticipation of this litigation and would not have been prepared but for the litigation. *Weber*, 2003 WL 161340 at *6-7.

The files and documents withheld or redacted by Max Specialty were created in the usual course of the insurance business. Max Specialty must show that the files it withholds were specifically prepared once it became clear that litigation was imminent, and not simply that any insurance claim could result in litigation. Signal is entitled to the production of the entire unredacted claims file, including those documents specifically identified in its Motion to Compel and Exhibit A thereto.

## IV.    SIGNAL IS ENTITLED TO THE PRODUCTION OF ANY AND ALL COMMUNICATIONS WITH NOURSE & BOWLES

### A.    Communications with Nourse & Bowles are not Inherently Privileged

Signal has maintained throughout this litigation that Nourse & Bowles acted as the *de facto* adjuster of the AFDB-5 Drydock claims. Through the course of questioning during the deposition of Mr. Cody Whittington Max Specialty confirmed this fact and also waived any attorney-client privilege that may have protected communications with Nourse & Bowles from production. *See* Exhibit C to Motion to Compel, Excerpts of Deposition of Cody Whittington. Max Specialty must prove that the materials and documents in the file are either protected by the work-product privilege or the attorney-client privilege in order to avoid production.

The work product doctrine "does not shield from disclosure everything that a lawyer does." *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 2011 WL 5439046, *3 (S.D.N.Y. 2011). The privilege only applies when the lawyer is acting as a lawyer, *i.e.,* giving legal advice. *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.,* 111 F.R.D. 76, 80 (S.D.N.Y. 1986). When a lawyer acts as a business advisor or in some other role, there is no special relationship to give rise to a privilege to protect his advice or work-product from disclosure. *Id.* at 80. The party asserting that the communication with the attorney is privileged has the burden of showing

11

that the lawyer's work was primarily legal advice as opposed to business advice, because the burden of proving the elements of the privilege rests on the party asserting the privilege. *Asset Value Fund Ltd. P'ship v. Care Group, Inc.,* 1997 WL 706320, *4 (S.D.N.Y. 1997). Nourse & Bowles was clearly acting as a business advisor or adjuster, rather than providing legal advice, thus no privilege attached to those communications.

### B. If The Court Finds Communications with Nourse & Bowles to be Privileged, any Privilege was Clearly Waived

Even if the documents and materials in the file were privileged, which they were not, the privilege was waived by the attorney and the client through the voluntary disclosure of the substance of those attorney-client communications in the course of Mr. Whittington's deposition. In his deposition, Cody Whittington waived the privilege by answering questions regarding the substance of communications and reports made by Max Specialty's attorney, Mr. Bowles. See Deposition of Cody Whittington, pp. 382 – 383; see also Exhibit C to Motion to Compel.

"[V]oluntary disclosure or the consent to the disclosure of a communication otherwise subject to a claim of privilege effectively waives the privilege." *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453, 463 (S.D.N.Y.1973). A waiver of privilege may be effected through voluntary disclosure by the client, through the client's express consent to disclose, or through implication gleaned from the client's actions. *In re von Bulow,* 828 F.2d at 101.

A client's disclosure to a third party of a communication made during a confidential consultation with his attorney "eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege." *Bower v. Weisman*, 669 F. Supp. 602, 604

(S.D.N.Y. 1987).   Furthermore, the waiver by the client as to a particular communication may be extended to encompass the subject matter of the entire communication. *In re Von Bulow,* 828 F.2d at 103.   The client's offer of his own or the attorney's *testimony* as to a *specific communication* to the attorney is a waiver as to all other communications to the attorney on the same matter. *Id.*

Mr. Whittington waived whatever privilege may have attached to the reports prepared by Mr. Bowles.  Mr. Bowles, specifically questioned Mr. Whittington about reports and correspondence sent between Mr. Bowles, the attorney, and Mr. Whittington and Max Specialty.    Mr. Bowles asked a number of questions about a various number of reports he made to Mr. Whittington at Max Specialty:

> Mr. Bowles:  Have I reported to you and to Steve regarding a large number of reports in Signal's files from the Heger Drydock Company?
>
> Mr. Whittington:  Yes.
>
> Mr. Bowles:  Have I reported to you on its warnings to Signal not to use the drydock without extensive repair?
>
> Mr. Whittington: Yes.
>
> Mr. Bowles:  Have I reported to you on Heger Drydock recommendations regarding pontoon replacement if they didn't do extensive repairs?
>
> Mr. Whittington: Yes.
>
> …
>
> Mr. Bowles: Did I report to you and Steve Boesen that Signal admitted that it never made any of the repairs recommended by Heger?
> …
>
> Mr. Whittington: Yes.

