David S. Bland
Matthew C. Guy
LeBlanc Bland P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans LA 70112
(504) 528-3088

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE COMPANY, ONE BEACON INSURANCE COMPANY, NATIONAL LIABILITY AND FIRE INSURANCE COMPANY and QBE MARINE & ENERGY SYNDICATE 1036,**<br><br>                          Plaintiffs,<br><br>                    v.<br><br>**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, MAX SPECIALTY INSURANCE COMPANY and SIGNAL INTERNATIONAL, L.L.C.**<br><br>                          Defendants. | 10 civ 1653-JPO-JLC<br><br><br><br><br>ECF CASE |

**STATEMENT OF UNCONTESTED MATERIAL FACTS SUPPORTING**
**SIGNAL INTERNATIONAL, L.L.C.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
<u>**AGAINST MAX SPECIALTY INSURANCE COMPANY**</u>

1. Signal owned the AFDB-5 Drydock.  Affidavit of John Haley, **Exhibit F**, para. 11.

2. Signal maintained a Primary Property Insurance Policy underwritten by Westchester Surplus Lines Insurance with a limit of $10,000,000.  *See* Westchester Surplus Lines Insurance Co. – Primary Property Policy No. D37362220001,**Exhibit A.**

3. Signal maintained an Excess Property Insurance Policy underwritten by Max Specialty Insurance Company with limits of $15,000,000 in excess of the $10,000,000 primary property insurance policy. *See* Max Specialty Insurance Co. Commercial Property-Excess of Loss Policy No. MAX2XP0004029, **Exhibit B**.

4. The Excess Property Insurance Policy "followed form," in other words, was issued on the exact same terms as the Primary Property Insurance Policy. Deposition of James F. Morano, III, p. 238, l. 21 – p. 239, l. 2, **Exhibit E**.

5. The Primary Property Insurance Policy and the Excess Property Insurance Policy both insured $211,328,279 of real and personal property and equipment, including (2) drydocks. *See* Signal International L.L.C., Statement of Values dated January 16, 2009, **Exhibit C.**

6. Drydocks permanently moored to a dock, river bank, or shore, are specifically included as covered property under the Primary and Excess Property Insurance Policies. *See See* Westchester Surplus Lines Insurance Co. – Primary Property Policy No. D37362220001, **Exhibit A.**

7. The AFDB-5 Drydock was built by the U.S. Navy in 1943. Affidavit of John Haley, **Exhibit F**, para. 8.

8. As originally designed, the AFDB-5 Drydock had a lift capacity of 56,000LT. *Id.*

9. Prior to its sinking, the AFDB-5 was one of the largest drydocks in the world. Affidavit of John Haley, **Exhibit F**, para. 9.

10. The AFDB-5 Drydock consisted of eight 240' x 101' x 23.5' pontoons each complete with one fixed wing wall and one removable wing wall moored together in a two (2) pontoon by four (4) pontoon arrangement. This was known as the "rig configuration." *Id.*

11. The AFDB-5 Drydock was permanently moored to the shore using steel mooring dolphins and connected with a barge that served as a bridge to the shore. Affidavit of John Haley, **Exhibit F**, para. 10.

12. The AFDB-5 Drydock was purchased by Signal outright from the Port of Port Arthur in March 2005. Affidavit of John Haley, **Exhibit F**, para. 11.

13. The AFDB-5 Drydock has never been used by Signal, Texas Drydock or Friede Goldman Halter for any sort of marine transportation. Affidavit of John Haley, **Exhibit F**, para. 12.

14. The AFDB-5 Drydock was incapable of use in marine transportation in the rig configuration and while permanently moored to the shore. Affidavit of John Haley, **Exhibit F**, para. 13.

15. The AFDB-5 Drydock has always remained permanently moored to the shore since it was installed in its current location in Port Arthur, Texas in 1984. Affidavit of John Haley, **Exhibit F**, para. 14.

16. The AFDB-5 Drydock, while moored to the shore, has simply been raised and lowered in the slip so that mobile offshore drilling units, jack-up rigs, vessels and other offshore

structures could be loaded and unloaded onto and off of the AFDB-5 Drydock so that work could be undertaken on them. *Id.*

17. The AFDB-5 Drydock would only be ballasted and de-ballasted during the loading and unloading of offshore structures and vessels. *Id.*

18. Mr. Trip Morano, Max Specialty Insurance Company's executive underwriter for primary and excess property policies, who underwrote the EPI Policy at issue, specifically testified that the Excess Property Insurance Policy is a commercial property policy and is not a marine insurance policy. See Deposition of Mr. James F. Morano, III, p. 139, ll. 3 – 21, **Exhibit E**.

|  |  |
|---|---|
| Dated: August 10, 2012<br>New Orleans, LA | Respectfully submitted, |

**LeBlanc Bland P.L.L.C**
Attorneys for Defendant
Signal International, L.L.C.


By:  /s/ David S. Bland
David S. Bland
Matthew C. Guy
LeBlanc Bland P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans LA 70112
(504) 528-3088
dbland@leblancbland.com
mguy@leblancbland.com

STEPHEN P. KYNE
Burke & Parsons
100 Park Avenue
New York NY  10017-5533
(212) 354-3800
kyne@burkeparsons.com

To:
Stephen D. Straus
Adam Krauss
TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
Attorneys for Defendant
Max Specialty Insurance Company
Mid Westchester Executive Park
Seven Skyline Drive
Hawthorne, NY 10532

George R. Zacharkow, Esq
Stephen J. Galati, Esq.
MATTIONI, LTD.
Attorneys for Defendant
Great American Insurance Company of New York
399 Market Street, 2nd Fl.
Philadelphia PA 19106

John A.V. Nicoletti, Esq.
Robert Novak, Esq.
NICOLETTI HORNIG & SWEENEY
Attorneys for Plaintiffs
Fireman's Fund Insurance Company,
One Beacon Insurance Company,
National Liability and Fire Insurance Company
QBE Marine & Energy Syndicate 1036
Wall Street Plaza
88 Pine Street, 7th Fl.
New York NY 10005-1801