# EXHIBIT 2

NOURSE & BOWLES, LLP
Attorneys for Defendant
Max Specialty Insurance Company
One Exchange Plaza
At 55 Broadway, 30th Floor
New York, NY 10006-3030
(212) 952-6200
Lawrence J. Bowles
email: lbowles@nb-ny.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
FIREMAN'S FUND INSURANCE COMPANY,                           :
ONE BEACON INSURANCE COMPANY,                               :
NATIONAL LIABILITY AND FIRE                                 :
INSURANCE COMPANY and QBE MARINE &                          :
ENERGY SYNDICATE 1036,                                      :
                                                            :
                        Plaintiffs,                         :    10-cv-01653 (LAK)
                                                            :
        – against –                                         :
                                                            :
GREAT AMERICAN INSURANCE COMPANY                            :
OF NEW YORK, MAX SPECIALTY                                  :
INSURANCE COMPANY and SIGNAL                                :
INTERNATIONAL, LLC,                                         :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------X

## SECOND AMENDED ANSWER OF DEFENDANT
## MAX SPECIALTY INSURANCE COMPANY

Defendant Max Specialty Insurance Company ("Max Specialty"), by its attorneys,

Nourse & Bowles, LLP, for its Second Amended Answer to the Complaint of Plaintiffs,

Fireman's Fund Insurance Company ("FFIC"), One Beacon Insurance Company ("One

Beacon"), National Liability and Fire Insurance Company ("National Liability") and QBE Marine & Energy Syndicate 1036 ("QBE") (collectively "Plaintiffs" or "Marine General Liability Insurers" or "MGL Insurers"), alleges on information and belief as follows:

### **Background – Outline of Disputes**

A. This is an insurance coverage action involving claims between and among the parties hereto related to the sinking of the submersible dry dock known as the "AFDB-5" or "Drydock No. 1" in Port Arthur, Texas on August 20, 2009.

B. Defendant Signal International, LLC ("Signal"), a large marine repair company, owned the AFDB-5, and Plaintiffs Fireman's Fund et al. and the Defendants Great American Insurance Company of New York ("Great American") and Max Specialty Insurance Company ("Max Specialty") each issued insurance policies or contracts to Signal as part of Signal's insurance program for the insurance year January 30, 2009 – January 30, 2010.

C. Under Signal's insurance program:

1. Plaintiffs insured Signal's marine general liability ("MGL") risks, including the cost of removing the wrecks of any of Signal's vessels if they sank. Plaintiffs are sometimes referred to as the "MGL Insurers", and the contracts they issued to Signal are sometimes referred to as the "MGL Insurance" policies or contracts.

2

2. Defendant Great American insured Signal's oil and other pollution risks. Great American is sometimes referred to as the "Pollution Insurer".

3. Defendant Max Specialty insured Signal's excess property risks as defined in the insurance policy or contract it issued to Signal, including the AFDB-5. Max Specialty is sometimes referred to as the "Excess Property Insurer," and the contract it issued to Signal is sometimes referred to as the "Excess Property Insurance" policy or contract or the "Max Specialty Policy".

D. Initially, the disputes in this action primarily concerned Plaintiffs' allegation that the costs of removing the AFDB-5's wreck should be paid by the other insurers or shared among all three insurers. The disputes also concerned Signal's claims against Max Specialty.

### Amendment to Answer to Assert the Affirmative Defense that the Max Specialty Policy is Void

E. Based upon recently discovered information, however, a new and overriding issue has arisen - whether Max Specialty is entitled to void the Excess Property Insurance contract it issued to Signal on the grounds that Signal deceived and defrauded Max Specialty into issuing that contract by vastly and falsely overstating the AFDB-5's alleged "value". Max Specialty's allegations of fraud against Signal are stated in Max Specialty's Amended Answers to Signal's Crossclaims With Amended Additional Crossclaims Against Signal, Docket No. 89 (the "Additional Crossclaims"). The allegations of the Additional Crossclaims are incorporated by reference herein as if set forth at length.

