# EXHIBIT 12

*Primary 10 m m*

# Westchester Surplus Lines
### INSURANCE COMPANY

600 Colonial Center Parkway, Suite 200
Roswell, GA 30076

# NOTICE

POLICY NO.   D37362220 001

NAME OF INSURED:   Signal International, LLC.

ADDRESS:   P.O. Box 7007
Pascagoula MS 39568

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

The Surplus Lines Broker further confirms that this risk has been declined by three admitted carriers not including any insurer affiliated with the Surplus Lines Insurance Company.

Thank you for this placement and your regulatory compliance.

Date: 03/24/2009

WSG-084 (10/03)



EXHIBIT
103
J. Johnson

WILLIS00722

## *Policy Declarations*



| Policy No.  D37362220 001 | Renewal of:  NEW |
|---|---|

**NAMED INSURED & MAILING ADDRESS**

Signal International, LLC.
P.O. Box 7007
Pascagoula, MS 39568

**POLICY PERIOD**

| When Coverage Begins: | 01/30/2009 | 12:01 A. M. Local Time At Named Insured's Address |
|---|---|---|
| When Coverage Ends: | 01/30/2010 | 12:01 A. M. Local Time At Named Insured's Address |

| INSURING COMPANY | Producer's Name & Address: |
|---|---|
| **Westchester Surplus Lines Insurance Company** | AMWINS BROKERAGE OF NEW YORK INC<br>88 PINE STREET - 6TH FLOOR<br>WALL STREET PLAZA<br>NEW YORK, NY 10005<br><br>Producer No:  249699 |

This insurance policy is issued pursuant to
Mississippi law covering surplus lines
Insurance. The company issuing the policy
is not licensed by the State of Mississippi,
but is authorized to do business in
Mississippi as a nonadmitted company. The
policy is not protected by the Mississippi
Insurance Guaranty Association in the event
of the insurer's insolvency.

**ATTACHED FORMS**

This policy is completed by the following: BB-5W58a and forms and endorsements attached thereto.

**Authorization Information**

Dated: 03/24/2009      NO FLAT CANCELLATIONS PERMITTED      *Marsh M Duncan*
                                                             Authorized Representative

SLPD (03/08)

WILLIS00723

## Common Policy Declarations

Policy Number: D37362220 001
Named Insured & Mailing Address

Signal International, LLC.
P.O. Box 7007
Pascagoula, MS 39568

Company Name: Westchester Surplus Lines Insurance Company
Producer's Name & Address

AMWINS BROKERAGE OF NEW
YORK INC
88 PINE STREET - 6TH FLOOR
WALL STREET PLAZA
NEW YORK, NY 10005
249699-NEW

**General Policy Information**

| | |
|---|---|
| Policy Period: | 12 months |
| Business Description: | Marine Construction |
| When Coverage Begins: | 01/30/2009   12:01 A.M. Local Time at Named Insured's Address |
| When Coverage Ends: | 01/30/2010   12:01 A.M. Local Time at Named Insured's Address |

In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.

The premium for this policy is indicated below next to the applicable Coverage Form(s).

*Coverage Form*

| Brokers Manuscript | $ | 1,260,000 |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Total Premium: | $ | 1,260,000 |
| Total Assessments, Fees, Surcharges, Taxes: | $ | |
| Total Amount Due: | $ | 1,260,000 |
| 25%Minimum Earned Premium, Or Subject To Hurricane Minimum Earned Premium Endorsement, Whichever is Greater: | $ | 315,000 |

**Attached Forms Information**

See Forms Schedule CPfs2

**Authorization Information**

Date:

Authorized Representative:

Page 1 of 1
Form BB-5W56a (03/08)

These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issue to form a part thereof, complete the above numbered policy.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Signal International, LLC. | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | D37362220 001 | 01/30/2009 to 01/30/2010 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the Information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, Including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11/08) Ptd. In U.S.A.

Page 1 of 1

WILLIS00725



# Claims Directory
# Property and Inland Marine

Claims or Loss Notices related to this policy should be reported to the following:

| Claim Office | Location | Fax and Email |
|---|---|---|
| ACE Westchester Claims | P.O. Box 25152 Lehigh Valley, PA 18002-5152 | First Notices Fax: 215.640.5057 or 1.887.746.4640<br>First Notices Email: WSGPROP-INLCLAIMS@ACE-INA.COM |

MA-608255p (01/06)

WILLIS00726

## *Commercial Property Declarations*



**Company: Westchester Surplus Lines Insurance Company**
SYM:   FS      Policy ID: D37362220 001

| Location | ☒ Schedule on file with Company | ☐ See attached Schedule CPs2 |
|---|---|---|

| Loc. No. | Bld. No. | Address |
|---|---|---|
| | | |
| | | |

**Coverages and Limits Provided**

Insurance At Described Location Applies Only For Coverages For Which A Limit Of Liability Is Shown

| Loc. No. | Bld. No | Coverage | Covered Causes of Loss Form | Co-insurence % | Limit of Insurance $ |
|---|---|---|---|---|---|
| ALL | ALL | See Brokers Manuscript Form | Special | N/A | See Brokers Manuscript Form |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Deductible**    See Brokers Manuscript Form

**Special Deductible Provisions**
☐ See Multiple Deductible Form    ☐ See Windstorm or Hail % Deductible Form
☐ See Hurricane % Deductible

**Coverage Options:**
The following coverage options are provided where indicated by an x or entry:
Building  ☐ Agreed Value  Exp. Date    ☒ Replacement Cost

Personal Property   ☐ Agreed Value  Exp. Date
☒ Replacement Cost (☐ Inc. Stock) (☐ Inc. Personal Property of Others)

Business Income:   ☐ Monthly Limit of Indemnity       ☐ Maximum Period of Indemnity
☐ Extended Period of Indemnity    Days

**Attached Forms Information**    ☒ Refer to Forms Schedule CPfs2

Form CPd2 (6/02)
Page 1 of 1

WILLIS00727

# Forms Schedule

**Company: Westchester Surplus Lines Insurance Company**
SYM:   FS                              Policy ID: D37362220 001

| Policy Period | When Coverage Begins: | 01/30/2009 | 12:01 A. M. Local Time At Named Insured's Address |
|---|---|---|---|
| | When Coverage Ends: | 01/30/2010 | 12:01 A. M. Local Time At Named Insured's Address |

| Applicable to all Coverage Parts | Form No. and Description<br>SLPD (03/08) - Policy Declarations<br>BB-5W58a (03/08) - Common Policy Declarations<br>ALL-21101 (11/06) - Trade Or Economic Sanctions Endorsement<br>MA-608265p (01/08) - Property & Inland Marine Claims Directory |
|---|---|
| Commercial Property | Form No. and Description<br>CPd2 (06/02) - Commercial Property Declarations<br>BB-10320a (02/06) - Service of Suit Endorsement<br>Brokers Manuscript Form<br>ACE0365 (08/08) — Joint Loss Adjustment Endorsement<br>ACE061 (02/04) - Asbestos Material Endorsement<br>ACE0239 (06/06) - Hurricane Minimum Earned Premium Endorsement<br>ACE0210 (01/08) - Nuclear, Biological, Chemical, Radiological Exclusion Endorsement<br>ACE100 (06/03) - Pollution and Pollutants Clean-Up and Removal Exclusion Endorsement<br>ACE0204 (04/08) - Fungus, Wet Rot, Dry Rot and Bacteria Exclusion<br>CP 00 90 (07/88) - Commercial Property Conditions<br>ALL-10750 (10/01)- Terrorism Exclusion Endorsement<br>TRIA15c (01/08) - Policyholder Disclosure Notice of Terrorism Insurance Coverage<br>IL 00 17 (11/98) - Common Policy Conditions<br>LD-5823g (02/06) - Signature Endorsement |

Form CPfs2 (03/08)
Page 1

WILLIS00728

# Service of Suit Endorsement

**General Policy Information**

| | |
|---|---|
| Named Insured: | Signal International, LLC. |
| Endorsement Number: | |
| Policy Symbol: | FS |
| Policy Number: | D37362220 001 |
| Policy Period: | 01/30/2009 to 01/30/2010 |
| Effective date of Endorsement: | |
| Issued by: | Westchester Surplus Lines Insurance Company |
| (Name of Insurance Company) | |

**This Endorsement changes the policy -- Please read it carefully**

**Endorsement Information**

Information about service of "suits" upon us is given below. Service of process of "suits" against us may be made upon the following person, or another person we may designate:

> Saverio Rocca, Assistant General Counsel
> ACE USA Companies
> P.O. Box 1000
> 436 Walnut Street, WA04K
> Philadelphia, PA 19106

The person named above is authorized and directed to accept service of process on our behalf in any action, "suit" or proceeding instituted against us. If you request, we will give you a written promise that a general appearance will be entered on our behalf if a "suit" is brought.

If you request, we will submit to the jurisdiction of any court of competent jurisdiction. We will accept the final decision of that court or any Appellate Court in the event of an appeal.

The laws of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as our agent for service of process.



Page 1 of 2
Form BB-10320a (02/06)

**Endorsement Information**
(CONTINUED)

In these jurisdictions, we designate the Director of Insurance as our true and lawful attorney upon whom service of process on our behalf may be made. We also authorize the Director of Insurance to mail process received on our behalf to the company person named above.

If you are a resident of Canada, you may also serve "suit" upon us by serving the government official designated by the law of your province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

Page 2 of 2
Form BB-10320a (02/06)



WILLIS00730

TABLE OF CONTENTS

I.  **DECLARATIONS** ..................................................................................................... 5
    A.  THE FIRST NAMED INSURED ....................................................................... 5
    B.  BROKER ............................................................................................................ 5
    C.  PREMIUM AND THE POLICY PERIOD ......................................................... 6
    D.  LIMITS OF LIABILITY .................................................................................... 6
    E.  DEDUCTIBLES .................................................................................................. 10
    F.  WAITING PERIODS .......................................................................................... 11
    G.  LOSS PAYABLE .................................................................................................. 11
    H.  SCHEDULE OF MORTGAGE HOLDERS ....................................................... 11
    I.  ADJUSTMENT OF LOSSES ............................................................................... 11
    J.  TERRITORY ....................................................................................................... 11
    K.  NOTICE OF LOSS ............................................................................................... 12
    L.  CERTIFICATES OF INSURANCE ................................................................... 12
    M.  THE FIRST NAMED INSURED'S CONTACT ................................................. 12
    N.  SCHEDULE OF ATTACHMENTS AND ENDORSEMENTS ......................... 12

II.  **INSURING AGREEMENT** ................................................................................. 13

III.  **PROPERTY INSURED** ...................................................................................... 14
    A.  REAL AND PERSONAL PROPERTY ............................................................... 14
    B.  ADDITIONAL COVERAGES ............................................................................ 14

IV.  **PROPERTY EXCLUDED** .................................................................................. 17
    A.  GROWING CROPS ............................................................................................. 17
    B.  STANDING TIMBER .......................................................................................... 17
    C.  LAND, WATER ................................................................................................... 17
    D.  ANIMALS ............................................................................................................ 17
    E.  WATERCRAFT .................................................................................................... 17
    F.  AIRCRAFT ........................................................................................................... 17
    G.  MOTOR VEHICLES ........................................................................................... 17
    H.  MINES AND MINING PROPERTY ................................................................... 17
    I.  OVERHEAD ELECTRICAL ................................................................................ 17
    J.  DAMS OR DIKES ................................................................................................. 17
    K.  OFF-SHORE PROPERTY .................................................................................. 17
    L.  SATELLITES AND SPACECRAFT ................................................................... 18
    M.  PRECIOUS STONES, BULLION, JEWELRY ................................................. 18

WILLIS00731

**V.   TIME ELEMENT** .................................................................................................**19**
   A.   BUSINESS INTERRUPTION ................................................................................ 19
   B.   EXTRA EXPENSE ............................................................................................. 20
   C.   RENTAL VALUE .............................................................................................. 20
   D.   ROYALTIES .................................................................................................... 21
   E.   LEASEHOLD INTEREST ..................................................................................... 21
   F.   SOFT COSTS ................................................................................................... 22
   G.   PROVISIONS APPLICABLE TO "TIME ELEMENT" ................................................ 22

**VI.   EXCLUSIONS** ...........................................................................................**26**

**VII.   VALUATION** ..............................................................................................**31**
   A.   REPLACEMENT COST ....................................................................................... 31
   B.   DEMOLITION AND INCREASED COST OF CONSTRUCTION ....................................... 32
   C.   FINISHED STOCK ............................................................................................. 32
   D.   STOCK IN PROCESS .......................................................................................... 32
   E.   RAW STOCK ................................................................................................... 32
   F.   FINE ARTS, ANTIQUES ...................................................................................... 32
   G.   VALUABLE PAPERS AND RECORDS ..................................................................... 33
   H.   FILM, RECORDS, MANUSCRIPTS AND DRAWINGS ................................................ 33
   I.   ELECTRONIC MEDIA AND ELECTRONIC DATA ..................................................... 33
   J.   PROPERTY OF OTHERS ..................................................................................... 33
   K.   TECHNOLOGICALLY OBSOLETE .......................................................................... 33
   L.   PROPERTY SOLD BY THE INSURED ..................................................................... 33

**VIII.   EXTENSIONS OF INSURANCE COVERAGE** ...........................**34**
   A.   PROPERTY IN TRANSIT ..................................................................................... 34
   B.   ACCOUNTS RECEIVABLE .................................................................................... 34
   C.   SERVICE CHARGES ........................................................................................... 35
   D.   PRESERVATION OF PROPERTY ............................................................................ 35
   E.   PROPERTY IN COURSE OF CONSTRUCTION .......................................................... 35
   F.   INCREASED TAX LIABILITY ................................................................................ 35
   G.   CLAIM PREPARATION EXPENSES ........................................................................ 35

