# EXHIBIT 16

Fireman's Fund Insurance Company

New Orleans Field Office
Allianz Global Corporate & Specialty®
AGCS Marine Insurance Company
800 W Commerce Rd Ste 106
Harahan, LA  70123-3346
(504) 734-2221
Fax: (504) 731-2226





A company of Allianz ⑪

February 17, 2009

VERNON EWING
WILLIS OF ALABAMA, INC.
PO BOX 2407
MOBILE AL  36652-2407

RE:    SIGNAL INTERNATIONAL LLC
       OML 92001349 of the Subscribing Underwriters

Dear Vernon:

We are pleased to enclose the renewal for the account mentioned above, effective on and after 01/30/2009, along with a copy(s) for your records.

Thank you for keeping this account with Fireman's Fund Insurance Company.

If you have any questions, please feel free to contact us at any time.

Sincerely,


Rebecca Cartwright
Customer Service Representative

Encl: Fireman's Fund Insurance Company Renewal OML 92001349


Willis of Alabama, Inc.
Received

MAR  1 0  2009


Signal (NY) 000120

## IMPORTANT NOTICE REGARDING TERRORISM COVERAGE

You are hereby notified that under The Terrorism Risk Insurance Act ("The Act"), you have a right to purchase insurance coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of The Act: The term **certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as amended.  The criteria contained in the Terrorism Risk Insurance Act, as amended, for a **certified act of terrorism** include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended; and

2. The act resulted in damage:
   a. Within the United States (including its territories and possessions and Puerto Rico); or
   b. Outside the United States in the case of:
      (1) An air carrier (as defined in Section 40102 of title 49, United States code) or United states flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States) regardless of where the loss occurs; or
      (2) The premises of any United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM **CERTIFIED ACTS OF TERRORISM**, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW, HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.   UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.    THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM **CERTIFIED ACTS OF TERRORISM** WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEEDS $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Our records indicate that you previously rejected coverage for losses arising out of certified acts of terrorism, as defined by The Act, when we provided you a quote for insurance.  Accordingly, your policy does not currently provide this coverage.  However, The Act requires that we again make an offer at this time.  If you wish to change your decision and purchase certified acts of terrorism coverage, you must contact your agent or broker representing the Fireman's Fund Insurance Companies at the address specified below to request coverage so we can provide you with a new quote.  If you do not do so, it will be presumed that you have rejected this offer of certified act of terrorism coverage.

HL 6 Terrorism Letter - Rejected  (12 07)

Signal (NY) 000121

This offer of coverage for losses due to certified acts of terrorism, as defined by The Act, if accepted, will be subject to the limit(s), terms and conditions of any policy or endorsement subsequently issued.

If you have any questions about this or any other insurance matter, please contact your agent or broker representing the Fireman's Fund Insurance Companies.

| | |
|---|---|
| Named Insured: | SIGNAL INTERNATIONAL LLC |
| Insurance Company: | FIREMAN'S FUND INSURANCE COMPANY |
| Policy Number: | OML92001349 |
| Producer Name: | WILLIS OF ALABAMA, INC. |
| Producer Address: | PO BOX 2407 |
| | MOBILE, AL  36652-2407 |

HL 6  Terrorism Letter - Rejected  (12 07)

Signal (NY) 000122

**Marine General Liability**

Declarations (MGL 09 05 100)

Policy Number   Joint Policy

| | | | | |
|---|---|---|---|---|
| Item 1. | **Insured:**<br>SIGNAL INTERNATIONAL LLC<br>PO BOX 7007<br>PASCAGOULA, MS  39568-7008 | | **Producer:**<br>WILLIS OF ALABAMA, INC.<br>PO BOX 2407<br>MOBILE, AL  36652-2407 | |
| | (With respect to Section IV, Who Is An Insured, the above Named Insured is considered to be an organization other than a partnership or joint venture unless otherwise specified above.) | | | |
| Item 2. | **Policy Period:**   From: 01/30/2009             To: 01/30/2010 | | | |
| | At 12:01 AM Standard Time at the Mailing Address Shown Above | | | |
| Item 3. | **Description of Operations:** | | | |
| | As per your insurance application which is on file with us. | | | |
| Item 4. | **Location of All Premises You Own, Rent or Occupy:** | | | |
| | As per your insurance application that is on file with us. | | | |
| Item 5. | **Limits of Insurance:** | | | |
| | General Aggregate Limit (Other Than Products - Completed Operations) | | $ | 2,000,000 |
| | Products - Completed Operations Aggregate Limit | | $ | 1,000,000 |
| | Personal and Advertising Injury Limits | | $ | 1,000,000 |
| | Each Occurrence Limit | | $ | 1,000,000 |
| | Damage to Premises Rented to You (Each Occurrence) | | $ | 50,000 |
| | Medical Expense Limit (Any One Person) | | $ | 5,000 |
| Item 6. | **Deductible Liability:** | $100,000 Per Occurrence | | |

Item 7.   **Rates and  Premium:**

| | | | |
|---|---|---|---|
| Exposure Rating Basis: | | Gross Receipts and Watercraft Liability | |
| Estimated Exposure for Period: | Gross Receipts<br>Watercraft Liability | $260,000,000<br>"Number of As per attached Vessel Schedule<br>Vessels" | |
| Adjusted at a Rate(s) of: | Gross Receipts | .20% for first $200,000,000 in revenues;<br>.15% for all revenues in excess of<br>$200,000,000 | |
| | Watercraft Liability | Rates to be determined upon notification of additional vessels. | |
| Estimated Annual Premium: | | $490,000.   for MGL Exposures<br>$53,500.   for Watercraft Liability Exposures | |
| Audit Period: | | Annual | |
| Advance or Deposit Premium: | | $465,000.   for MGL Exposures<br>$53,500.   for Watercraft Liability Exposures | |

Willis of Alabama, Inc.
Received

MAR 1 0 2009

MGL 100

Signal (NY) 000123

| Minimum Annual Premium | $465,000. | for MGL Exposures |
| | $53,500. | for Watercraft Liability Exposures |

Terrorism Risk Insurance Act of 2002:

| Deposit Premium: | N/A | Not Covered |
| Adjusted at a rate of: | | % of the Audited / Final Policy Premium |
| Percent of Deposit Premium Fully Earned at Inception: | | 25% |
| Premium Shown is Payable: | In full at inception | |

**Item 8.** **Forms Schedule** (Subject to the Following Forms and Endorsements which are attached hereto):

Marine General Liability Policy (MGL 09 05 101) amended as follows:
  Section II.A. - Exclusions 21 and 22 are deleted.
  Section II.A. - Exclusion 26 deleted, but only with respects to "bodily injury" or "personal injury"
    arising out of providing or failing to provide professional health care services.
  Section IV - Paragraph 2.a.(1)(d) is deleted.
  Section VI - Conditions 2.b.(2) and 2.g. are amended to sixty (60) days.
  Section VIII - Definition 14.f. is amended to include a verbal contract provided such contract
    is reduced to writing within thirty (30) days of reaching the agreement.

**Including the following Endorsements:**

Self Insured Retention Endorsement (MGL 09 05 164)
Claim Reporting Requirements (MGL 09 05 161)
Named Insured Endorsement
Action Over Indemnity Buyback Endorsement (MGL 09 05 103)
  The words "and/or diver(s) whilst engaged in diving operations" are deleted from
    Item 2. of this endorsement.
Additional Insured and Waiver of Subrogation (Blanket) (MGL 09 05 106)
Additional Insured And Waiver Of Subrogation (Specific) (MGL 09 05 107) - Naming:
  As Expiry
Additional Policy Conditions (MGL 09 05 108)
  Unitentional Non Disclosure
  Knowledge of Occurrence
  Notice of Occurrence
  Innocent Co-Insureds
Amended Aggregate Limits of Insurance (Per Project) Endorsement (MGL 09 05 111) -Naming:
  As required by an "insured contract", but only with respects to an entity for whom you are
    directly or indirectly performing "your work".
Cross Liability Endorsement (MGL 09 05 118)
U.S. Economic and Trade Sanctions Clause
Limited Pollution Buyback (72 hour) Endorsement (MGL 09 05 130)
  Paragraph 1.c. is amended to read:  "The discharge, dispersal, release or escape became known
    to the Insured within 72 hours after its commencement and was reported to Underwriters
    within thirty (30) days thereafter."
Employee Benefit Liability (MGL 09 05 120)
Employee Bodily Injury to a Co-Employee Endorsement (MGL 09 05 121)
  Supervisory and Safety Personnel Only
Notice of Cancellation Additional Insured (Specific)
Charterer's Liability Endorsement (MGL 09 05 116):
  Description of watercraft Insured:  Any chartered watercraft must be declared to us prior to
    commencement of Charter Agreement, and subject to additional premium to be advised.
  Territorial Limits:  To be determined.

MGL 100

Signal (NY) 000124

Lift Liability Endorsement (MGL 09 05 128)
Ship Repairer's Liability Endorsement (MGL 09 05 140) - Including:
Other Work Endorsement (MGL 09 05 135) - Other work:  <u>To be agreed.</u>
Traveling Workmen Endorsement (MGL 09 05 145)
U. S. Government Difference in Conditions Endorsement (MGL 09 05 146)
Stevedore's Liability Endorsement (MGL 09 05 141)
Watercraft Liability Endorsement (MGL 09 05 150):
 Section II.A. - Exclusion 32 is amended to read as follows, but only with respects to the coverage
 provided by the Watercraft Liability endorsement (MGL 09 05 150) and no broader:
  32.  Fines, Penalties
   Fines, Penalties and bad faith damages.
 Section II. A. Exclusions 12, 16d and Section VII, Condition 17 shall be voided,
 but only to the extent of the coverage provided by this endorsement.
 Paragraph 2.c. is amended by deletion of the words:
  "the difference between the hull value (as scheduled in this endorsement)".
 Paragraph 4.a. is deleted as respects to the "other than owners limitation"
  as required by a written contract.
 Paragraph 4.f.(3) is amended to read:  "For any non-powered watercraft valued under
 $250,000., you must submit to us a quarterly report of acquired or chartered
 watercraft. For any watercraft powered or valued greater than $250,000.
 you must notify us in writing within thirty (30) days of acquiring or
 chartering such watercraft."
 Schedule of Watercraft:  Per the attached Schedule of Vessels.
 Allowed navigation:  Confined to the use and navigation of:  The inland waters of the U.S.
 between Brownsville, TX and Apalachicola, FL.
Voluntary Wreck Removal with a sub-limit of $100,000.
Wharfinger's Liability Endorsement (MGL 09 05 151)
 Exclusion 3.a. shall be voided, but only with respects to "insured contracts" and only to the
 extent of the coverage provided under this endorsement.
Lead Underwriter Endorsement (MGL 09 05 162)
Amendatory Endorsement (MGL 09 05 109)
Subscriber's Endorsement (MGL 09 05 157)

MGL 100

Signal (NY) 000125

**MARINE GENERAL LIABILITY POLICY (MGL 09 05 101)**

Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company or companies providing this insurance.

The word "Insured" means any person or organization qualifying as such under **WHO IS AN INSURED (SECTION IV).**

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS (SECTION VIII).**

The Section, Form or Clause titles or headings are for your reference only and have no bearing on the interpretation of the Sections, Forms or Clauses.  Be certain to read all Sections, Forms and Clauses carefully to determine their actual meaning.

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

Insuring Agreement.

1.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

    a.  The amount we will pay for damages is limited as described in **LIMITS OF INSURANCE (SECTION V); and**

    b.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverage A or B or medical expenses under Coverage C and/or other coverages endorsed to this policy and/or Supplementary Payments under Section III.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B (SECTION III).**

2.  This insurance applies to "bodily injury" and "property damage" only if:

    a.  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

    b.  The "bodily injury" or "property damage" occurs during the policy period.

3.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

MCL 09 05 101

Signal (NY) 000126

**Insuring Agreement.**

1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   a. The amount we will pay for damages is limited as described in **LIMITS OF INSURANCE (SECTION V)**; and

   b. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C and/or Supplementary Payments under Section III.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B (SECTION III).**

2. This insurance applies to:

   a. "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

   b. "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

   but only if the offense was committed in the "coverage territory" during the policy period.

