# EXHIBIT 18

Fireman's Fund Insurance Company

New Orleans Field Office
Allianz Global Corporate & Specialty®
AGCS Marine Insurance Company
800 W Commerce Rd Ste 106
Harahan, LA  70123-3346
(504) 734-2221
Fax: (504) 731-2226

EXHIBIT
138
Ewing



Fireman's
Fund

A company of Allianz ⑪

May 1, 2009

CLAIRE D. SPEARMAN
WILLIS OF ALABAMA, INC.
P.O.BOX 2407
MOBILE AL  36652

RE:   SIGNAL INTERNATIONAL LLC
      OXL 92001369 of the Subscribing Underwriters

Dear Claire:

We are pleased to enclose the renewal for the account mentioned above, effective on and after 02/06/2009, along with a copy(s) for your records.

Thank you for keeping this account with Fireman's Fund Insurance Company.

If you have any questions, please feel free to contact us at any time.

Sincerely,


Rebecca Cartwright
Customer Service Representative

Encl: Fireman's Fund Insurance Company Renewal OXL 92001369


Willis of Alabama, Inc.
RECEIVED

MAY 0 5 2009


Signal (NY) 000198

## IMPORTANT NOTICE REGARDING TERRORISM COVERAGE

You are hereby notified that under The Terrorism Risk Insurance Act ("The Act"), you have a right to purchase insurance coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of The Act: The term certified act of terrorism means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as amended. The criteria contained in the Terrorism Risk Insurance Act, as amended, for a certified act of terrorism include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended; and

2.  The act resulted in damage:
    a.  Within the United States (including its territories and possessions and Puerto Rico); or
    b.  Outside the United States in the case of:
        (1) An air carrier (as defined in Section 40102 of title 49, United States code) or United states flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States) regardless of where the loss occurs; or
        (2) The premises of any United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW, HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEEDS $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Our records indicate that you previously rejected coverage for losses arising out of certified acts of terrorism,as defined by The Act, when we provided you a quote for insurance. Accordingly, your policy does not currently provide this coverage. However, The Act requires that we again make an offer at this time. If you wish to change your decision and purchase certified acts of terrorism coverage, you must contact your agent or broker representing the Fireman's Fund Insurance Companies at the address specified below to request coverage so we can provide you with a new quote. If you do not do so, it will be presumed that you have rejected this offer of certified act of terrorism coverage.

HL 6 Terrorism Letter - Rejected (12 07)

Signal (NY) 000199

This offer of coverage for losses due to certified acts of terrorism, as defined by The Act, if accepted, will be subject to the limit(s), terms and conditions of any policy or endorsement subsequently issued.

If you have any questions about this or any other insurance matter, please contact your agent or broker representing the Fireman's Fund Insurance Companies.

| | |
|---|---|
| Named Insured: | SIGNAL INTERNATIONAL LLC |
| Insurance Company: | FIREMAN'S FUND INSURANCE COMPANY |
| Policy Number: | OXL92001369 |
| Producer Name: | WILLIS OF ALABAMA, INC. |
| Producer Address: | P.O.BOX 2407 |
| | MOBILE, AL  36652 |

HL 6  Terrorism Letter - Rejected  (12 07)



**Fireman's Fund**

FIREMAN'S FUND INSURANCE COMPANY

Marine Excess Liability (Bumbershoot) Declarations (MXL 100b)

Policy Number OXL 92001369

| Item 1. | Named Insured and Mailing Address: | Agent Name and Address: |
|---|---|---|
| | SIGNAL INTERNATIONAL LLC<br>P O BOX 7007<br>PASCAGOULA, MS  39568 | WILLIS OF ALABAMA, INC.<br>P.O.BOX 2407<br>MOBILE, AL  36652<br>Producer Number: 07077 |

| Item 2. | Policy Period: | From: 02/06/2009 | To: 01/30/2010 |
|---|---|---|---|
| | | At 12:01 AM Standard Time at the Mailing Address Shown Above | |

**Item 3   Limit of Liability**

| | |
|---|---|
| Each Occurrence | $  25,000,000. |
| Annual Aggregate where applicable | $  25,000,000. |

**Item 4   Retention**

$ 25,000. Or amounts recoverable under underlying policies whichever is applicable.

**Item 5.   Premium**

The premium for this policy shall be $ Payable in full at inception.

Terrorism Risk Insurance Act of 2002:
    Deposit Premium:  $Not Covered

**Item 6.   Schedule of Underlying Insurance**

See Attached Form Number (MXL 09 05 102)

**Item 7.   Description of Insured Operations**

As per your insurance application which is on file with us.

**Item 8.   Forms Schedule** (Subject to the Following Forms and Endorsements which are attached hereto):

Marine Excess Liability ("Bumbershoot") Policy (MXL 09 05 101) amended as follows:
    Section I.A. - The first line is amended to read:  "this policy shall pay on behalf of the
    "Insured" in respect of the following (including such expenses listed in the definition of
    "ultimate net loss"):

Including the following Endorsements:

Schedule of Named Insureds
Schedule of Underlying Insurances (MXL 09 05 102)
Vessel Schedule (MXL 09 05 103)
Condition - Additional Insured/Waiver of Subrogation (Blanket) (MXL 09 05 106)

Signal (NY) 000201

Coverage - Pollution Buy-Back Endorsement (Sudden and Accidental Basis) (MXL 09 05 121)
Claims Made Amendment - Follow Form
Vessel Quarterly Reporting - No Premium adjustment unless schedule increased or decreased
 by 10%
Condition - Lead Underwriters Clause (MXL 09 05 137)
Subscribers Endorsement (MXL 09 05 125)
Amendatory Endorsement

**FIREMAN'S FUND INSURANCE COMPANY**
777 San Marin Drive
Novato, CA  94998

In witness hereof, this Company has caused this Policy to be attested, and, if required by state law, this Policy shall not be valid unless countersigned by an authorized representative of the Company.

SECRETARY

PRESIDENT

Dated at New Orleans this 1st of May, 2009.

Fireman's Fund Insurance Company

MARINE EXCESS LIABILITY (BUMBERSHOOT) POLICY (MXL 09 05 101)

(Note:   Section, Form or Clause titles or headings are for reference purposes only and have no bearing on the interpretation of the Sections, Forms or Clauses.

Other words and phrases that appear in "quotations" have special meaning. Refer to Definitions, Section III.)

In consideration of the payment of premiums and subject to the statements in the Declarations and all the terms, conditions, exclusions and limits of liability of this policy, the "company" agrees with the "named insured" as follows:

**Section I.**      **Coverage**

This policy shall indemnify the "insured" for their "ultimate net loss" with respect the following:

A.  All liabilities insured against under any scheduled "underlying policy" as set forth in the Schedule of "Underlying Insurance" attached hereunder.  This policy shall provide excess coverage on a "following form" basis over the scheduled "underlying insurance(s)", always being subject to the provisions, limitations, terms, conditions, definitions and exclusions of this policy.

B.  All liabilities NOT covered under a scheduled "underlying policy" as set forth in the Schedule of "Underlying Insurance" arising from:

1.  Protection and Indemnity risks for which coverage would be provided by form SP23;

2.  General average, collision liabilities, salvage, salvage charges and related sue and labor for which coverage would be provided by the American Institute Hull Clauses (6/77);

3.  All other sums which the "insured" shall become legally liable to pay as "damages" on account of:

(a)  "personal injury",-

(b)  "property damage", or

(c)  "advertising injury"

caused by or arising out of each "occurrence" happening within the "geographical limits" of this policy;

provided such liabilities are not excluded by a scheduled "underlying policy" contained within the Schedule of "Underlying Insurance", subject always to all of the provisions, limitations, terms, conditions, definitions and exclusions of this policy.

Notwithstanding any of the foregoing, this insurance shall not cover any liabilities arising out of the insolvency or inadequacy of capital of any "insured" or of any of the insurers listed under the Schedule of "Underlying Insurance".

