# EXHIBIT 28

## Cody Whittington

| | |
|---|---|
| **From:** | Mark Cheglikov |
| **Sent:** | Tuesday, February 16, 2010 4:55 PM |
| **To:** | Baker, John |
| **Cc:** | Cody Whittington; john.bullock@willis.com |
| **Subject:** | Signal International Max Claim # MXBP04423 |

**Attachments:**    Sienna@maxspecialty.com_20100216_164823.pdf



Sienna@maxspecial
ty.com_201002...
                    John

Please, find attached our letter of today's date.

Regards
Mark

Mark A Cheglikov
Claims Manager
Max Specialty Insurance Company
55 Broadway, Suite 902
New York, NY 10006
Phone: 212-898-6618
Fax:     212-898-6601
Cell:      646-385-1497



1

MSI 001203

Max

<u>WITHOUT PREJUDICE</u>

Mr. Chris Cunningham
CFO
Signal International

C/O

Mr. John Baker
Vice President
Claims & Risk Control Services
Willis of Alabama, Inc.
63 South Royal Street, Suite 800
Mobile, Alabama 36602

February 16, 2010

Re:   Insured:        Signal International LLC
      Insurance Co.:  Max Specialty Insuruance Co.
      Occurrence:     Sinking – AFDB-5
      Date of Occurrence:  August 20, 2009
      Policy No.      MAX2XP0004029
      Claim No.       MXBP04423

Dear Mr. Baker:

We write on behalf of Max Specialty Insurance Company ("Max" or "Insurer") to advise you of its
position concerning an important aspect of Max's eventual adjustment of the claim of Signal
International LLC ("Signal" or "Insured") on Max policy MAX2XP0004029 ("Policy") arising from
the sinking of the AFDB-5 ("Occurrence").

At a recent meeting held in New York, counsel for Bumbershoot insurers expressed the view, as we
understand it, that the "other insurance" provision of their policy required that all other coverage for
the expense of removing the remains of the AFDB-5 be exhausted before Bumbershoot insurers
would begin to respond for such expenses. Max disagrees with that interpretation and the
implications that it has for the exposure of Max's Policy.

Max wishes to advise the Insured of the method that it will apply to the adjustment of Signal's claim
under the Policy, and to reserve Max's rights to deny coverage or liability for risks and expenses
inconsistent with the position expressed herein. Max also wishes to respond to the contention made
by John Bullock of your Company to the undersigned during a telephone conversation on February 12
that the Priority of Payments provision of the Policy entitles the Insured to allocate $5 million of the
payment made by primary insurer Westchester to debris removal expense.

We have considered the following documents:

  1.  Marine General Liability ("MGL") Policy, FFIC Policy No. OML 92001349;

  2.  Bumbershoot Policy, FFIC Policy No. OXL 99002738;

Max Specialty Insurance Company
55 Broadway – Suite 902
New York, NY  10006  USA
www.maxspecialty.com

A member of the Max Capital Group        BERMUDA        IRELAND        UNITED KINGDOM        UNITED STATES

MSI 001204

3. Property and Time Element Policy ("Primary Property"). Westchester Policy No. D37362220 001;

4. Excess Property and Time Element Policy, Max Policy No. MAX2XP0004029

5. A letter from the Texas General Land Office dated September 2, 2009 directing Signal International Texas LP do remove the remains of AFDB-5 from Texas coastal waters adjacent to Signal's premises in Port Arthur, Texas.

Relevant extracts of the material portions of items 1-4 are attached here to and incorporated herein.

## COSTS TO REMOVE THE REMAINS OF THE AFDB-5

We note at the outset that removal of the remains of AFDB-5 under the compulsion of the Texas General Land Office is specifically covered as Compulsory Wreck Removal expense under the MGL policy. It provides in endorsement no. 22 as follows:

3. In addition to the coverage afforded elsewhere in the policy to which this endorsement is attached, Section I.A. of the policy is extended to pay on your behalf all sums that you shall become obligated to pay as damages for:

   a. Liability for costs or expenses of, or incidental to, wreck removal of the scheduled watercraft when such removal is compulsory by law, . . .