<u>Mr. Bowles</u>: Have I reported to you on the repairs recommended by Deloitte—Dufour Laskay firm?

<u>Mr. Whittington</u>: Yes.

<u>Mr. Bowles</u>: Have I reported to you that Signal never made any of those repairs either?

<u>Mr. Whittington</u>: Yes.

Excerpts of Deposition of Whittington, p. 382-386, Exhibit B.

Mr. Whittington specifically testified that Mr. Bowles alone had all evidence of Signal's alleged wrongdoing. *See* Deposition of Whittington, p.369. As noted above, Mr. Whittington also testified about what Mr. Bowles conveyed to Max Specialty that led to Max Specialty attempting to void the EPI Policy due to fraud, misrepresentation or non-disclosure. Deposition of Whittington, p. 382 – 386. Signal is entitled to the production of all documents and communications provided by Nourse & Bowles to Signal in order to determine the facts leading to Max Specialty's decision to attempt to void the EPI Policy.

**C.     If the Documents are Privileged, Privilege Can Be Overcome By Substantial Need**

Alternatively, if the documents in the file are found to be protected by the work-product privilege, the work-product privilege is not absolute and can be overcome by a showing of substantial need. In the case at hand, Max Specialty alleges that Signal fraudulently acquired insurance on the AFDB-5 drydock. The testimony of Mr. Whittington clearly states that the parties at Max Specialty did not think Signal perpetrated fraud – only their attorney, Mr. Bowles, thought that Signal perpetrated fraud. *See* Deposition of Cody Whittington, p. 369. However, Max Specialty has not produced any documents on which they rely when making this contention.

The work-product privilege may be overcome by the showing that the discovering party cannot obtain the same information without undue hardship other than through disclosure of work-product material. *Aetna Cas. & Sur. Co. v. Manshul Const. Corp.*, 2001 WL 484438, *2 (S.D.N.Y. 2001). The party seeking disclosure can overcome the privilege by showing that the subject of the documents is probative of a key issue to the litigation, **and that a party's reliance on an attorney's advice or opinion in determining an essential element of the case transformed the attorney into a fact witness.** *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 28 (W.D.N.Y. 1997); *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995)(emphasis added).

In the case at hand, there is no other way to ascertain what Mr. Bowles actually communicated to Max Specialty other than producing those communications. Mr. Whittington stated that Mr. Bowles has information and evidence that Signal perpetrated fraud. (*See* Deposition of Cody Whittington, p. 369 "I believe [evidence of Signal's intent when it applied for insurance] once again, is in possession of claim counsel, defense counsel. [Max Specialty] do[es] not have it in our file.") Thus, all of Max Specialty's evidence upon which it based its decision to not pay Signal's claims and seek to void the policy came from Mr. Bowles. Signal is entitled to production of the documents and communications upon which Max Specialty relied on in denying Signal's claims and seeking to void the EPI Policy.

**V.      CONCLUSION**

For the above and foregoing reasons, Signal is entitled to the production of the requested documents and an order from the Court compelling their production. In the event this Court does not order their outright production, Signal requests the Court conduct an *in camera* review of the documents to determine if they may be withheld.

Dated: New Orleans, LA
April 15, 2011

                      Respectfully submitted,

LeBlanc Bland P.L.L.C
Attorneys for Defendant
Signal International, L.L.C.

By: /s/ David S. Bland

David S. Bland
Matthew C. Guy
LeBlanc Bland P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans LA 70112
(504) 528-3088
dbland@leblancbland.com
mguy@leblancbland.com

STEPHEN P. KYNE
Burke & Parsons
100 Park Avenue
New York NY  10017-5533
(212) 354-3800
kyne@burkeparsons.com

To:

Meryl R. Lieberman
Stephen D. Straus
TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
Attorneys for Defendant
Max Specialty Insurance Company
Mid Westchester Executive Park
Seven Skyline Drive
Hawthorne, NY 10532

George R. Zacharkow, Esq
Stephen J. Galati, Esq.
MATTIONI, LTD.
Attorneys for Defendant
Great American Insurance Company of New York
399 Market Street, 2nd Fl.
Philadelphia PA 19106

John A.V. Nicoletti, Esq.

Robert Novak, Esq.

NICOLETTI HORNIG & SWEENEY

Attorneys for Plaintiffs

Fireman's Fund Insurance Company,

One Beacon Insurance Company,

National Liability and Fire Insurance Company

QBE Marine & Energy Syndicate 1036

Wall Street Plaza

88 Pine Street, 7th Fl.

New York NY 10005-1801