3

F. In its Additional Crossclaims against Signal, Max Specialty seeks a declaratory judgment that because of Signal's fraud the policy it issued to Signal is void and that Max Specialty is entitled to the other relief against Signal sought therein.

G. If Max Specialty is held entitled to void the Excess Property Insurance contract it issued to Signal, as Max Specialty believes the facts show it should be, then Max Specialty can have no liability to Signal or the MGL Insurers to pay any part of the costs of removing the wreck of the AFDB-5. In that case, the MGL Insurers' claims in this action against Max Specialty will become moot.

H. In this Second Amended Answer, Max Specialty asserts as its Second Affirmative Defense that, if the Excess Property Insurance contract Max Specialty issued to Signal is held void on the facts, then the MGL Insurers' complaint must be dismissed as to Max Specialty.

I. In the alternative, if the Court declines to void Max Specialty's Excess Property Insurance policy, then, as outlined in this Second Amended Answer, Max Specialty denies each of the MGL Insurers' claims against it.

## ANSWER TO COMPLAINT

### JURISDICTION[1]

1. It admits the matters alleged in paragraph 1 of the Complaint.

2. It admits the matters alleged in paragraph 2 of the Complaint.

---

[1] This caption and the captions in this answer which follow are those stated in the MGL Insurers' complaint. These captions are repeated herein for convenience only.

4

3. It denies that there is a legitimate actual controversy of a justiciable nature between Plaintiffs and Max Specialty involving their respective rights and obligations under the several contracts of marine insurance in issue, and it incorporates by reference the allegations in paragraphs A – I above.

4. It admits the matters alleged in paragraph 4 of the Complaint.

## PARTIES

5-18. It admits the matters alleged in paragraphs 5 through 18 of the Complaint.

## OVERVIEW

19. It admits the matters alleged in paragraph 19 of the Complaint, and it incorporates by reference the allegations in paragraphs A – I above.

20. It admits that as part of its insurance program Signal obtained three different types of insurance policies or contracts from the three different insurers, as described in paragraphs B and C above, and except as so admitted, it denies the remaining matters alleged in paragraph 20 of the Complaint.

21. It admits that following the sinking of the drydock Signal made demands upon its insurers for coverage under their respective policies. It denies knowledge or information sufficient to form a belief as to the remaining matters alleged in paragraph 21 of the Complaint.

22. It admits that plaintiff MGL Insurers seek declarations from this Court regarding the duties and obligations of the various insurers and of Signal under the three types of insurance contracts issued to Signal. Except as so admitted, it denies the remaining matters alleged in paragraph 22 of the Complaint.

5

## THE PRIMARY POLICIES

23.   It admits the matters alleged in paragraph 23 of the Complaint and incorporates by reference the allegations in paragraphs B and C, above.

24.   It admits that in and by the terms of the Westchester primary property insurance policy that Westchester Surplus Line Insurance Company ("Westchester") issued to Signal, Westchester insured Defendant Signal in the amount of $10,000,000 with respect to a number of buildings, other property on land, and its vessels, including the AFDB-5. It refers to the policy issued by Westchester for its terms, and, except as so admitted, it denies the remaining matters alleged in paragraph 24 of the Complaint.

25.   It admits that Westchester has paid Defendant Signal the full property damage insurance policy limit of $10,000,000 toward the loss of the drydock AFDB-5, it denies Plaintiffs' implication that Westchester was obligated to allocate any part of that payment for the removal of the wrecked drydock, and it denies that the wrecked drydock is "debris" in the contexts of the Property Insurance contracts and paragraphs B and C, above. It asserts that it is the MGL Insurers' obligation, under the express terms of the insurance contracts they issued to Signal to pay the full amount of the costs of raising and removing the wrecked drydock.

26.   It admits that Defendant Signal has refused to allocate any part of the $10,000,000 property damage claim paid to Signal by Westchester to the removal of the wrecked drydock, it denies the MGL Insurers' implication that Signal was or is obliged to make any such allocation, and it asserts that it is the MGL Insurers' obligation, alone,

6

under the contracts they issued to Signal, to pay the full costs of raising and removing the wrecked drydock.