WILLIS00732

IX.  **GENERAL CONDITIONS** ........................................................................................36
    A.   OTHER INSURANCE ....................................................................................36
    B.   SUBROGATION .........................................................................................36
    C.   SALVAGES AND RECOVERIES ........................................................................37
    D.   BRANDS AND LABELS/CONTROL OF DAMAGED PROPERTY ....................................37
    E.   CANCELLATION .........................................................................................37
    F.   NOTICE OF LOSS ......................................................................................37
    G.   PROOF OF LOSS .......................................................................................38
    H.   PAYMENT OF LOSS ....................................................................................38
    I.   APPRAISAL ..............................................................................................38
    J.   SUIT AGAINST THE INSURER ........................................................................38
    K.   ADDITIONAL INSUREDS, LOSS PAYEES AND MORTGAGEES ...................................38
    L.   AUDIT ....................................................................................................39
    M.   REQUIRED BY LAW ....................................................................................40
    N.   FULL WAIVER ..........................................................................................40
    O.   TITLES OF PARAGRAPHS ............................................................................40
    P.   ASSISTANCE AND COOPERATION OF THE INSURED .............................................40
    Q.   BREACH OF WARRANTY ..............................................................................40
    R.   COINSURANCE .........................................................................................40
    S.   CONTROL OF PROPERTY .............................................................................40
    T.   OMISSIONS OR ERRORS .............................................................................40
    U.   EXTORTION .............................................................................................41
    V.   RIGHT TO INSPECT ...................................................................................41

X.  **DEFINITIONS** ...................................................................................................42
    A.   ACTUAL CASH VALUE .................................................................................42
    B.   BOILER AND MACHINERY .............................................................................42
    C.   EARTHQUAKE ...........................................................................................42
    D.   FINISHED STOCK .......................................................................................42
    E.   FLOOD ...................................................................................................43
    F.   GENERAL AVERAGE CONTRIBUTION AND SALVAGE CHARGES ................................43
    G.   HIGH HAZARD ZONES FOR EARTHQUAKE .........................................................43
    H.   IMPROVEMENTS AND BETTERMENTS ..............................................................43
    I.   INSURABLE INTEREST OF THE INSURED IN PROPERTY OF OTHERS ..........................43
    J.   LAND IMPROVEMENTS .................................................................................44
    K.   LOCATION ...............................................................................................44
    L.   MERCHANDISE .........................................................................................44

WILLIS00733

M.    MISCELLANEOUS UNREPORTED LOCATION ......................................................... 44
N.    NAMED STORM ......................................................................................................... 44
O.    NET SALES VALUE OF PRODUCTION ...................................................................... 44
P.    NORMAL ................................................................................................................... 45
Q.    OCCURRENCE ........................................................................................................... 45
R.    RAW STOCK ............................................................................................................. 45
S.    STOCK IN PROCESS .................................................................................................. 45
T.    TIER ONE ZONES ...................................................................................................... 46
U.    TIME ELEMENT .......................................................................................................... 46

WILLIS00734

I.   DECLARATIONS

A.   THE FIRST NAMED INSURED

[Signal International, LLC ] and any owned, controlled, associated or affiliated subsidiary, company, corporation, organization, trust or association as now or may hereinafter be constituted or acquired; the interest of the First Named Insured in any partnership or joint venture, to the extent not otherwise insured; and any entity for which The First Named Insured has agreed to provide insurance, as their respective rights and interests appear and as defined in the Policy wording.

| | |
|---|---|
| The First Named Insured's Street Address: | [601 Bayou Cassotte Pkwy ] |
| City, State or Province, and Zip/Postal Code: | [Pascagoula MS 39567 ] |
| Country: | [United States] |
| The Name of the First Named Insured's Contact: | [Chris Cunningham ] |

B.   BROKER

| | |
|---|---|
| Willis Location Name: | [Willis of Alabama, Inc. ] |
| Street Address: | [63 South Royal St., Suite 800 ] |
| City, State or Province, and Zip/Postal Code: | [Mobile AL  36602] |
| Country: | [United States ] |
| Telephone Number: | [(251) 433-0441 ] |
| Facsimile Number: | [(251) 432-7241 ] |
| Name of Contact: | [John J. Bullock] |

C.   PREMIUM AND THE POLICY PERIOD

In consideration of the premium negotiated and agreed, this Policy attaches and insures for a period of one (1) year, from January 30, 2009  to January 30, 2010  beginning and ending at 12:01 AM at the "location" of the property insured. .

Interim Premium Adjustments (Additions/Deletions)

With respect to Automatic Coverage for Newly Acquired Property, if the values at a newly acquired "location" or schedule of "locations" exceed USD[2,500,000], the Insured shall report these values to the Insurer within [one-hundred twenty] ([120 ]) consecutive days after they become known to the First Named Insured's Contact identified in Declarations I.A. No adjustment in premium shall be made unless the values so reported represent an increase of three percent (3%) or more over the total values declared at inception or, if applicable, used for the last premium adjustment. If the values do exceed such percentage, the Insurer agrees to charge a pro-rata (as to time and value) additional premium. Once reported, such additional "location(s)" shall be subject to the full limits of this Policy. If not reported to the Insurer within the time

*Signal Intl 09-10 Property Form v3*                                      5

WILLIS00735

defined above, such "locations" shall be subject to the "miscellaneous unreported location" sub-limit in the Limits of Liability.

Similarly, if the values of a divested "location" or schedule of "locations" exceed USD2,500,000 the Insured shall report these values to the Insurer within one-hundred twenty (120) consecutive days after they become known to the First Named Insured's Contact identified in Declarations I.A. No adjustment in premium shall be made unless the values so reported represent a decrease of three percent (3%) or more over the total values declared at inception or, if applicable, used for the last premium adjustment. If the values exceed such percentage, the Insurer agrees to allow a pro-rata (as to time and value) return premium.

**D.    LIMITS OF LIABILITY**

The Insurer's maximum Limit of Liability in a single "occurrence" regardless of the number of "locations" or coverages involved shall not exceed the Policy Limit of Liability of USD10,000,000.

When a Limit of Liability for a "location" or other specified property is shown, such Limit shall be the maximum amount payable for any loss or damage arising from physical loss, damage or destruction of the type insured by this Policy at the "location" or involving such other specified property.

Sub-limits stated in the Sub-limits schedule, or elsewhere in this Policy, shall apply as a part of and not in addition to the Policy Limit of Liability.  Limits and sub-limits do not include the amount of any applicable Deductibles.

Limits of Liability apply per "occurrence" unless otherwise stated. When a Sub-limit of Liability is shown as applying in the aggregate during any Policy year, the Insurer's maximum Limit of Liability shall not exceed such Limit during any Policy year regardless of the number of "locations" and coverages involved.

WILLIS00736

SubLiMiTS

-THi 11 vi

WILLIS00727

**Schedule of 100% Program Sub-limits (all in United States Dollars)**

Property Damage and "Time Element" coverages are subject to the following Sub-limits, unless otherwise stated:

| | |
|---|---|
| USD500,000. | Accounts Receivable |
| USD2,500,000. | Automatic Coverage on Newly Acquired Property, Property Damage and "Time Element" combined |
| USD250,000. | Contamination Cleanup, land and water, in the aggregate during any Policy year |
| USD500,000. | Contingent "Time Element" for Direct Suppliers Only |
| USD5,000,000. | Contractors Equipment Leased, Borrowed, Rented or Loaned |
| USD150,000. | Contractors Equipment – Rental Reimbursement, but not more than $2,500 per day for up to 60 days |
| USD5,000,000. or 25% of the Property Damage and "Time Element" claim payable under this Policy, whichever is greater. | Debris Removal and Cost of Cleanup |
| USD 250,000. | Decontamination Costs |
| USD5,000,000. | Demolition and Increased Cost of Construction Property Damage and Law, Ordinance or Regulation "Time Element" combined |
| USD10,000,000. | "Earthquake" in the aggregate during any Policy year, Property Damage and "Time Element" combined. |
| USD1,000,000. | Electronic Media and Electronic Data, Property Damage and "Time Element" combined |
| USD1,000,000. | Expediting Expense |
| USD10,000,000. | "Flood" in the aggregate during any Policy year, Property Damage and "Time Element" combined.  This aggregate does not apply to Flood resulting from a Named Storm. |
| USD250,000. | "Fine Arts" |
| USD1,000,000 | Loss of Ingress or Egress |
| USD1,500,000. | "Miscellaneous Unreported Locations,"  Property Damage and "Time Element" combined per "location" |
| USD2,500,000. | Omissions and Errors |
| USD2,500,000. | Service Interruption, Property Damage and "Time Element" combined, excluding Overhead Transmission and Distribution Lines |

WILLIS00738

| USD10,000,000. | Property in the Course of Construction - Property Damage only |
|---|---|
| USD5,000,000. | Property in Transit Any Single Conveyance or Disaster - applicable to transportation of machinery or equipment between yards only. |
| USD1,000,000. | Property in Transit Any Single Conveyance or Disaster -- applicable to all other transit |
| USD500,000. | Valuable Papers and Records |
| USD250,000. | Exhibition, Fairs and Trade Shows |
| USD1,000,000. | Leasehold Interest |
| USD500,000. | Fire Department Service Charges |
| USD500,000. | Personal Property of Officers and Employees |
| USD100,000. | Claim Preparation |
| USD1,000,000. | Research and Development |
| USD2,500,000. | Business Income Interdependency Coverage |
| USD2,500,000. | Increased Tax Liability |
| USD1,500,000. | Business Personal Property at Offsite Storage Facility |
| USD500,000. | Plans, Blueprints, Drawings, Models or Specifications |
| USD25,000,000. | Scheduled Contractors Equipment |
| USD2,500,000. | Newly Acquired Equipment (requires 120 days to report) |
| USD5,000,000. | Waterborne Equipment |
| USD3,000,000. | Unscheduled Equipment and no individual item to exceed USD250,000. (All owned items in excess of USD250,000 must be reported or coverage is excluded.) |
| USD1,000,000. | Miscellaneous Tools and Equipment but not more than USD100,000. per Any Single One Item |

WILLIS00739

| In the event of a claim, payment shall not exceed the "Time Element" loss incurred during the following Time Limits | |
| --- | --- |
| Time Limit | The following shall apply |
| 120 Consecutive days limit | Extended Period of Recovery |
| 120 Consecutive days limit | Automatic Coverage on Newly Acquired Property  (this Time Limit begins on the date of knowledge of such Location by the Insured's Finance Department) |
| 30 Consecutive days limit | Interruption by Civil or Military Authority |
| 30 Consecutive days limit | Loss of Ingress or Egress |
| 90 Consecutive days limit | Ordinary Payroll |

WILLIS00740

**E.   DEDUCTIBLES**

The Insurer shall be liable for each loss separately occurring or for each loss separately occurring or for the sum of all losses arising from the same "occurrence" excess of USD100,000, except excess of:

| With respect to "Time Element" | 10 days (in addition to property damage deductible, except for specific perils referenced below) |
| With respect to Bulkheads (and any attached equipment) | USD200,000. any one occurrence |
| With respect to Dry-docks (and any attached equipment) | 5% of the scheduled value of the dry dock involved in the loss or damage, subject to a minimum of USD250,000. any one occurrence |
| With respect to Crane, Booms, Derricks and Lifts | USD25,000 any one occurrence |
| With respect to Blanket Leased/Rented Equipment (other than cranes) with values less than 100,000 | USD5,000. any one occurrence |
| With respect to Blanket Leased/Rented Equipment (other than cranes) with values 100,000 or greater | USD25,000. any one occurrence |
| With respect to "Named Storm" including "Flood" resulting from "Named Storm" | 5% of Values affected at time of loss including building, contents, equipment (not including Dry-docks or "Time Element") involved in loss or damage arising out of a "Named Storm" (a storm declared to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm) including resulting "Flood" loss from Storm Surge regardless of the number of Coverages, Locations or Perils involved and subject to a minimum of USD250,000 any one occurrence |
| With respect to "Flood" (except "Flood" resulting from "Named Storm") | 5% of values affected at time of loss including building, contents, equipment (not including dry docks or "Time Element") involved in loss or damage in respect of "Flood" (not resulting from a "Named Storm") subject to a minimum of USD1,000,000 any one occurrence. |

Except as shown above, if two or more Deductible amounts in this Policy apply to an "occurrence" the Deductibles shall be applied separately but the cumulative deductions so calculated shall not exceed the largest Deductible applicable.

WILLIS00741

**F.**   WAITING PERIODS

| 48 Continuous Hours | Service Interruption |
|---------------------|----------------------|
| 48 Continuous Hours | Civil and Military Authority and Ingress/Egress |

The Insurer shall not be liable for any "Time Element" loss to which a Waiting Period applies unless the interruption exceeds the Waiting Period in which case the loss shall be calculated from the commencement of the "occurrence" and the Deductible specified above shall apply.

**G.**   LOSS PAYABLE

Loss, if any, shall be adjusted with and payable to the Insured (s) or their order, whose receipt shall constitute a release in full of all liability under this Policy with respect to such loss.

**H.**   SCHEDULE OF MORTGAGE HOLDERS

Per Certificates of Insurance.