## COVERAGE C. MEDICAL PAYMENTS

Insuring Agreement.

1. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   a. On premises you own or rent;

   b. On ways next to premises you own or rent; or

   c. Because of your operations;

   provided that:

   a. The accident takes place in the "coverage territory" and during the policy period;

   b. The expenses are incurred and reported to us within one year of the date of the accident; and

   c. The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

2. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   a. First aid at the time of an accident;

   b. Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   c. Necessary ambulance, hospital, professional nursing and funeral services.

MGL 09 05 101

Signal (NY) 000127

## SECTION II - EXCLUSIONS

### A. EXCLUSIONS APPLICABLE TO SECTION I, COVERAGES A AND B ONLY:

Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:

1. Expected or Intended Injury

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

2. Contractual Liability

   "Bodily injury", "property damage", "personal injury" or "advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Subject to all of this policy's other terms, conditions and exclusions, this exclusion does not apply to liability for damages:

   a. That the insured would have in the absence of the contract or agreement; or

   b. For "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided;

      (1) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      (2) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

3. Liquor Liability

   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   a. Causing or contributing to the intoxication of any person;

   b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

4. Workers' Compensation and Similar Laws;

   Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law, United States Longshore and Harbor Workers' Compensation Act, Jones Act, Death on the High Seas Act, General Maritime Law, Federal Employers Liability Act, Outer Continental Shelf Lands Act, Defense Base Act, or any similar laws, statutes or liabilities.

MGL 09 05 101

Signal (NY) 000128

5. Employer's Liability

   a. "Bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business; or

      (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

   b. This exclusion applies:

      (1) Whether the insured may be liable as an employer or in any other capacity; and

      (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

6. Employee Benefits

Liability, expense or costs arising out of any act or omission by you, or any other person or entity for whose acts or omissions you are legally liable, in respect of your "Employee Benefits" including but not limited to:

   a. Giving counsel to "employees" with respect to "Employee Benefits";

   b. Interpreting the "Employee Benefits";

   c. Handling and keeping of records in connection with "Employee Benefits";

   d. Effecting enrollment, termination or cancellation of "employees" under the "Employee Benefits";

   e. Any dishonest, fraudulent, criminal, or malicious act or omission;

   f. Failure of performance of contract by an insurer;

   g. Lack of compliance with the terms of any contract, declaration of trust, or instrument providing "Employee Benefits";

   h. Lack of compliance with any law concerning "Employee Benefits";

   i. Failure to procure or maintain satisfactory and adequate insurances on "Employee Benefits" assets or property;

   j. Failure of stock or other securities or of any investments of whatever kind to perform as represented;

   k. Advice given to an "employee" to participate or not to participate in stock subscription or similar plans; and

   l. Any liability arising out of the Employee Retirement Income Security Act and any other similar federal, state or other statutes, rules or regulations.

As used in this exclusion, the term "Employee Benefits" includes, without limitation, Group Life Insurance, Group Health and Dental Insurance, Profit-Sharing Plans, Pension Plans, Employee Stock Subscription Plans, Workers' Compensation, Unemployment Insurance, Social Security and Disability Benefits Insurance.

MGL 09 05 101

Signal (NY) 000129

7. Pollution, Seepage, Contamination

   a. "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time:

     (1) At or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any insured;

     (2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

     (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

     (4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

       (a) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

       (b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   Subparagraphs (1) and (4)(a) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

   As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

   b. Any loss, cost or expense arising out of any:

     (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

     (2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of "pollutants".

   However, this paragraph (7.b.) does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

8. Health Hazard

   a. "Bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, absorption of, contact with, exposure to, existence of, or presence of:

     (1) "Asbestos", "lead", "polychlorinated biphenyl", "silica", "tobacco", benzene, formaldehyde, manganese, "fungi" or "microbes", coal dust, talc, dioxin, pesticides, herbicides, "methyl tertiary-butyl ether" (MTBE); or

     (2) Other substances, materials, wastes or emissions, noise or environmental disturbance

Signal (NY) 000130

where you are or may be held liable for any reason including, but not limited to, as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by you or on your behalf of such substances, materials, wastes or emissions, noise or environmental disturbance.

b.  Any loss, cost or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of substances, materials, products, wastes or emissions, noise or environmental disturbance as identified in 8.a. (1) and (2) above.

9.  Nuclear

a.  Any liability, expense or costs for "bodily injury", "property damage", "personal injury" or "advertising injury":

(1) With respect to which an "insured" under this policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b.  Any Medical Payments coverage, for expenses incurred with respect of "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c.  Any Liability Coverage for "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured", or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion only:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

MGL 09 05 101

Signal (NY) 000131

"Spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a "nuclear reactor,"

"Nuclear waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

a.  Any "nuclear reactor";

b.  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "nuclear waste";

c.  Any equipment or device used for the processing, fabrication or alloying of "special nuclear material" if at anytime the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

d.  Any structure, basin, excavation, premises or place prepared or used for the storage of disposal of "nuclear waste",

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

10. Radioactive Contamination

"Bodily injury" and/or "personal injury" and/or "property damage" arising directly or indirectly from:

a.  Ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

b.  The radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

c.  Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or

d.  The radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-paragraph does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or similar peaceful purposes.

Your liability with respect to fire arising directly or indirectly from one or more of the causes detailed in sub-paragraphs a, b, or d above shall, subject to the provisions of this insurance, be covered, excluding however any liability, expense or cost caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

MGL 09 05 101

Signal (NY) 000132

This exclusion shall be paramount and shall override anything contained in this insurance which may be inconsistent.

11. Chemical, Biological, Bio-Chemical, and Electromagnetic

Liability, expense or costs directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, biochemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

12. "Owned Watercraft"

Any liability, expense or costs, contractually assumed or otherwise, for any sum(s) that you are or are alleged to be liable with respects to the ownership, use or entrustment to others of any "owned watercraft". Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any "owned watercraft".

13. Auto, Aircraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or "auto" that is owned by or rented or loaned to any insured.

This exclusion does not apply to:

a. Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

b. Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft;

c. "Bodily injury" or "property damage" arising out of:

(1) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(2) The operation of any of the equipment listed in paragraph f. 2. or f. 3. of the definition of "mobile equipment" (Section VIII, Definition 20.); or

d. Non-owned aircraft or "autos" that are handled by you as a stevedore as cargo, including the operation of non-owned "autos" during "loading or unloading".

14. War and Terrorism Liability Exclusion

"Bodily injury", "property damage", "personal injury" or "advertising injury", however caused, arising, directly or indirectly, out of:

MGL 09 05 101

Signal (NY) 000133

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

c. Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these; or

d. (1) Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by "terrorism"; and/or

(2) Any cost or expense the Insured or others directly or indirectly incur with respect to the steps taken to prevent, suppress, control or reduce the consequences of any actual, attempted, anticipated, threatened, suspected or perceived "terrorism".

15. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

a. The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

b. The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

16. Damage to Property

"Property damage" to:

a. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

b. Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

c. Property loaned to you;

d. Property in the care, custody or control of the insured;

e. That particular part of real property on which you or any independent contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

f. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph b. of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs c., d., e. and f. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

17. Damage to Your Product

MGL 09 05 101

Signal (NY) 000134

"Property damage" to "your product" arising out of it or any part of it.

18. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

19. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

20. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired property".

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

21. Products and Completed Operations

"Bodily injury," "property damage," "personal injury" or "advertising injury" included in the "products-completed operations hazard."

22. Divers

"Bodily injury" (contractually assumed or otherwise) to any/all diver(s) that resulted from or occurred from or during diving operations.

23. Failure to Perform

Any liability resulting from the failure of "your products" and/or "your work" to meet any predetermined level of fitness or performance and/or guarantee of such fitness or level of performance and/or any consequential loss arising therefrom.

24. Employment Practices

"Bodily injury" and/or "personal injury" and/or "advertising injury" arising out of any:

a. Refusal to employ;

b. Termination of employment;

MGL 09 05 101

Signal (NY) 000135

c.  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;

d.  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination; or

e.  Consequential "bodily injury" as a result of a. through d. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

25.  Director's and Officer's

a.  Actual or alleged liability arising out of your capacity, duty or responsibility as an Officer, Director or Trustee of a corporation by reason of any breach of fiduciary duty or improper conduct or conflict of interest in the performance of your duties, responsibilities or accountability as an Officer, Director or Trustee, including, without limitation, any actual or alleged misstatement, mis-leading statement, gain of personal profit or advantage to which you were or are not entitled legally, any dishonest act, or bad faith conduct, in your capacity as an Officer, Director or Trustee, or with respect to the capital or assets of the Corporation, or any action taken beyond the scope of your authority as an Officer, Director or Trustee; or

b.  Actual or alleged liability of any Officer, Director or Trustee arising out of or asserted in a shareholder's deriva-tive action; or

c.  Actual or alleged liability which would be payable under the terms of coverage of a Directors and Officers Liability Insurance Policy or a Directors and Company Reimbursement Indemnity Policy of the type issued by stock insurance companies of the United States, as if you had obtained such coverage in an amount sufficient to pay the full amount being claimed against you, whether or not you have obtained such coverage; or

d.  "Property damage", "bodily injury", "personal injury" or "advertising injury" claims, "suits" or proceedings for, based upon, arising from, attributable to, related to, or in any way connected with, in whole or part, directly or indirectly:

  (1)  Any actual or alleged violation of the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any state blue sky or Canadian securities law.

  (2)  Any similar state blue sky, federal or Canadian statutes regulating securities similar to the foregoing, or as they may be amended, any rules or regulations adopted pursuant thereto, or any other state blue sky or Canadian laws or common laws relating to securities; or

e.  Actual or alleged liability arising out of or incidental to any alleged violation(s) of any federal or state law regulating, controlling and governing antitrust or the pro-hibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce including, without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott Rodino Anti-trust Improvements Act; or

f.  Actual or alleged liability arising out of or contributed to by the insured's dishonesty or infidelity.

MGL 09 05 101

Signal (NY) 000136

26. Professional Liability

    a. This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of or allegedly arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

        (1) Providing engineering, architectural, watercraft brokering, inspection or surveying services to others in your capacity as an engineer, architect, watercraft broker, inspector or surveyor and/or performance of any claim, investigation, adjustment, inspection, appraisal, survey or audit services; and/or

        (2) Providing, or hiring independent professionals to:

            (a) Provide engineering, architectural, watercraft brokering, inspection or surveying services in connection with construction work you perform; or

            (b) Perform any claim, investigation, adjustment, inspection, appraisal, survey or audit services.

    b. Subject to Paragraph c. below, professional services include:

        (1) (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, inspections, field orders, change orders, or drawings and specifications, and/or claim investigation reports, adjustments, inspections, appraisals, surveys or audits; and/or

            (b) Hiring and/or re-hiring or charter brokerage of watercraft for or on behalf of others.

        (2) Supervisory or inspection activities performed as part of any related architectural or engineering activities.

    c. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor, provided you are designated as such under item 3, Description of Operations, in the Declarations of this policy.

27. False Advertising, Willful Intent, Unauthorized Use

"Personal injury" or "advertising injury" arising out of:

    a. Oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    b. Oral or written publication of material whose first publication took place before the beginning of the policy period;

    c. The willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

    d. The unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

28. Breach of Contract, Failure to Conform, Wrong Description

"Personal Injury" and "Advertising injury" arising out of:

    a. Breach of contract, except an implied contract to use another's advertising idea in your

MGL 09 05 101

Signal (NY) 000137

advertisement;

b. The failure of goods, products or services to conform with advertised quality or performance;

c. The wrong description of the price of goods, products or services; or

d. An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

29. U.S. Economic and Trade Sanctions Clause

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

30. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

31. Infidelity and/or Dishonesty

Any claim(s) of an "insured" whose infidelity, dishonesty and/or fraud caused the loss for which that "insured" seeks indemnity, whether committed individually or in collusion with others, and whether or not such act(s) be committed during regular business hours.

32. Fines, Penalties, Punitive Damages

Fines, penalties, bad faith damages, punitive or exemplary damages, including treble damages or any other damages resulting from multiplication of compensatory damages.