**Section II.**      **Limit of Liability**

A.  With respect to Coverage A and Coverage B of Section I., the limit of liability shown in Item 3 of the Declarations and the rules below describe the most this "company" will pay, regardless of the number of:

1.  "Insureds";

MXL 09 05 101

Signal (NY) 000203

2. Claims made or "suits" brought;

3. Coverages provided under this policy; or

4. Persons or organizations making claims or bringing "suits".

B. The limits of liability of this policy will apply as follows:

1. Each "Occurrence"

Subject to the each "occurrence" limit of liability stated in Item 3 of the Declarations this "company" shall only be liable for:

a. The "ultimate net loss" each "accident" or "occurrence" excess of the limit(s) set out in the Schedule of "Underlying Insurance", or

b. The "ultimate net loss" each "accident" or "occurrence" excess of the "retention" stated in Item 4. of the Declarations where an "accident" or "occurrence" not covered by the "underlying insurance" is being presented under Section I.B. of this policy.

With respect to general average, collision liabilities, tower's liabilities, salvage, salvage charges, sue and labor expenses and protection and indemnity, the sum(s) of said expenses and liabilities insured under the "underlying insurance" shall be deemed to be the amount(s) of the limit(s) of said "underlying insurance".

If an applicable aggregate limit of liability has been reduced by payment of "damages" to an amount that is less than the limit for each "occurrence" stated in Item 3. of the Declarations, the remaining "aggregate" limit of liability is the most that will be subject to the each "occurrence" limit arising out of any other "occurrence" subject to that "aggregate".

2. In the "aggregate"

This "company's" limit of liability shall be subject to the "aggregate" amount stated in Item 3. of the Declarations where:

a. Any "underlying insurance" contains coverage(s) which are subject to an aggregate limit of liability.

b. Any "product-completed operations hazard" coverage is provided under this policy.

c. Any "accident" or "occurrence" not covered by the "underlying insurance" is being presented under Section I.B. of this policy.

Any "accident" or "occurrence" paid hereunder subject to an aggregate limit of liability will reduce the amount of the applicable aggregate limit of liability available for payment of "damages" arising out of any other "occurrence".

Subject to the limit of liability of this policy in respect of each "accident" or "occurrence", this policy's "aggregate" limit shall apply separately to each "underlying insurance" which is subject to an aggregate limit of liability.

In the event of reduction or exhaustion of an aggregate limit of liability contained within an "underlying policy" by reason of losses paid thereunder, the insured shall make every reasonable effort to have such "underlying policy" reinstated or replaced in full, notwithstanding anything contained herein to the contrary.

The "insured" shall give this "company" written notice as soon as practicable of any change in the status or scope of such aggregated limits contained in any "underlying insurance".

MXL 09 05 101

The limits of liability of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the limit of liability.

**Section III.    Definitions**

A.  "Accident" shall mean an unexpected and unintended happening or event resulting in "bodily injury" or "property damage".

B.  "Advertising Injury" shall mean injury arising out of one or more of the following offenses:

    a.  Oral, written, televised, videotaped or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of a registered trademark, service mark, trade name, copyright, title or slogan.

C.  "Aggregate" shall mean the amount stated in Item 3 of the Declarations which amount shall be the maximum amount for which the "company" shall be liable for all "damages" during the policy period.

D.  "Aircraft" shall mean any heavier than air or lighter than air aircraft designed to transport persons or property.

E.  "Automobile" shall mean:

    1.  A land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include "mobile equipment" as hereinafter defined; or

    2.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

F.  "Bodily injury" shall mean:

    1.  Bodily injury, sickness or disease; or

    2.  Mental anguish, mental injury, humiliation, shock or disability

sustained by a person, including death resulting from any of these at any time.

G.  "Company" shall mean that entity stated on the Declarations Page or those entities stated on the Subscribers Endorsement attached hereto.

H.  "Damages" shall mean those amounts for which the "insured" becomes legally obligated to pay, including:

    1.  Compromise settlements,

    2.  Hospital, medical and funeral charges, and

    3.  All sums paid as salaries, wages, compensation, fees, charges and legal costs, premiums on attachment or appeal bonds, or interest expenses, for doctors, lawyers, nurses and investigators and other persons and for litigation, settlement, adjustment and investigation of claims and

MXL 09 05 101

Signal (NY) 000205

"suits" where same are paid as a consequence of any "occurrence" covered hereunder excluding, however, the salaries of the "insured's" employees and permanent general office overhead and also excluding any part of such expense for which the "insured" is covered by the terms of other insurance.

I.   "Following form" shall mean those terms and conditions of the "underlying insurance" being made a part of this policy, except with respect to:

1.   Any contrary provision contained in this policy; or

2.   Any provision in this policy for which a similar provision is not contained in the "underlying insurance".

With respect to the exceptions stated above, the provisions of this policy will apply.

J.   "Geographical Limits" shall mean the operations of the "insured" anywhere in the world, as permitted by the laws, rules and/or regulations of the United States of America.

K.   "Impaired property" shall mean tangible property, other than a covered product or covered operation, that cannot be used or is less useful because:

1.   It incorporates a covered product or covered operation that is known or thought to be defective, deficient, inadequate or dangerous; or

2.   The "insured" has failed to fulfill the terms of a contract or agreement.

if such property can be restored to use by:

1.   The repair, replacement, adjustment or removal of a "covered product" or a "covered  operation"; or

2.   The "insured" fulfilling the terms of the contract or agreement.

L.   "Insured", whenever unqualified includes not only the "named insured" but also the following:

1.   Any executive officer, director, stockholder or employee of the "named insured", but only while acting in their capacity as such within the scope of their employment;

2.   Any person, organization, trustee or estate to whom the "named insured" is obligated by virtue of an "insured contract" to provide insurance such as is afforded by this policy, but only in respect of operations performed by or on behalf of the "named insured".

3.   With respect to any "automobile" owned by the "named insured" or hired for use on behalf of the "named insured" or to any "aircraft" owned by the "named insured" or hired for use on behalf of the "named insured", any person while using such "automobile" or "aircraft" and any person or organization legally responsible for the use thereof, provided the actual use of the "automobile" or "aircraft" is with the permission of the "named insured".  The insurance extended by this paragraph (3), with respect to any person or organization other than the "named insured", shall not apply:

a.   to any person or organization, or to any agent or employee thereof operating an "automobile" repair shop, public garage, sales agency, service station, or public parking place, with respect to any "occurrence" arising out of the operation thereof;

b.   to any manufacturer of "aircraft", engines or other aviation accessories, or any aviation sales or service or repair organization or airport or hanger operator or their respective employees or agents, with respect to any "occurrence" arising out of the operation thereof; or

c.   with respect to any hired "automobile" or "aircraft", to the owner thereof or any employee of

MXL 09 05 101

Signal (NY) 000206

such owner.

4. Additional Insureds whom the "insured" has notified the "company" in accordance with Section V, Condition B. as having been added to the "underlying insurance" during the currency of this policy.

5. No captain or crewmember is to be considered an "insured" or additional insured or in any other manner covered under this policy with respect to marine protection and indemnity risks, including collision and tower's liability and vessel pollution insurance, unless:

   a. Coverage is provided in the Schedule of "Underlying Insurance" and then coverage hereunder shall only operate as excess of such coverage; or

   b. The captain or crewmember of a vessel insured hereunder has an ownership interest in the company that owns the scheduled vessel.

M. "Insured contract" shall mean that part of any contract or agreement entered into by the "insured" in the usual course of the business operations of the "insured" in which the "insured" assumes tort liability of another to pay "damages" because of "bodily injury" or "property damage" to a third person or organization where the contract is made prior to the injury or offense. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

N. "Lead" means all lead, lead dust, lead-based products, lead-containing materials, lead-containing waste, or any goods, products, or structures containing lead.

O. "Methyl tertiary-butyl ether" shall mean any product which is known as methyl tertiary-butyl ether, contains methyl tertiary-butyl ether, has the same chemical formulary as methyl tertiary-butyl ether, is a derivative of methyl tertiary-butyl ether, or is generally known in the chemical trade as having a like formulation, structure, or function as methyl tertiary-butyl ether regardless of the name under which it is manufactured, sold or distributed.