By contrast, the Additional Coverage provided by the Primary Property policy for Debris Removal and Cost of Clean Up is general in nature, and does not mention the necessity of governmental compulsion as the MGL policy does.

Wreck removal coverage in the liability policy provided by the MGL insurers is predicated on a *liability* imposed by government authority to remove the property. The Texas General Land Office's demand triggers such a liability. The Primary Property policy affords no *liability* coverage except to the possible extent of the Insured's liability for loss of or damage to property of third parties. See Section III, Clause B (10) of the Primary Property policy. On the basis that the MGL coverage is more specific than the Primary Property policy's coverage, and directly addresses liability for Compulsory Wreck Removal of a vessel from navigable waters, we reserve the right to reject any allocation of Compulsory Wreck Removal costs to the Westchester's policy payment.

We also note that there is no coverage whatsoever under the Max Policy for Compulsory Wreck Removal or debris removal. This was tacitly agreed by those participating in the recent market meeting in New York that the undersigned attended. This results from the interplay between the Primary Property policy's coverage section and the "Application of Underlying Provisions" term of the Max Policy. As can be seen from the Primary Policy's "Property Insured" section, reproduced in the annexed extract, it makes a distinction between its coverage on "Real and Personal Property" (Section III, Clause A) and the "Additional Coverages" provided by Clause B in that Section. By contrast, the Max Policy binder, declarations, and insuring agreement speak of "Covered Property" consisting of "Building, Contents, and Business Income . . ." Max's Policy is explicitly against perils as enumerated in the Declarations, i.e., "All Risks of Direct Physical Loss or Damage" with exceptions not relevant here.

The opening words of the "Application of Underlying Provisions" term of the Max policy recite:

*In respect of the perils hereby insured against* this Policy is subject to the same warranties, terms and conditions . . . as contained in [the Primary Property policy] . . .

MSI 001205

The Primary Property policy defines Debris removal specifically to be an "Additional Coverage." Debris removal itself is not "direct physical loss or damage." "Debris Removal" is not a coverage specified in the text of the Max Policy. Since Max's policy is on specific real and personal property, and against the risks of "direct physical loss or damage," and Max did not assume the obligation of any additional coverages against expenses of the type in issue, Max is not directly liable to pay Compulsory Wreck Removal or debris removal expenses.

## APPLICATION OF "OTHER INSURANCE" CLAUSES

We wish to state our views regarding the proper allocation of debris removal costs among MGL insurers, Bumbershoot insurers and, potentially, Westchester. We believe that this depends on proper construction of the various "other insurance" provisions contained in each of these insurers' policies.

### Bumbershoot provisions

The Bumbershoot coverage is clearly and specifically excess of the MGL policy's. The MGL policy is scheduled in the Bumbershoot policy. The Primary Property policy is not. The MGL policy's "other insurance" provision, Clause 10A, excludes from its operation insurance specifically in excess of the MGL. Wreck removal is clearly covered by both policies.

### MGL provisions

The MGL policy seeks to characterize itself as excess to every coverage except coverage written specifically in excess of the MGL itself. While the Primary Property policy was not written specifically in excess of the MGL and could come within this definition, the MGL does not define itself as non-contributory. Because the MGL policy omits the provision that it will not contribute with other insurance, the non-contribution provision in the Primary Property policy trumps the MGL provision.

### Primary Property policy provisions

In Section IX, Clause A.1, the Primary Property policy defines "underlying insurance" as insurance against perils covered by the Primary Property policy. If such "underlying" insurance exceeds the deductible under the Primary Property policy, the amount of such excess is deemed "other insurance." Coverage for Compulsory Wreck Removal under the MGL and Bumbershoot fits this definition.