27. It admits the matters alleged in paragraph 27 of the Complaint, and it incorporates by reference the allegations of paragraphs B and C, above.

28. It admits the matters alleged in paragraph 28 of the Complaint, and it incorporates by reference the allegations of paragraphs B and C, above.

29. It admits the matters alleged in paragraph 29 of the Complaint, and it incorporates by reference the allegations of paragraphs B and C, above.

30. It admits the matters alleged in paragraph 30 of the Complaint.

31. It admits that the United States Coast Guard and the Texas General Land Management Office have ordered the removal of the wrecked drydock and that Defendant Great American declined coverage therefor. Except as so admitted, it denies the remaining matters alleged in paragraph 31 of the Complaint.

32. It admits that plaintiff FFIC issued a primary MGL insurance policy or contract to Signal, and it denies the remaining matters alleged in paragraph 32 of the Complaint.

33. It admits the matters alleged in paragraph 33 of the Complaint, and it incorporates by reference the allegations of paragraphs B and C, above.

34. It denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 34 of the Complaint.

35. It admits the matters alleged in paragraph 35 of the Complaint to the extent the allegations refer to the MGL Insurers.

36. It admits the matters alleged in paragraph 36 of the Complaint.

37. It admits the matters alleged in paragraph 37 of the Complaint.

38. It denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 38 of the Complaint.

## THE EXCESS POLICIES

39. It admits that plaintiff FFIC and the other MGL Insurers issued an excess MGL insurance policy or contract to Signal for the period stated and it incorporates by reference the allegations in paragraphs B and C, above.

40. It denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 40 of the Complaint.

41. It admits the matters alleged in paragraph 41 of the Complaint to the extent the allegations refer to the MGL Insurers.

42. It admits the matters alleged in paragraph 42 of the Complaint.

43. It denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 43 of the Complaint.

44. It admits the matters alleged in paragraph 44 of the Complaint.

45. It admits the matters alleged in paragraph 45 of the Complaint to the extent the allegations refer to the MGL Insurers.

46. It admits that the excess MGL insurance policy or contract provides coverage in the amount of $25,000,000 per occurrence in excess of the scheduled underlying insurance policies. It admits that the only "underlying insurances" were and are the primary MGL insurance policies issued by FFIC and One Beacon and the

8

insurance policy or contract issued by Great American. It admits that Max Specialty is not listed in the "Schedule of Underlying Insurance". Except as so admitted, it denies the remaining matters alleged in paragraph 46 of the Complaint.

47.   It admits the matters alleged in paragraph 47 of the Complaint.

48.   It admits that on or about January 30, 2009, it issued an Excess Property Insurance policy (MAX2XP0004029) to Defendant Signal for the period January 30, 2009 through January 30, 2010, sometimes referred to as the "Max Specialty Excess Property Insurance Policy." It admits that its policy follows the form of the Westchester Primary Property Insurance Policy. It admits that its limit is $15 million excess of the $10 million limit of the Westchester Primary Property Insurance Policy. Max Specialty refers to the terms and conditions of both policies for those terms for the coverage provided to Signal. It admits that AMWins Brokerage of New York was Signal's insurance broker. And it incorporates by reference the allegations of paragraphs B and C, above.

49.   It admits that the drydock AFDB-5 is (1) wrecked beyond repair, (2) a constructive total loss and (3) without further usefulness. It denies that the wrecked drydock constitutes "debris" within the meaning or contexts of the Property Insurance policies or contracts issued by Westchester or it. It incorporates by reference the allegations in paragraphs A – I above. It admits that Max Specialty has declined coverage in all respects for the raising and removing of the wrecked drydock, and it admits it has agreed with Defendant Signal's approach that it not allocate any part of the primary property insurance payment it received from Westchester for the removal of the

9

wrecked drydock. Except as so admitted, it denies the remaining matters alleged in paragraph 49 of the Complaint. It asserts that only the MGL Insurers and/or Great American as "Pollution Insurer" are responsible for all costs associated with raising and removing the wreck of AFDB-5 including all pollution associated therewith, and it incorporates by reference the allegations in paragraphs B and C above.