**I.**   ADJUSTMENT OF LOSSES

In the event of loss and subsequent notification thereof, the firm named below, acting on behalf of the Insurers, shall be assigned the responsibility to investigate, properly document, and coordinate in a timely manner, the claims adjustment process, in cooperation with the Insured.

| Name of Firm: | York Claims |
|---------------|-------------|
| Street Address: | 3104 Edloe Street Suite 203 |
| City, State or Province, and Zip/Postal Code: | Houston, TX 77027 |
| Country: | United States |
| Telephone Number: | (713) 993-9292 (office)<br>(713) 805-2568 (cell)<br>(713) 993-9994 (fax) |
| Assigned Adjuster: | Ken Cruikshank |

**J.**   TERRITORY

This Policy insures locations within the United States, excluding U.S. Territories and Possessions.

WILLIS00742

**K.   NOTICE OF LOSS**

As soon as practicable after any physical loss, damage or destruction of the type insured by this Policy is known to the First Named Insured's Contact identified in Declarations I.A., the Insured shall report such physical loss, damage or destruction with full particulars to Willis of Alabama, Inc.

**L.   CERTIFICATES OF INSURANCE**

Any certificate of insurance or evidence of property insurance documents issued in connection with this Policy shall be issued solely as a matter of convenience or information for the addressee or holder of said certificate or evidence of insurance, except where any Additional Insured(s), Mortgagee(s) or Loss Payee(s) is named or any waiver of subrogation granted pursuant to the Special Provisions of the certificate of insurance or evidence of property insurance. In the event any Additional Insured(s), Mortgagee(s) or Loss Payee(s) are named, this Policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated in this Policy.

Willis may issue such certificates of insurance and evidence of property insurance documents.

**M.   THE FIRST NAMED INSURED'S CONTACT**

The First Named Insured may, at any time, change the name of the First Named Insured's Contact identified in Declarations I.A. by notifying the Insurer in writing.

**N.   SCHEDULE OF ATTACHMENTS AND ENDORSEMENTS**

| | |
|---|---|
| Endorsement #1 | Boiler & Machinery Exclusion |
| Endorsement #2 | Valuation Amendment |
| Endorsement #3 | Policy Wording Amendments |

WILLIS00743

**II.**    **INSURING AGREEMENT**

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS IN THIS POLICY OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations, Attachments or in Endorsements made a part of this Policy, the Insurer, for the term specified in the Declarations from inception date shown in the Declarations to expiration date shown in the Declarations, to an amount not exceeding the Limits of Liability specified in the Declarations, does insure the interest of the Insured named in the Declarations and its legal representatives, to the extent more fully described in this Policy, against 'all risks' of direct physical loss, damage or destruction, occurring during the Policy period, except as hereinafter excluded, of the property described and insured in this Policy. 'All risks' includes "Boiler and Machinery," "Flood" and "Earthquake" as more fully defined in DEFINITIONS. Physical loss, damage or destruction includes "general average contributions and salvage charges" and other charges and expenses as more fully described in this Policy. Wherever used in this Policy, 'peril insured' refers to this INSURING AGREEMENT and to EXCLUSIONS in this Policy and 'property insured' refers to PROPERTY INSURED and PROPERTY EXCLUDED in this Policy.

Assignment of this Policy shall not be valid except with the written consent of the Insurer. This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

WILLIS00744



WILLIS00745

III.    **PROPERTY INSURED**

Except as hereinafter excluded, this Policy insures:

A.    REAL AND PERSONAL PROPERTY

The insurable interest of the Insured in all real and personal property of every kind and description, at a "location" or within 1000 feet thereof, including the "insurable interest of the Insured in property of others in the care, custody or control of the Insured" and at the option of the Insured, business personal property of officers, directors and employees of the Insured while at a "location" or anywhere within the Policy territory when the officer, director or employee is acting on behalf of the Insured.

B.    ADDITIONAL COVERAGES

1.    Debris Removal and Cost of Clean Up

Notwithstanding the provisions of any exclusion contained herein or any provision respecting pollution and/or contamination, in the event of physical loss, damage or destruction of property insured by a peril insured by this Policy, this Policy (subject otherwise to its terms, conditions, and limitations, including but not limited to any applicable Deductible) insures:

a.    Expenses necessarily and reasonably incurred in removal of debris of such property from the "location" of the insured physical loss, damage or destruction and/or from other premises when blown by wind or carried by water

and/or

b.    Cost of clean up at the "location" made necessary as a result of physical loss, damage or destruction of property of the type insured by this Policy by a peril insured by this Policy,

Provided such expenses are reported to the insurer within 365 days of the date of the direct physical loss, damage or destruction.

This provision does not insure against the costs of decontamination or removal of water, soil or any substance not insured by this Policy on or under such "location."

It is a condition precedent to recovery under this provision that the Insurer shall have paid or agreed to pay for physical loss, damage or destruction of property insured unless such payment is precluded solely by the operation of any Deductible.

2.    Contamination Cleanup

Notwithstanding anything in this Policy to the contrary, this Policy insures costs or expenses incurred to clean up and/or remove polluted or contaminated land and/or water from an insured "location" provided the contamination or pollution results directly from physical loss, damage or destruction of property insured by a peril insured by this Policy, and provided such expenses are reported to the insurer within 365 days of the date of the direct physical loss, damage or destruction.

3.    Valuable Papers and Records

This Policy insures valuable papers and records of all kinds and descriptions, including plans, drawings, blueprints, photographs, specifications, manuscripts, deeds, notes, evidences of debt or ownership or other documents, against physical loss, damage or destruction by a peril insured by this Policy. 'Valuable paper and records' does not include 'media' as defined and insured below.

*Signal Int'l 09-10 Property Form v3*                      14

WILLIS00746

4.  Decontamination Costs

If property insured is contaminated as a result of physical loss, damage or destruction by a peril insured by this Policy and there is in force at the time of the loss any law or ordinance regulating contamination, including but not limited to the presence of pollutants or contaminants, this Policy insures, as a result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated property insured in a manner to satisfy such law or ordinance. This provision applies only to that part of property insured contaminated as a result of insured physical loss, damage or destruction by a peril insured by this Policy.

5.  Destruction of Property at the Order of Public Authority

This Policy insures destruction of property insured at the order of public authority at the time of and for the purpose of preventing physical loss, damage, destruction by a peril insured by this Policy.

6.  Protection Devices

This Policy insures expenses incurred to recharge or refill fire protection devices provided such is necessitated by an accidental discharge or by an insured loss.

7.  Removal

This Policy insures property insured by this Policy while it is being removed to or from and while at a place of safety because of imminent danger of physical loss, damage or destruction by a peril insured by this Policy.

8.  Expediting Expenses

In the event of physical loss, damage or destruction of property insured by a peril insured by this Policy, this Policy insures the reasonable extra cost to make temporary repairs, expedite permanent repairs, and expedite permanent replacement of such property.

9.  Consequential Loss

This Policy insures:

a.  Physical loss, damage or destruction of property insured resulting from physical loss, damage or destruction of other property insured at the same "location" by a peril insured by this Policy.

b.  The reduction in value of undamaged insured articles that are a part of pairs or sets, including components or parts of similar inventory-type property and including merchandise usually sold by lots, sizes, color ranges or other classifications, when such reduction in value results from loss, damage or destruction of other insured articles, components or parts of such property by a peril insured by this Policy;

    In the event of such physical loss, damage or destruction, the measure of recovery for such articles shall be, at the Insured's option:

    The reduction in value of undamaged insured components or parts of property resulting from physical loss or damage insured by this Policy to other insured components or parts of such property; or, the full value of the pair or set.

c.  Physical loss, damage or destruction of property insured resulting from physical loss, damage or destruction, by a peril insured by this Policy, of property of a supplier of electricity, steam, water, natural gas, refrigeration, telecommunications or sewerage, including poles, towers, and transmission or distribution lines.   This provision shall be known as known as 'Service Interruption Property Damage.'

WILLIS00747

10. **Defense Expenses**

With respect to the interest of the Insured in property of others in the Insured's care, custody or control, this Policy shall defend any suit against the Insured alleging liability for physical loss, damage or destruction, by a peril insured by this Policy, of the property, even if such suit is groundless, false or fraudulent; but the Insurer may without prejudice, make such investigation, negotiation and settlement of any claim or suit the Insurer deems expedient.

11. **Fine Arts and Antiques**

This Policy insures paintings, etchings, pictures, tapestries, art glass windows and other bona fide works of art (such as valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelain and bric-a-brac) of rarity, historical value, monetary value or artistic merit against physical loss, damage or destruction by a peril insured by this Policy. Additional exclusion applying to fine arts and antiques: This Policy does not insure against physical loss, damage or destruction of fine arts or antiques from any repairing, restoration or retouching process.

12. **"Improvements and Betterments"**

This Policy insures "improvements and betterments" against physical loss, damage or destruction by a peril insured by this Policy. Insurers agree to accept and consider the Insured as the only and the unconditional owner of improvements and betterments irrespective of any provisions of any contract, lease or agreement to the contrary.

13. **Electronic Data Processing Equipment, Media and Data**

This Policy insures 'electronic data processing equipment.' Such 'equipment' includes but is not limited to mainframes, servers, workstations and portable computers, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, electronic controls for machinery, electronically programmed memory chips and electronically controlled communication equipment.

Subject to Electronic Media and Electronic Data in EXCLUSIONS, this Policy also insures 'electronic media' meaning any physical device that holds, stores, contains or transfers 'electronic data,' and includes but is not limited to disks, drives, films, tapes, records, drums or cells. This Policy also insures 'electronic data' meaning facts, concepts or information, including compilations thereof, in a form useable or intended for use or processing by electronic data processing equipment or for storage on electronic media. 'Electronic data' includes but is not limited to files, programs, applications, operating systems, and other coded instructions for the processing calculation and storage of facts, concepts and information by electronic data processing equipment.

14. **Automatic Coverage on Newly Acquired Property**

This Policy insures real and personal property of the type insured by this Policy that becomes at the risk of the Insured after the inception date of this Policy at any "location" within the territorial limits of this Policy. This coverage applies until one of the following events occurs:

a. Insurance on the "location" is bound by the Insurer.

b. Agreement is reached that the "location" shall not be insured under this Policy.

c. Expiration of the Time Limit shown in DECLARATIONS. The Time Limit begins on the date of knowledge of such "location" by the First Named Insured's Contact identified in Declarations I.A.

15. **Operation of Building Laws**

This Policy insures the undamaged portion of property insured when, as a result of physical loss, damage or destruction by a peril insured by this Policy to such property insured, any law, ordinance or regulation which is in force at the time of such physical loss, damage or destruction requires the demolition of such undamaged portion of property insured.

However, nothing in the foregoing shall serve to override 'Asbestos Material' in EXCLUSIONS.

WILLIS00748

**IV.** **PROPERTY EXCLUDED**

This Policy does not insure:

**A.** **GROWING CROPS**

Growing crops. This exclusion shall not apply to "land improvements."

**B.** **STANDING TIMBER**

Standing timber. This exclusion shall not apply to "land improvements."

**C.** **LAND, WATER**

Except as provided in 'Contamination Cleanup' in PROPERTY INSURED, land or water. This exclusion shall not apply to water that is normally contained within any type of tank, piping system or process equipment, nor shall this exclusion apply to "land improvements."

**D.** **ANIMALS**

Animals.

**E.** **WATERCRAFT**

Watercraft while waterborne except as provided in 'Off-Shore Property' below.

**F.** **AIRCRAFT**

Aircraft.

**G.** **MOTOR VEHICLES**

Motor vehicles licensed for highway use except while at an insured "location."

**H.** **MINES AND MINING PROPERTY**

Underground mines and mining property located underground.

**I.** **OVERHEAD ELECTRICAL**

Overhead electrical transmission or distribution lines owned by the Insured except when at an insured "location" or within 1,000 feet thereof.

**J.** **DAMS OR DIKES**

Dams or dikes. This exclusion shall not apply to Impounded Water in TIME ELEMENT.

**K.** **OFF-SHORE PROPERTY**

Off-shore property, except structures and their contents extending from land or shore; however, waterborne vessels and their contents and/or floating docks permanently moored to a dock, river bank or shore shall not to be considered as off-shore property.

In the Gulf of Mexico off Texas and Louisiana, 'off-shore' is to be seaward of the inland edge of the Lease Block of the Plane Coordinate System, as defined on United States Department of Land Management Leasing Maps.

WILLIS00749

L.   SATELLITES AND SPACECRAFT

Satellites and spacecraft while on the launch pad or after time of launch.

M.   PRECIOUS STONES, BULLION, JEWELRY

Precious stones, bullion, jewelry.

WILLIS00750



WILLIS00751

# V.    TIME ELEMENT

### A.    BUSINESS INTERRUPTION

1. This Policy insures loss resulting from the necessary interruption or reduction of business operations conducted by the Insured and caused by physical loss, damage or destruction, by a peril insured by this Policy, of property insured.

2. If such a loss occurs during the term of this Policy, it shall be adjusted on the basis of the 'Actual Loss Sustained' by the Insured during the Period of Recovery resulting from the interruption or reduction of operations. 'Actual Loss Sustained' is defined as the reduction in 'Gross Earnings' less charges and expenses that do not necessarily continue during the interruption or reduction of the business operations.

    For manufacturing operations, 'Gross Earnings' are defined as the sum of:

    a. The total "net sales value of production,"

    b. The total net sales of "merchandise," and

    c. Other earnings derived from the business.