Except with respects to exclusions 1, 2, 9, 10 and 14, Section II.A. does not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section V – Limits of Insurance.

**B. EXCLUSIONS APPLICABLE TO SECTION I, COVERAGE C ONLY:**

We will not pay expenses for "bodily injury":

1. Any Insured

   To any insured.

2. Hired Person

   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

3. Injury on Normally Occupied Premises

   To a person injured on that part of premises you own or rent that the person normally occupies.

4. Workers Compensation and Similar Laws

   To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or any

MGL 09 05 101

Signal (NY) 000138

similar law or under the doctrine of maintenance and cure.

5. Athletics Activities

   To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

6. Products-Completed Operations Hazard

   Included within the "products-completed operations hazard."

7. Section II.A. Exclusions

   Excluded under Section II.A. of this policy.

**SECTION III - SUPPLEMENTARY PAYMENTS -   APPLICABLE TO SECTION I, COVERAGES A AND B AND ALL COVERAGES ENDORSED TO THIS POLICY OF INSURANCE.**

We will pay, with respect to any claim or "suit" we defend (subject to applicable policy limit and deductible):

1. All expenses we incur including, but not limited to, attorney fees and litigation costs.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

All such costs and expenses outlined above are included within (not in addition to) the applicable policy occurrence and aggregate limits of insurance.

**SECTION IV - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with

MGL 09 05 101

Signal (NY) 000139

respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company) or your captain and/or crew of "owned watercraft", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee") or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form

MGL 09 05 101

Signal (NY) 000140

the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION V - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought;

   c. Persons or organizations making claims or bringing "suits"; or

   d. Coverages provided in or endorsed to this policy.

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

   c. Damages under Coverage B;

   d. Damages under other coverages endorsed to or otherwise made a part of this policy; and

   e. All Supplementary Payments (as per Section III).

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard", including all Supplementary Payments (as per Section III).

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" arising out of any one "occurrence", including all Supplementary Payments (as per Section III).

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A;

   b. Medical expenses under Coverage C;

   c. Damages under any/all coverage(s) endorsed to this policy; and

   d. Supplementary Payments (as per Section III).

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Damage to Premises Rented to You Limit is the most we will pay under

MGL 09 05 101

Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with the permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION VI - DEDUCTIBLE LIABILITY INSURANCE

Applicable to Section I, Coverage Parts A and B and all coverage endorsements attached to this policy.

1. Our obligation under the "bodily injury" liability, "property damage" liability, "personal injury" liability and "advertising injury" liability coverages to pay damages, expenses or costs on your behalf applies only to the amount of damages, expenses or costs in excess of any deductible amounts stated on the Declarations Page as applicable to such coverages, and the limits of insurance applicable to "each occurrence" for such coverages will be reduced by the amount of such deductible. "Aggregate" limits for such coverages shall not be reduced by the application of such deductible amount.

2. The deductible amounts shown on the Declarations apply as follows:

    a. PER CLAIM BASIS - if the deductible is on a "per claim" basis, the deductible amount applies:

       (1) Under Coverage Parts A and B and all coverage endorsements, respectively;

           (a) To all damages and supplementary payments because of "bodily injury", "personal injury" and/or "advertising injury" sustained by one person, or

           (b) To all damages and supplementary payments because of "property damage" sustained by one person or organization,

           as the result of any one "occurrence."

       (2) Under Coverage Parts A and B and all coverage endorsements combined, to all damages and supplementary payments because of "bodily injury", "personal injury", "advertising injury" and/or "property damage" sustained by one person or organization as the result of any one "occurrence."

    b. PER OCCURRENCE BASIS - if the deductible is on a "per occurrence" basis, the deductible amount applies:

       (1) Under Coverage Parts A and B and all coverage endorsements, respectively:

           (a) To all damages and supplementary payments because of "bodily injury", "personal injury" and/or "advertising injury" as the result of any one "occurrence," or

           (b) To all damages and supplementary payments because of "property damage" as the result of any one "occurrence."

           regardless of the number of persons or organizations who sustain damages because of that "occurrence."

MGL 09 05 101

Signal (NY) 000142

(2) Under Coverage Parts A and B and all coverage endorsements combined, to all damages and supplementary payments because of "bodily injury", "personal injury", "advertising injury" and/or "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence."

(3) The terms of this insurance, including those with respect to:

    (a) Our right and duty to defend any "suits" seeking those damages; and

    (b) Your duties in the event of an "occurrence," claim or "suit"

apply irrespective of the application of the deductible amount.

(4) We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount we have paid.

## SECTION VII - CONDITIONS

All coverages provided by or included in this policy and all endorsements attached to this policy are subject to the following conditions. Read them carefully.

1. Bankruptcy / Insolvency

The insolvency, bankruptcy, receivership of the insured or the insured's estate or any refusal or inability to pay by the insured or the insured's estate and/or the insolvency, bankruptcy, receivership or any refusal or inability to pay by any other insurance company and/or by any other underwriter shall not operate to:

a. Relieve us of our obligations under this policy;

b. Increase our liability under this policy;

c. Increase our share of liability under this policy;

In no event shall we assume the responsibilities and/or obligations of the insured or the insured's estate and/or the obligations of any other insurance company and/or any other underwriter.

2. Cancellation / Non Renewal

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro-rata. If the first Named insured cancels, the refund may be

MCL 09 05 101

Signal (NY) 000143

less than pro-rata. The cancellation will be effective even if we have not made or offered a refund.

    f.  In the event of cancellation of this policy, the earned premium shall be calculated in accordance with the cancellation provision contained above and shall be based upon the estimated annual premium, advance premium, or minimum premium, whichever is greater. We shall also have the option (but not an obligation) of conducting an audit to determine the actual earned premium.

    g.  If we decide not to renew this Policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

    h.  If notice is mailed, proof of mailing will be sufficient proof of notice.

3.  **Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

4.  **Duties in the Event of Occurrence, Claim or Suit**

    a.  You must see to it that we are notified as soon as practicable after you become aware of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

       (1) How, when and where the "occurrence" or offense took place;

       (2) The names and addresses of any injured persons and witnesses; and

       (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

       (1) Immediately record the specifics of the claim or "suit" and the date received; and

       (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

       (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

       (2) Authorize us to obtain records and other information;

       (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit'; and

       (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

5.  **Examination of Your Books and Records**

MCL 09 05 101

Signal (NY) 000144

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

6. In Rem

Subject to the terms and conditions of the policy, it is agreed that any loss, otherwise covered by this policy, shall be considered covered thereby even though asserted by an action "In-Rem" instead of action "In Personam".

7. Inspections and Surveys

We have the right but are not obligated to:

a.   Make inspections and surveys at any time;

b.   Give you reports on the conditions we find; and

c.   Recommend changes. We maintain the right to require that recommendations are complied with and if they are not, we have the right to cancel the policy.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public and we do not warrant that conditions:

a.      Are safe or healthful; or

b.      Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any loss control, surveying, rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

8. Premiums

The first Named Insured shown in the Declarations:

a.   Is responsible for the payment of all premiums; and

b.   Will be the payee for any return premiums we pay.

9. Legal Action Against Us

No person or organization has a right under this insurance policy:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

10. Other Insurance or Protection

a.   This policy is excess over any other insurance under which the insured has been afforded insured status, whether primary, excess (other than insurance effected by the Named Insured

MGL 09 05 101

hereunder and specifically written as excess of this coverage), contingent or on any other basis, whether prior or subsequent hereto, and by whomever effected, directly or indirectly covering loss or damage insured hereunder, and this company shall be liable only for the excess of such loss or damage beyond the amount due from such other insurance up to, but not exceeding, the limits of this policy as set forth in the declarations.

b.   When this insurance is excess, we will have no duty under this policy to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

c.   Notwithstanding paragraphs a. and b. above, this insurance shall be primary to any other insurance, but only:

   (1) With respect to "your work", and

   (2) When required by and only to the extent of such obligation under an "insured contract".

11. Premium Audit

   a.   We will compute all premiums in accordance with our rules and rates.

   b.   Premium shown in the declarations as advance premium is only a deposit premium.  At the close of each audit period we will compute the earned premium for that period.

   Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, unless it is less than the minimum premium in which case the amount which is less than the minimum premium will not be refunded.

   c.   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12. Preservation of Your Rights

   You will endeavor to:

   a.   Preserve all rights against any and all:

   (1) Independent contractors and/or subcontractors working for you or on your behalf;

   (2) "Leased workers";

   (3) "Employee provider firms"; and

   (4) Lessees and/or Tenants of property or equipment which you own or for which you are responsible.

   all of which are referred to below as "entities".

   b.   Require the "entities" to maintain, in full force and effect, liability insurance with coverage and limits at least equal to the coverage and limits of this policy, as well as workers' compensation insurance. The "entities" shall require their liability insurer(s) to name you as an additional insured and shall waive all rights of subrogation against you and your "principal".  The liability insurance provided by the "entities" shall be endorsed to designate it to be primary to all other insurance issued in your favor and in favor of your "principal".

   c.   Require the "entities" to provide proof of the insurance as required above prior to any of the "entities" beginning to work for you.  The "entity" shall also require their insurer(s) to

MGL 09 05 101

Signal (NY) 000146

provide you with thirty (30) days written notice of cancellation or material change of their insurance.

13. Representations

By accepting this insurance policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

14. Separation of Insureds

Except with respect to the Limits of Insurance, which are in no way increased, and any rights or duties specifically assigned to the first Named Insured in this insurance policy, which are in no way expanded, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

15. Transfer of Rights of Recovery Against Others to Us

If the insured has rights to recover all or part of any payment we have made under this insurance policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

16. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

17. Watercraft Liability / Protection & Indemnity

During the term of this policy you agree to separately insure all your "owned watercraft" for limits not less than $1,000,000 or hull value (whichever greater) for protection and indemnity (P&I) and collision and/or tower's liability risks, as applicable. The terms for such insurance shall not be less broad than those provided by industry standard P&I forms, including "contractual liability extension", deletion of reference to "other than owner" wording, in rem coverage, collision liability coverage as provided by lines 158 – 184 of the American Institute Hull Clauses Form 7 (June 2, 1977), and/or (for watercraft engaged in towing) the collision and tower's liability coverage as provided by lines 78 through 111 of the American Institute Tug Form 53R-1.

Notwithstanding this condition, the insured agrees that the "owned watercraft" exclusion as contained in Section II.A. of this policy applies regardless of whether such P&I coverage is actually in place or whether losses are recoverable thereunder.

## SECTION VIII - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

MGL 09 05 101

Signal (NY) 000147

    a.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.   Oral or written publication of material that violates a person's right of privacy;

    c.   Misappropriation of advertising ideas or style of doing business; or

    d.   Infringement of copyright, title or slogan.

2.   "Asbestos" means all forms of actinolite, amosite, anthophyllite, chrysotile, crocidolite, tremolite, asbestos containing materials, asbestos products, asbestos fibers, asbestos dust, asbestos waste, or any goods, products, or structures containing asbestos.

3.   "Auto" means:

    a.   A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    b.   Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

4.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

5.   "Contractual Liability Coverage Extension" means coverage for "bodily injury" or "property damage" for which you are obligated to pay damages or expense by reason of the assumption of liability in a contract or agreement with respect to "owned watercraft" including the captain and crew and any other persons whilst working on, from or in the service of "owned watercraft".

6.   "Coverage territory" means:

a.   The United States of America (including its territories and possessions), international waters of the Gulf of Mexico, Puerto Rico and Canada.

b.   For all other parts of the world:

    (1)  We shall have the right but not the duty to investigate, defend or settle "bodily injury" or "property damage" claims; but

    (2)  If we do not exercise such right, you shall, under our supervision, make or have made such investigation and defense as is reasonably necessary. Subject to our prior written authorization, you may also effect settlement. Subject to all other provisions of the policy, we shall reimburse you for the reasonable costs of such actions and pay damages determined in a "suit" on the merits or in a settlement we agree to.

    (3)  Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

    (4)  All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

    (5)  Paragraph 6.b. of this definition shall not apply with respect any country or jurisdiction

MGL 09 05 101

Signal (NY) 000148

which is subject to trade or other economic sanction or embargo by the United States of America.