P. "Microbe" means any bacteria, virus, or any other non-fungal, single celled or colony-form organism, including toxins, scents, byproducts or other substances it produces or releases, whose injurious source is in or on a building or its contents. But "microbe" does not mean:

1. Microbes that were transmitted directly from person to person;

2. Microbes that caused food poisoning, if your business is food processing, sales or serving.

Q. "Mobile Equipment" shall mean a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, that is:

1. Not subject to motor vehicle registration, or

2. Maintained for use exclusively on premises owned by or rented to the "named insured", including the ways immediately adjoining, or

3. Designed for use principally off public roads, or

4. Designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-transit type), graders, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or

MXL 09 05 101

Signal (NY) 000207

principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "automobiles".

R.  "Named insured" shall mean:

1.  The entity listed in Item 1. of the Declarations of this policy; or

2.  Any organization, other than a partnership, joint venture or limited liability company, over which a majority interest is maintained and to which more specific insurance does not apply, other than one which is newly acquired or formed.

S.  "Occurrence" shall mean an event or a continuous or repeated exposure to conditions that unintentionally causes injury, damages or destruction during the policy period and was unexpected by the "insured".  Any number of such injuries, damage or destruction resulting from a common cause or from exposure to substantially the same conditions shall be deemed to result from one "occurrence".

T.  "Personal injury" shall mean injury, other than "advertising injury", arising out of one or more of the following offenses:

1.  "Bodily injury";

2.  False arrest, detention or imprisonment;

3.  Malicious prosecution;

4.  Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner landlord or lessor;

5.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

6.  Oral or written publication of material that violates a person's right of privacy.

U.  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste regardless of where found.  Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed.

V.  "Pollution" means the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants", whether accidental, fortuitous or intentional and whether or not damaging to the environment.

W.  "Polychlorinated biphenyl" shall mean any product which is known as polychlorinated biphenyl, contains polychlorinated biphenyl, has the same chemical formulary as polychlorinated biphenyl, is a derivative of polychlorinated biphenyl, or is generally known in the chemical trade as having a like formulation, structure, or function as polychlorinated biphenyl regardless of the name under which it is manufactured, sold or distributed.

X.  "Product-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from the premises owned, rented or controlled by the "insured" and arising out of "covered products" or "covered work" of the "insured" except:

1.  Products that are still in the physical possession of the "insured"; or

2.  Work that has not yet been completed or abandoned.  "Covered work" will be deemed completed at the earliest of the following times:

MXL 09 05 101

Signal (NY) 000208

a.  When all of the work called for in the "insured's" contract has been completed;

b.  When all of the work to be performed at a job site has been completed if the "insured's" contract calls for work at more that one site; or

c.  When that part of the work performed at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

This hazard does not include "bodily injury" or "property damage" arising out of:

1.  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of it;

2.  The existence of tools, uninstalled equipment or abandoned or unused materials.

The term "covered products" and "covered work" used herein, and elsewhere in this policy, shall mean:

1.  "Covered products" shall mean:

a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) The "insured";

   (2) Others trading under the "insured's" name; or

   (3) A person or organization whose business or assets have been acquired by the "insured"; and

b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Including:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of such "covered products"; and

b.  The providing or failure to provide warnings or instructions.

"Covered products" do not include any vending machines or other property rented to or located for use of others but not sold.

2.  "Covered work" or "covered operations" shall mean:

a.  Work or operations performed by the "insured" or on the "insured's" behalf;

b.  Materials, parts or equipment furnished in connection with such work or operations.

Including:

a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of such work or operations; and

b.  The providing of or failure to provide warnings or instructions.

MXL 09 05 101

Signal (NY) 000209

Y. "Property damage" shall mean physical loss of or direct physical damage to or destruction of tangible property (other than property owned or occupied by the "insured").

Z. "Retention" shall mean the amount of each loss or "occurrence", as stated in Item 4 of the Declarations, that shall be retained by the "insured".

AA. "Silica" as used in this policy includes, but is not limited to, silicon dioxide (SiO2), silica, silica products, silica fibers, dust containing silica, any other silica byproducts, whether alone or in combination with any substance, product or material.

BB. "Suit" shall mean a civil proceeding in which injuries or "damages" to which this insurance applies are alleged. "Suit" includes:

  a. An arbitration proceeding in which such "damages" are claimed and to which the "insured" must submit or does submit with the "company's" consent; or

  b. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the "insured" submits with this "company's" consent.

CC. "Terrorism" shall mean activities against persons, organizations or property of any nature:

  1. That involves the following or preparation for the following:

    a. Use or threat of force or violence;

    b. Commission or threat of a dangerous act; or

    c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

  2. When one or both of the following applies:

    a. The effect is to intimidate or coerce a government, or to cause chaos among the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b. It is reasonable to believe the intent is to intimidate or coerce a government, or to seek revenge or retaliate, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

DD. The term "tobacco" shall include, without limitation and regardless whether or not manufactured, sold, or distributed by you, tobacco, raw, cured, cut or otherwise; cigars; cigarettes; and any other tobacco products or products containing tobacco; filler tobacco; pipe tobacco; chewing tobacco; snuff; smoke-less tobacco; tobacco smoke, environmental tobacco smoke; second-hand smoke; and any residues or by-products of tobacco use, consumption, inhalation, manufacture, or storage. "Tobacco" shall also include the paper, wrappers, tips filters, and all other components of cigarettes and cigars; pipes and pouches containing tobacco; and any chemical, mineral, additive, or other product or component customarily, ordinarily, or intentionally sprayed on, applied to, found within, or used in conjunction with tobacco.

EE. "Ultimate net loss" shall mean the total "damages" for which insurance is provided under Section I., Coverage, which exceed the "underlying limit(s)".

FF. "Underlying insurance" and "underlying policy(ies)" shall mean the policy or policies, renewals or replacements thereof, listed in the Schedule of "Underlying Insurance" forming a part of this policy.

GG. "Underlying limit(s)" shall mean either the amount(s) of the limit(s) set out in Schedule of "Underlying Insurance" or the "insured's" "retention".

MXL 09 05 101

Signal (NY) 000210

The definitions of any "underlying policy" shall be incorporated herein to the extent they do not conflict with definitions contained in this policy. In the event of a conflict, the definitions contained herein shall be paramount.

**Section IV.    Exclusions**

A. Absolute Exclusions

The following exclusions shall be paramount and shall override and supersede any provision of any "underlying policy" or inconsistent provision of this policy unless otherwise agreed by this "company" and specifically endorsed hereon.

This Policy shall not apply to:

1. Health Hazards

   a. Any liability, expense or costs (including but not limited to investigation, testing, cleaning up or removal) for claims or "suits" for "bodily injury", "property damage", "personal injury" or "advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, absorption of, contact with, exposure to, existence of, or presence of:

      (1) "Asbestos", "lead", "polychlorinated biphenyl", "silica", "tobacco", benzene, formaldehyde, manganese, "fungi" or "microbes", coal dust, talc, dioxin, pesticides, herbicides, "methyl tertiary-butyl ether" (MTBE); or

      (2) Other substances, materials, wastes or emissions, noise or environmental disturbance where you are or may be held liable for any reason including, but not limited to, as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by you or on your behalf of such substances, materials, wastes or emissions, noise or environmental disturbance.

   b. Any loss, cost or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of substances, materials, products, wastes or emissions, noise or environmental disturbance as identified in 1.a.(1) and (2) above.

2. Expected or Intended Injury

   "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

3. Infidelity and/or Dishonesty

   Any claim(s) of an "insured" whose infidelity, dishonesty and/or fraud caused the loss for which that "insured" seeks indemnity, whether committed individually or in collusion with others, and whether or not such act(s) be committed during regular business hours.