Turning to Clause A.3, entitled "Other Insurance," the Primary Property policy says that if "there is any other insurance that would apply in the absence of this Policy, this Policy shall apply only after such insurance whether collectible or not. In no event shall this Policy apply as contributing insurance." The coverage for Compulsory Wreck Removal under the MGL and Bumbershoot would apply in the absence of the Primary Property policy. The Primary Property policy is thus excess to MGL and non-contributory. We comment on the relationship between the Primary Property and Bumbershoot policies below.

### Adjustment

We believe that proper allocation of liabilities under the various policies under consideration requires an analysis of their language in the light of the circumstances, to determine the intention of each contract within the design of a consistent overall insuring scheme. On this basis, it is clear that the marine insurers including MGL and Bumbershoot clearly undertook responsibility to indemnify the Insured for Compulsory Wreck Removal, a uniquely marine risk. Its compulsory nature, under the threat of civil and criminal liability to the authority enforcing the compulsion, fits squarely both within the spirit and within the four corners of the MGL and Bumbershoot liability policies. The

MSI 001206

same cannot be said with respect to the Primary Property policy. Moreover, neither the Primary Property policy nor the Max Policy is scheduled in the Bumbershoot policy. It is our view that all costs of Compulsory Wreck Removal fall on the MGL and Bumbershoot insurers.

In the event that debris removal is ever equated with Compulsory Wreck Removal, it is our view that the other insurance clauses of the Primary Property policy and the Bumbershoot policy would operate as follows. Those clauses in each policy provide that each policy is both excess to other policies insuring the same risks and non-contributory. The wordings are not identical, but the import is. The result would be that the clauses would cancel one another out and the Primary Property policy and the Bumbershoot policy would contribute pro-rata based on their limits of liability.

Under this alternative adjustment scenario, any claim for the expense of Compulsory Wreck Removal, or debris removal treated as such, would be apportioned based on the limits of the various policies as follows: True primary coverage for Compulsory Wreck Removal is found in the MGL policy. The Bumbershoot and Primary Property policies respond for the balance in proportion to their limits for Compulsory Wreck Removal and Debris Removal (25/30 or 5/6, and 5/30 or 1/6, respectively).

## Priority of Payment

John Bullock raised the Priority of Payment provision of the Max policy as a basis for the Insured to allocate $5 million of the Westchester payment to debris removal. We do not agree with that interpretation.

Clause 10 of the Excess Physical Damage Form incorporated into the Max Policy states:

> 10. **PRIORITY OF PAYMENTS:**
>
> Notwithstanding anything contained herein to the contrary it is hereby agreed that in the event of a claim hereunder which involves more than one interest and/or coverage and/or peril, it shall be at the sole option of the Insured to *apportion recovery under this policy* when submitting final proof of loss, subject to the overall amount of claim not exceeding the overall limit of liability contained herein for any one loss.

[Emphasis ours.] The Max Policy thus recognizes that the Insured may make allocations under Max's policy, not Westchester's. The Insured and Westchester did not allocate any part of the latter's payment to debris removal. There is no "Priority of Payments" provision in the Primary Property policy. The Insured has no right, under the Primary Property policy, to make a unilateral allocation of Westchester's payment. Any attempt by the Insured unilaterally to apportion Westchester's payment under the Primary Property policy that does not respect the principles stated above would be unacceptable to Max.

We have not commented herein concerning the involvement of Pollution insurers. Our silence on their actual or potential liability or participation is not an acquiescence in any position concerning their coverage expressed by them, or by others concerned in this occurrence. We are simply not in a position fully to evaluate Pollution insurers' involvement at this time.