## FACTUAL BACKGROUND

50. It admits the matters alleged in paragraph 50 of the Complaint and it incorporates by reference the allegations contained in paragraphs D – H, above.

51. It admits the matters alleged in paragraph 51 of the Complaint.

52. It admits the matters alleged in paragraph 52 of the Complaint, and incorporates by reference the allegations in paragraphs D – H, above.

53. It admits that after the sinking of the drydock, the United States Coast Guard issued an order requiring the removal of the wrecked drydock and, except as so admitted, it denies the remaining matters alleged in paragraph 53 of the Complaint.

54. It admits that the Texas General Land Office ordered the removal of the wrecked drydock and, except as so admitted, it denies the remaining matters alleged in paragraph 54 of the Complaint.

55. It denies the matters alleged in paragraph 55 of the Complaint.

56. It denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 56 of the Complaint.

57. In admits the matters alleged in paragraphs 57 of the Complaint.

10

58.  Plaintiffs state their legal position as to the meaning of the various policies of insurance, issues that ultimately must be decided by this Court. Thus no answer is required. To the extent that an answer may be required, Defendant Max Specialty denies the matters alleged in paragraph 58 of the Complaint except that it admits that FFIC issued a reservation of rights letter stating its legal position.

59.  It admits that on or about January 19, 2010 representatives of Signal and Willis attended a meeting in New York for the purposes of discussing Signal's claims, including funding of the cost of removing the wrecked drydock and pollution abatement. Except as so admitted, it denies the remaining matters alleged in paragraph 59 of the Complaint.

60.  It admits that at the January 19, 2010 meeting, plaintiff MGL Insurers declined Signal's demands for payment for the removal of the wrecked drydock. It admits that plaintiff MGL Insurers agreed to assist in soliciting bids for the removal of the wreck, and it denies that the wrecked drydock constitutes "debris" within the meaning or contexts of the Property Insurance contracts issued to Westchester or it.

61-67.  It denies that the wrecked drydock constitutes "debris" within the meaning or contexts of the Property Insurance contracts issued by Westchester or it or paragraphs B and C, above. It incorporates by reference paragraphs D – H, above, and it denies knowledge or information sufficient to form a belief as to the remaining matters alleged in paragraphs 61 through 67 of the Complaint.

68.  It denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 68 of the Complaint.

11

69.     It denies that the wrecked drydock constitutes "debris" the meaning or contexts of the Property Insurance contracts issued by Westchester or it or paragraphs B and C above, and it denies knowledge or information sufficient to form a belief as to the matters alleged in paragraph 69 of the Complaint.

70-76.   No answer is required by this Defendant to paragraphs 70-76 of the Complaint as plaintiff MGL Insurers state their legal position as to Signal. To the extent an answer may be required, Max Specialty denies liability for any payments regarding the removal of the wreck of the AFDB-5 and it incorporates by reference paragraphs D – H above.

## FIRST CAUSE OF ACTION AGAINST SIGNAL BY THE MGL INSURERS

77.     Max Specialty repeats and incorporates by reference each and every allegation as set forth in paragraphs A – I and 1 through 76 of this Amended Answer as if fully set forth herein.

78-84.   In paragraphs 78 through 84 of the Complaint, Plaintiffs state their legal position against Signal and no answer is required by Max Specialty except that Max Specialty denies that Plaintiffs are entitled to prorate any of their wreck removal payments to it as alleged in Plaintiffs' paragraph 84.

12

## SECOND CAUSE OF ACTION AGAINST SIGNAL
## BY THE BUMBERSHOOT INSURERS

85. Max Specialty repeats and incorporates by reference each and every allegation as set forth in paragraphs A – I and 1 through 84 of this Amended Answer as if fully set forth herein.

86-88. In paragraphs 86 through 88 of the Complaint, Plaintiffs state their legal position against Signal and no answer is required by this Defendant.