    LESS THE COST OF:

    d. "'Raw stock" from which such production is derived,

    e. Supplies consumed in the conversion of such "raw stock" into "finished stock" or in supplying the services sold by the Insured,

    f. "Merchandise" sold including packaging materials, and

    g. Services purchased from outsiders for resale, which do not continue under contract.

    No other costs shall be deducted in determining 'Gross Earnings' for manufacturers.

    For non-manufacturing operations, 'Gross Earnings' are defined as the sum of:

    a. Total net sales, and

    b. Other earnings derived from the operations of the business.

    LESS THE COST OF:

    c. "Merchandise sold,

    d. Materials and supplies consumed, and

    e. Services purchased from outsiders for resale which do not continue under contract.

    f. No other costs shall be deducted in determining 'Gross Earnings' for non-manufacturing business.

3. In the event of physical loss, damage or destruction of property insured by a peril insured by this Policy which results in an interruption in research and development activities that in themselves would not have produced income during the Period of Recovery, this Policy insures the actual loss sustained of the continuing fixed charges and expenses, including payroll, attributable to such research and development activities, known as 'Research and Development "Time Element."

*Signal Int'l 09-10 Property Form v3*                    19

4. Resumption of Operations: If it is reasonably possible for the Insured to reduce the loss resulting from the interruption or reduction of operations,

    a. By a complete or partial resumption of operations or

    b. By making use of available "finished stock" or "merchandise,"

Such reduction shall be taken into account in arriving at the amount of loss hereunder.

5. 'Business interruption' does not insure any loss resulting from loss, damage or destruction of "finished stock" nor for the time required to reproduce "finished stock."

## B.  EXTRA EXPENSE

This Policy insures:

1. 'Extra expense' incurred by the Insured resulting from physical loss, damage or destruction of property insured by a peril insured by this Policy.

2. 'Extra expense' means the reasonable and necessary extra costs incurred by the Insured during the Period of Recovery to temporarily continue as nearly normal as practicable the conduct of the Insured's business and extra costs of temporarily using property of the Insured or others less any value remaining at the end of the Period of Recovery for property obtained in connection with an 'extra expense' loss.

## C.  RENTAL VALUE

This Policy insures:

1. 'Rental value' loss sustained by the Insured resulting from necessary untenantability caused by physical loss, damage or destruction, by a peril insured by this Policy, of property insured but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the Period of Recovery.

2. For the purposes of this insurance, 'rental value' is defined as the sum of:

    a. The total anticipated gross rental income from tenant occupancy of the property insured as furnished and equipped by the Insured; and

    b. The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

    c. The fair rental value of any portion of said property that is occupied by the Insured.

3. When the Insured is the lessee, this Policy insures:

The rent the Insured is obligated to pay including ground rents, accrued charges, real estate taxes and interest if the Insured is liable for such, less charges and expenses that do not necessarily continue during the Period of Recovery. However, if the Insured is obligated by the terms of any lease to pay rent and taxes for any time beyond the Period of Recovery of this Policy, this Policy insures such additional payments.

If the Insured is both a lessor and a lessee of the same "location," this Policy insures the loss as defined in V.C.2. above.

WILLIS00753

**D.** **ROYALTIES**

This Policy insures:

1. Loss to the Insured, as described in Business Interruption above, of revenue under royalty, licensing fees or commission agreements between the Insured and another party, which is not realizable due to physical loss, damage or destruction, by a peril insured by this Policy, of property of the other party. Such other party shall not be an Insured under this Policy. Coverage under this Clause shall apply to loss experienced by the Insured caused by physical loss, damage or destruction of property of the other party situated within the territorial limits of this Policy.

2. Resumption of Operations: The Insured shall influence, to the extent possible, the party with whom the agreement described in paragraph V.D.1. above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder and the Insured shall cooperate with that party in every way to effect this, but not financially, unless such expenditures are authorized by the Insurer.

**E.** **LEASEHOLD INTEREST**

This Policy insures:

1. The pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

   a. The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

   b. Improvements and betterments to real property during the unexpired term of the lease which is not covered under any other provision of this Policy;

   c. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

   when property of a lessor is rendered wholly or partially untenantable as a result of physical loss, damage or destruction by a peril insured by this Policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the lost, damaged or destroyed property is located; and

2. Interest of the Insured as Lessee

   a. The 'Interest of the Insured as Lessee' when property is rendered wholly or partially untenantable by a peril insured by this Policy and the lease is canceled by the lessor in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

   b. The 'Interest of the Insured as Lessee' as referred to herein shall be paid for the first three months succeeding the date of the loss and the 'Net Lease Interest' shall be paid for the remaining months of the unexpired lease.

3. Definitions:

   The following terms, wherever used in this Clause, mean:

   a. The 'Interest of the Insured as Lessee' is defined as:

      i. The excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease.

WILLIS00754



Ext. Period of

44.

WILLIS00761

ii.  The rental income which would have been earned by the Insured from sublease agreements, to the extent not covered under any other Clause in TIME ELEMENT in this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

b.  'Net Lease Interest' is defined as that sum, which placed at the prime rate of interest plus 3% compounded annually, shall be equivalent to the 'Interest of the Insured as Lessee.'

4.  The Insurer shall not be liable for any increase of loss, which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

**F.  SOFT COSTS**

This Policy insures 'Soft Costs' loss sustained by the Insured during the Period of Recovery caused by physical loss, damage or destruction of insured property in the course of construction, erection, installation, or assembly by a peril insured by this Policy.

'Soft Costs' means expenses over and above normal expenses consisting of:

1.  Additional interest on money borrowed to finance construction or repair.

2.  Additional real estate and property taxes.

3.  Additional legal and accounting fees.

4.  Additional advertising and promotional expenses which become necessary as a result of the loss.

In the event the construction contract for such property contains a penalty clause providing for payments to the Insured for a delay in the completion of the construction, any portion of such penalty inuring to the benefit of the Insured shall be taken into consideration in the settlement of any loss hereunder.

**G.  PROVISIONS APPLICABLE TO "TIME ELEMENT"**

1.  The Period of Recovery

a.  Applicable to "Time Element" as defined in 'Business Interruption,' 'Extra Expense,' 'Rental Value' and 'Soft Costs' above:

i.  Shall not exceed such length of time required with the exercise of due diligence and dispatch to rebuild, repair, or replace lost, damaged or destroyed property and to make such property ready for operations under the same or equivalent physical and operating conditions that existed prior to the loss, including such time as may be required to restore or recreate lost or destroyed valuable papers and records or electronic media and electronic data.

ii.  Shall include an additional length of time, known as an 'Extended Period of Recovery,' not to exceed the time specified in the DECLARATIONS, to restore the Insured's business to the condition that would have existed had no "Time Element" loss occurred.

'Extended Period of Recovery' shall not apply to:

•  Interruption by Civil or Military Authority as defined below.

•  Loss of Ingress or Egress as defined below.

•  Service Interruption as defined below.

WILLIS00756

b.  Applicable to "Time Element" as defined in Business Interruption Loss of Profits, the Period of Recovery shall be the period beginning with the occurrence of the physical loss, damage or destruction and ending not later than the 'Maximum Period of Recovery' thereafter during which the results of the business are affected in consequence of the loss, damage or destruction.

The 'Maximum Period of Recovery' shall be the greater of:

i.  The Period of Recovery on the "primary policy," or

ii.  The Period of Recovery for Business Interruption Loss of Profits stated in the DECLARATIONS of this Policy.

c.  Applicable to "Time Element" as defined in Business Interruption, Business Interruption Loss of Profits and Rental Value, the Period of Recovery applying to alterations, additions, and property while in the course of testing, commissioning, construction, erection, installation, or assembly, shall be determined as provided in a. or b. above, as applicable, but the length of time shall be applied to the planned level of production or the planned level of business operation.

d.  Applicable to actions taken by the Insured in relation to "Preservation of Property" efforts as insured elsewhere in this Policy, shall commence at the time of initiation of the "Preservation of Property" efforts.

e.  Applicable to "Time Element" resulting from the release and subsequent lack of water supply stored behind dams or in reservoirs at an insured "location" when such water supply is used for any manufacturing purpose, for power or for fire protection and when such release is caused by physical loss, damage or destruction, by a peril insured by this Policy, of such dams or reservoirs or equipment connected thereto, shall be extended for a period not to exceed 30 consecutive days after the damaged dam, reservoir or equipment has been repaired or replaced. This provision is known as 'Impounded Water.'

f.  Except as provided in V.G.I.c above, for all "Time Element," the Period of Recovery shall commence with the date of the loss, damage or destruction of property of the type insured by a peril insured by this Policy and shall not be limited by the date of expiration of this Policy.

2.  Expenses to Reduce Loss

Except as respects Extra Expense as defined above, this Policy insures expenses necessarily incurred for the purpose of reducing any "Time Element" loss, not to exceed the amount by which such "Time Element" loss is reduced.

3.  Contingent "Time Element" Coverage

Subject to all TIME ELEMENT provisions including Interruption by Civil or Military Authority, Loss of Ingress or Egress and Service Interruption as defined below, this Policy insures the "Time Element" loss resulting from physical loss, damage or destruction, by a peril insured by this Policy, of:

a.  Property of the type insured by this Policy of a direct supplier or a direct receiver of the Insured, which prevents the rendering or acceptance of goods and/or services to or from the Insured. Such supplier or receiver must be located within the Policy territory.

b.  Property of others of the type insured by this Policy in the vicinity of a "location" of the Insured that attracts customers to the Insured's "location."

Contingent "Time Element" coverage does not apply to any loss or damage insured under Service Interruption as defined below.

*Signal Intl 09-10 Property Form v3*                    23

WILLIS00757

4. Interdependent "Time Element"

This Policy insures "Time Element" interdependency loss sustained within and among companies or corporations owned, controlled or which are subsidiaries of the Insured, or joint ventures or partnerships in which the Insured has an interest, caused by physical loss, damage or destruction, by a peril insured by this Policy, of property insured situated within the territorial limits of this Policy.

5. Interruption by Civil or Military Authority

This Policy insures the "Time Element" loss sustained during the period of time when, as a result of physical loss, damage or destruction by a peril insured by this Policy within five miles of an insured "location," normal business operations are interrupted or reduced because access to that "location" is prevented by order of civil or military authority.

6. Loss of Ingress or Egress

This Policy insures the "Time Element" loss sustained during the period of time when, as a result of physical loss, damage or destruction by a peril insured by this Policy within five miles of an insured "location," normal business operations are interrupted or reduced because ingress to or egress from that "location" is prevented.

7. Service Interruption

This Policy insures the "Time Element" loss sustained as a result of physical loss, damage or destruction, by a peril insured by this Policy, of property of a supplier of electricity, steam, water, natural gas (except when natural gas is used as a raw material in which case "Time Element" loss is insured under Contingent "Time Element" as defined above), refrigeration, sewerage or telecommunications, including poles, towers, and transmission or distribution lines.

8. Law, Ordinance or Regulation

In the event reconstruction, restoration, repair or use of property insured is regulated or prohibited by the enforcement of any law, ordinance, or regulation that is in force at the time of physical loss, damage or destruction by a peril insured by this Policy, this Policy shall pay for any increase in "Time Element" loss insured by this Policy arising out of the additional time required to bring both the damaged and undamaged property into full compliance with the applicable law, ordinance or regulation.

Notwithstanding the foregoing, this Policy does not insure any increase in "Time Element" loss insured by this Policy arising out of the additional time required by the enforcement of any law, ordinance or regulation regulating asbestos material that has not sustained physical loss, damage or destruction by a Listed Peril as defined in Asbestos Material in EXCLUSIONS, or by any governmental direction or request declaring that asbestos material present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

9. Experience of the Business

In determining the amount of "Time Element" loss payable hereunder, consideration shall be given to the experience of the business before the date of physical loss, damage or destruction and to the probable experience thereafter had no loss occurred, except with respect to any alterations, additions and property while in the course of testing, commissioning, construction, erection, installation, or assembly, insured by this Policy, consideration shall be given to the probable experience of the business on the date business operations would have commenced had no loss occurred.

WILLIS00758

10. Additional Exclusions Applicable to "Time Element."

This Policy does not insure:

a. The suspension, cancellation or lapse of any lease, contract, license or orders beyond the 'Period of Recovery' or, if applicable, the 'Extended Period of Recovery.'

b. Fines or damages for breach of contract or for late or non-completion of orders.

c. Penalties of any nature.

d. Any other consequential or remote loss not otherwise insured by this Policy.

*Signal Intl 09-10 Property Form v3*                           25.

WILLIS00759

## VI.   EXCLUSIONS

This Policy does not insure:

### A.   FRAUD

Fraud by the Insured

### B.   EMBEZZLEMENT

Embezzlement of the Insured's property by any of the Insured's employees.

### C.   MYSTERIOUS DISAPPEARANCE

Mysterious Disappearance.

### D.   INVENTORY SHORTAGE

Loss or shortage the only proof of the factual existence of which is inventory records.

If the factual existence of the loss is provable by evidence other than inventory records, this exclusion shall not prohibit using inventory records to prove the amount of the loss.

### E.   FAULTY WORKMANSHIP, MATERIAL, CONSTRUCTION OR DESIGN

Physical loss, damage or destruction caused by faulty workmanship, faulty material, faulty construction or faulty design unless physical loss, damage or destruction not excluded by this Policy results, then only that resulting physical loss, damage or destruction is insured.

This exclusion shall not apply to "Boiler and Machinery" as defined in the DEFINITIONS.