7. The term "demurrage" shall be deemed to include detention, loss of time, loss of freight, loss of charter, loss of use and/or similar and/or substituted expenses.

8. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

9. "Employee provider firm" means any entity, firm or affiliate whose principal business is providing "workers", as distinct from providing non-personnel services, to another entity to perform activities in furtherance of the business, trade or profession of the other entity at the business premises of or at locations designated by the other entity. As used in this definition, the term "workers" means any natural person in the course or scope of employment.

10. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

11. "Fungi" means any form of fungus, yeast, mold, mildew, or mushroom, including mycotoxins, spores, scents, byproducts or other substances produced or released by fungi. However, "fungi" does not include fungi that were deliberately grown for human consumption.

12. "Gross Sales" or "Gross Receipts", when used as a term for rating or as an exposure basis in the Declarations, means the total of all charges (including intercompany charges) you make or intend to make (whether or not these charges have been collected) for:

    a. All goods or products, sold or distributed;

    b. All operations performed by you or on your behalf;

    c. All pass through charges; and

    d. Rentals.

13. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

    b. Your fulfilling the terms of the contract or agreement.

14. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

MGL 09 05 101

Signal (NY) 000149

    e.   An elevator maintenance agreement; and

    f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

    (1)  That indemnifies an architect, engineer, consultant, inspector or surveyor for injury or damage arising out of:

       (a)  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

       (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    (2)  Under which the insured, if an architect, engineer, consultant, inspector or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, consulting or engineering activities.

Nothing contained in an "insured contract" shall serve to increase the coverage or limits otherwise provided by this policy or its endorsements.

15.  "Lead" means all lead, lead dust, lead-based products, lead-containing materials, lead-containing waste, or any goods, products, or structures containing lead.

16.  "Leased worker" means a person leased to you by an "employee provider firm" under an agreement between you and the "employee provider firm", to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

17.  "Loading(ed) or unloading(ed)" means the handling of property:

    a.   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, rail car or "auto; "

    b.   While it is in or on an aircraft, watercraft, rail car or "auto"; or

    c.   While it is being moved from an aircraft, watercraft, rail car or "auto" to the place where it is finally delivered;

However, "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

18.  "Methyl tertiary-butyl ether" shall mean any product which is known as methyl tertiary-butyl ether, contains methyl tertiary-butyl ether, has the same chemical formulary as methyl tertiary-butyl ether, is a derivative of methyl tertiary-butyl ether, or is generally known in the chemical trade as having a like formulation, structure, or function as methyl tertiary-butyl ether regardless of the name under which it is manufactured, sold or distributed.

19.  "Microbe" means any bacteria, virus, or any other non-fungal, single celled or colony-form organism, including toxins, scents, byproducts or other substances it produces or releases, whose injurious source is in or on a building or its contents. But "microbe" does not mean:

MGL 09 05 101

Signal (NY) 000150

    a.   Microbes that were transmitted directly from person to person;

    b.   Microbes that caused food poisoning, if your business is food processing, sales or serving.

20. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b.   Vehicles maintained for use solely on or next to premises you own, rent, or occupy or premises or locations of others from which you conduct "your work" or operations;

    c.   Vehicles that travel on crawler treads;

    d.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1)  Power cranes, shovels, loaders, diggers or drills; or

        (2)  Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.   Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)  Cherry pickers and similar devices used to raise or lower workers;

    f.   Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

        (1)  Equipment designed primarily for:

            (a)  Snow removal;

            (b)  Road maintenance, but not construction or resurfacing;

            (c)  Street cleaning;

        (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;

        (3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    g.   Vehicles being driven by you over the road as cargo during "loading or unloading" in your operations as a stevedore and/or terminal operator.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

21. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Signal (NY) 000151

22. "Owned Watercraft" includes every description of "watercraft" or other artificial contrivance, including all appurtenances thereto, that you:

    a   Own, charter, lease or borrow; or

    b   Hire or charter broker for or on behalf of others.

It also includes "watercraft" that you don't own, charter, lease or borrow that you are:

    a.   Building or are assisting to build; or

    b.   Reconstructing or converting when such reconstruction or conversion entails a change in dimension, tonnage or type of watercraft, but only with respects to such risks for which builder's risk insurance is purchased by you or the watercraft owner.

The term "watercraft" as used in this definition includes, but is not necessarily limited to vessels, ships, boats, barges or other objects and structures:

    a.   That are used, or are capable of being used, as a means of transportation on water; and/or

    b.   That are designed and intended to float on its own bottom, but whether or not it is:

        (1) Floating;

        (2) Sunken; or

        (3) Temporarily or permanently affixed to or resting on the water's bottom, shore, land, dock, pier, or other structures by use of spuds, anchors, mooring lines, or any other means.

"Owned Watercraft", however, does not include "watercraft" that is chartered by and/or loaned or rented to the named insured with crew for the sole purpose of transporting "employees" as passengers.

23. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a.   False arrest, detention or imprisonment;

    b.   Malicious prosecution;

    c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.   Oral or written publication of material that violates a person's right of privacy.

24. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste regardless of where found.   Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed.

25. "Pollution" means the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants", whether accidental, fortuitous or intentional and whether or not damaging to the environment.

26. "Polychlorinated biphenyl" shall mean any product which is known as polychlorinated biphenyl, contains polychlorinated biphenyl, has the same chemical formulary as polychlorinated biphenyl,

Signal (NY) 000152

is a derivative of polychlorinated biphenyl, or is generally known in the chemical trade as having a like formulation, structure, or function as polychlorinated biphenyl regardless of the name under which it is manufactured, sold or distributed.

27. "Principal" is any person or entity for whom you are performing "your work".

28. a.  "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned.

  b.  "Your work" will be deemed completed at the earliest of the following times:

    (1) When all of the work called for in your contract has been completed.

    (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  c.  This hazard does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of it;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

29. "Property damage" means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

30. "Silica" as used in this policy includes, but is not limited to, silicon dioxide ($SiO2$), silica, silica products, silica fibers, dust containing silica, any other silica byproducts, whether alone or in combination with any substance, product or material.

31. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage,"

MGL 09 05 101

Signal (NY) 000153

"personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or do submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

32. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

33. "Terrorism" as used in this policy shall mean activities against persons, organizations or property of any nature:

   a. That involves the following or preparation for the following:

      (1) Use or threat of force or violence;

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government, or to cause chaos among the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It is reasonable to believe the intent is to intimidate or coerce a government, or to seek revenge or retaliate, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

34. "Through put" when used as a term for rating or as an exposure basis in the Declarations means the total amount of product measured in gallons or barrels (at 42 gallons per barrel) which leaves your premises (as scheduled in the declarations) or pipeline during the policy period.

35. The term "tobacco" shall include, without limitation and regardless whether or not manufactured, sold, or distributed by you, tobacco, raw, cured, cut or otherwise; cigars; cigarettes; and any other tobacco products or products containing tobacco; filler tobacco; pipe tobacco; chewing tobacco; snuff; smoke-less tobacco; tobacco smoke, environmental tobacco smoke; second-hand smoke; and any residues or by-products of tobacco use, consumption, inhalation, manufacture, or storage. "Tobacco" shall also include the paper, wrappers, tips filters, and all other components of cigarettes and cigars; pipes and pouches containing tobacco; and any chemical, mineral, additive, or other product or component customarily, ordinarily, or intentionally sprayed on, applied to, found within, or used in conjunction with tobacco.

36. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

MGL 09 05 101

Signal (NY) 000154

    b.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.   The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

37.  "Your work" means:

    a.   Work or operations performed by you or on your behalf; and

    b.   Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b.   The providing of or failure to provide warnings or instructions.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | |

MGL 09 05 101

Signal (NY) 000155

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SELF INSURED RETENTION ENDORSEMENT  (MGL 09 05 164)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

Section VI, Deductible Liability Insurance, is deleted and replaced by the following:

Applicable to Section I, Coverage Parts A and B and all coverage endorsements attached to this policy.

1.  Our obligation under the "bodily injury" liability, "property damage" liability, "personal injury" liability and "advertising injury" liability coverages to pay damages, expenses or costs on your behalf applies only to the amount of damages, expenses or costs in excess of any self insured retention amount stated on the Declarations Page as applicable to such coverages, and the limits of insurance applicable to "each occurrence" for such coverages will be reduced by the amount of such Self Insured Retention. "Aggregate" limits for such coverages shall not be reduced by the application of such Self Insured Retention amount.

2.  The Self Insured Retention shown on the Declaration apply as follows:

   a.  PER OCCURRENCE BASIS – if the Self Insured Retention is on a "per occurrence" basis, the Self Insured Retention amount applies:

   (1)  Under Coverage Parts A and B and all coverage endorsements, respectively:

      (a)  To all damages and supplementary payments because of "bodily injury", "personal injury", and/or "advertising injury" as the result of any one "occurrence", or

      (b)  To all damages and supplementary payments because of "property damage" as the result of any one "occurrence".

   regardless of the number of persons or organizations who sustain damages because of the "occurrence".

   (2)  Under Coverage Parts A and B and all coverage endorsements combined, to damages and supplementary payments because of "bodily injury", "personal injury", "advertising injury" and/or "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

   (3)  The terms of this insurance, including those with respect to:

      (a)  Our right and duty to defend any "suits" seeking those damages; and

      (b)  Your duties in the event of an "occurrence", claim or "suit"

   apply irrespective of the application of the Self Insured Retention.

MGL 09 05 164

Signal (NY) 000156

(4)  We may pay any part or all of the Self Insured Retention amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Self Insured Retention

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 1 |

MGL 09 05 164

Signal (NY) 000157

## MARINE GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### CLAIM REPORTING REQUIREMENTS ENDORSEMENT  (MGL 09 05 161)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

### SCHEDULE

**Premium:  $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

You must see to it that we are notified as soon as practicable after you become aware of an "occurrence" or incident that may result in a claim under this policy. As a condition precedent to coverage hereunder, immediate written notice must be given to us by or on your behalf, with respect any claims having the following characteristics:

1.  Any incident causing the death of a human being;

2.  Any incident where an injury of the following type occurs or is alleged to have occurred:
    a.  Quadriplegia, paraplegia or other paralysis of any kind;
    b.  Brain injury;
    c.  Serious burns;
    d.  Serious back and/or spinal cord injury;
    e.  Amputation of a limb;
    f.  Multiple fractures – involving more than one member or non-union;
    g.  Internal injuries affecting body organs;
    h.  Permanent or temporary loss of any of the senses; or
    i.  An injury leaving or one that could reasonably be expected to leave severe scarring;

3.  Any "suit"; or

4.  Any occurrence or incident causing or alleged to have caused "bodily injury", "personal injury", or "property damage" where the amount being claimed exceeds or could reasonably be expected to exceed 50% of your deductible or self insured retention, as stated in the Declarations of this policy.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 2 |

MGL 09 05 161

Signal (NY) 000158

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

NAMED INSURED

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

Signal International, LLC
Signal International Texas GP, LLC
Signal International Texas, LP
Signal International, Inc.

And all subsidiary, affiliated, associated or allied companies, corporations, firms, limited liability companies or organizations as now or hereafter constituted provided such entity is under management control of the Named Insured or for which the Named Insured is responsible to provided insurance.

The first Named Insured shall be deemed the sole agent of each and every Named Insured for the purpose of (1) giving notice of cancellation, either by the company or the Named Insured, (2) giving instructions of changes in the policy and accepting changes in this Policy, and (3) the payment of premiums or receipt of return premiums.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any business entity incorporated or organized including the interest as required by any Partnership Agreements and/or Joint Venture Agreements and/or Co-Venture Agreements and/or Limited Liability Company or Similar Agreements entered into by "you".

It is Noted and agreed in the event "your" interest is less than one hundred percent (100%), coverage hereunder shall be limited to "your" percentage ownership interest unless "you" have agreed by contract to effect insurance for one hundred percent (100%) of the Partnership Agreements and/or Joint Venture Agreements and/or Co-Venture Agreements and/or Limited Liability Company Agreements and/or Similar Agreement entered into by "you".