4. Punitive Damages, Fines and Penalties Exclusion

   Any obligation to pay fines, bad faith damages, penalties or exemplary, or punitive damages, including treble damages, or any other damages resulting from the multiplication of compensatory damages. However, if a "suit" shall have been brought against the "insured" for a claim covered by this policy seeking both compensatory and punitive or exemplary damages, then this "company" will afford a defense to such action. The "company", however, shall not have any obligation to pay for any costs, interest, or damages attributable to bad faith damages,

MXL 09 05 101

Signal (NY) 000211

fines, punitive or exemplary damages.

5. Advertising Injury

Any liability, expense or costs with respect to "advertising injury" or claims against the "insured" arising out of:

a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

b. The failure of goods, products or services to conform with advertised quality or performance;

c. The wrong description of the price of goods, products or services; or

d. Infringement of copyright, title or slogan.

6. False Advertising, Willful Intent

Any liability, expense or costs with respect to "personal injury" or "advertising injury" or claims against the "insured" arising out of:

a. Oral, written, televised, videotaped or electronic publication of material, if done by or at the direction of the "insured" with knowledge of its falsity;

b. Oral, written, televised, videotaped or electronic publication of material whose first publication took place before the beginning of the policy period;

c. The willful violation of a penal statute or ordinance committed by or with the consent of the "insured"; or

d. The infringement of any patent.

7. National, State or Local Government Claims

Any claim(s) made or "suits" brought by any National, State or Local Government or sub-divisions or agencies thereof, unless such claims are for "damages" occasioned by actual or alleged "bodily injury" or "property damage".

This exclusion shall only apply to such claims as are made under Section I.B. and which are not covered by an "underlying policy".

8. Non-Payment or Delay in Payments

Any claims or "suits" alleging:

a. Non-payment or delay in payment of charter hire, rents, loans, accounts, mortgages, promissory notes, checks, drafts or other evidences of debt;

b. The misappropriation of minerals or non-payment of mineral royalties.

9. Hostile Acts, Warlike Operations and "Terrorism"

Any liability for, any loss, damage, injury or expense directly or indirectly caused by, or contributed to by, or resulting from, or incurred by reason of, or arising out of any one of the following:

a. Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or naturalization, or the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

b. Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or

MXL 09 05 101

Signal (NY) 000212

radioactive force or matter, or by any mine, bomb or torpedo;

c.  Hostilities or warlike operations (whether there be a declaration of war or not), but the phrase "hostilities or warlike operations (whether there be a declaration of war or not)" shall not exclude collision or contact with "aircraft", rockets or similar missiles or with any fixed or floating object, stranding, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other vessel involved herein, is performing) by a hostile act by or against a belligerent power; for the purpose of the foregoing, power includes any authority maintaining naval, military or air forces in association with a power. In addition to the foregoing exclusions, this insurance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not the "Insured's" liability therefore is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage and disembarkation of troops, combatants, or material of war, or the placement of the watercraft in jeopardy as an act or measure of war taken in the actual process of a military engagement, with or without the consent of the "insured", shall be considered a warlike act for the purpose of this insurance;

d.  The consequence of civil war, revolution, rebellion, insurrection, military or usurped power, the imposition of martial law, or civil strife arising therefrom, or piracy;

e.  Malicious acts or vandalism, strikes, lockouts, political or labor disturbances, civil commotion, riots, or the acts of any person or person taking part in such "occurrence" or disorder.

f.  "Terrorism" and/or any costs or expenses the "insured" or others directly or indirectly incur with respect to the steps taken to prevent, suppress, control or reduce the consequences of any actual, attempted, anticipated, threatened, suspected or perceived "terrorism".

10.  Chemical, Biological, Bio-Chemical, Electromagnetic Weapons

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

This exclusion shall be paramount and shall override any inconsistency contained in this policy.

11.  ERISA Law Liability

To any "personal injury" or "property damage" arising out of any duties or responsibilities imposed upon the "insured" by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (or any amendment addition thereto).

12.  Pollution Liability

a.  "Personal injury", "property damage" or "advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

b.  Any loss, cost or expense arising out of any

(1)  Request, demand, order or statutory or regulatory requirement that any insured or others test for , monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(2)  Claim or suit by or on behalf of a governmental authority for damages because of testing

MXL 09 05 101

Signal (NY) 000213

for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

13. Failure to Perform

Any liability or expense from the failure of the "insured's" "covered products" or "covered operations" to meet any predetermined level of fitness or performance and/or guarantee of such fitness or level of performance and/or any consequential loss arising therefrom.

14. Partnership or Joint Venture

Any Liability or expense arising out of the conduct of any partnership or joint venture of which the "insured" is a partner or member and which is not shown in this policy as a "named insured". When such joint venture or partnership of which the "insured" is a partner or member is named in this policy as a "named insured", this policy will respond, subject to all terms and conditions, for an amount not exceeding the "insured's" participation in such partnership or joint venture.

15. Damage to Property

Any "property damage" arising out of:

a. Property owned, rented, or occupied by the "insured";

b. Premises sold, given away or abandoned by the "insured", if the "property damage" arises out of any part of those premises;

c. Property loaned to the "insured";

d. That particular part of real property which the "insured" or any independent contractors or subcontractors working directly or indirectly on the "insureds" behalf are performing operations, if the "property damage" arises out of those operations; or

e. That particular part of any property that must be restored, repaired or replaced because the insured incorrectly performed a "covered operation" on it.

Paragraph b. of this exclusion does not apply if the premises are a result of a "covered operation" and were never occupied, rented or held for rental by the "insured".

Paragraphs c., d. and e. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph e. of this exclusion does not apply to "property damage" included in the "product-completed operations hazard".

16. Damage to "Impaired Property" or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

a. A defect, deficiency, inadequacy or dangerous condition in a "covered product" or a "covered operation"; or

b. A delay or failure by the "insured" or anyone acting on the "insureds" behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to a "covered product" or a "covered operation" after it has been put to its intended use.

17. Recall of Products, Work or "Impaired Property"

MXL 09 05 101

Signal (NY) 000214

Any loss, cost or expense arising from the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.   A "covered product";

a.   A "covered operation"; or

b.   "Impaired property"

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

18.   Damage to a "Covered Product"

"Property damage" to a "covered product" arising out of it or any part of it.

19.   Damage to a "Covered Operation"

"Property damage" to a "covered operation" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed by a subcontractor working directly or indirectly for the "named insured".

20.   Director's and Officer's

a.   Any claims or "suits" arising out of the "insured's" capacity, duty or responsibility as an Officer, Director or Trustee of any corporation as a result of any breach of fiduciary duty or improper conduct or conflict of interest in the performance of any duties, responsibilities or accountability as an Officer, Director or Trustee, including, without limitation, any actual or alleged misstatement, misleading statement, gain of personal profit or advantage to which the "insured" were or are not entitled legally, any dishonest act, or bad faith conduct, within their capacity as an Officer, Director or Trustee, or with respect to the capital or assets of the Corporation, or any action taken beyond the scope of authority as an Officer, Director or Trustee;

b.   Any actual or alleged liability of any Officer, Director or Trustee arising out of or asserted in a shareholder derivative action;

c.   Any actual or alleged liability which would be payable under the terms of coverage of a Directors and Officers Liability Insurance Policy or a Directors and Company Reimbursement Indemnity Policy of the type issued by stock insurance companies of the United States;

d.   Any actual or alleged liability based upon or arising out of any intentional or unintentional violation of:

   (1)   The Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any state blue sky or Canadian securities law.

   (2)   Any similar state blue sky, federal or Canadian statutes regulating securities similar to the foregoing, or as they may be amended, any rules or regulations adopted pursuant thereto, or any other state blue sky or Canadian laws or common laws relating to securities; or

e.   Any actual or alleged liability arising out of or incidental to any alleged violation(s) of any federal or state law regulating, controlling and governing antitrust or the pro-hibition of

MXL 09 05 101

Signal (NY) 000215

monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce including, without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act and the Hart-Scott Rodino Anti-trust Improvements Act.