## CONCLUSION

Max has made a contract with its insured that imposes an obligation on Max, vis-à-vis its Insured, to respond for property loss computed in accordance with the terms of its Policy and in the context, as to payments by underlying insurers, of the other policies concerned. Consistent with its view that

MSI 001207

Compulsory Wreck Removal is a liability coverage not afforded specifically under the Primary Property policy, and not intended in the context of the Signal insurance program, Max reserves its right to make an adjustment of its liability under its Policy in a manner that will make no allowance for the cost of removing the remains of AFDB-5 at all.

In the alternative, Max views its maximum exposure to be based, in part, on allocation of all proper Compulsory Wreck Removal expenses pro-rata between Westchester and Bumbershoot insurers as described in the alternative adjustment scenario above.

This reservation of rights is based on facts and circumstances now known to Max. Max reserves the right to revise and extend this reservation as warranted should additional facts and circumstances not discussed above come to its attention. None of the foregoing shall be taken as a waiver of, or to create an estoppel to invoke, any right, defense or limitation available to Max under the Policy, at law or otherwise, all of which are expressly reserved hereby.

Please, note that Cody Whittington continues to be a handling adjuster for this loss.
The following is his contact information:

Max Specialty Insurance Company

*9020 Stony Point Parkway, Suite 325*

*Richmond, VA 23235*

*Phone(804)287-6987*

*cody.whittington@maxspecialty.com*

Sincerely yours,

Mark A Cheglikov
Claims Manager
Max Specialty Insurance Company
55 Broadway, Suite 902
New York, NY 10006
Phone: 212-898-6618
Fax:    212-898-6601
Cell:   646-385-1497

MSI 001208

Marine General Liability Policy
FFIC Policy No. OML 92001349
Limit per occurrence: S 1,000,000
Deductible per occurrence: S 100,000/OCC

*Coverage:* Endorsement 22:

3.  In addition to the coverage afforded elsewhere in the policy to which this endorsement is attached, Section I.A. of the policy is extended to pay on your behalf all sums that you shall become obligated to pay as damages for:

    a.  Liability for costs or expenses of, or incidental to, wreck removal of the scheduled watercraft when such removal is compulsory by law, provided, however, that:

        (1)  We shall deduct from such claim for costs or expenses the value of any salvage from or which might have been recovered from the wreck; and

        (2)  We shall not be liable for Sue and Labor, General Average, and/or Salvage or other such costs or expenses that would or could be covered under the terms of the American Institute Hull Clauses (June 2, 1977) Form 7, regardless of whether or not such coverage is in place.

*Other Insurance:* Section VII – Conditions

10.  Other Insurance or Protection

    a.  This policy is excess over any other insurance under which the insured has been afforded insured status, whether primary, excess (other than insurance effected by the Named Insured hereunder and specifically written as excess of this coverage), contingent or on any other basis, whether prior or subsequent hereto, and by whomever effected, directly or indirectly covering loss or damage insured hereunder, and this company shall be liable only for the excess of such loss or damage beyond the amount due from such other insurance up to, but not exceeding, the limits of this policy as set forth in the declarations.

    b.  When this insurance is excess, we will have no duty under this policy to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

    c.  Notwithstanding paragraphs a. and b. above, this insurance shall be primary to any other insurance, but only:

        (1)  With respect to "your work", and

        (2)  When required by and only to the extent of such obligation under an "insured contract".

MSI 001209

Bumbershoot Policy
FFIC Policy No. OXL 99002738
Limit per occurrence: $ 25,000,000
Deductible per occurrence: Amount of underlying or $ 25,000

---

*Coverage*:  Section 1   Coverage

This policy shall indemnify the "insured" for their "ultimate net loss" with respect the following:

A. All liabilities insured against under any scheduled "underlying policy" as set forth in the Schedule of "Underlying Insurance" attached hereunder. This policy shall provide excess coverage on a "following form" basis over the scheduled "underlying insurance(s)" always being subject to the provisions, limitations, terms, conditions, definitions and exclusions of this policy.