## THIRD CAUSE OF ACTION AGAINST SIGNAL
## BY THE BUMBERSHOOT INSURERS

89. Max Specialty repeats and incorporates by reference each and every allegation as set forth in paragraphs A – I and 1 through 88 of this Amended Answer as if fully set forth herein.

90-91. In paragraphs 90 through 91 of the Complaint, Plaintiffs state their legal position against Signal and no answer is required by this Defendant. To the extent an answer may be required, it denies that Plaintiffs are entitled to the relief requested.

## FOURTH CAUSE OF ACTION AGAINST
## SIGNAL BY THE MGL AND
## BUMBERSHOOT INSURERS

92. Max Specialty repeats and incorporates by reference each and every allegation as set forth in paragraphs A – I and 1 through 91 of this Amended Answer as if fully set forth herein.

93-96. In paragraphs 93 through 96 of the Complaint, Plaintiffs state their legal position against Signal and no answer is required by this Defendant.

13

## FIFTH CAUSE OF ACTION AGAINST SIGNAL
## BY THE BUMBERSHOOT INSURERS

97.     Max Specialty repeats and incorporates by reference each and every allegation as set forth in paragraphs A – I and 1 through 96 of this Amended Answer as if fully set forth herein.

98-102. In paragraphs 98 through 102 of the Complaint Plaintiffs state their legal position against Defendant Signal and no answer is required by this Defendant. To the extent an answer may be required, it denies that any payments are due from it or Westchester for the removal of the AFDB-5.

## SIXTH CAUSE OF ACTION AGAINST GREAT
## AMERICAN BY THE MGL AND BUMBERSHOOT INSURERS

103.    Max Specialty repeats and incorporates by reference each and every allegation as set forth in paragraphs A – I and 1 through 102 of this Amended Answer as if fully set forth herein.

104-107. In paragraphs 103 through 107 of the Complaint, Plaintiffs state their legal position against Defendant, Great American, and no answer is required by this Defendant.

## SEVENTH CAUSE OF ACTION AGAINST MAX
## SPECIALTY BY THE BUMBERSHOOT INSURERS

108.    Max Specialty repeats and incorporates by reference each and every allegation and denial as set forth in paragraphs A – I and 1 through 107 of this Second Amended Answer as if more fully set forth herein, and it denies that the MGL Insurers are "Bumbershoot Insurers" as to it.

14

109. It admits that the drydock AFDB-5 is in wrecked condition, and it denies the remaining matters alleged in paragraph 109 of the Complaint.

110. It admits the matters alleged in paragraph 110 of the Complaint, and it refers to the Westchester and Max Specialty policies for their terms and conditions.

111. It admits that the MGL Insurers' insurance policies or contracts provide coverage for the removal of the wrecked drydock. It incorporates by reference paragraphs A – H, above and it denies that either the Westchester or Max Specialty property insurance policies provide coverage for the removal of the wrecked drydock, and it denies that Max Specialty, as an excess property insurer, is or should be required to pay a prorated share or any part of the costs of removal of Signal's wrecked drydock.

112. It denies that the wrecked drydock constitutes "debris" in the contexts of the Property Insurance contracts and paragraphs B and C, above, and it denies that the MGL Insurers are entitled to the relief requested against it in paragraph 112 and the WHEREFORE paragraphs of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

113. Plaintiff MGL Insurers' Complaint fails to state a claim against Max Specialty upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

114. As outlined in Max Specialty's Amended Answers to Signal's Crossclaims With Amended Additional Crossclaims Against Signal, Docket No. 89, (the "Additional Crossclaims") the terms of which are incorporated herein, Signal deceived and defrauded Max Specialty into issuing the Excess Property Insurance policy or contract in issue to it.

15

115. For the reasons outlined in Max Specialty's Additional Crossclaims against Signal, Max Specialty seeks a declaration from this Court that the Excess Property Insurance policy or contract it issued to Signal is void and was void from the beginning due to Signal's fraud and deceit.