### F.   DETERIORATION, DEPLETION, RUST, CORROSION OR EROSION, WEAR AND TEAR, INHERENT VICE OR LATENT DEFECT

Physical loss, damage or destruction caused by deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect unless such physical loss, damage or destructions results directly from a peril insured by this policy or unless physical loss, damage or destruction not excluded by this policy results, then only that resulting physical loss, damage or destruction is insured.

This exclusion shall not apply to "Boiler and Machinery" as defined in the DEFINITIONS.

### G.   POLLUTION, CONTAMINATION

Loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of 'contaminants or pollutants,' all whether direct or indirect, proximate or remote or in whole or in part arising from any cause whatsoever.

Nevertheless if a Listed Peril arises directly or indirectly from pollution or contamination any loss, damage or destruction of property insured by this Policy arising directly from that peril shall (subject to the terms, conditions and limitations of the Policy) be covered.

Notwithstanding the foregoing, this exclusion shall not apply if pollution or contamination results from direct physical loss, damage or destruction of property insured by this Policy by a Listed Peril:

Listed Perils

WILLIS00760

Fire; lightning; explosion; windstorm or hail; smoke; direct impact of vehicle, aircraft or vessel; riot or civil commotion; vandalism or malicious mischief; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; "Boiler and Machinery"; accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured "location"; "Earthquake"; "Flood."

It is a condition precedent to recovery that such loss or damage be reported to the Insurer within 180 days of the date of the direct physical loss, damage or destruction.

'Contaminants or pollutants' means any material that after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use of property insured by this Policy, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

Except as provided in "Decontamination Costs" in PROPERTY INSURED, this Policy does not insure costs arising out of the enforcement of any law, ordinance, regulation or order by civil or judicial authority requiring the removal, disposal, replacement, cleanup, restoration or containment of property insured or costs to monitor or test for the existence or effects of pollutants.

**H.  SETTLING, SHRINKAGE OR EXPANSIONS**

Settling, shrinkage, or expansion in foundations, walls, floors or ceilings unless such damage results directly from a peril insured by this Policy, or unless physical loss, damage or destruction by a peril insured by this Policy results, and then this Policy shall insure against that resulting physical loss, damage or destruction.

**I.  HOSTILE OR WARLIKE ACTION/ACT OF TERRORISM**

1. Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any government or sovereign power (*de jure* or *de facto*) or by any authority maintaining or using military, naval, or air force, or by any agent of any such government, power, authority, or forces; any weapon of war employing atomic fission or radioactive force whether in time of peace or war, insurrection, rebellion, revolution, civil war, usurped power, or action taken by any governmental authority in hindering, combating or defending against any such occurrence, seizure or destruction under quarantine or customs regulations; confiscation or destruction by order of any government or public authority, except as provided in 'Destruction of Property at the Order of Public Authority' in PROPERTY INSURED.

2. 'Act of Terrorism'

An 'act of terrorism' means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any sector of the public, in fear.

Notwithstanding the foregoing, if the Insured purchases coverage for acts of terrorism from Pool Re as respects property insured located in 'England,' Scotland and Wales, then for purposes of the application of this exclusion, an act of terrorism shall be defined as set out in the Reinsurance (Acts of Terrorism) Act 1993 governing Pool Re. As used herein, 'England' shall include the Channel Tunnel up to the frontier with the Republic of France as set out by the Treaty of Canterbury but not the territorial seas adjacent thereto as defined by the Territorial Sea Act 1987. 'England' shall not include Northern Ireland, the Isle of Man or the Channel Islands.

If the Insurer alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this Policy the burden of proving the contrary shall be on the Insured.

In the event any portion of this provision is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

WILLIS00761

J.  NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION

Nuclear reaction or nuclear radiation or radioactive contamination from any cause; however, if fire or sprinkler leakage ensues, the Insurer shall be liable for physical loss, damage destruction by the ensuing fire or sprinkler leakage.

Notwithstanding the previous sentence, this Policy insures against physical loss, damage or destruction caused by radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted by the Insured provided that at the time of such physical loss, damage or destruction there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction or any new or used nuclear fuel on the premises of the insured.

K.  MOLD, MILDEW OR FUNGUS

1.  Except as set forth in paragraph VI.K.2. below, this Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew or fungus

This exclusion applies regardless whether there is (a) any physical loss, damage or destruction of property insured; (b) any insured peril or cause, whether or not contributing concurrently or in any sequence; (c) any loss of use, occupancy, or functionality; or (d) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

2.  Notwithstanding the foregoing, this Policy insures physical loss, damage or destruction of property insured by mold, mildew or fungus when directly caused by a Listed Peril occurring during the Policy period.

Listed Perils

Fire; lightning; explosion; windstorm or hail; smoke; direct impact of vehicle, aircraft or vessel; strike, riot or civil commotion; vandalism or malicious mischief; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; "Boiler and Machinery"; sudden and accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured "location"; "Earthquake"; "Flood."

This coverage is subject to all the limitations in this Policy and, in addition, to each of the following specific limitations:

a.  The property must otherwise be insured under this Policy for physical loss, damage or destruction by the Listed Peril.

b.  The Insured must report to the Insurer the existence and cost of the physical loss, damage or destruction by mold, mildew or fungus as soon as practicable, but no later than twelve (12) months after the Listed Peril first caused physical loss, damage or destruction of insured property during the Policy period. This Policy does not insure any physical loss, damage or destruction by mold, mildew or fungus first reported to the Insurer after that twelve (12) month period.

L.  DELAY OR LOSS OF MARKET

Delay or Loss of Market (except as otherwise insured by this Policy)

M.  INDIRECT OR REMOTE LOSS

Indirect or Remote Loss

*Signal Init 09-10 Property Form v3*                     28

WILLIS00762

**N.** LOSS FROM MANUFACTURING OR PROCESSING OPERATIONS

Loss attributable to manufacturing or processing operations that result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon, unless physical loss, damage or destruction by a peril insured by this Policy results, and then this Policy shall insure against that resulting physical loss, damage or destruction

**O.** ANIMAL, INSECT OR VERMIN DAMAGE

Animal, insect or vermin damage, unless physical loss, damage or destruction by a peril insured by this Policy results, and then this Policy shall insure against that resulting physical loss, damage or destruction.

**P.** ELECTRONIC MEDIA AND ELECTRONIC DATA

Physical loss, damage or destruction of electronic media and electronic data.

However, anything in the foregoing sentence or elsewhere in this Policy to the contrary notwithstanding, this Policy insures physical loss, damage or destruction to electronic media and electronic data directly caused by a Listed Peril occurring during the Policy period.

Listed Perils

Fire; lightning; explosion; windstorm or hail; smoke; direct impact of vehicle, aircraft or vessel; riot or civil commotion; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; "Boiler and Machinery"; accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured "location"; "Earthquake"; "Flood." Physical loss, damage or destruction of electronic media and electronic data shall not include distortion, erasure, corruption, alteration, diminishment in value, or resulting loss of use or usefulness of electronic media and electronic data, by any cause whatsoever other than the Listed Perils, including but not limited to 'computer virus,' regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of electronic data or electronic media.

'Computer virus' means instructions, code, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, or prevent access to electronic media and/or electronic data.

**Q.** ASBESTOS MATERIAL

Asbestos material or the cost of removal or disposal of asbestos material or any sum related thereto.

However, anything in the foregoing sentence or elsewhere in this Policy to the contrary notwithstanding, this Policy insures asbestos physically incorporated in an insured building or structure, but only that part of the asbestos that has been physically damaged during the Policy period by one of the Listed Perils occurring during the Policy period.

Listed Perils

The building or structure must be insured under this Policy for loss, damage or destruction by the Listed Peril. Fire; lightning; explosion; windstorm or hail; smoke; direct impact of vehicle, aircraft or vessel; riot or civil commotion; vandalism or malicious mischief; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; "Boiler and Machinery"; sudden and accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured "location"; "Earthquake"; "Flood."

WILLIS00763

This coverage is subject to all limitations in this Policy and, in addition, to each of the following specific limitations:

1. The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

2. The Insured must report to the Insurer the existence and estimated cost of the damage as soon as practicable but no later than twelve (12) months after the Listed Peril first damaged the asbestos. This Policy does not insure any physical loss, damage or destruction to the asbestos first reported to the Insurer after that twelve (12) month period.

3. Coverage under this Policy in respect of asbestos shall not include any sum relating to:

   a. any faults in the design, manufacture or installation of the asbestos;

   b. asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

R. ELECTRONIC DATA RECOGNITION EXCLUSION

Loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

1. the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

2. any change, alteration or modification involving the date change to the year 2000, or any other date change including leap year calculations, to any such computer system, hardware program or software or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not..

This Clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

*Signal Intl 09-10 Property Form v3*                30

WILLIS00764

## VII.    VALUATION

The value of property shall be determined as follows:

### A.    REPLACEMENT COST

With respect to all property insured (unless specifically addressed elsewhere in the Policy), the payment for loss shall be on a 'replacement cost' basis. 'Replacement Cost' includes all fees, costs, charges and expenses, (including, those of architects, surveyors, lawyers, engineers and consulting engineers) incurred by or on behalf of the Insured to reassemble, rebuild, reclaim, reconstruct, repair, replace, or restore property insured with due diligence and dispatch with new (or, at the sole option of the Insured, other) items, property or materials of like kind and quality, either at the site of the loss or, at the sole option of the Insured, another site. In the event the Insured decides to rebuild on another site, the liability of the Insurer shall not exceed the cost and expenses which would have been incurred to reassemble, rebuild, reclaim, reconstruct, repair, replace or restore the property lost, damaged or destroyed at the site of the loss.

If the Insured elects not to rebuild, this Policy shall pay for the cost of demolition and clearing the site of loss of both the damaged and the undamaged property; and the "actual cash value" of both the damaged and the undamaged property.

Without penalty the Insured may expend the amount of any replacement cost recovery within the normal scope of the Insured's business subject only to the full amount of the recovery actually being expended in acquiring or constructing buildings or structures and/or in acquiring building equipment, plant equipment, machinery, machine parts, office furniture or office equipment within a reasonable time after the date of loss.

To the extent the Insured provides its own general contracting, engineering, design or construction services for repair or reconstruction, the costs incurred by or on behalf of the Insured shall include:

1.    Overhead charges as defined by the Insured's regular accounting practice in place at the time of loss, and

2.    Payroll charges, appropriate fringe benefit costs and expenses of those employees expending time on the project, the cost of which is not included in item a. and;

3.    The share of home office costs including payroll and expenses of the divisions to which such employees are assigned, and;

4.    The share of corporate general and administrative costs allocated to the divisions involved as prescribed in the Insured's regular accounting practice in place at the time of the loss for determining its costs for providing engineering, procurement and construction management services.

WILLIS00765

**B.**   DEMOLITION AND INCREASED COST OF CONSTRUCTION

If, as a result of physical loss, damage or destruction by a peril insured by this Policy reconstruction, restoration, repair or use of property insured is regulated or prohibited by the enforcement of any law, ordinance, or regulation which is in force at the time of the physical loss, damage or destruction, this Policy shall pay for:

1. The cost of demolition and clearing the site of loss of both the damaged and the undamaged property; and

2. Such additional costs of (re)construction, restoration, or repair as may be incurred to bring both the damaged and the undamaged property into full compliance with any applicable law, ordinance or regulation;

However, if the Insured elects not to rebuild, this Policy shall pay for the cost of demolition and clearing the site of loss of both the damaged and the undamaged property; and the "actual cash value" of both the damaged and the undamaged property.

Notwithstanding the foregoing, this Policy does not insure such costs when necessitated by the enforcement of any law or ordinance regulating asbestos material that has not sustained physical loss, damage or destruction by a peril insured by this Policy or by any governmental direction or request declaring that asbestos material present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

**C.**   FINISHED STOCK

1. On "finished stock", where "TIME ELEMENT" Business Interruption applies, at the Insured's regular cash selling price, less any discounts and un-incurred charges to which "finished stock" would have been subject had no loss occurred;

2. On "finished stock" where "TIME ELEMENT" Business Interruption Loss of Profits applies, at the value of "raw stock" and labor expended, plus the proper proportion of overhead charges.

**D.**   STOCK IN PROCESS

On "stock in process," at the value of "raw stock" and labor expended, plus the proper proportion of overhead charges.

**E.**   RAW STOCK

On "raw stock," supplies and other "merchandise" not manufactured by the Insured, at the replacement cost.

**F.**   FINE ARTS, ANTIQUES

On "fine arts or antiques," the total liability shall not exceed the least of:

1. The cost to repair or restore the article to the condition that existed immediately prior to the loss; or

2. The cost to replace the article; or

3. The value designated for the article on the Schedule of Fine Arts or Antiques, if any, on file with the Insurer.

In the event an insured article is damaged or destroyed and cannot be repaired or restored to the condition that existed immediately prior to the loss or replaced, the Insurer shall be liable for the full amount of the value of the article and the Insured agrees to surrender the article(s) to the Insurer. The Insured may, at its sole option, accept payment by the Insurer for the reduction in value of any fine art or antique caused by damage by a peril insured by this Policy, and retain ownership of the property.

*Signal Int'l 09-10 Property Form v3*                      32

WILLIS00766

**G.   VALUABLE PAPERS AND RECORDS**

On 'valuable papers and records,' the cost to repair, replace, restore or recreate, including the cost of research, engineering and other costs of repairing, replacing, restoring or recreating 'valuable papers and records' that suffer loss, damage or destruction; if unable to repair, replace, restore or recreate within a reasonable time after the date of the loss, damage or destruction, the value to the Insured of the damaged or destroyed 'valuable papers and records.'