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy<br>of the Subscribing Underwriters |
| Effective Date: | 01/30/2009 | Endorsement No. | 3 |

Signal (NY) 000159

### MARINE GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### ACTION OVER INDEMNITY BUYBACK ENDORSEMENT  (MGL 09 05 103)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

### SCHEDULE

**Premium:  $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  Exclusion 5 of Section II. A. shall be voided, but only to the extent of the coverage provided by this endorsement.

2.  We shall pay on your behalf those amounts that you are liable to pay on account of investigation, defense and indemnity obligations assumed under an "insured contract" and arising from "bodily injury" to any of your employee(s) (excluding captain(s) and/or crew of "owned watercraft" and/or diver(s) whilst engaged in diving operations).  "Bodily injury" shall not include bodily injury that may arise from occupational disease.

3.  All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 4 |

MGL 09 05 103

Signal (NY) 000160

## MARINE GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### ADDITIONAL INSURED & WAIVER OF SUBROGATION ENDORSEMENT (BLANKET)
#### (MGL 09 05 106)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

### SCHEDULE

**Premium: $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1. Section IV. of the policy (Who is an Insured) is amended to include any person or organization that you are obligated by an "insured contract" to include as Additional Insureds, but only with respect to liability arising out of "your work".

2. It is further agreed that we waive any right of recovery we may have against any such Additional Insured because of payments we make for "bodily injury" or "property damage" arising out of "your work" for that Additional Insured, but only to the extent of your obligation under the "insured contract".

3. All Other Terms and Conditions Remain Unchanged.

| | | |
|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.**   Joint Policy |
| | | of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #**             5 |

MGL 09 05 106

Signal (NY) 000161

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

ADDITIONAL INSURED AND WAIVER OF SUBROGATION ENDORSEMENT (SPECIFIC)
(MGL 09 05 107)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

**Premium:  $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.   Section IV of the policy. (Who is an Insured) is amended to include the person(s) or organization(s) shown below as an Additional Insured hereunder to the extent that you are obligated to include them as Additional Insured, but only with respect to "your work".

2.   We waive any right of recovery we may have against such Additional Insured as shown below because of payments we make for "bodily injury" or "property damage" arising out of "your work" done for Additional Insured, but only to the extent of such obligation under the "insured contract". The waiver applies only to the person(s) or organization(s) shown below.

3.    In the event we cancel this policy for any reason or make a change material to the coverage provided by this policy we will mail notification of the cancellation or material change to the person(s) or organization(s) shown below at least thirty (30) days (ten (10) days for non payment of premium) prior to the effective date of such cancellation or material change.

NAME AND ADDRESS:

| Certificate Holder | Holder Address |
|---|---|
| Agrico Sales, Inc. | P O Box 9297, Bridge City,  LA    70094 |
| Applied Financial, LLC and its assigns | 6975 Union Park Center Suite 200, Midvale, UT   84047 |
| Atlantia Offshore Limited | 1255 Enclave Parkway Suite 600,  Houston,  TX   77077 |
| Atlantic Alabama Property Holding Co. Inc | 8500 Heckscher Drive, Jacksonville, FL  32226 |
| ATP Oil & Gas Corporation | 4600 Post Oak Place,  Houston, TX  77027 |
| ATP Oil & Gas Corporation | 4600 Post Oak Place,  Houston,  TX  77027 |
| Blake Offshore Drilling Company LLC | P O Box 6080, Metairie,  LA   70009 |
| Blake Offshore, LLC | P O Box 6080, Metairie,  LA   70009 |
| Bo- Mac Contractors Ltd | P O Box 5386, Beaumont, TX   77726 |
| Briar Hills One Investors, Ltd | 1110 N. Post Oak Rd. Suite 170,  Houston,  TX    77055 |
| Cal Dive International Inc. and as per attached | 400 N. Sam Houston Parkway E,  Suite 400,  Houston,  TX   77060 |
| Conoco Phillips Company | 600 N. Dairy Ashford Suite 1080, Houston,  TX  77079 |
| Delage Landen Financial Services, Inc | 1111 Old Eagle School Road,  Wayne, PA  19087 |

Signal (NY) 000162

| | |
|---|---|
| Diamond Offshore Company | 15415 Katy Freeway,  Houston, TX  77094 |
| Ensco Offshore Company | 500 North Akard, Suite 4300, Dallas,  TX  75201 |
| Ensco Offshore Company | 620 Moulin Road, Broussard, LA  70518 |
| Essex Crane Rental Corp | 1110 Lake Cook Road, Suite 220,  BuffaloGrove,  IL  60089 |
| Essex Crane Rental Corp | 1110 Lake Cook Road, Suite 220,  BuffaloGrove,  IL  60089 |
| Etesco Millennium N.V. | 8411 Preston Road Suite 730,  Dallas,  TX  75225 |
| GE Capital Modular Space | 80 West Lancaster Ave.,  Devon, PA  39503 |
| G. E. Capital Corporation a DE Corp. | 40 Old Ridgebury Road, Danbury, CT  06810 |
| Global Santa Fe Drilling Company | 15375 Memorial Drive,  Houston, TX  77079 |
| Great Southern | P O 23087,  Jackson, MS  39225 |
| Groves Equipment Rental Equipment | P O Box 385,  Groves,  TX  77619 |
| Gulfstar Rental Solutions | 3425 W. Cardinal Drive,  Beaumont, TX 77705 |
| Hertz Corporation | P O Box 21998, Beaumont,  TX  77720 |
| Hertz Equipment Rental Corporation | P O Box 28390, Oklahoma City,  OK  73126 |
| Hertz Equipment Rental | 1907 North Beltline Hwy, Mobile,  AL  36618 |
| Hertz Equipment Rental | 6325 Hwy 347 ,  Beaumont,  TX 77705 |
| Mustang Rental Services | 3200 N. Twin City Hwy.,  Nederland,  TX  77627 |
| Nabors Industries, Inc. and Subsidiaries | 515 West Greens Road, Suite 800, Houston,  TX  77067 |
| Navigare International, Inc. | 3850 N. Causeway Blvd., Suite 1530, Metairie, LA 70002 |
| Nations Rent | 9991 Hwy 69, Port Arthur, TX  77640 |
| NES Equipment Services | 4801 53rd St.,  Port Arthur, TX  77642 |
| NES Rentals Holdings, Inc | 7839 Moriarty Road, Cordova, TN 38018 |
| NLB Corp. | 14302 Highway 44 North, Gonzales, LA  70737 |
| Noble Drilling Services, Inc. | 13135 S. Dairy Ashford, Suite 800,  Sugar Land, TX 77478 |
| Northrop Grumman Ship Systems, Inc. | P O Box 50280, New Orleans, LA  70150 |
| Northrop Grumman Ship Systems, Inc. | P O Box 149, Pascagoula, MS 39568 |
| Parker Drilling Company | 1401 Enclave Pkwy., Suite 600, Houston,  TX  77077 |
| Port Arthur Navigation Industrial Dev Corp | P O Box 1428,  Port Arthur, TX 77641 |
| Port of Pascagoula | P.O. Box 70, Pascagoula,  MS  39568 |
| Prime Industrial | 1635 Industrial Park, Nederland,  TX  77627 |
| Puckett Rents | P O Box 3170,  Jackson, MS  39207 |
| Redfish Rental, Inc | 1750 Hwy. 87 South,  Orange, TX  77630 |
| Ringpower Corporation | 9797 Gibsontron Drive, Riverview, FL  33659 |
| Scott Construction Equipment | P O Box 40218,  Baton Rouge, LA  70835 |
| Scott Machinery & Rentals | 2681 Highway 69 North, Nederland,  TX  77627 |
| Scott Machinery & Rentals | 2681 Highway 69 North, Nederland,  TX  77627 |
| Signal International Texas, LP | 3931 Twin City hwy, Port Arthur,  TX  77642 |
| Signal International, LLC | 601 bayou Cassotte Pkwy., Pascagoula,  MS 39581 |
| Skylar Thompson C/o M&E Food Mar Marts, Inc. | P O Box 1717,  Nederland, TX  77619 |
| South Trust Bank | 4400 Twin City Highway,  Groves, TX  77619 |
| The Offshore Drilling Company | 24 Concord Road, Houma, LA  70360 |
| Transocean Offshore Deepwater Drilling, Inc. | P.O. Box 2765, Houston,  TX  77252 |

Signal (NY) 000163

| Transocean Offshore Deepwater Drilling, Inc. | P.O. Box 2765, Houston, TX  77252 |
| Triple L. Sales & Equipment Rentals | 1800 Strickland Dr., Orange, TX  77630 |
| United Rentals | 1790 Cardinal Drive East,   Beaumont, TX  77705 |
| VT Halter Marine, Inc. | 900 Bayou Casotte Parkway, Pascagoula, MS  39581 |
| Wachovia Financial Services Inc | 1111 Old Eagle School Road, Wayne, PA  19087 |
| William Scotsman, Inc | 8211 Town Center Drive, Baltimore, MD  21236 |
| Williams Scotsman, Inc | 10855 John Ralston Road, Houston, TX  77044 |
| Williams Scotsman, Inc. | 8550 Billingrath Rd., Theodore, AL  36582 |

All Other Terms and Conditions Remain Unchanged.

Insured:       SIGNAL INTERNATIONAL LLC

Effective Date:   01/30/2009

Policy No.

Endorsement No.

Joint Policy
of the Subscribing Underwriters

6

Signal (NY) 000164

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

ADDITIONAL POLICY CONDITIONS  (MGL 09 05 108)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

Condition 13 (Representations) of Section VII is amended to include Unintentional Non Disclosure as follows:

**Unintentional Non Disclosure**

It is agreed that your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by the policy provided such failure or omission is not intentional.  It is further agreed, however, that such error shall be corrected when discovered with appropriate adjustment in premium.

Condition 4 (Duties in the Event of Occurrence, Claim or Suit) of Section VII is amended to include Knowledge of Occurrence and Notice of Occurrence as follows:

**Knowledge of Occurrence**

It is agreed that knowledge of an occurrence by an agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured unless an individual named insured, or a partner, or a manager or an "executive officer" or other person specifically assigned to handle such insurance related matters shall have received such notice from it agent, servant or employee.  Notwithstanding the foregoing, however, this condition shall not apply to the discovery and claim reporting requirements of the Limited Pollution Buy-Back Endorsement, if such endorsement has been attached to and made a part of this policy.

**Notice of Occurrence**

It is agreed that notice of an occurrence, which had been previously given to a Workers Compensation carrier as a Workers Compensation loss and which subsequently gives rise to a liability claim, shall be given to underwriters as soon as practical after the Insured becomes aware that it is or could become a liability claim under this policy.  However, the failure to report such a claim to underwriters at the time of the occurrence shall not be deemed a violation of the claim reporting requirements of this policy.

MGL 09 05 108

Signal (NY) 000165

It is further agreed that the following condition is made a part of this policy:

**Innocent Co-Insureds**

Any failure to fulfill any obligation under this policy by any one named insured, or the commission of any policy violation or breach of warranty by any one named insured, shall not operate to void or to deny coverage to any other named insured.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 7 |

MGL 09 05 108

Signal (NY) 000166

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDED AGGREGATE LIMITS OF INSURANCE (PER PROJECT) ENDORSEMENT**
**(MGL 09 05 111)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

The General Aggregate Limit under Section V - Limits of Insurance and as indicated on the Declarations Page, shall be reinstated for each project for each entity listed below but only:

1.  With respects to "your work" for them which is away from premises owned by or rented to you;

2.  If the policy General Aggregate has been exhausted; and

3.  If there is no other coverage or limits available to you under any other insurance carried by you or for your account that would apply if the General Aggregate Limit of Insurance of this policy was not reinstated.

NAME AND ADDRESS:

As required by an "insured contract", but only with respect to an entity for whom you are directly or indirectly performing "your work".

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 8 |

MGL 09 05 111

Signal (NY) 000167

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CROSS LIABILITY ENDORSEMENT  (MGL 09 05 118)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that the inclusion of more than one corporation, person, organization, firm or entity as an insured under this policy shall not in any way effect the rights of any such corporation, person, organization, firm or entity as respects any claim, demand, suit or judgment made, brought or recovered, by or in favor of any other insured, or by or in favor of any employee of such other insured.  This policy shall protect each corporation, person, organization, firm or entity in the same manner as though a separate policy had been issued to each, but nothing herein shall operate to increase our liability as set forth elsewhere in this policy beyond the amount for which we would have been liable if only one person or interest had been named as the insured.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 9 |

MGL 09 05 118

Signal (NY) 000168

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void.

Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement No.** | 10 |

Signal (NY) 000169

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

LIMITED POLLUTION BUY-BACK (72 HOUR) ENDORSEMENT  (MGL 09 05 130)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium: $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  Exclusions 7. and 8. of Section II. A. shall be voided, but only to the extent of the coverage provided by this endorsement and provided that you establish that all of the following conditions have been met:

    a.  The discharge, dispersal, release or escape was neither expected nor intended by the Insured.  A discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event neither expected nor intended by the Insured.

    b.  The discharge, dispersal, release or escape can be identified as commencing at a specific time and date during the term of this policy.

    c.  The discharge, dispersal, release or escape became known to the Insured within 72 hours after its commencement and was reported to Underwriters within Thirty (30) days thereafter.   This condition is paramount and shall preempt anything to the contrary contained in this policy (prior or subsequent to this endorsement) which may be inconsistent.

    d.  The discharge, dispersal, release or escape did not result from the Insured's intentional and willful violation of any government statute, rule or regulation.

2.  Exclusion 7 of Section II. A. shall not apply to clean up costs that result from mitigation of a seepage and pollution claim from  a covered pollution incident.  Clean up costs shall be defined as those expenses incurred as a direct result of the removal, treatment, detoxification or neutralization of pollutants or hazardous substances as legally mandated by governmental authority excluding, however, the cost of environmental impact studies.  Such clean up expenses are part of (not in addition to) the limits of liability of this policy and will reduce the limits of liability available for payments of judgements or settlements.

3.  Nothing contained in this endorsement shall operate to provide any coverage hereon for liability, expense or costs, whether incurred fortuitously, accidentally and/or intentionally and whether or not environmental in nature, with respect to:

    a.  Any site or location (other than those locations which are scheduled in the Declarations page of this policy) used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substance or the transportation of any waste materials or substances;

    b.  Losses resulting from and/or caused by "owned watercraft";

    c.  Losses which arise solely because of provisions contained in the Oil Pollution Act of 1990, state

MGL 09 05 130

Signal (NY) 000170

and local government environmental Acts, as well as their successor Acts and which would not have been covered hereunder had those Acts not been enforced.  It is also understood and agreed that this insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal or state law or local government Acts and it is a warranty of this insurance that it shall not be submitted to the United States Coast Guard or any other federal or state or local government agency as evidence of financial responsibility.  We do not consent to be guarantors.

4.   All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 11 |

MGL 09 05 130

Signal (NY) 000171

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EMPLOYEE BENEFITS LIABILITY COVERAGE ENDORSEMENT  (MGL 09 05 120)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

**Premium: $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  Exclusion 6 of Section II. A. shall be voided, but only to the extent of the coverage provided by this endorsement.

2.  We will pay those sums which you shall become legally obligated to pay as damages because of any negligent act, error or omission by you, or by any other person for whose acts or omissions you are legally liable, in the "administration" of your "Employee Benefits". We shall have the right and duty to defend any suit against you seeking damages on account of such negligent act, error or omission, even if any of the allegations of the suit are groundless, false or fraudulent.  We may make such investigation and settlement of any claim or suit as we deem expedient, but we shall not be obligated to defend any suit after the applicable limit of insurance has been exhausted by payment of judgments or settlements and/or Supplementary Payments under Section III of the policy to which this endorsement is attached.

    This insurance applies only if:

    a.  The actual or alleged negligent act, error or omission occurs during the policy period, and

    b.  Your claim is reported to us in writing within the policy period or within twelve (12) months following expiration or cancellation of this policy, regardless of when the claim or claims may have first been known by you or by others.

3.  Definitions:

    a.  "Employee Benefits"

        The term "Employee Benefits" means:

        (1) Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, worker's compensation, unemployment insurance, social benefits, disability benefits; and

        (2) Any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

    b.  "Administration"

        The unqualified word "Administration" wherever used shall mean:

        (1) Giving counsel to "employees" with respect to "Employee Benefits";

        (2) Interpreting the "Employee Benefits";

MGL 09 05 120

Signal (NY) 000172

(3) Handling and keeping of records in connection with "Employee Benefits";

(4) Effecting enrollment, termination or cancellation of "employees" under the "Employee Benefits"; provided all such acts are authorized the Named Insured.

c.   "Breach of Fiduciary Duty"

The term "Breach of Fiduciary Duty" shall mean the violation of any of the responsibilities, obligations of duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 or amendments thereto (and any other similar federal, state or other statutes, rules or regulations) with respect to any Plan covered by this endorsement.

4.   This endorsement does not apply to:

a.   Any dishonest, fraudulent, criminal or malicious act or omission, libel, slander, discrimination or humiliation;

b.   "Bodily Injury" to or sickness disease or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

c.   Any claim for failure of performance of contract by an insurer;

d.   Any claim based upon your failure to comply with any law concerning worker's compensation, unemployment insurance, social security or disability benefits;

e.   Any claim based upon:

(1) Failure of stock or other securities or any investments of whatever kind to perform as represented; or

(2) Advice given by you to an employee to participate or not to participate in stock subscription or similar plans;

f.   All sums which you shall become legally obligated to pay as loss because of any "Breach of Fiduciary Duty" or because of any "Breach of Fiduciary Duty" by any other person for which you are legally responsible and arising out of your activity as a fiduciary of any Plan covered by this endorsement; and/or

g.   Any claim made against you based on or attributable to your failure or omission to effect and maintain insurance or bonding for Plan Property or Assets

5.   All Other Terms and Conditions Remain Unchanged.

| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy |
|---|---|---|---|
| | | | of the Subscribing Underwriters |
| Effective Date: | 01/30/2009 | Endorsement # | 12 |

MGL 09 05 120

Signal (NY) 000173

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

EMPLOYEE BODILY INJURY TO A CO-EMPLOYEE ENDORSEMENT  (MGL 09 05 121)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

## SCHEDULE

**Premium:  $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

With respect only to your "employees" who occupy the positions designated under "Covered Positions" below:

Section IV, Who is an Insured, is amended as follows:

Paragraph 2.a.(1) is amended to read:

(1) "Bodily injury" or "personal injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company);

    (b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) above; or

    (c) Arising out of his or her providing or failing to provide professional health care services.

Paragraph 3.a. is deleted.

Covered Positions:

Supervisory and Safety Personnel Only

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 13 |

MGL 09 05 121

Signal (NY) 000174

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NOTICE OF CANCELLATION ADDITIONAL INSURED (SPECIFIC)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

**Premium:  $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

We agree to provide the entities listed below with at least thirty (30) days, except ten (10) days in the event of non-payment of premium, written notice of cancellation;

Noble Drilling Services, Inc.
13135 South Dairy Ashford, Suite 800
Sugarland, TX  77478

Clipper Elite Carriers
2500 City West Blvd, Suite 500
Houston, TX  77042

Sirius Maritime, Ltd
c/o Acordia Northwest
520 Pike Street, 20th floor
Seattle, WA  98101

Port Arthur Navigation District Industrial Dev Corp.
P.O. Box 1428
Port Arthur, TX  77641

Foothill Capital Corporation
1000 Abernathy Road, Suite 1450
Atlanta, GA  30328

Williams Scotsman, Inc.
P.O. Box 986
Baltimore, MD  21203

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement No.** | 14 |

Signal (NY) 000175

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CHARTERER'S LIABILITY ENDORSEMENT  (MGL 09 05 116)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1. Exclusion 12 of Section II. A., Paragraph 2.a.(2)(b) of Section IV, and Condition 17 of Section VII shall be voided, but only to the extent of the coverage provided by this endorsement.

2. Section I.A. of this policy is extended to pay on your behalf all sums which you, as a "Charterer", shall become obligated to pay as damages for:

   a. Liabilities for physical loss or damage to the chartered watercraft, including "demurrage" liability directly resulting therefrom, imposed upon you by reason of charter party provisions with respect to "safe berths," "safe ports" or the watercraft lying "safely afloat" or liabilities for such loss or damage arising out of loading and/or unloading operations.

   b. Liabilities imposed upon you as such charterer by law for property damage, loss of life or bodily injury other than that covered by paragraph a;

   c. Costs and expenses occasioned by the defense of any claim against you for any liability or alleged liability covered by this Policy, provided that such costs, fees and/or expenses are incurred with the prior written consent of this Company.

   For the purposes of this endorsement, "Charterer" means one who hires, rents or leases watercraft or space on watercraft for their exclusive and temporary use.

3. The coverage provided by this endorsement shall be applicable only in respect to:

   Description of watercraft insured:
   Any chartered watercraft must be declared to us prior to commencement of Charter Agreement, and subject to additional premium to be advised.

4. With respects to the coverage provided by this endorsement only, the "coverage territory" is amended to:

   To be determined

   Notwithstanding the coverage territory described above, the coverage provided by this endorsement shall always be subject to Exclusion 29, U.S. Economic and Trade Sanctions Clause, of Section II.A. of the policy to which this endorsement is attached.

5. This endorsement does not provide any insurance coverage for:

   a. Loss of life, or injury to the captain and/or crew of the chartered watercraft;

   b. Any liability assumed under contract in extension of the liability imposed on you by law (other

MGL 09 05 116

Signal (NY) 000176

than as provided in paragraph 2.a. above);

c.  Any liability arising from a bareboat or demise charter of any watercraft;

d.  "Demurrage" except as provided in paragraph 2 of this endorsement. Claims for "demurrage" resulting from quarantine existing at a port of discharge, loading or call without your knowledge shall, however, be covered by this policy;

e.  Loss, damage or expense to cargo carried or to be carried on the chartered watercraft, whether on board or not; or for general average, salvage, sue and labor costs, or collision liability in respect to such cargo or applicable to freight or charter hire;

f.  Any liability arising as the result of the carriage, custody or handling of cargo of a kind prohibited by the terms of the charter party or contrary to law;

g.  Any liability arising as the result of the carriage, custody or handling as cargo on the chartered watercraft of explosives, ammonium nitrate, or toxic or corrosive materials;

h.  Any liability arising as the result of your ordering the watercraft to enter any ice-bound port or place or any place where lights, lightships, marks or buoys on watercrafts arrival are or are likely to be withdrawn by reason of ice, or where there is risk that ordinarily the watercraft will not be able (on account of ice) to enter, reach or leave such port or ports;

i.  Death or injuries to passengers carried or for loss or damage to their baggage or personal effects for which you may be directly or indirectly liable.

6.  All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 15 |

Signal (NY) 000177

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

LIFT LIABILITY ENDORSEMENT  (MGL 09 05 128)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ _Included_**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1. Exclusion 16.d. of Section II. A. and Paragraph 2.a.(2)(b) of Section IV shall be voided, but only to the extent of the coverage provided by this endorsement.

2. Section I.A. of the policy is extended to pay on your behalf all sums which you shall become legally obligated to pay by reason of liabilities imposed upon you by law for loss of or damage to property of others while you are handling said property for the purposes of lifting.

3. This endorsement does not provide any insurance coverage for:

    a. Loss or damage to the crane or any of its parts or appurtenances or any other equipment being used for the handling and/or lifting of the property insured by paragraph 2. above;

    b. Any liability assumed under contract in extension of the liability imposed on you by law;

4. This coverage is limited to your operation(s) described as follows:

    **Description of operation(s):**

    As per your application on file with underwriters

5. All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 16 |

MGL 09 05 128

Signal (NY) 000178

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SHIP REPAIRER'S LIABILITY ENDORSEMENT  (MGL 09 05 140)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  Exclusion 16.d. of Section II. A. and Paragraph 2.a.(2)(b) of Section IV shall be voided, but only to the extent of the coverage provided by this endorsement.