21. Professional Indemnity, Error and Omissions

Any liability, expense or cost for claims or "suits" arising out of or allegedly arising out of a breach of professional duty by reason of any negligent act, error or omission, malpractice or mistake of a professional nature committed or alleged to have been committed by or on behalf of the "insured" in rendering or failing to render service or advice of a professional nature.

Professional service includes but is not limited to the preparing, approving, or consulting or failing to prepare, approve or consult, with respect to maps, drawings, plans, opinions, reports, surveys, designs, processes, procedures or specifications and supervisory, inspection, engineering, or data processing services.

22. Employment Practices

Any claim arising out of any:

a.   Refusal to employ or retraction of any employment offer;

b.   Suspension or termination of employment, including wrongful discharge;

c.   Any employment related practices, policies, acts or omissions including but not limited to:

    (1) The coercion, demotion, evaluation, reassignment, discipline, civil or criminal prosecution, defamation, harassment, or humiliation;

    (2) Discrimination or harassment of any nature whatsoever based on race, color, creed, religion, sex, sexual orientation, national origin, alienage, age, handicap or disability;

    (3) Actual or alleged violations of the Americans With Disabilities Act;

d.   Consequential "personal injury" as a result of c.(1) through c.(3) above

Suffered or allegedly suffered by employees or former employees of the "insured" or applicants for employment by the "insured" or any relative of such employee, former employee or applicant.

This exclusion applies whether the "insured" may be held liable as an employer or in any other capacity and to any obligation to share "damages" with or to repay someone else who must pay "damages" because of the injury.

23. Underinsured / Uninsured Motorist

Any claim excess of no-fault, underinsured or uninsured motorist insurance as may be included in the "automobile" liability policy listed in the Schedule of "Underlying Insurance", or as may be otherwise insured.

24. Nuclear

a.   Any liability, expense or costs for "personal injury" or "property damage":

    (1) With respect to which any "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by the Nuclear Energy Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of

MXL 09 05 101

Signal (NY) 000216

its limits of liability; or

    (2) Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b.  Under any medical payments coverage, or under any supplementary payments provision relating to immediate medical or surgical relief to expenses incurred with respect to "bodily injury", sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of a nuclear facility by any person or organization.

c.  Under any liability coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

    (1) The nuclear material is at any nuclear facility owned by or on behalf of an "insured" or has been discharged or dispersed therefrom;

    (2) The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    (3) The injury, sickness, disease, death or destruction arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possession or Canada, this exclusion (c.3.) applies only to injury to or destruction of property at such nuclear facility.

As used in this exclusion:

"Hazardous Properties" shall include radioactive, toxic or explosive properties;

"Nuclear Materials" shall mean source material, special nuclear material or by-product material;

"Source Material", "Special Nuclear Material" and "By-Product Material" shall have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" shall mean any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"Waste" shall mean any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under paragraph (a) or (b) thereof;

"Nuclear Facility" shall mean:

a.  Any nuclear reactor;

b.  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

c.  Any equipment or device used for the processing, fabrication or alloying of special nuclear material if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of

MXL 09 05 101

Signal (NY) 000217

uranium 235; or

d.  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises for such operations;

"Nuclear Reactor" shall mean any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "Injury" or "Destruction" includes all forms of radioactive contamination of property.

25.  Extended Radioactive Contamination Exclusion Clause

Any liability, loss, damage, injury, expense or claim directly or indirectly caused by or contributed to by or arising from:

a.  Ionizing radiation from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;

b.  The radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;

c.  Any weapon or device employing atomic nuclear fission and/or fusion or other like reaction or radioactive force or matter; and/or

d.  The radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

This exclusion shall be paramount and shall override any inconsistency contained in this policy.

26.  Drilling Exclusion

Any liability or expense arising out of the ownership, use or operation of drilling rigs, drilling barges, drilling tenders, platforms, including the flow lines, gathering stations and/or pipelines connected therewith, but this exclusion shall not apply to craft serving the foregoing such as crew, supply or utility boats, tenders, barges or tugs.

27.  Workers Compensation and Similar Laws

To any obligation for which the "insured" or any carrier as his insurer may be held liable under any Worker's Compensation, Unemployment Compensation, or Disability Benefits Law, or any other similar law.  This shall include but not be limited to the United States Longshoremen's and Harbor Workers Compensation Act, Federal Employee's Liability Act, Defense Base Act, Outer Continental Shelf Lands Act.

B.  Conditional Exclusions

The following conditional exclusions shall also apply unless coverage is provided in an "underlying policy(ies)".

This policy shall not apply to:

1.  Automobile

Any liability, loss, damage or expense arising out of the ownership, operation, leasing, use,

MXL 09 05 101

Signal (NY) 000218

maintenance, loading or unloading of any "automobile" or truck.

2. Advertising Injury

Any liability, loss, damage or expense arising out of "Advertising Injury".

3. Aircraft

Any liability, loss, damage or expense arising out of the ownership, operation, chartering, leasing, use, maintenance, loading or unloading of any "aircraft", airfields, runways, hangars, buildings, or any other property in connection with aviation activities.

4. Cargo Legal Liability / Cargo General Average

Any liability, loss, damage or expense for which coverage would be provided by Clause 8 (Cargo) and Clause 13 (Cargo's portion of general average) of Protection and Indemnity form SP-23.

5. Employee Injury

Any liability, loss, damage or expense arising out of any activities of any employee(s) with respect to "personal injury" of another employee(s) of the same employer injured in the course of such employment.

6. Care, Custody and Control

Any "property damage", loss, cost or expense to the property of others while in the care, custody or control of the "insured" or any employees of the "insured", or property which the "insured" or any employees of the "insured" is exercising physical control for any reason.

7. Contractual Liability

Any liability, loss, damage or expense assumed under an "insured contract".

8. Employee Benefits

Any claim or "suit" arising out of the management of any Employee Benefits Plan(s).

9. Products-Completed Operations

Any "bodily injury", "property damage", "personal injury" or "advertising injury" included in the "product-completed operations hazard".

10. Employers' Liability

Any liability arising from "bodily injury", including death at any time resulting therefrom:

a. Sustained by any employee of the "insured" arising out of and in the course of his or her employment by the "insured", or performing duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that employee as a consequence of 10.a. above.

This exclusion applies whether the "insured" may be liable as an employer or in any other capacity, or to any obligation to share "damages" with or repay someone else who must pay "damages" because of an injury.

11. Liquor Liability

Any liability, loss, damage, injury, expense or claim directly or indirectly:

a. Causing or contributing to the intoxication of any person;

MXL 09 05 101

Signal (NY) 000219

b.    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the "insured" is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

12.  Maritime Employer's Liability

Any liability under the Jones Act (Merchant Marine Act of 1920), Death on the High Seas Act, General Maritime Law, Federal Employer's Liability Act or any similar laws applicable to seamen for "bodily injury" including death at any time resulting therefrom, sustained by any employee of the "insured" and arising out of and in the course of their employment by the "insured".

**Section V        Conditions**

A.  Action Against the "Company"

No action shall lie against the "company" unless, as a condition precedent thereto, the "insured" has fully complied with all the terms of this policy, and until the amount of the "insured's" obligation has been finally determined either by judgment against the "insured" after actual trial or by written agreement of the "insured", the claimant, and the "company".

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained herein shall give any person or organization any right to join this "company" as a co-defendant in any action against the "insured" to determine the "insured's" liability.

B.  Additional Insureds

In the event additional insured(s) are added to an "underlying policy" during the currency of this policy, notice shall be provided to the "company" who shall be entitled to charge an appropriate additional premium.

Whenever additional insureds are added to this policy, it is specifically agreed that:

1.  Such additional insureds are included only with respect to such activities insured by this policy as would exist in the absence of the naming of additional insureds or loss payees, and coverage hereunder shall in no way be considered extended by the inclusion of additional insureds or loss payees.