B. All liabilities NOT covered under a scheduled "underlying policy" as set forth in the Schedule of "Underlying Insurance" arising from:

1. Protection and Indemnity risks for which coverage would be provided by form SP23; . . .

Section V   Conditions

J.   Drop Down Provision

In the event of the reduction or exhaustion of the aggregate limit or limits contained in any "underlying insurance", including renewals or replacements thereof whether such renewals or replacements are concurrent with the policy period as stated in Item 2. of the Declarations or not, solely by payment of losses in respect of "accidents" or "occurrences" during the period of this policy, it is hereby understood and agreed that such insurance afforded by this policy shall apply in excess of the reduced scheduled "underlying limit" or, if such limit is exhausted, shall apply as "underlying insurance", always being subject to the "retention" of this policy.

The coverage provided hereunder as a result of such reduced or exhausted "underlying limit" shall continue to operate on a "following form" basis inuring to the benefit of the terms, conditions, definitions and exclusions of the aggregated "underlying policy" as if such "underlying limit" had not been reduced or exhausted, always being subject to the provisions, limitations, terms, conditions, definitions and exclusions of this policy.

*Other Insurance*:  Section V   Conditions

Q.  Other Insurance

If other valid and collectible insurance is available to the "insured" covering a loss also covered by this policy, other than insurance that is written to be specifically in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

MSI 001210

Property and Time Element Policy
Westchester Policy No. D37362220 001
Limit per occurrence: $ 10,000,000
Sublimit for debris removal: $ 5,000,000
Deductible per occurrence: 2% of the scheduled value of the drydock

---

*Coverage*: Section III   Property Insured
Except as hereinafter excluded, this Policy insures:

### A. REAL AND PERSONAL PROPERTY

The insurable interest of the Insured in all real and personal property of every kind and description, . . .

### B. ADDITIONAL COVERAGES

1. Debris Removal and Cost of Clean Up

Notwithstanding the provisions of any exclusion contained herein or any provision respecting pollution and/or contamination, in the event of physical loss, damage or destruction of property insured by a peril insured by this Policy, this Policy (subject otherwise to its terms, conditions, and limitations, including but not limited to any applicable Deductible) insures:

a. Expenses necessarily and reasonably incurred in removal of debris of such property from the "location" of the insured physical loss, damage or destruction and/or from other premises when blown by wind or carried by water

and/or

b. Cost of clean up at the "location" made necessary as a result of physical loss, damage or destruction of property of the type insured by this Policy by a peril insured by this Policy,

Provided such expenses are reported to the insurer within 365 days of the date of the direct physical loss, damage or destruction.

This provision does not insure against the costs of decontamination or removal of water, soil or any substance not insured by this Policy on or under such "location."

It is a condition precedent to recovery under this provision that the Insurer shall have paid or agreed to pay for physical loss, damage or destruction of property insured unless such payment is precluded solely by the operation of any Deductible.

10. Defense Expenses

With respect to the interest of the Insured in property of others in the Insured's care, custody or control, this Policy shall defend any suit against the Insured alleging liability for physical loss, damage or destruction, by a peril insured by this Policy, of the property, even if such suit is groundless, false or fraudulent; but the Insurer may without prejudice, make such investigation, negotiation and settlement of any claim or suit the Insurer deems expedient.

MSI 001211

Property and Time Element Policy
Westchester Policy No. D37362220 001
Limit per occurrence: $ 10,000,000
Sublimit for debris removal: $ 5,000,000
Deductible per occurrence: 2% of the scheduled value of the drydock

---

*Other Insurance:* Section IX    General Conditions

A.  OTHER INSURANCE

    1.   Underlying Insurance

        Underlying insurance is insurance on all or any part of the Deductible and against all or any of the perils covered by this Policy including declarations of the value to a carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this Policy.

        If the limits of such underlying insurance exceed the Deductible amount, which would apply in the event of loss under this Policy, then that portion which exceeds such a Deductible amount shall be considered 'other insurance.'