116. If, on the facts, the Court holds that the Excess Property Insurance policy issued by Max Specialty to Signal is void, then, all of the MGL Insurers' claims against Max Specialty become moot and the Complaint should be dismissed as to Max Specialty.

117. If the Court declines to hold that the Excess Property Insurance policy or contract Max Specialty issued to Signal is void, then, Max Specialty relies upon the following alternative affirmative defenses.

### THIRD [ALTERNATIVE] AFFIRMATIVE DEFENSE

118. Nothing contained in any of the contracts issued to Signal by the MGL Insurers purports to or could make their contracts excess to the Property Insurance contracts issued to Signal by either Westchester or Max Specialty.

### FOURTH [ALTERNATIVE] AFFIRMATIVE DEFENSE

119. Nothing contained in the insurance contracts issued by Westchester or Max Specialty to Signal purport to make their insurance contracts underly those issued by the MGL Insurers.

### FIFTH [ALTERNATIVE] AFFIRMATIVE DEFENSE

120. Nothing contained in the primary Property Insurance contract issued by Westchester to Signal or in the excess Property Insurance contracts issued by Max Specialty to Signal require those insurers to bear any liability to pay any part of the costs

16

of raising and removing Signal's wrecked vessels, while the MGL Insurers, in each of the insurance contracts they issued to Signal, expressly agreed to bear all liability to pay the costs of raising and removing Signal's wrecked vessels.

### SIXTH [ALTERNATIVE] AFFIRMATIVE DEFENSE

121.    The premiums charged to and paid by Signal to the MGL Insurers were based upon their agreement to bear the MGL insurance risks including paying the costs of raising and removing Signal's wrecked vessels, while the premiums charged to and paid by Signal to Westchester and to Max Specialty were not.

WHEREFORE, Defendant Max Specialty demands that:

a.    This Court hold that the Excess Property Insurance policy or contract Max Specialty issued to Signal is void for the reasons outlined in Max Specialty's Amended Answers to Signal's Crossclaims With Amended Additional Crossclaims against Signal, Docket No. 89.

b.    This Court hold that the MGL Insurers' claims against Max Specialty are moot.

c.    This Court dismiss the MGL Insurers' Complaint against Max Specialty.

d.    In the alternative, that this Court deny the MGL Insurers' allegations and claims to any part or parts of the Westchester and Max Specialty policies.

17

  e. This Court grant Defendant Max Specialty such other and further relief against the MGL Insurers as is just and proper.

Dated  New York, New York  
     March 18, 2011

       NOURSE & BOWLES, LLP  
       Attorneys for Defendant  
       Max Specialty Insurance Company  
       By:

       _____  
       Lawrence J. Bowles (5950)  
       One Exchange Plaza  
       At 55 Broadway, 30th Floor  
       New York, NY 10006-3030  
       Telephone: (212) 952-6200  
       Facsimile: (212) 952-0345  
       Email: lbowles@nb-ny.com

To: Fireman's Fund Insurance Company et al.  
   c/o John A.V. Nicoletti, Esq.  jnicoletti@nicolettihornig.com  
   Robert A. Novak, Esq.    rnovak@nicolettihornig.com  
   Ms. Sally Sunshine     ssunshine@nicolettihornig.com  
   NICOLETTI HORNIG & SWEENEY  
   Wall Street Plaza  
   88 Pine Street, 7th Floor  
   New York, NY 10005

   Signal International, LLC  
   c/o Stephen P. Kyne, Esq.   kyne@burkeparsons.com  
   BURKE & PARSONS  
   100 Park Avenue  
   30th Floor  
   New York, NY 10017

LeBlanc Bland PLLC
1717 Saint James Pl # 360
Houston, TX 77056-3408
David S. Bland, Esq.          dbland@leblancbland.com
Matthew C. Guy, Esq.          mguy@leblancbland.com


Great American Insurance Company of New York
c/o George R. Zacharkow, Esq.    gzacharkow@mattioni.com
Mattioni, Ltd.
399 Market Street - 2nd Floor
Philadelphia, PA 19106