**H.   FILM, RECORDS, MANUSCRIPTS AND DRAWINGS**

On exposed films, records, manuscripts and drawings that are not 'valuable papers and records,' the value blank plus the cost of copying information from back-up or from originals of a previous generation.

**I.   ELECTRONIC MEDIA AND ELECTRONIC DATA**

On 'electronic media' or 'electronic data,' the cost to repair or replace, including the cost of research, engineering and other costs of repairing, replacing, restoring or recreating 'electronic media' or 'electronic data'; if not repaired, replaced, restored or recreated within a reasonable time after the date of the loss, damage or destruction, the blank value.

This Policy does not insure any amount pertaining to the value of such 'electronic data' to the Insured or any other party, if such 'electronic data' cannot be recreated or assembled. If not repaired, replaced or restored 'electronic media' shall be valued at the cost of the blank media.

**J.   PROPERTY OF OTHERS**

On property of others in the care, custody or control of the Insured, the greater of the liability of the Insured as stipulated in a contract, lease or agreement, or the replacement cost.

**K.   TECHNOLOGICALLY OBSOLETE**

On property that is deemed to be technologically obsolete, or is unavailable because it is no longer in production, the cost of new property that shall perform the same functions as the original property, including any betterment inherent in the design of such property.

**L.   PROPERTY SOLD BY THE INSURED**

On property sold by the Insured under a conditional sale or trust agreement or an installment or deferred payment plan:

1. If a total loss occurs, at the amount shown in the Insured's accounting records as due from the dealer or buyer;

2. If a partial loss occurs and the Insured repossesses the property, at the difference, if any, between the amount shown in the Insured's accounting records as due from the dealer or buyer and the realized value of the property.

The amount of the Insurer's liability under this provision shall be reduced by any payments made by the dealer or buyer.

Except as may be otherwise provided above, if the Insured decides not to repair, rebuild, or replace property lost, damaged or destroyed this Policy shall pay for the 'actual cash value' of the property.

*Signal Intl 09-10 Property Form v3*                    33

WILLIS00767

## VIII. EXTENSIONS OF INSURANCE COVERAGE

This Policy insures:

### A. PROPERTY IN TRANSIT

1. Physical loss, damage or destruction, by a peril insured by this Policy, of shipments within and between the territorial limits of this Policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for any inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.

2. Physical loss, damage or destruction, by a peril insured by this Policy, of property:

   a. Sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

   b. Arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

   c. Occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

   d. At the insured's option, property that is incoming to the Insured.

3. This Policy does not insure export shipments after loading on board an overseas vessel, watercraft, or aircraft, or after ocean marine insurance attaches, whichever occurs first; or import shipments prior to discharge from an overseas vessel, watercraft, or aircraft, or until ocean marine insurance terminates, whichever occurs later. However, this exclusion shall not apply to:

   a. Ferry shipments transporting over-the-road conveyances to, from, and between countries in Continental Europe, the United Kingdom, and Ireland;

   b. Air and waterborne shipments within a single country; or air and inland waterway shipments to, from, and between countries in Continental Europe.

### B. ACCOUNTS RECEIVABLE

1. All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the result of physical loss, damage or destruction of records of accounts receivable by a peril insured by this Policy;

2. Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

3. Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

4. Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this Accounts Receivable insurance, credit card company charge media shall be considered to represent sums due the Insured.

WILLIS00768

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

1. The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage of increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

2. The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

C.   SERVICE CHARGES

Service charges and expenses including Fire Department, Police, Rescue Squad, and any government or authority charges incurred by the Insured because of an "occurrence" of a peril insured by this Policy.

D.   PRESERVATION OF PROPERTY

In case of actual or imminent physical loss, damage or destruction by a peril insured by this Policy, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured by this Policy shall be added to the total physical loss, damage or destruction, if any, otherwise recoverable under the Policy and be subject to the applicable Deductible and without increase in the Policy Limits of Liability.

E.   PROPERTY IN COURSE OF CONSTRUCTION

New buildings and structures, and machinery and equipment installed therein, in the course of construction and installation, at both new and existing "locations." This Policy also insures property of contractors and subcontractors at an insured "location" or within 1,000 feet thereof.

F.   INCREASED TAX LIABILITY

Loss sustained by the Insured in the event that the tax treatment of loss recoveries under any provision of this Policy differs from the tax treatment that would have been experienced by the Insured had no physical loss, damage or destruction by a peril insured by this Policy occurred.

G.   CLAIM PREPARATION EXPENSES

Expenses incurred by the Insured or by the Insured's representatives including Accountants, Appraisers, Architects, Auditors, Consultants, Engineers, or other such professionals in order to arrive at the loss payable under this Policy in the event of a claim. This provision does not insure expenses incurred for the services of any lawyer or public adjuster.

WILLIS00769

## IX.   GENERAL CONDITIONS

### A.   OTHER INSURANCE

**1.   Underlying Insurance**

Underlying insurance is insurance on all or any part of the Deductible and against all or any of the perils covered by this Policy including declarations of the value to a carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this Policy.

If the limits of such underlying insurance exceed the Deductible amount, which would apply in the event of loss under this Policy, then that portion which exceeds such a Deductible amount shall be considered 'other insurance.'

**2.   Excess Insurance**

Excess insurance is insurance over the Limit of Liability set forth in this Policy. The existence of such excess insurance shall not prejudice the coverage provided under this Policy nor shall it reduce any liability hereunder.

**3.   Other Insurance**

If there is any other insurance that would apply in the absence of this Policy, this Policy shall apply only after such insurance whether collectible or not. In no event shall this Policy apply as contributing insurance.

The Insured is permitted to have other insurance over any Limits or Sub-limits of Liability specified in this Policy without prejudice to this Policy. The existence of any such insurance shall not reduce any Limit or Sub-limit of Liability in this Policy. Any other insurance that would have provided primary insurance in the absence of this Policy shall not be considered excess.

The Insured is permitted to have other insurance for all, or any part, of any Deductible in this Policy. The existence of such other insurance shall not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable Deductible, this Policy shall apply only after such other insurance has been exhausted.

**4.   Contributing Insurance**

Contributing insurance is insurance written upon identical, terms, conditions, and provisions as those contained in this Policy. This insurance shall contribute in accordance with the conditions of this Policy only with other contributing insurance as defined.

### B.   SUBROGATION

**1.** In the event of any payment under this Policy, the Insurer, where legally permitted, shall be subrogated to the extent of such payment to all the Insured's rights of recovery in respect thereof. The Insured is required to cooperate, at the request and expense of the Insurer, in any subrogation proceedings. The Insurer may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Insurer's payment.

The Insurer shall not acquire any right of recovery that the Insured has expressly waived prior to a loss, nor shall such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Insurer in the proceedings, shall be payable to the Insured in the proportion that the amount of any applicable Deductible and/or any provable uninsured loss, bears to the entire provable amount.

**2.** The right of subrogation against the Insured, affiliated, subsidiary and associated companies or corporations, or any other corporations or companies associated with the Insured through ownership or management, is waived. At the option of the Insured, subrogation against a tenant of the Insured may be waived..

WILLIS00770

**C.   SALVAGES AND RECOVERIES**

Any recoveries from sale of salvage, after expenses incurred in salvage or recovery are deducted, except recovery through subrogation proceedings, shall accrue entirely to the benefit of the Insurer until the sums paid by the Insurer have been recovered.

**D.   BRANDS AND LABELS/CONTROL OF DAMAGED PROPERTY**

1.   Brands and Labels: In case of physical loss, damage or destruction, by a peril insured by this Policy, of property bearing a brand or trademark, or the name of the Insured, which in any way carries or implies the guarantee or the responsibility of the manufacturer or the Insured, the salvage value of such damaged property shall be determined after removal in the customary manner of all such brands or trademarks or other identifying characteristics. The cost of such removal shall be included as a part of the claim.

2.   Control of Damaged Property: The Insured shall have full right to the possession of all property involved in any claims under this Policy and shall retain control of all lost, damaged or destroyed property. The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the property involved in any loss under this Policy is fit for sale or use. No property so deemed by the Insured to be unfit for sale or use shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Insurer any salvage obtained by the Insured on any sale or other disposition of such property.

**E.   CANCELLATION**

This insurance may be canceled by the First Named Insured shown in the Declarations at any time by written notice or by surrender of this Policy.

Except as prohibited or regulated by law, this insurance may also be canceled by or on behalf of the Insurer at the Policy anniversary only by delivering to the Insured or by mailing to the Insured, by registered, certified or other first class mail, at the Insured's address as shown in this insurance, written notice stating when, not less than ninety (90) days thereafter, the cancellation shall be effective. Notwithstanding the foregoing in the event of non-payment of premium at any time during the term of this Policy, the Insurer may give ten (10) days written notice of cancellation to the Insured. At any time prior to the effective date of cancellation, any Additional Insured, Loss Payee or Mortgagee may pay the premium due and the notice of cancellation shall be null and void. The mailing of such notice shall be sufficient proof of notice and this insurance shall terminate at the date and hour specified in the notice.

If this insurance is canceled by the Insurer, the Insurer shall retain the pro-rata proportion of the premium earned from the date of inception to the date of cancellation. If this insurance is canceled by the Insured, the insurer shall retain the pro-rata proportion of the premium earned from the date of inception to the date of cancellation plus ten percent (10%) of the unearned premium.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law, the period of limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

In the event of cancellation of this Policy by the Insurer, the cancellation shall not take effect with respect to property in transit until the property has arrived at the place of its final destination.

**F.   NOTICE OF LOSS.**

As soon as practicable after any physical loss, damage or destruction by a peril insured by this Policy is known to the First Named Insured's Contact identified in Declarations I.A., the Insured shall report such loss, damage or destruction with full particulars to the Insurer at the address set forth in this Policy.

WILLIS00771

**G.   PROOF OF LOSS**

The Insured shall render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place and time of the loss, damage or destruction; the interest of the Insured and all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

**H.   PAYMENT OF LOSS**

1.   All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proof of loss by the Insurer or its appointed representative.

2.   Pending final adjustment of an insured loss, the Insured may collect partial payments by filing a proof of loss for each partial payment.

3.   The full amount of the 'actual cash value' shall be due and payable no later than 30 days after presentation and acceptance of a proof of loss for the 'actual cash value.' Collecting the 'actual cash value' portion of any claim shall not affect the rights of the Insured under this Policy to collect amounts in excess of the 'actual cash value' upon presentation and acceptance of proof of loss.

**I.   APPRAISAL**

If the Insured and the Insurer fail to agree on the amount of a claim, each, upon the written demand of the other made within 60 days after receipt of proof of loss by the Insurer, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of the Insurer, such umpire shall be selected by a judge of a court of record in the appropriate jurisdiction in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss.

The Insured and the Insurer shall each pay its chosen appraiser and bear equally the other expenses of the appraisal and umpire.

**J.   SUIT AGAINST THE INSURER**

No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured has fully complied with all the requirements of this Policy. The Insurer agrees that any action or proceeding against it for recovery of any loss under this Policy shall not be barred if commenced within the longer of three years or the time prescribed in the statutes of the applicable jurisdiction.

**K.   ADDITIONAL INSUREDS, LOSS PAYEES AND MORTGAGEES**

All third parties having an interest in property insured by this Policy, as required by lease, contract, or agreement, shall automatically be Additional Insureds hereunder.

All other third parties including, but not limited to, Loss Payees and Mortgagees who have an interest in the property insured by this Policy shall be automatically named as Loss Payees or Mortgagees, and loss, if any, under this Policy shall be adjusted with the Insured and payable to the Insured and the Additional Insureds, Loss Payees or Mortgagees according to their respective insurable interests.

1.   The Insurer shall pay for loss, damage or destruction of specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) to the extent of its insurable interest and to each specified Mortgagee to the extent of its insurable interest, under all present or future mortgages upon such property, in order of precedence of the mortgages.

WILLIS00772

2. The insurable interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy shall not be invalidated by:

   a. any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   b. foreclosure, notice of sale, or similar proceedings with respect to the property.

   c. change in the title or ownership of the property.

   d. change to a more hazardous occupancy.

   The Lender or Mortgagee shall notify the Insurer of any known change in ownership, occupancy, or hazard and, within 10 days of written request by the Insurer, may pay the increased premium associated with the change.

3. If this Policy is cancelled at the request of the Insured or its agent, the coverage for the insurable interest of the Lender or Mortgagee shall terminate 10 days after the Insurer sends to the Lender or Mortgagee written notice of cancellation, unless:

   a. sooner terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

   b. this Policy is replaced by the Insured, with a Policy providing coverage for the insurable interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest shall terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

4. The Insurer may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 90 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, the Insurer may cancel this Policy for non-payment, but shall give the Lender or Mortgagee written notice 20 days prior to the effective date of cancellation. The Lender or Mortgagee may pay the premium due. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy shall cease.

5. If the Insurer pays the Lender or Mortgagee for any loss, and denies payment to the debtor, mortgagor or owner, the Insurer shall, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation shall impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At its option, the Insurer may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities shall be assigned and transferred from the Lender or Mortgagee to the Insurer, and the remaining debt or mortgage shall be paid to the Insurer.

6. If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, may render proof of loss and shall be subject to the provisions of this Policy relating to appraisal, settlement of claims, and suit against the Insurer.

L.   AUDIT

The Insurer may inspect the books and records of the Insured pertaining to the subject matter of this insurance at any reasonable time during normal business hours during the term of this Policy and for twelve (12) months after the expiration or termination date of the Policy.