2.  Section I.A. of the policy is extended to pay on your behalf all sums which you, as a ship repairer, shall become legally obligated to pay as damages for:

    a.  Liabilities imposed upon you by law for physical loss of or damage to watercraft and their equipment, cargo, or other interests, occurring only while such watercraft are in your care, custody or control for the purpose of repair (including alteration, remodeling, examination, maintenance, testing and cleaning) at those locations which are scheduled below and those shipyards and/or ship repair facilities and/or locations belonging to others from which you conduct your ship repair operations:

    **Location / Address:**

    **All premises or locations from which you conduct ship repairing operations.**

    or while such watercraft are being moved (including trial trips) for a distance not in excess of 100 miles from covered locations in connection with repairs;

    b.  Your contingent liability in connection with the performance of "your work" by any of your subcontractors, provided such liability would have been covered hereunder if the work had not been subcontracted out.

    c.  Liabilities imposed upon you by law as damages because of "property damage" caused by a watercraft covered under paragraph "2. a." above while in your care, custody or control and/or while being navigated or operated away from premises described in paragraph "2. a." above within permitted waters by your employee(s) or in tow of a tug not owned by or demise chartered to you.  It is a condition of this paragraph 2.c. that any of your employees engaged in the navigation of a watercraft described herein shall possess such license as is required by the United States Coast Guard or any other applicable regulatory authority to perform the duties being carried out by said employee.

    d.  The cost of defending any "suit" against you on any claim based on your liability or alleged liability covered by this insurance if the amount of the claim hereunder exceeds the deductible amount under this policy, but we shall not be liable for the cost or expense of prosecuting or defending any "suit" unless the same shall have been incurred with our written consent.  We reserve the right to conduct the defense of any actions or "suits" at our own expense.  The cost

MGL 09 05 140

Signal (NY) 000179

and expense of prosecuting any claim in which you shall have an interest shall be divided between you and us, proportionately to the amounts that we would be entitled to receive, respectively, if the "suit" should be successful.

e.  Liabilities imposed upon you by law for expenses incurred in removing the wreck of any watercraft or obstruction which is the subject of insurance of paragraph 2.a. of this endorsement and which resulted from an accident or occurrence which is the subject of indemnity under paragraph 2.a. of this endorsement.

3.  This endorsement does not provide any insurance coverage for:

a.  "Bodily injury" and/or "personal injury;"

b.  Any liability assumed under contract in extension of the liability imposed on you by law;

c.  Expenses that you may be held liable to pay by reason of any claim for "demurrage", except with respect to your liability which is as a consequence of loss of or damage to such watercraft resulting in a claim which is the subject of indemnity under paragraph 2. of this endorsement;

d.  Collision liability, tower's liability or liabilities insured against under the customary forms of hull or protection and indemnity policies arising out of the operation of "owned watercraft";

e.  Loss of or damage to property owned, leased to, or in your possession (other than watercraft which are in your custody for the purpose of repair) or utilized by you in your business as a ship repairer;

f.  Loss of or damage to watercraft placed in your care, custody or control for the purpose of storage regardless of whether any work is also to be performed on the watercraft; provided that this exclusion shall not apply to any physical loss of or damage to the watercraft (otherwise covered under this Policy) resulting directly from repairs to said watercraft carried out during such storage period;

g.  The expense of redoing "your work" improperly performed by you or on your behalf or the cost of replacement materials, parts or equipment furnished in connection therewith;

h.  The cost or expense of repairing, replacing or renewing any faultily designed part or parts which cause(s) loss of or damage to the watercraft, or for any expenditure incurred by reason of a betterment or alteration in design;

i.  Any loss of or damage to watercraft occurring while in your care, custody or control and otherwise covered under paragraph 2.a. of this endorsement, but not discovered within twelve (12) months of the delivery of the watercraft to the owner or demise charterer, or within twelve (12) months after work is completed, whichever first occurs;

j.  Loss, damage or expense arising in connection with:

(1)  Any new watercraft that you are building or assisting to build; or

(2)  Any watercraft undergoing reconstruction or conversion which entails a change in dimension, tonnage or type of watercraft, but only with respects to such risks for which builder's risk insurance is purchased by you or the watercraft owner.

4.  All Other Terms and Conditions Remain Unchanged.

| | | | | |
|---|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |

MGL 09 05 140

Signal (NY) 000180

**Effective Date:**  01/30/2009                    **Endorsement #**              17

MGL 09 05 140

Signal (NY) 000181

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

OTHER WORK ENDORSEMENT  (MGL 09 05 135)

This endorsement modifies insurance provided under:

Marine General Liability Form

## SCHEDULE

**Premium: $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  The Ship Repairer's Liability Endorsement is extended to cover the following repair operations that do not come within the scope of your ship repairing operations:

    **Other Repair Operations:**

    To be agreed prior to any other work being covered hereunder.

    The gross charges in respect of such operations shall be declared to us and adjusted at a rate of   (as shown in the Declarations) %.

2.  The expressions "Ship Repairer" and "Ship Repairing" wherever used in this insurance shall be deemed to include your other repair operations.

3.  Paragraph 2.a. of The Ship Repairer's Liability Endorsement shall be deleted and replaced with the following:

    "Liabilities imposed upon you by law for physical loss of or damage to property which is in your care, custody or control for the purpose of being repaired (including alteration, remodeling, examination, maintenance, testing and cleaning) including whilst in transit to or from your premises or whilst in transit to or from specialist repairers' or manufacturers' premises."

4.  All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 18 |

MGL 09 05 135

Signal (NY) 000182

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

TRAVELLING WORKMEN ENDORSEMENT  (MGL 09 05 145)

This endorsement modifies insurance provided under:

Ship Repairer's Liability Endorsement Form

SCHEDULE

**Premium: $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement, the coverage afforded by The Ship Repairer's Liability Endorsement shall be extended whenever any persons employed by or on your behalf are on board the watercraft and/or drilling rig at sea or in any port for the purpose of effecting repairs, even though such persons may be signed on as members of the watercraft's crew.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 19 |

MGL 09 05 145

Signal (NY) 000183

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

U. S. GOVERNMENT WORK DIFFERENCE IN CONDITIONS COVERAGE  (MGL 09 05 146)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

**Premium:  $ <u>Included</u>**

In consideration of the reduced premium charged for this policy and subject to all its terms, conditions and exclusions, it is agreed that with respect to "your work" (either directly or indirectly as a subcontractor of another entity) on any projects for the Government of the United States of America or branches thereof (U. S. Government), this insurance is amended to only cover the Difference in Conditions between the coverage provided by this policy and the extent of the release of liability provided to you or your "principal" by the U.S. Government disregarding any other insurance type provisions contained in the U.S. Government contract. The coverage provided by this endorsement shall not be interpreted as to be providing excess, duplicate or simultaneous insurance or as contributing to or participating with the U.S. Government's indemnity provisions.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 20 |

MGL 09 05 146

Signal (NY) 000184

MARINE GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

STEVEDORE'S LIABILITY ENDORSEMENT  (MGL 09 05 141)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  Exclusion 16.d. of Section II. A. and Paragraph 2.a.(2)(b) of Section IV shall be voided, but only to the extent of the coverage provided by this endorsement.

2.  Section I.A. of the policy is extended to pay on your behalf all sums, which you, as a stevedore, shall become legally obligated to pay as damages:

    a.  Liabilities imposed upon you by law for physical loss or damage to watercraft, their apparel or equipment, their freight and cargoes and other interests on board, the property of others, while being "loaded or unloaded" by you anywhere in the "coverage territory", and to other watercraft, apparel or equipment, their freights and cargoes and other interests on board and to cargoes, wharves, piers, docks, lighters, elevators, cars, car floats or any other property or things (not owned by you), resulting from your operations as a stevedore;

    b.  Your contingent liability in connection with the performance of "your work" described herein by any of your subcontractors, provided such liability would have been covered hereunder if the work had not been subcontracted out;

    c.  Liabilities imposed upon you by law for expenses incurred in removing the wreck of any watercraft or obstruction which is the subject of insurance of paragraph 2.a. of this endorsement and which resulted from an accident or occurrence which is the subject of indemnity under paragraph 2.a. of this endorsement.

3.  This endorsement does not provide any insurance coverage for:

    a.  Any liability assumed under contract in extension of the liability imposed on you by law;

    b.  "Demurrage" except with respect to your liability which is as a consequence of loss of or damage to such watercraft resulting in a claim which is the subject of indemnity under paragraph 2. of this endorsement;

    c.  Liability arising from watercraft repair, construction, conversion or gas freeing;

    d.  Any claim for conversion or other act of dishonest character on your part or the part of your employees and/or agents;

    e.  Loss of or damage to cargo you own;

    f.  Liability arising from or damage to bulk liquid cargo being "loaded or unloaded" unless performed by or under the supervision of a tankerman who is duly certified or qualified as such by the United States Coast Guard.

MGL 09 05 141

Signal (NY) 000185

4. In the event that your operations include the "loading and unloading" of "mobile equipment", rail cars, trucks and/or their trailers and/or other vehicles, then the term "watercraft" shall be interpreted to include such equipment, rail cars and vehicles.

5. All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 21 |

MGL 09 05 141

Signal (NY) 000186

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WATERCRAFT LIABILITY ENDORSEMENT  (MGL 09 05 150)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, and only with respects the watercraft scheduled in this endorsement, it is agreed that:

1.  Section II.A. - Exclusion 32 is amended to read as follows, but only with respects to the coverage provided by the Watercraft Liability endorsement (MGL 09 05 150) and no broader:
    32.  Fines, Penalties
         Fines, Penalties and bad faith damages.

2.  Section II. A. Exclusions 12, 16d and Section VII, Condition 17 shall be voided, but only to the extent of the coverage provided by this endorsement.

3.  In addition to the coverage afforded elsewhere in the policy to which this endorsement is attached, Section I.A. of the policy is extended to pay on your behalf all sums that you shall become obligated to pay as damages for:

    a.  Liability for costs or expenses of, or incidental to, wreck removal of the scheduled watercraft when such removal is compulsory by law, provided, however, that:

        (1)  We shall deduct from such claim for costs or expenses the value of any salvage from or which might have been recovered from the wreck; and

        (2)  We shall not be liable for Sue and Labor, General Average, and/or Salvage or other such costs or expenses that would or could be covered under the terms of the American Institute Hull Clauses (June 2, 1977) Form 7, regardless of whether or not such coverage is in place.

    b.  Liability for physical loss of or damage to cargo not owned by you that is aboard scheduled watercraft for the sole purpose of being transported from one location to another.  Coverage shall not exceed the minimum liabilities and obligations imposed upon you by the U.S. Carriage of Goods by Sea Act, April 16, 1936, regardless of whether the carriage is subject to the said act, and regardless of whether you or the watercraft assumes greater liabilities or obligations.

    c.  "Collision" liability and/or "towers" liability, costs or expenses but with limits of insurance for any one "occurrence" equal to the difference between the hull value (as scheduled in this endorsement) and the amount of insurance as shown in the declarations page of this policy.  The maximum limits of insurance provided by this policy shall be that limit as shown in the declarations page regardless of the number of vessels involved in any one "occurrence".

        For the purpose of this endorsement:

        (1)  "Collision" shall mean your liability (that liability that is commonly insured under lines 158 – 184 of the American Institute Hull Clauses Form 7, June 2, 1977) with respects to your scheduled watercraft coming into contact with another watercraft(s) and/or other floating object(s); and

Signal (NY) 000187

      (2) "Towers" shall mean your liability (that liability that is commonly insured under lines 78 – 111 of the American Institute Tug Form 53R-1, August 1, 1976) with respects to your scheduled watercraft that are either tow boats, tug boats, or push boats to the watercraft being towed by it and/or to another watercraft and/or other fixed and/or floating objects.

4.  Provided they are included in this policy, the following words shall be deleted from the referenced forms:

    a.  Marine Comprehensive Liability Policy: Section IV, Paragraph 2.a. - Delete the words: "or your captain and/or crew of "owned watercraft"".

    b.  Action Over Indemnity Buyback Endorsement: Delete the words:  "captain(s) and/or crew of "owned watercraft" and/or".

    c.  Limited Pollution Buy-Back (72 Hour) Endorsement: Exclusion 3.c. is deleted, but only with respect to your liability, costs or expense for:

        (1) "Bodily Injury";

        (2) Cargo or other property not owned by you on board the scheduled watercraft, or

        (3) Cargo or other property not owned by you on board any other watercraft or contained or stored ashore, or

        (4) For contamination of any cargo or other property resulting from the pumping of oil, petroleum products, chemicals or any other substances of any kind or nature whatsoever directly into any other watercraft, or between tanks of the scheduled watercraft, or into storage tanks or receptacles ashore or elsewhere.