2.  The inclusion of additional insureds shall in no way increase the limits of liability stated in Item 3 of the Declarations; and

3.  In the event of cancellation or material change in policy coverage by the "company", unless specifically endorsed in writing to the contrary, the "company" shall send notice of cancellation or material change to the first "named insured" only and shall not be obligated to send such notice to any additional insured.  Notice of cancellation or material change shall discharge all obligations of this "company" hereunder.

C.  Appeals

In the event the "insured" or the "insured's" underlying insurers elect not to appeal a judgment in

MXL 09 05 101

Signal (NY) 000220

excess of the "underlying limit", the "company" may elect to make such appeal at their cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of the "company" for "ultimate net loss" exceed the amount set forth in Item 3. of the Declarations for any one "occurrence" and in addition, the cost and expense of such appeal plus the taxable costs and disbursements and interest incidental thereto.

D.  Assistance and Cooperation

The "company" shall not be called upon to assume charge of the settlement or defense of any claim made or "suits" brought or proceeding instituted against the "insured", but the "company" shall have the right and shall be given the opportunity to associate with the "insured" or the "insured's" underlying insurers or both, in the defense and control of any claim, "suit" or proceeding relative to an "occurrence" where the claim or "suit" involves or appears reasonably likely to involve the "company", in which event the "insured", the underlying insurers and the "company" shall cooperate in all things in the defense of such claim, "suit" or proceeding.

E.  Bankruptcy or Insolvency

In the event of bankruptcy, receivership insolvency or refusal or inability to pay of the "insured" or any entity comprising the "insured", or any "underlying insurance" company and/or any other underwriter, the coverage afforded under this policy shall apply only in excess of the "underlying limit(s)" and/or "retention" as if such insolvency or bankruptcy had not occurred. The "company's" liability under this policy shall in no way be increased or expanded as a result of such bankruptcy, receivership or refusal or inability to pay.

The bankruptcy, insolvency or inability to pay of any "insured" will not relieve the "company's" obligation to pay "damages" covered by this policy.

F.  Cancellation

Either the "company" or the "named insured" may cancel this insurance by giving the other thirty (30) days written notice, ten (10) days for non-payment of premium, after which this policy shall be of no force or effect.  If cancellation is at the "named insured's" option, the "company" will retain earned premium hereunder as per customary short rate table. If cancellation is at the "company's" option, pro-rata unearned premium will be returned as soon as practicable.  In either case, cancellation return is subject to minimum premiums agreed upon, if any.

In the event of any underlying war risk insurance being canceled such cancellation shall simultaneously cancel any applicable coverage insured herein.

G.  Conflicting Statutes

In the event that any provision of this policy is unenforceable by the "insured" under the laws of any State or other jurisdiction wherein it is claimed that the "insured" is liable for any injury covered hereby, because of non-compliance with any statute thereof, then this policy shall be enforceable by the "insured" with the same effect as if it complied with such statute.

H.  Covered Vessels

If this Policy includes a Schedule of Vessels, then only those vessels listed thereunder are covered under this Policy. This policy shall also automatically apply to vessel(s) or craft(s) which the "named insured" may acquire through purchase or bareboat charter provided such acquisitions are reported to the "company" within the same time period as may be required by the provisions of the applicable "underlying insurance" (or thirty (30) days when such applicable "underlying insurance" does not contain such time period) and any additional premium as may be required by the "company" shall be payable hereunder.  It is further understood and agreed that the minimum "underlying insurance(s)"

MXL 09 05 101

Signal (NY) 000221

for each vessel applicable to such acquisitions, shall not be less than the minimum underlying amount of insurance as stated in the Schedule of "Underlying Insurance" or $1,000,000.00, whichever is greater.

I.   Cross Liability

In the event one of the "insureds" incurring liability to any other of the "insureds", this policy shall cover the "insured" against whom claim is or may be made in the same manner as if separate policies had been issued to each "insured". Nothing contained herein shall operate to increase this "company's" limit of liability.

J.   Drop Down Provision

In the event of the reduction or exhaustion of the aggregate limit or limits contained in any "underlying insurance", including renewals or replacements thereof whether such renewals or replacements are concurrent with the policy period as stated in Item 2. of the Declarations or not, solely by payment of losses in respect of "accidents" or "occurrences" during the period of this policy, it is hereby understood and agreed that such insurance afforded by this policy shall apply in excess of the reduced scheduled "underlying limit" or, if such limit is exhausted, shall apply as "underlying insurance", always being subject to the "retention" of this policy.

The coverage provided hereunder as a result of such reduced or exhausted "underlying limit" shall continue to operate on a "following form" basis inuring to the benefit of the terms, conditions, definitions and exclusions of the aggregated "underlying policy" as if such "underlying limit" had not been reduced or exhausted, always being subject to the provisions, limitations, terms, conditions, definitions and exclusions of this policy.

K.   Financial Responsibility

This insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal, state or local law and it is a condition of this insurance that it shall not be submitted to the United States Coast Guard or any other federal, state or local agency as evidence of financial responsibility.  The "company" does not consent to be a guarantor.

L.   Information and Representation

It is warranted the information and statements contained in the "insured's" application are the basis of this policy and are to be considered incorporated herein.  This policy is void if the "insured" has concealed or misrepresented any material fact or circumstance relating to this insurance, or has failed to provide information concerning any material fact or circumstance relating to this insurance. Information or notice of a change possessed by or given to any agent or any other person shall not effect a waiver or change in any part of this policy or stop this "company" from asserting any right under the terms of this policy; nor shall the terms or conditions of this policy be waived or changed except by a written endorsement issued by this "company" and forming a part of this policy.

M.   In Rem

Subject to the terms and conditions of the policy, it is agreed that any loss, otherwise covered by this policy, shall be considered covered thereby even though asserted by an action "In-Rem" instead of an action "In Personam".

N.   Inspection

This "company" shall be permitted, but not obligated, to inspect or survey the "insured's" property and/or operations at any time.  Neither this "company's" right to make inspections or surveys nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit

MXL 09 05 101

Signal (NY) 000222

of the "insured" or others, to determine or warrant that such property or operations are safe, legal or healthful.

O.    Maintenance of "Underlying Insurance"

It is a condition of this policy that the policy or policies referred to in the attached Schedule of "Underlying Insurance" shall be maintained in full effect during the currency of this policy (including renewals and replacements thereof) except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of "accidents" and/or "occurrences" during the period of this policy. No changes shall be made to an "underlying insurance" which broadens the insuring conditions or reduces the amounts collectible thereunder unless agreed by the "company" prior to the effective date of such change and endorsed hereon.

Inadvertent failure of the "insured" to comply with the above condition, or inadvertent failure to notify the "company" of any changes in the "underlying insurance", shall not prejudice the "insured's" rights of recovery under this policy, but in the event of such failure the "company" shall only be liable to the same extent as they would have been had the "insured" complied with the said condition.

P.    Notice of "Occurrence"

Whenever the "insured" has information from which the "insured" may reasonably conclude that an "occurrence" covered hereunder involved injuries or "damages" which, in the event that the "insured" should be held liable, is likely to involve this policy, notice shall be sent to the "company" as soon as practicable provided, however, that failure to notify the "company" of any "occurrence" which at the time of its happening did not appear to involve this policy, but which at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

Q.    Other Insurance

If other valid and collectible insurance is available to the "insured" covering a loss also covered by this policy, other than insurance that is written to be specifically in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

R.    Premium

The premium hereunder shall be the amount stated and payable as indicated in Item 5. of the Declarations. All premium, and losses, under this policy are payable in United States currency.

S.    Prior Insurance and Non-accumulation of Liability

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the "insured" prior to the inception date hereof, the Limits of Liability stated in Item 3 of the Declarations shall be reduced by any amounts due to the "insured" on account of such loss under such prior insurance.

T.    Subrogation

In as much as this policy is excess coverage, the "insured's" right of recovery against any person or other entity cannot be exclusively subrogated to the "company". It is, therefore, understood and agreed that in case of any payment hereunder, the "company" will participate with all other interests concerned (including the "insured" and any underlying insurer) in the exercise of such right of recovery.