    2.   Excess Insurance

        Excess insurance is insurance over the Limit of Liability set forth in this Policy.  The existence of such excess insurance shall not prejudice the coverage provided under this Policy nor shall it reduce any liability hereunder.

    3.   Other Insurance

        If there is any other insurance that would apply in the absence of this Policy, this Policy shall apply only after such insurance whether collectible or not.  In no event shall this Policy apply as contributing insurance.

        The Insured is permitted to have other insurance over any Limits or Sub-limits of Liability specified in this Policy without prejudice to this Policy.  The existence of any such insurance shall not reduce any Limit or Sub-limit of Liability in this Policy.  Any other insurance that would have provided primary insurance in the absence of this Policy shall not be considered excess.

        The Insured is permitted to have other insurance for all, or any part, of any Deductible in this Policy.  The existence of such other insurance shall not prejudice recovery under this Policy.  If the limits of liability of such other insurance are greater than this Policy's applicable Deductible, this Policy shall apply only after such other insurance has been exhausted.

    4.   Contributing Insurance

        Contributing insurance is insurance written upon identical, terms, conditions, and provisions as those contained in this Policy.  This insurance shall contribute in accordance with the conditions of this Policy only with other contributing insurance as defined.

MSI 001212

Excess Property and Time Element Policy
Max Policy No. MLX2XP0004029
Limit per occurrence: $ 15,000,000 per occurrence excess of $ 10,000,000 per occurrence
Deductible per occurrence: 2% of the scheduled value of the drydock

*Coverage:*

Declarations

4. **Covered Property**: Building, Contents, and Business Income with Extra Expense as per the schedule of values on file with this company dated 01/30/2009

5. **Perils**: All Risks of Direct Physical Loss or Damage excluding Named Windstorm, Flood, Storm Surge/Ensuing Flood, and Earthquake

EXCESS PHYSICAL DAMAGE FORM

1. **INSURING AGREEMENT:**

   Subject to the limitations, terms and conditions contained in this Policy or added hereto, the Insurer(s) agree to indemnify the Insured named in the Declarations herein in respect of Direct Physical loss or damage to the property described in Declarations, while located or contained as described in the Declarations, occurring during the period stated in the Declarations and caused by any of such perils as are set forth in Declarations and which are also covered by and defined in the Policy/ies specified in the Declarations and issued by the "Primary Insurer(s)" stated therein.

2. **APPLICATION OF UNDERLYING PROVISIONS:**

   In respect of the perils hereby insured against this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and Limits of Liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any, AND EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the Policy/ies of the Primary Insurer(s) prior to the happening of a loss for which claim is made hereunder and should any alteration be made in the premium for the Policy/ies of the Primary Insurer(s), then the premium hereon may be adjusted accordingly.

10. **PRIORITY OF PAYMENTS:**

   Notwithstanding anything contained herein to the contrary it is hereby agreed that in the event of a claim hereunder which involves more than one interest and/or coverage and/or peril, it shall be at the sole option of the Insured to apportion recovery under this policy when submitting final proof of loss, subject to the overall amount of claim not exceeding the overall limit of liability contained herein for any one loss.

   For the purpose of attachment of coverage for excess layers, it is further agreed that loss involving any interest and/or peril covered in primary or underlying excess layers, but excluded in higher excess layers, shall be recognized by such excess layers as eroding or exhausting the occurrence limits of the primary and/or underlying excess layer(s). Nothing herein, however, shall be deemed to extend

MSI 001213

coverage in such layers(s) to include loss from the specifically excluded peril in the excess layer(s) itself.

***Other Insurance:*** Commercial Property Conditions

13. Other Insurance:

A. The Insured may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If the Insured does, the Company will pay their share of the covered loss or damage. The Company's share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

B. If there is other insurance covering the same loss or damage, other than that described in above, the Company will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether the Insured can collect on it or not. But the Company will not pay more than the applicable Limit of Insurance.

MSI 001214