*Signal Intl 09-10 Property Form v3*                    39

WILLIS00773

**M.    REQUIRED BY LAW**

Any provisions required by law to be included in policies issued by the Insurer shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for insured "locations" within such jurisdictions.

**N.    FULL WAIVER**

The terms and conditions of this form and endorsements attached to it are substituted for those of the insurance Policy (including any Standard Fire Insurance Policy required by statute to be included in insurance policies of this type, whether as a Policy form or attached to this Policy by endorsement) or Policy Jacket to which it is attached except as respects provisions included in 'Required by Law' above.

**O.    TITLES OF PARAGRAPHS**

The titles of the paragraphs of this Policy, this form and of endorsements and supplemental contracts, if any, now or hereafter attached are inserted solely for convenience of reference and shall not limit or affect the provisions to which they relate.

**P.    ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Insurer and, upon the Insurer's request and expense, shall submit to examination under oath, attend hearings and trials and assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

**Q.    BREACH OF WARRANTY**

If a breach of any warranty or condition in this Policy or in any endorsement attached to or made a part of this insurance occurs, which breach, by the terms of the warranty or condition, shall operate to suspend or avoid this insurance, the suspension or avoidance due to such breach shall be effective only during the continuance of such breach, and then only as to the building or contents therein or other separate "location" to which the warranty or condition has reference and with respect to which the breach occurs.

**R.    COINSURANCE**

No coinsurance shall apply with respect to this insurance.

**S.    CONTROL OF PROPERTY**

This insurance shall not be prejudiced by any act or neglect of the owner of any building if the Insured is not the owner thereof, or by any act or neglect of any occupant (other than the Insured) of any building, when such act or neglect of the owner or occupant is not within the control of the Insured, or by failure of the Insured to comply with any warranty or conditions contained in this Policy of any form or endorsement attached to this Policy with regard to any portion of the premises over which the Insured has no control.

**T.    OMISSIONS OR ERRORS**

Any inadvertent omission or error made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such omission or error as soon as reasonably possible after discovery by the First Named Insured's Contact identified in Declarations I.A..

WILLIS00774

**U.** EXTORTION

Recovery under this Policy shall not be affected by the refusal of the Insured to comply with any extortion demand.

**V.** RIGHT TO INSPECT

The Insurer, at all reasonable times, is permitted, but does not have any duty, to inspect property insured.

The Insurer's

1. Right to make inspections;

2. Making of inspections; or

3. Analysis, advice or inspection report

shall not constitute an undertaking, on behalf of or for the benefit of the Insured or others to determine or warrant that the property insured is safe or healthful. The Insurer shall have no liability to the Insured or any other person because of any inspection or failure to inspect.

WILLIS00775

## X.   DEFINITIONS

These definitions shall apply to the terms wherever they appear in this Policy and any addendum and/or endorsement to this Policy.

### A.   ACTUAL CASH VALUE

The 'replacement cost' (as defined in VALUATION), less a reasonable allowance for physical deterioration.

### B.   BOILER AND MACHINERY

1. Loss or damage caused by or resulting from explosion in, or of steam boilers, steam turbines, gas turbines, steam engines and steam pipes interconnecting any of the foregoing equipment owned, operated or controlled by the Insured, however;

   This definition shall not apply to loss or damage resulting from an explosion:

   a.  Of gases or fuel within the furnace of a boiler or within the flues or passages therefrom;

   b.  Involving the smelt bed within a furnace of a boiler of the chemical recovery type;

   c.  Outside of any equipment.

2. Loss or damage caused by or resulting from rupture, bursting, cracking, bulging, burning or change of temperature of steam boilers, steam turbines, gas turbines, steam engines and pressure vessels, or piping or apparatus attached to any of the foregoing equipment owned, operated or controlled by the Insured, however:

   this definition shall not apply to physical loss or damage resulting from accidental discharge, escape, leakage, backup or overflow to the open of any material from confinement within piping, plumbing systems, tanks or equipment, except from that equipment identified in paragraph 1) above.

3. Loss or damage from mechanical or electrical breakdown (except by direct lightning damage) of any equipment, unless such results directly in physical loss, damage or destruction insured by this Policy, in which event, this definition shall not apply to such resulting damage.

### C.   EARTHQUAKE

A quaking, trembling, vibratory or undulating movement of a portion of the earth's crust, produced by underground volcanic forces or other pressures that produce a breaking, shifting or other movement of the earth's crust. Wherever used in this Policy, the term "Earthquake" shall be restricted exclusively to the actual, specific cracking, rupturing, shifting, toppling or collapse of property and shall not include loss, damage or destruction, if any, directly resulting from fire, explosion or sprinkler leakage.

If more than one "Earthquake" occurs within any period of 72 hours during the term of this Policy, such "Earthquakes" shall be deemed to be a single "occurrence" within the meaning of this Policy. The Insured may determine the beginning of such 72-hour period.

Should any "Earthquake" commence prior to the expiration of the Policy and extend beyond the expiration date of this Policy, this Policy shall pay for all such losses occurring during such period as if such period fell entirely within the term of this Policy. But the Insurer shall not be liable for any loss commencing before the effective date and time or commencing after the expiration date and time of this Policy.

### D.   FINISHED STOCK

Stock manufactured by the Insured, which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

WILLIS00776

**E.    FLOOD**

A general and temporary condition of partial or complete inundation of normally dry land area from (1) the overflow of inland or coastal waters including any tsunami; (2) the unusual and rapid accumulation or run off of surface waters from any source; or (3) the spray from any of them, whether driven by wind or not, and shall not include loss, damage or destruction, if any, directly resulting from fire, explosion or sprinkler leakage.

If any "Flood" occurs within a period of the continued rising or overflow of any natural or man-made bodies of water and the subsidence of same within their banks or results from any waves including tsunamis, tides, tidal waves or series of tidal waves caused by any one disturbance, all loss, damage or destruction by such "Flood" shall be deemed to be a single "occurrence" within the meaning of this Policy.

Should any "Flood" commence prior to the expiration of this Policy and extend beyond the expiration date of this Policy, this Policy shall pay for all such losses occurring during such period as if such period fell entirely within the term of this Policy. But the Insurer shall not be liable for any loss commencing before the effective date and time or commencing after the expiration date and time of this Policy.

**F.    GENERAL AVERAGE CONTRIBUTION AND SALVAGE CHARGES**

Contribution by all of the parties in a sea adventure to make good loss sustained by one of their number on account of sacrifices voluntarily made of part of a ship or cargo to save residue; extraordinary expenses necessarily incurred by one or more of the parties for general benefit of all interests embarked in a general enterprise; expenses and costs incurred in the work of saving and preserving a ship or cargo which was in danger of loss or damage such as would be covered by this Policy.

**G.    HIGH HAZARD ZONES FOR EARTHQUAKE**

| STATE | COUNTIES |
|---|---|
| ALASKA | ENTIRE STATE EXCEPT NOME, NORTH SLOPE, NORTHWEST ARTIC, WADE HAMPTON |
| CALIFORNIA | ENTIRE STATE |
| HAWAII | ENTIRE STATE |
| PUERTO RICO | ENTIRE COMMONWEALTH |

**H.    IMPROVEMENTS AND BETTERMENTS**

Fixtures, alterations, installations or additions comprising part of a building occupied but not owned by the Insured and acquired or made at the expense of the Insured, which the Insured cannot legally remove.

**I.    INSURABLE INTEREST OF THE INSURED IN PROPERTY OF OTHERS**

1.    liability imposed by law upon the Insured for loss, damage or destruction, by a peril insured by this Policy, of property of another of the type insured by this Policy ; or

2.    liability assumed by the Insured by specific agreement prior to loss for physical loss, damage or destruction by a peril insured by this Policy.

WILLIS00777

**J.** LAND IMPROVEMENTS

Any alteration to the natural condition of the land at a "location" by grading, landscaping and additions to such land including landscape gardening, pavements, roadways, or similar works, but excluding golf courses and beaches, and including the cost of reclaiming, restoring or repairing "land improvements." "Land improvements" shall also include trees, plants and shrubs that are part of the natural condition of the land at a "location" and that form part of the effective placement of buildings or structures, pavements, roadways or similar works; and other alterations to the natural condition of the land.

**K.** LOCATION

1. a site listed on a report provided the Insurer at inception; or

2. if:

   a. a "Miscellaneous Unreported Location" or

   b. covered under Automatic Coverage for Newly Acquired Property

   a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

**L.** MERCHANDISE

Goods kept for sale by the Insured, which are not "raw stock," "stock in process" or "finished stock."

**M.** MISCELLANEOUS UNREPORTED LOCATION

Real and/or personal property of the type insured by this Policy at any "location" within the territorial limits of this Policy, which property is at the risk of the Insured at inception of the Policy but has not been listed on a report provided to the Insurer at inception or which becomes at the risk of the Insured after the inception date of this Policy but is not reported to the Insurer within the maximum number of days as shown in the Time Limit for Automatic Coverage for Newly Acquired Property in DECLARATIONS.

**N.** NAMED STORM

The 'direct action of wind' on property of the type insured by this Policy when associated with any storm that is named by the National Weather Service or any other recognized meteorological authority. 'Direct action of wind' shall include the action of rain, sand or dust on the interior of any building or structure or on the contents of any building or structure as a result of such action of wind. But 'direct action of wind' shall not include loss, damage or destruction, if any, by fire, explosion or sprinkler leakage.

All loss or damage occurring during a period of 72 consecutive hours as a result of such 'direct action of wind' shall be deemed to be a single "occurrence" within the meaning of this Policy.

Should any "Named Storm" commence prior to the expiration of this Policy and extend beyond the expiration date of this Policy, this Policy shall pay for all such losses occurring during such period as if such period fell entirely within the term of this Policy. But the Insurer shall not be liable for any loss commencing before the effective date and time or commencing after the expiration date and time of this Policy.

**O.** NET SALES VALUE OF PRODUCTION

The sum of the net sales of the Insured's product during 'the year' (gross sales less discounts, returns, allowances, bad debts and prepaid freight to the extent included in sales figures), less inventory of "finished stock" at the beginning of 'the year' priced at sales value, plus the inventory of "finished stock" on hand at the end of 'the year' priced at sales value. 'The year' means the 365-day period ending on the date of the loss.

WILLIS00778

**P.   NORMAL**

The condition that would have existed had no loss occurred.

**Q.   OCCURRENCE**

Except as specifically defined under "Earthquake," "Flood" and "Named Storm," all loss, damage or destruction that is attributable to one cause or to one series of similar causes. All such losses shall be added together and the total amount of such losses shall be treated as one "occurrence" irrespective of the period of time or area over which the losses occur.

Should any "occurrence" commence prior to the expiration of this Policy and extend beyond the expiration date of this Policy, this Policy shall pay for all such losses occurring during such period as if such period fell entirely within the term of this Policy. But the Insurer shall not be liable for any loss commencing before the effective date and time or commencing after the expiration date and time of this Policy.

**R.   RAW STOCK**

Material in the state in which the Insured receives it for conversion by the Insured into "stock in process" or "finished stock."

**S.   STOCK IN PROCESS**

"Raw stock" which has undergone any aging, seasoning, mechanical or other process of manufacture but which has not become "finished stock."

WILLIS00779

T.   **TIER ONE ZONES**

| STATE | COUNTIES AND PARISHES |
|---|---|
| Alabama | Baldwin, Mobile. |
| Florida | Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dade, Dixie, Duval, Escambia, Flagler, Franklin, Glades, Gulf, Hendry, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Monroe, Nassau, Okaloosa, Okeechobee, Palm Beach, Pasco, Pinellas, Saint Johns, Saint Lucie, Santa Rosa, Sarasota, Taylor, Volusia, Wakulla, Walton, Washington. |
| Georgia | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh. |
| Hawaii | Entire State. |
| Louisiana | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Mary, St. Tammany, Terrebonne, Vermillion. |
| Mississippi | Hancock, Harrison, Jackson. |
| North Carolina | Beaufort, Brunswick, Carteret, Chowan, Craven, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington. |
| Puerto Rico | Entire Commonwealth. |
| South Carolina | Beaufort, Charleston, Colleton, Georgetown, Horry. |
| Texas | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jackson, Jefferson, Kennedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy. |
| Virginia | Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York and including the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg. |
| Us Virgin Islands | All Islands. |

As used herein, 'coastline' means the land bordering an ocean or sea and the inland area within twenty-five (25) miles of same.

U.   **TIME ELEMENT**

Business Interruption, Business Interruption Loss of Profits, Extra Expense, Rental Value, Royalties and Leasehold Interest, to the extent they are insured by this Policy.

*Signal Intl 09-10 Property Form v3*   46

WILLIS00780

ENDORSEMENT 1 – Boiler & Machinery Exclusion.

It is hereby understood and agreed that this policy does not insure the peril "Boiler & Machinery" as defined herein.

This exclusion shall not apply to resulting physical loss, damage or destruction insured by this policy.

All Other Terms and Conditions Unchanged.

*Signal Intl 09-10 Property Form v3*                        47

WILLIS00781

**ENDORSEMENT 2 – Valuation Amendment**

It is hereby understood and agreed that, in case of loss, the basis of adjustment shall be on the basis of Actual Cash Value as respects Contractors Equipment (except leased/rented equipment when required by lease agreement) bulk heads and dry docks.

The Actual Cash Value of the property at the time any loss or damage occurs shall be ascertained on the estimated Replacement Value, with proper deduction for physical depreciation, however caused, and shall in no event exceed what it would then cost to repair the same with material of like kind and quality.

All Other Terms and Conditions Unchanged.