5.  It is further agreed that:

    a.  We shall have the benefit of all defenses, whether personal or not, available to you.  If any law, statute, act and/or jurisprudence limit your liability for a loss, our liability for that loss shall not exceed the amount of such limitation.

    b.  The captain or other qualified pilot is permitted to leave the insured watercraft and to continue its' operation from other points of vantage.  This insurance shall extend to and cover your legal liability or the liability of the insured watercraft or both, for negligent acts of the captain or pilot while so conducting the operation.

    c.  This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners when you or your agent accepts such contracts in accordance with established local practice.

    d.  With respects to scheduled watercraft only, privilege is granted to charter, and/or sub-charter and/or enter into operating agreements and during the term of such charter and/or sub-charter and/or operating agreement, at your option confirmed in writing prior to loss, the insurance provided by this endorsement shall be for the account of owner, sub-charterer, and/or operator and waiver of Underwriter's rights of subrogation against any individual, firm, or corporation, their subsidiaries, factors or assigns for whom or with whom you may be operating is granted.

    f.  Subject to all its terms and conditions, this endorsement is extended to automatically insure "owned watercraft" which you acquire, charter or borrow during the policy term provided:

        (1) The watercraft is not chartered or borrowed on any basis other than demise or bareboat;

        (2) The watercraft is of a similar type and size as the watercraft that are scheduled elsewhere in

this endorsement;

(3) You notify us in writing within thirty (30) days of acquiring or chartering such watercraft; and

(4) You pay additional premium as we may require.

6. It is a condition precedent to coverage that the watercraft insured by this endorsement shall be confined to the use and navigation of:

The inland waters of the U.S. between Brownsville, TX and Apalachicola, FL.

7. Schedule of watercraft:

| No. | Facility | Watercraft | Description | Hull Value |
|-----|----------|-----------|-------------|-----------|
| 1. | Orange | Quida | Tug | $275,000 |
| 2. | Orange | Pelican | Derrick barge | $1,000,000 |
| 3. | Orange | Big Bessie | Derrick barge | $1,200,000 |
| 4. | Orange | Dan B | Tug | P&I ONLY |
| 5. | Orange | | Deck Barge | P&I ONLY |
| 6. | North | TDD1 | Work Barge | P&I ONLY |
| 7. | North | TDD3 | Work Barge | P&I ONLY |
| 8. | North | Miss Kathy | Deck Barge | P&I ONLY |
| 9. | Dock | | Boat, "V" Weldbilt | P&I ONLY |
| 10. | Dock | Drydock, AFDB-5 | Pontoon/Wingwalls | P&I ONLY |
| 11. | Dock | DB-3 | Deck Barge | P&I ONLY |
| 12. | East | M/V Maggie D | Tug | $450,000 |
| 13. | East | Jack King | Deck Barge | P&I ONLY |
| 14. | East | Miss Tiff | Crane Barge | $800,000 |
| 15. | East | MS61 | Deck Barge | P&I ONLY |
| 16. | East | MS64 | Deck Barge | P&I ONLY |
| 17. | East | 20' Yamaha 115 | Custom | P&I ONLY |
| 18. | East | 21' Yamaha 115 | Custom | P&I ONLY |
| 19. | East | 20' Suzuki 90 HP | Custom | P&I ONLY |
| 20. | East | Dual Carrier | Submersible DD | P&I ONLY |
| 21. | East | Mr. T | Deck Cargo Barge w/ ringer crane | $2,000,000 |
| 22. | East | Deck Barge 0578 | 50 x 20 Steel | P&I ONLY |
| 23. | East | Deck Barge 0577 | 50 x 20 Steel | P&I ONLY |
| 24. | East | Deck Barge 0576 | 50 x 20 Steel | P&I ONLY |
| 25. | East | Deck barge 0575 | 50 x 20 Steel | P&I ONLY |
| 26. | East | 16' Lowe | Custom | P&I ONLY |
| 27. | West | Mr. Gus | 17.3x104x22 Steel | P&I ONLY |

Signal (NY) 000189

8.   All other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
| Effective Date: | 01/30/2009 | Endorsement No. | 22 |

Signal (NY) 000190

Print Sequence - 23

## MARINE GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## VOLUNTARY WRECK REMOVAL

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

## SCHEDULE

**Premium: $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1. Item 2.c. of the Wharfinger's Liability Endorsement (MGL 09 05 151) is extended to pay on your behalf all sums that you shall incur for costs and expenses of, or incidental to, the removal, destruction or abatement of, or any attempt to remove, destroy or abate the wreck of any watercraft or any obstruction which is the subject of insurance of paragraph 2.a. and which resulted from an accident or occurrence which is the subject of indemnity under paragraph 2.a. of the Wharfinger's Liability Endorsement (MGL 09 05 151).

2. Item 2.a., of the Watercraft Liability Endorsement (MGL 09 05 150) is extended to pay on your behalf all sums you shall incur for costs and expenses of, or incidental to, the removal, destruction of abatement of, or any attempt to remove destroy or abate the wreck of the scheduled Watercraft which is te subject of insurance under the Watercraft Liability Endorsement  (MGL 09 05 150)

3. The coverage provided under this endorsement shall be sub-limited or reduced to a Limit of Insurance of $100,000 any one accident or occurrence and shall apply in excess of any Self Insured Retention stated on the Declarations Page.

4.    All Other Terms and Conditions Remain Unchanged

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement No.** | 23 |

Signal (NY) 000191

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

WHARFINGER'S LIABILITY ENDORSEMENT  (MGL 09 05 151)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

**Premium:  $ Included**

| | |
|---|---|
| **Minimum And Deposit Premium:** | **Included** |
| **Adjustment Rate Per Watercraft Day:** | **Included** |

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

1.  Exclusion 16.d. of Section II. A. and Paragraph 2.a.(2)(b) of Section IV shall be voided, but only to the extent of the coverage provided by this endorsement.

2.  Section I.A. of the policy is extended to pay on your behalf all sums which you, as a wharfinger, shall become legally obligated to pay as damages for:

    a.  Liabilities imposed upon you by law for physical loss of or property damage to watercraft and the equipment, cargoes, freights and other interests on board, which are in your care, custody or control at:

        **Location / Address:**

        As per your insurance application that is on file with us.

    b.  Liabilities imposed upon you by law for loss of or damage to property other than that referred to in Paragraph 2.a. of this endorsement caused by said watercraft and its/their cargoes, which are in your care, custody or control.

    c.  Liabilities imposed upon you by law for expenses incurred in removing the wreck of any watercraft or any obstruction which is the subject of insurance of paragraph 2.a. of this endorsement and which resulted from an accident or occurrence which is the subject of indemnity under paragraph 2.a. of this endorsement.

3.  This endorsement does not provide insurance coverage for:

    a.  Any liability assumed under contract in extension of the liability imposed upon you by law;

    b.  "Demurrage" except with respect to your liability which is as a consequence of loss of or damage to such watercraft resulting in a claim which is the subject of indemnity under paragraph 2. of this endorsement;

    c.  Loss, damage or expense for collision liability, tower's liability or protection and indemnity liability, arising out of any watercraft owned or operated by you and/or by any affiliated or subsidiary concern or individual or party;

    d.  Watercraft repair, construction, alteration, conversion or gas freeing;

    e.  Loss of or damage to cargo being loaded or unloaded;

MGL 09 05 151

Signal (NY) 000192

    f.   Loss of or damage to watercraft stored ashore or watercraft moored/docked at your facilities which are not of a transient nature.

4.   In consideration of the coverage provided by this endorsement you agree to report to us the number of watercraft days (a watercraft day being defined as a watercraft being at risk for twenty-four (24) consecutive hours or part thereof) that watercraft are at risk at your dock(s) as listed in 2. a. above during the policy period.  Premium is due and payable at the rate as shown in the schedule to this endorsement, which amount shall be applied to the minimum and deposit premium until such deposit is exhausted, at which time additional premium shall be paid.

5.   All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy<br>of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 24 |

MGL 09 05 151

Signal (NY) 000193

**MARINE GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LEAD UNDERWRITER ENDORSEMENT  (MGL 09 05 162)**

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

**SCHEDULE**

**Premium:  $ <u>Included</u>**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

Underwriters subscribing hereto agree to follow *FIREMAN'S FUND INSURANCE COMPANY* as lead underwriter in regard to additions, deletions, alterations, amendments, extensions, endorsements, and cancellations.   Subscribing underwriters also agree to follow *FIREMAN'S FUND INSURANCE COMPANY* as the claims lead with respect appointment of underwriter's claims representatives and payments of fees and claims (excepting ex gratia payments).

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 25 |

MGL 09 05 162

Signal (NY) 000194

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDATORY ENDORSEMENT  (MGL 09 05 109)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

**Premium: $ Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

**Effective 01/30/2009,** the following changes are added to and made part of this policy:

1) **Marine General Liability Policy (MGL 09 05 101)** is amended as follows:

Section II.A. - Exclusions 21 and 22 are deleted.
Section II.A. - Exclusion 26 deleted, but only with respects to "bodily injury" or
"personal injury" arising out of providing or failing to provide professional health
care services.
Section IV - Paragraph 2.a.(1)(d) is deleted.
Section VI - Conditions 2.b.(2) and 2.g. are amended to sixty (60) days.
Section VIII - Definition 14.f. is amended to include a verbal contract provided such contract
is reduced to writing within thirty (30) days of reaching the agreement.

2) **Action Over Indemnity Buyback Endorsement (MGL 09 05 103)** is amended as follows:

The words "and/or diver(s) whilst engaged in diving operations"
are deleted from Item 2. of this endorsement.

3) **Limited Pollution Buyback (72 hour) Endorsement (MGL 09 05 130)** is amended as follows:

Paragraph 1.c. is amended to read: "The discharge, dispersal, release or escape became known to
the Insured within seven (7) days after its commencement and was reported to Underwriters
within thirty (30) days thereafter."

4) **Watercraft Liability Endorsement (MGL 09 05 150)** is amended as follows:

Section II.A. - Exclusion 32 is amended to read as follows,
but only with respects to the coverage provided by the
Watercraft Liability Endorsement (MGL 09 05 150) and no broader:
32. Fines, Penalties
Fines, penalties and bad faith damage
Paragraph 2.c. is amended by deletion of the words:
"the difference between the hull value (as scheduled
in this endorsement)".
Paragraph 4.a. is deleted as respects to the "other than
owners limitation" as required by a written contract.
Paragraph 4.f.(3) is amended to read:

MGL 09 05 109

Signal (NY) 000195

"for any non-powered watercraft valued under $250,000., you must submit to us a quarterly report of acquired or chartered watercraft. For any watercraft powered or valued greater than $250,000., you must notify us in writing within thirty (30) days of acquiring or chartering such watercraft."

**5) Wharfinger's Liability Endorsement (MGL 09 05 151) is amended as follows:**

Exclusion 3.a. shall be voided, but only with respects to "insured contracts" and only to the extent of the coverage provided under this endorsement.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 01/30/2009 | **Endorsement #** | 26 |

MGL 09 05 109

Signal (NY) 000196

MARINE GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

SUBSCRIBERS ENDORSEMENT  (MGL 09 05 157)

This endorsement modifies insurance provided under:

Marine Comprehensive Liability Coverage Form

SCHEDULE

IN WITNESS WHEREOF, the Subscribers hereunder each severally, but not jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agency, this 11th of February, 2009

| Assurer | Policy No. | Amount Insured | Premium | Authorized Signature for Assurer |
|---------|-----------|----------------|---------|----------------------------------|
| FIREMAN'S FUND INSURANCE COMPANY | OML 92001349 | 50% | $259,250. | Fireman's Fund Insurance Company |
| ONEBEACON INSURANCE COMPANY | Q5JH9035809 | 50% | $259,250. | OneBeacon Insurance Company |

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy |
| | | | of the Subscribing Underwriters |
| Effective Date: | 01/30/2009 | Endorsement # | 27 |