The apportioning of any amounts that may be so recovered shall follow the principle that:

MXL 09 05 101

Signal (NY) 000223

1.  Any interests (including the "insured") that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them;

2.  The "company" is then to be reimbursed out of any balance remaining up to the amount paid hereunder;

3.  Lastly, the interests (including the "insured") of whom this coverage is in excess are entitled to claim the residue, if any.

The expense of any subrogation proceeding brought to enforce such rights shall be apportioned among the interests (including the "insured") in accordance with the ratio of their respective recoveries as finally settled.

U.  U.S. Economic and Trade Sanctions Clause

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

MXL 09 05 101

Signal (NY) 000224

**MARINE EXCESS (BUMBERSHOOT) LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED**

This endorsement modifies insurance provided under:

Marine Excess (Bumbershoot) Liability Coverage

**SCHEDULE**

Signal International, LLC
Signal International Texas GP, LLC
Signal International Texas, LP
Signal International, Inc.

And all subsidiary, affiliated, associated or allied companies, corporations, firms, limited liability companies or organizations as now or hereafter constituted provided such entity is under management control of the Named Insured or for which the Named Insured is responsible to provided insurance.

The first Named Insured shall be deemed the sole agent of each and every Named Insured for the purpose of (1) giving notice of cancellation, either by the company or the Named Insured, (2) giving instructions of changes in the policy and accepting changes in this Policy, and (3) the payment of premiums or receipt of return premiums.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any business entity incorporated or organized including the interest as required by any Partnership Agreements and/or Joint Venture Agreements and/or Co-Venture Agreements and/or Limited Liability Company or Similar Agreements entered into by "you".

It is Noted and agreed in the event "your" interest is less than one hundred percent (100%), coverage hereunder shall be limited to "your" percentage ownership interest unless "you" have agreed by contract to effect insurance for one hundred percent (100%) of the Partnership Agreements and/or Joint Venture Agreements and/or Co-Venture Agreements and/or Limited Liability Company Agreements and/or Similar Agreement entered into by "you".

All Other Terms and Conditions Remain Unchanged.

| | | |
|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No.    Joint Policy<br>of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement No.    1 |

Signal (NY) 000225

MARINE EXCESS LIABILITY (BUMBERSHOOT)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

SCHEDULE OF UNDERLYING INSURANCES (MXL 09 05 102)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

SCHEDULE

**Premium:  $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

| | | |
|---|---|---|
| Coverage: | Marine General Liability | |
| Carrier: | Firemans Fund/OneBeacon Insurance Co. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | OML92001349/Q5JH9035809 | |
| Limit | General Aggregate Limit (Other Than Products - Completed Operations) - | $2,000,000 |
| | Products - Completed Operations Aggregate Limit - | $1,000,000 |
| | Personal and Advertising Injury Limits - | $1,000,000 |
| | Each Occurrence Limit - | $1,000,000 |
| Coverage: | Commercial Auto Liability | |
| Carrier: | Twin City Fire Insurance Co. (The Hartford) | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | 21UENUY8964 | |
| Limit | Combined Single Limit - | $1,000,000 |
| Coverage: | Workers Compensation (State Act) | |
| Carrier: | Hartford Fire Insurance Co. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | 21WEOB4259 | |
| Limit | Each Accident - | $1,000,000 |
| | Disease Policy Limit - | $1,000,000 |
| | Disease Each Employee | $1,000,000 |
| Coverage: | Workers Compensation (USL&H) | |
| Carrier: | American Longshore Mutual Assn. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | ALMA0031103 | |
| Limit | Each Accident - | $1,000,000 |
| | Disease Policy Limit - | $1,000,000 |
| | Disease Each Employee | $1,000,000 |

MXL 09 05 102

Signal (NY) 000226

| Coverage: | Workers Compensation (MEL) | |
|---|---|---|
| Carrier: | American Longshore Mutual Assn. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | ALMA0031103 | |
| Limit | Per Occurrence - | $1,000,000 |

| Coverage: | Vessel Pollution | |
|---|---|---|
| Carrier: | Great American Insurance Co. of NY | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | OMH653933705 | |
| Limit | Article A: | $1,000,000 |
| | Article B: | $1,000,000 |

| Coverage: | International Liability Package (Foreign GL) | |
|---|---|---|
| Carrier: | ACE American Insurance Co. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | PHFD36878216 | |
| Limit | General Aggregate Limit - | $2,000,000 |
| | Products - Completed Operations Aggregate Limit - | $1,000,000 |
| | Personal and Advertising Injury Limits - | $1,000,000 |
| | Each Occurrence Limit - | $1,000,000 |

| Coverage: | International Liability Package (Foreign Auto) | |
|---|---|---|
| Carrier: | ACE American Insurance Co. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | PHFD36878216 | |
| Limit | Combined Single Limit - | $1,000,000 |

| Coverage: | International Liability Package (Foreign EL) | |
|---|---|---|
| Carrier: | ACE American Insurance Co. | |
| PolicyTerm: | 01/30/2009-01/30/2010 | |
| Policy Number: | PHFD36878216 | |
| Limit | Each Accident - | $1,000,000 |
| | Disease Policy Limit - | $1,000,000 |
| | Disease Each Employee - | $1,000,000 |

All Other Terms and Conditions Remain Unchanged.

| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
|---|---|---|---|
| Effective Date: | 02/06/2009 | Endorsement # | 2 |

MXL 09 05 102

Signal (NY) 000227

MARINE EXCESS LIABILITY (BUMBERSHOOT)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

VESSEL SCHEDULE (MXL 09 05 103)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

SCHEDULE

Page 1

Premium: $Included

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

The schedule of vessels insured hereunder is as follows:

| ITEM NO. | Vessel Name | Description | Agreed Value |
|---|---|---|---|
| 1. | Quida | Tug | $275,000 |
| 2. | Pelican | Derrick barge | $1,000,000 |
| 3. | Big Bessie | Derrick barge | $1,200,000 |
| 4. | Dan B | Tug | P&I ONLY |
| 5. | | Deck Barge | P&I ONLY |
| 6. | TDD1 | Work Barge | P&I ONLY |
| 7. | TDD3 | Work Barge | P&I ONLY |
| 8. | Miss Kathy | Deck Barge | P&I ONLY |
| 9. | | Boat, "V" Weldbilt | P&I ONLY |
| 10. | Drydock, AFDB-5 | Pontoon/Wingwalls | P&I ONLY |
| 11. | DB-3 | Deck Barge | P&I ONLY |
| 12. | M/V Maggie D | Tug | $450,000 |

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement # | 3 |

MXL 09 05 103 - Page 1

Signal (NY) 000228

## SCHEDULE OF VESSELS (MXL 103)

### Page 2

| ITEM NO. | Vessel Name | Description | Agreed Value |
|---|---|---|---|
| 13. | Jack King | Deck Barge | P&I ONLY |
| 14. | Miss Tiff | Crane Barge | $800,000 |
| 15. | MS61 | Deck Barge | P&I ONLY |
| 16. | MS64 | Deck Barge | P&I ONLY |
| 17. | 20' Yamaha 115 | Custom | P&I ONLY |
| 18. | 21' Yamaha 115 | Custom | P&I ONLY |
| 19. | 20' Suzuki 90 HP | Custom | P&I ONLY |
| 20. | Dual Carrier | Submersible DD | P&I ONLY |
| 21. | Mr. T | Deck Cargo Barge w/ ringer crane | $2,000,000 |
| 22. | Deck Barge 0578 | 50 x 20 Steel | P&I ONLY |
| 23. | Deck Barge 0577 | 50 x 20 Steel | P&I ONLY |
| 24. | Deck Barge 0576 | 50 x 20 Steel | P&I ONLY |

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement No. | 3 continued |

MXL 103 · Page 2

Signal (NY) 000229

## SCHEDULE OF VESSELS (MXL 103)

Page 3

| ITEM NO. | Vessel Name | Description | Agreed Value |
|----------|-------------|-------------|--------------|
| 25. | Deck barge 0575 | Deck barge 0575 | P&I ONLY |
| 26. | 16' Lowe | Custom | P&I ONLY |

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement No. | 3 continued |

MXL 103 - Page 3

Signal (NY) 000230

MARINE EXCESS LIABILITY (BUMBERSHOOT)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CONDITION - ADDITIONAL INSURED/WAIVER OF
SUBROGATION (BLANKET) (MXL 09 05 106)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

SCHEDULE

**Premium:  $_Included_**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

A.  The "company" names as additional insured and waives their rights of subrogation against principals on behalf of whom the "insured" is providing services, but:

1.  Only as respects operations performed by the "named insured" or on their behalf for such principals, and
2.  Only to the extent that such principals have also been named and waived by the "underlying insurance", and
3.  Only to the extent the "named insured" is required to do the same by written contract or to the extent the "named insured" has actually named and/or waived the "company's" rights of subrogation through confirmation of insurance.