*Signal Intl 09-10 Property Form v3*                    48

WILLIS00782

**ENDORSEMENT 3 – Policy Wording Amendments**

It is hereby understood and agreed that the following changes are made to the form wording:

**Section IV. Property Excluded E. Watercraft is amended to read as follows:**

This Policy does not insure watercraft. This exclusion shall not apply to the coverage on watercraft provided in "Off-Shore Property" below (K). This exclusion shall not apply to the dry-dock known as Dual Carrier while Dual Carrier is located within 5 miles of the insured's premises. This exclusion shall not apply to other dry-docks while located within 1 mile of the insured's premises.

**Section IV. Property Excluded K. Offshore Property is amended to include the following:**
This exclusion does not apply to dry docks as per Endorsement 1.

**Section IV. Property Excluded M. Precious Stones, Bullion, Jewelry is amended to read as follows:**
Precious Stones, Bullion, Currency, Notes and Bonds.

**Section V. Time Element G. Provisions Applicable to "Time Element" Item 7 Service Interruption is amended to read as follows:**
This Policy insures the "Time Element" loss sustained as a result of physical loss, damage or destruction, by a peril insured by this Policy, of property of a supplier of electricity, steam, water, natural gas (except when natural gas is used as a raw material in which case "Time Element" loss is insured under Contingent "Time Element" as defined above), refrigeration, sewerage or telecommunications, including poles, towers, and transmission or distribution lines on or within 1,000 feet of a direct supplier.

**Section X. Definitions E. Flood is amended to include the following:**
The definition of "Flood" does not include storm surge (wind driven water) associated with a "Named Storm"

**Section X. Definitions F. General Average Contribution and Salvage Charges is amended to include the following:**
This clause applies to dry docks in the yard and the dry dock "Duel Carrier" as per Endorsement 1.

**Section X. Definitions, N. Named Storm is amended to include the following:**
The definition of "Named Storm" includes storm surge (wind driven water) associated with a "Named Storm"

**Section IX. General Conditions, N. Full Waiver Clause is deleted in its entirety.**

All Other Terms and Conditions Unchanged.

*Signal Intl 09-10 Property Form v3*                    49

WILLIS00783

JOIN LOSS ADJUSTMENT ENDORSEI NT

| Named Insured<br>Signal International, LLC | | | Endorsement Number | |
|---|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37362220 001 | Policy Period<br>01/30/2009 to 01/30/2010 | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

In the event of damage to or destruction of property, at a location designated in this policy and also designated in a boiler and machinery insurance policy, if there is a dispute between the insurer with respect to:

1. Whether such damage or destruction was caused by a Peril Insured Against by this policy or by an Accident Insured against by such boiler and machinery policy; or

2. The extent of participation of this policy and of such boiler and machinery insurance policy in a loss which is insured against, partially or wholly, but any one or all of said policies.

The companies shall upon written request of the insured, pay to the insured up to one-half of the amount of the loss which is in dispute, but in no event more than companies would have paid had there been no boiler and machinery policy in effect, subject to the following conditions:

 a. The amount of the loss which is in dispute, after making provisions for any undisputed claims payable under said policies and after the amount of the loss is agreed upon by the insured and insurer, is limited to the minimum amount remaining payable under either this policy or the boiler and machinery policy.

 b. The boiler and machinery insurer shall simultaneously pay to the insured one-half of the amount which is in dispute.

 c. The payments by the insurer hereunder and acceptance of them by the insured signify the agreement of the insurers to submit to and proceed with the arbitration within 90 days of such payments;

The arbitrators shall be three (3) in number, one of whom shall be appointed by this company and one of whom shall be appointed by the boiler and machinery insurer and the third appointed by consent of the other two. The decision of the arbitrators shall be binding on the insurers and their judgment upon such award may be entered in any court of competent jurisdiction.

 d. The insured agrees to cooperate in connection with such arbitration but not to intervene therein;

 e. The provisions of this endorsement shall not apply unless such other policy issued by the boiler and machinery company is similarly endorsed; and

 f. Acceptance by the insured of sums paid pursuant to the provisions of this endorsement, including an arbitration award, shall not operate to alter, waive, surrender or in any affect the rights of the insured against any of the insurers.

All other terms and conditions remain unchanged.

ACE0365 (06/08)                    Copyright © 2008                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASBESTOS MATERIAL ENDORSEMENT

This policy does not insure loss or expense resulting from:

1.  asbestos material removal unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

2.  demolition or increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material;

3.  any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

All other terms and conditions remain unchanged.                    Authorized Representative

ACE061 (02-04)

WILLIS00785

| Named Insured<br>Signal International, LLC. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37362220 001 | Policy Period<br>01/30/2009 to 01/30/2010 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### Commercial Property Coverage Part

### Commercial Inland Marine Coverage Part

### HURRICANE MINIMUM EARNED PREMIUM ENDORSEMENT

The following terms and conditions will apply to this policy:

1. If you cancel this policy, remove a location or reduce the amount of insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands, and coverage existed any time during the period of June 1st to November 30th, the amount of premium we will return will be the Unearned Premium for the location.  The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below.  The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with the Company.

1 year Policy

| Days Policy<br>In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

2. If a Location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands is added during the term of the policy and coverage exists at any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate, less the Unearned Factor as calculated in No. 1 above based upon the number of days remaining in the policy term.

3. The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands and coverage existed any time during the period of June 1st to November 30th.

ACE0239 (06/06)                         Copyright © 2000                         Page 1 of 2

WILLIS00786

4.   Nothing herein will act to provide coverage outside the automatic acquisition clause, if any, that is
     located elsewhere in the policy.

**All other terms and conditions remain unchanged.**

_____
Authorized Representative

WILLIS00787

# NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION ENDORSEMENT

| Named Insured<br>Signal International, LLC. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>D37362220 001 | Policy Period<br>01/30/2009 to 01/30/2010 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

This Endorsement modifies insurance provided under the following:

**BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

A. Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B. Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled; or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

C. If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to *Loss*.

ACE 0210 (01/08)                    Copyright © 2008                    Page 1 of 1

THIS ENDORS.  .NT CHANGES THE POLICY. PLEASE  \D IT CAREFULLY.

## POLLUTION AND POLLUTANTS CLEAN-UP AND REMOVAL EXCLUSION ENDORSEMENT

The following provisions are added to or replace any other similar provisions in this policy. If this policy adopts, follows or incorporates the terms, conditions, exclusions and endorsements of any other policy by reference, these provisions also amend or replace any other similar provisions included in any other such policy.

1. **POLLUTION EXCLUSION**

   The following exclusion is added and replaces any other Pollution Exclusion applicable to this policy.
   This policy does not cover loss or damage caused by or resulting from any of the following:

   Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss", provided such "Specified Causes of Loss" are otherwise covered by this policy. But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", this policy will cover the loss or damage caused by that "specified cause of loss" provided such "Specified Causes of Loss" are otherwise covered by this policy.

2. **PROPERTY NOT COVERED**

   In addition to any other provisions respecting Property not covered, this policy is amended as follows:

   This policy does not cover land (including land on which covered property is located) or water.

3. **DEBRIS REMOVAL**

   If any Debris Removal coverage is included in this policy, this policy is amended as follows:
   Debris Removal coverage does not apply to the cost to test for or to extract "pollutants" from land or water, or to remove, restore or replace polluted land or water.

4. **TIME ELEMENT**

   The term *period of restoration, period of recovery, period of interruption* or any similar term which defines the time period for which loss is covered shall not include any increased periods of time due to the enforcement of laws regulating the prevention, control, repair, clean-up or restoration of environmental damage.

5. **POLLUTANTS CLEAN-UP AND REMOVAL**    (The following applies only when this endorsement is attached to a policy which is issued specifically to be primary coverage.)

   The following is added and replaces any other Pollutants Clean-up and Removal Coverage applicable to this Policy.

   This insurance covers expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is occasioned by loss caused by any of the perils insured against in this policy during the policy period. Such expenses must be reported to the company within (180) days of the date of the direct loss, or the expiration of this policy. The liability of the company for loss under this coverage shall not exceed $10,000 in the aggregate for the sum of all such expenses incurred arising out of insured perils occurring during each separate twelve month period of this policy. This limit applies as an additional amount of insurance.

6. **DEFINITIONS**

   As used in this endorsement the following terms mean:

   A. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

ACE100 (6/03)                                    Page 1 of 2

WILLIS00789

B.   "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1.   Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:
   a.   The cost of filling sinkholes; or
   b.   Sinking or collapse of land into man-made underground cavities.

2.   Falling objects does not include loss or damage to:
   a.   Personal property in the open; or
   b.   The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3.   Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

4.   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:
   a.   Airborne volcanic blast or airborne shock waves;
   b.   Ash, dust or particulate matter; or
   c.   Lava flow.

All other terms and conditions remain unchanged.

_____
Authorized Representative

ACE100 (6/03)

Page 2 of 2

WILLIS00790

# FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION

| Named Insured Signal International, LLC. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol FS | Policy Number D37382220 001 | Policy Period 01/30/2009 to 01/30/2010 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**Brokers Manuscript Form**

A. The following exclusion is added:

We will not pay for *loss*, or physical loss or damage, caused directly or indirectly by any of the following. Such *loss* or physical loss or damage, is excluded regardless of any cause or event that contributes concurrently or in any sequence to the *loss*, or physical loss or damage:

1. Presence, growth, proliferation, spread or activity of "fungus", wet rot or dry rot or bacteria. But if "fungus", wet rot, dry rot or bacteria results in a "specified cause of loss", we will pay for the *loss* caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet rot or dry rot, or bacteria results from fire or lightning;

2. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot, or bacteria; or

3. The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot, or bacteria.

B. The following are added to the Definitions:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

"Specified cause of loss" means: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement may be attached to a coverage form or an endorsement with a different definition from the listed definitions. If there is a different definition, that definition does not apply to this endorsement.

All other terms and conditions remain unchanged.

ACE0204 (04-08)                    Copyright © 2008                    Page 1 of 1

'OMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a mate-rial fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect cover-age at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVER-AGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more then the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or dam-age occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without addi-tional premium within 45 days prior to or during the policy period, the broadened coverage will imme-diately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Cover-age Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of cov-ered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

2. The coverage territory is:

a. The United States of America (including its territories and possessions);

b. Puerto Rico; and

c. Canada.

WILLIS00792

**I. TRANSFER OF RIGHTS \ RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss     your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

CP 00 90 07 88     □

WILLIS00793

# Terrorism Exclusion Endorsement

**General Policy Information**

Named Insured:         Signal International, LLC

Endorsement Number:

Policy Symbol:

Policy Number:         D37362220 001

Policy Period:         01/30/2009 – 01/30/2010

Effective date of Endorsement:

Issued by:         Westchester Surplus Lines Insurance Comapny
(Name of Insurance Company)

This Endorsement changes the policy – Please read it carefully
This endorsement changes your policy as follows:

**Endorsement Information**

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

A. Any other provision of this policy notwithstanding, this insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly resulting from or arising out of or in any way related to any:

1. "Act of Terrorism"; or

2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism."

WILLIS00794

**Endorsement Information**
(Continued)

his exclusion applies regardless of any o'   cause or event that in any way contributes concurrently or in sequence to the loss, injury, damage, expense, cost, or legal obligation.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

B.   As used in this endorsement:

"Act of Terrorism" means an activity that:

1.  Involves any violent act or any act dangerous to human life, tangible or intangible property, and that causes damage to property or injury to persons or causes a threat thereof; and

2.  Appears to be intended, in whole or in part, to:

    a.  Intimidate or coerce a civilian population; or

    b.  Disrupt any segment of a nation's economy; or

    c.  Influence the policy of a government by intimidation or coercion; or

    d.  Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

    e.  Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

_____
Authorized Agent

WILLIS00795



**Westchester Surplus Lines Insurance Company**
Insurance Company

**Signal International, LLC.**
Policyholder

**D37362220 001**
Policy Number

**AMWINS BROKERAGE OF NEW
YORK INC**
Broker/Producer

## POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, that you have the right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act.* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, SUCH POLICIES MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.   UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

> Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $140,000, however you elected to decline such coverage.

TRIA15c (01/08)

WILLIS00796

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

WILLIS00797

## SIGNATURE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Signal International, LLC. | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| FS | D37362220 001 | 01/30/2009  to  01/30/2010 | |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

ILLINOIS UNION INSURANCE COMPANY
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

GEORGE D. MULLIGAN, Secretary                    JOHN J. LUPICA, President

WESTCHESTER SURPLUS LINES INSURANCE COMPANY
500 Colonial Center Parkway, Suite 200, Roswell, GA 30076

GEORGE D. MULLIGAN, Secretary                    DENNIS A. CROSBY, JR., President

Authorized Agent

LD-5S23g  (2/05) Ptd. in U.S.A.

WILLIS00798

---

## IMPORTANT NOTICE

TO OBTAIN INFORMATION OR MAKE A COMPLAINT:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

    1-800-252-3439

You may write the Texas Department of Insurance at:

    PO Box 149104
    Austin, TX 78714-9104
    Fax# 512-475-1771

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the disputed is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:

THIS NOTICE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THE ATTACHED DOCUMENT

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Article 21.28-C, Insurance Code. Section 12, Article 1.14-2, Insurance Code, requires payment of a 4.85 percent tax on gross premium.

WILLIS00799

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas Insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Article 21.28-C, Insurance Code, Section 12, Article 1.14-2, Insurance Code, requires payment of a 4.85% tax on gross premium.

WILLIS00800