Neither naming nor waiving shall be valid unless issued or agreed to in writing by the "named insured" prior to any "accident" or "occurrence".

B.  It is further understood and agreed:

1.  Notice of such additional insured shall be given to the "company" who shall be entitled to charge an appropriate additional premium hereunder.
2.  The inclusion of an additional insured shall in no way increase the limit of liability hereunder.
3.  In the event of cancellation or change in policy terms, unless specifically endorsed in writing to the contrary, no obligation is imposed on the "company" to send notice of cancellation or change in policy terms to an additional insured and original notice to the first "named insured" shall discharge all obligations of this "company". The "company" shall not be required to notify any additional insured of any cancellation or change of coverage received from the "named insured".

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement # | 4 |

MXL 09 05 106

Signal (NY) 000231

MARINE EXCESS LIABILITY (BUMBERSHOOT)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COVERAGE - POLLUTION BUY BACK ENDORSEMENT (Sudden & Accidental Basis)  (MXL 09 05 121)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

SCHEDULE

**Premium: $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

A.  Section IV, Exclusion A.12, Pollution Liability, of this policy shall not apply if the "insured" establishes that all of the following conditions have been met:

1.  The discharge, dispersal, release or escape was accidental, and was neither expected nor intended by the "insured".  A discharge, dispersal, release or escape shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the "insured".

2.  The discharge, dispersal, release or escape can be identified as commencing at a specific time and date during the term of this policy.

3.  The discharge, dispersal, release or escape became known to the "insured" within **72 hours** after its commencement.

4.  The discharge, dispersal, release or escape was reported in writing to the "company" within **30 days** after having become known to the "insured".

5.  The discharge, dispersal, release or escape did not result from the "insured's" intentional and willful violation of any government statute, rule or regulation.

B.  Coverage, if any, provided by the endorsement will:

1.  Apply only if such coverage is also provided in the "underlying insurance(s)" identified in the schedule attached, and

2.  Not apply if such coverage is not provided in the "underlying insurance(s)" identified in the schedule attached, nor apply in excess of the self-insured retention.

C.  Nothing contained in this endorsement shall operate to provide any coverage with respect to:

1.  Loss of, damage to or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the "insured".

2.  Removal of, loss of or damage to subsurface oil, gas or any other substance;

3.  Fines, penalties, punitive damages, exemplary damages, treble damages or any other damages resulting from the multiplication of compensatory damages;

4.  Any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances or the transportation of any waste

Signal (NY) 000232

materials or substances.

This insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal, state or local law, and it is a condition of this insurance that it shall not be submitted to the United States Coast Guard or any other federal, state or local agency as evidence of financial responsibility.  The "company" does not consent to be a guarantor.


All Other Terms and Conditions Remain Unchanged.


| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy<br>of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement # | 5 |

Signal (NY) 000233

MARINE EXCESS (BUMBERSHOOT) LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CLAIMS MADE ADJUSTMENT - FOLLOW FORM

This endorsement modifies insurance provided under:

Marine Excess (Bumbershoot) Liability Coverage

It is understood and agreed that where coverage is provided by a scheduled underlying policy and is placed on a claims made basis, then this policy shall also be on a claims made basis and will follow such underlying terms as to any reporting or extended reporting periods. However it is further agreed and a limitation of this policy that regardless of any retroactive date or retroactive period that may be contained in a scheduled underlying claims made policy, in no case shall coverage hereunder apply to an occurrence prior to the inception date of this policy as shown on the policy declarations.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement No. | 6 |

Signal (NY) 000234

MARINE EXCESS (BUMBERSHOOT) LIABILITY
### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
VESSEL QUARTERLY REPORTING

This endorsement modifies insurance provided under:

Marine Excess (Bumbershoot) Liability Coverage

It is understood and agreed with respect to Chartered Vessel quarterly reporting, there will be no premium adjustment unless the Schedule of Vessels is increased or decreased by 10% or more.

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy<br>of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement No. | 7 |

Signal (NY) 000235

MARINE EXCESS LIABILITY (BUMBERSHOOT)
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CONDITION - LEAD UNDERWRITER CLAUSE (MXL 09 05 137)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

SCHEDULE

**Premium:** $<u>Included</u>

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

Underwriters subscribing hereto agree to follow FIREMAN'S FUND INSURANCE COMPANY as lead underwriter in regard to additions, deletions, alterations, amendments, extensions, endorsements, and cancellations.  Subscribing underwriters also agree to follow FIREMAN'S FUND INSURANCE COMPANY as the claims lead with respect appointment of underwriter's claims representatives and payments of fees and claims (excepting ex gratia payments).


All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| **Insured:** | SIGNAL INTERNATIONAL LLC | **Policy No.** | Joint Policy of the Subscribing Underwriters |
| **Effective Date:** | 02/06/2009 | **Endorsement #** | 8 |

MXL 09 05 137

Signal (NY) 000236

MARINE EXCESS LIABILITY (BUMBERSHOOT)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SUBSCRIBERS ENDORSEMENT (MXL 09 05 125)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

IN WITNESS WHEREOF, the Subscribers hereunder each severally, but not jointly, and not on the part of one for the other or any of the others have caused this policy to be signed by a duly authorized officer, attorney or agency, this 17th of February, 2009

| Assurer | Policy No. | Amount Insured | Premium | Authorized Signature for Assurer |
|---|---|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY | OXL 92001369 | 34% | $100,062.00 | _Roger Howe_ |
|  |  |  |  | Fireman's Fund Insurance Company |
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY | LAT001112009 | 34% | $100,062.00 |  |
|  |  |  |  | National Liability & Fire Insurance Company |
| LLOYD'S UNDERWRITERS | 10268M09 | 32% | $94,176.00 |  |
|  |  |  |  | Lloyd's Underwriters |

All Other Terms and Conditions Remain Unchanged.

Insured:     SIGNAL INTERNATIONAL LLC

Effective Date:  02/06/2009

Policy No.     Joint Policy
               of the Subscribing Underwriters

Endorsement #                    9

MARINE EXCESS LIABILITY (BUMBERSHOOT)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDATORY ENDORSEMENT  (MXL 09 05 123)

This endorsement modifies insurance provided under:

Marine Excess Liability (Bumbershoot) Policy Form (MXL 09 05 101)

SCHEDULE

**Premium: $Included**

In consideration of the additional premium shown in the schedule to this endorsement and subject to all the terms, conditions, limits and exclusions of the policy to which this endorsement is attached, it is agreed that:

**Effective 02/06/2009**, it is understood and agreed that **Marine Excess (Bumbershoot) Liability (MXL 09 05 101)** is hereby amended as follows:

> Section I.A. - The first line is amended to read:  "this policy shall pay on behalf of the "Insured" in respect of the following (including such expenses listed in the definition of "ultimate net loss"):

All Other Terms and Conditions Remain Unchanged.

| | | | |
|---|---|---|---|
| Insured: | SIGNAL INTERNATIONAL LLC | Policy No. | Joint Policy<br>of the Subscribing Underwriters |
| Effective Date: | 02/06/2009 | Endorsement No. | 10 |

Signal (NY) 000238