**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------      **ECF Case**
**FIREMAN'S FUND INSURANCE**
**COMPANY, ONE BEACON INSURANCE**        **10 Civ. 1653 (JPO)**
**COMPANY, NATIONAL LIABILITY AND**
**FIRE INSURANCE COMPANY and QBE**
**MARINE & ENERGY SYNDICATE 1036,**

                        **Plaintiffs,**

        **-against-**

**GREAT AMERICAN INSURANCE**
**COMPANY OF NEW YORK, MAX**
**SPECIALTY INSURANCE COMPANY**
**and SIGNAL INTERNATIONAL, LLC**

                        **Defendants.**
-------------------------------------------------------

**JOINT RESPONSE IN OPPOSITION TO MAX SPECIALTY CROSS MOTION FOR**
**SUMMARY JUDGMENT AND REPLY TO MAX SPECIALTY OPPOSITION TO FFIC**
**AND SIGNAL JOINT MOTION  FOR SUMMARY JUDGMENT**

                        Respectfully submitted,

                        NICOLETTI HORNIG & SWEENEY
                        Attorneys for Plaintiffs
                        Wall Street Plaza
                        88 Pine Street, 7th Floor
                        New York, New York 10005-1801
                        Tel: (212) 220-3830

Of Counsel:
        John A. V. Nicoletti
        Robert A. Novak

                        LEBLANC BLAND P.L.L.C.
                        Attorneys for Defendant Signal International, LLC
                        909 Poydras Street, Suite 1860
                        New Orleans, LA  70112
                        Tel: (504) 528-3088, Ext. 208

Of Counsel:
        David S. Bland, Esq.
        Matthew C. Guy, Esq.

## <u>TABLE OF CONTENTS</u>

I.   MAX SPECIALTY IS BOUND BY THE UNAMBIGUOUS TERMS OF ITS EPI
     POLICY AND ANY AMBIGUITY MUST BE READ AGAINST MAX  SPECIALTY .... 2

   A.   The Excess Property Policy is Unambiguous – It Requires a Showing of  Intent in Order
        to Void the EPI Policy for Material Misrepresentation or  Concealment ........................... 2

   B.   Any Ambiguity must be read Against Max Specialty ........................................................ 3

   C.   Max Specialty must Show Intent Regardless of what State Law May Apply ................... 4

II.  TEXAS LAW APPLIES TO THE CLAIMS OF THE PARTIES ......................................... 4

   A.   New York Applies a Grouping of Contacts Analysis ........................................................ 5

   B.   The EPI Policy is Severable by Location and Insured ...................................................... 6

   C.   Grouping of Contacts Analysis Favors Application of Texas Law .................................... 7

   D.    Under Texas Law, Max Specialty's Claims must be Dismissed ..................................... 8

III. EVEN IF MISSISSIPPI LAW APPLIES, SIGNAL IS STILL ENTITLED TO  SUMMARY
     JUDGMENT AS MAX SPECIALTY MISREPRESENTS THE  CONTROLLING LAW .. 8

   A.   Applying Mississippi Law, Max Specialty Cannot Void the EPI Policy per its  Own
        Terms ............................................................................................................................... 9

   B.   Max Specialty Misrepresents Mississippi Common Law Applicable to  Avoidance or
        Rescission ...................................................................................................................... 10

      1.   Max Specialty Underwrote the EPI Policy Based Solely on Submissions  From Willis
           and AmWins in Three (3) Days, Without an Application or  any Inquiries
           Whatsoever ................................................................................................................. 12

      2.   Max Specialty did not make Inquiries through an Application or  Otherwise and
           therefore, has no Right to rescind its EPI Policy or Avoid  Coverage. ...................... 14

   C.   Stephen Heller and Associates Property Risk Assessment Report Contained  No
        Misrepresentations of Material Facts ............................................................................. 15

IV.  THE DOCUMENTS CITED BY MAX SPECIALTY IN SUPPORT OF ITS
     OPPOSITION/MOTION ARE IRRELEVANT AS THEY WERE NEVER  REQUESTED
     DURING UNDERWRITING OF MAX SPECIALTY'S EPI  POLICY ............................ 16

V.   MAX SPECIALTY HAS NOT DISPUTED THAT ITS FRAUD CLAIM SHOULD  BE
     DISMISSED ...................................................................................................................... 17

VI.   MAX SPECIALTY'S MOTION FOR SUMMARY JUDGMENT MUST ALSO  FAIL
       BECAUSE TRIP MORANO'S DECLARATION DIRECTLY  CONTRADICTS HIS
       OWN PRIOR SWORN DEPOSITION TESTIMONY ........................................................ 17

VII.   CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488
(Tex. App. –Houston [14th Dist.] 2007, *pet. denied*) ........................................ 8

*Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936 ................................................... 5

*Am. Sw. Corp. v. Underwriters at Lloyds, London*, 333 F. Supp. 1333

(S.D. Miss. 1971) ............................................................................... 3

*Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208
(2d Cir. 1999)..................................................................................... 2

*Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99 (1954) ........................................... 5

*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001)........................................................... 8

*Carroll v. Metropolitan Ins. and Annuity Co.*, 166 F.3d 802 (5th Cir. 1999)................. 13, 15

*Chapman v. Safeco Ins. Co. of America*, 722 F. Supp. 285 (N.D. Miss. 1989)............. 14, 17

*Donley v. Glens Falls Ins. Co.*, 76 N.E. 914 (1906) ........................................... 7

*Ethicon, Inc. v. Aetna Casualty and Surety Co.*, 688 F.Supp. 119 (S.D.N.Y. 1988)..... 6

*Golotrade Shipping & Chartering, Inc. v. Travelers Indem. Co.,* 706 F.Supp. 214
(S.D.N.Y. 1989)................................................................................... 5

*Great American E&S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*,
100 So. 3d 420 (Ms. 2012)....................................................................... 15

*Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800 (5th Cir. 2010) ......... 2

*GuideOne Mut. Ins. Co. v. Rock*, 2009 WL 1854452 (N.D. Miss. 2008)...................... 12

*In re Balfour Maclaine Intern. Ltd.*, 85 F.3d 68, 81 (2d Cir. 1996) ............................. 7

*Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)................................................. 4

*Lumbermans Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*,
2009 WL 137055 (S.D.N.Y. 2009)................................................................ 5

*Maryland Casualty Co. v. Continental Casualty Co.*, 332 F.3d 145 (2d Cir. 2003) ..... 4, 5

*Mass. Mut. Life Ins. Co. v. Nicholson*, 775 F. Supp. 954 (N.D. Miss. 1991) ............... 15

*Mattox v. Western Fidelity Ins. Co.*, 694 F. Supp. 210 (N.D. Miss. 1988).................... 14, 17

*Mayes v. Mass Mut. Life Ins. Co.,* 608 S.W. 212 (Tex. 1980)....................................... 8

*McGinniss v. Employers Reinsurance Corp.*, 648 F.Supp. 1263 (S.D.N.Y. 1986) ....... 6

*Moore v. State*, 676 So. 2d 244 (Ms. 1996) .................................................. 8, 9

*Nat'l Farmers Union Prop. & Cas. Co. v. First Columbus Nat. Bank*,
        669 So. 2d 767 (Miss. 1996)............................................................... 2, 9

*Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 522 (Tex. 1991)........... 3

*Olin Corp. v. Insurance Co. of North America*, 743 F. Supp. 1044
        (S.D.N.Y. 1990)................................................................................ 4, 5

*Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969) ....... 17, 18

*Perrett v. Johnson*, 253 Miss. 194, 175 So. 2d 497 (1965) ........................................... 9

*Price v. Worldvision Enterprises, Inc.*, 455 F. Supp. 252 (S.D.N.Y. 1978) ................. 18

*Prudential Prop. & Cas. Ins. Co. v. Pearce*, 484 N.Y.S.2d 464 (Sup. 1985)............... 7

*Republic Fire and Casualty Insurance Co. v. Azlin*, 2012 WL 4482355
        (N.D. Miss. 2012) ........................................................................... 12, 13

*Tex. Dept. of Housing and Community Affairs v. Verex Assurance, Inc.*,

        68 F.3d 922 (5th Cir. 1995) .............................................................. 3

*U.S. v. Douglass*, 476 F.2d 260 (5th Cir. 1973)........................................................... 9

*U.S. v. Pomponio*, 429 U.S. 10 (1976)........................................................................ 9

*U.S. Underwriters Ins. Co. v. United Prac. Associates, LLC*, 2006 WL 1329756
        (E.D.N.Y. 2006)............................................................................... 3

*Utica Nat'l. Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198 (Tex. 2004) ........................ 3

## PRELIMINARY STATEMENT

Plaintiffs Fireman's Fund Insurance Company ("Fireman's Fund"), One Beacon Insurance Company ("One Beacon"), National Liability and Fire Insurance Company ("National Liability") and QBE Marine & Energy Syndicate 1036 ("QBE") (hereafter sometimes collectively referred to as "Plaintiffs") and defendant Signal International, LLC ("Signal") respectfully submit this Opposition to Max Specialty Insurance Company's ("Max Specialty") Cross Motion for Summary Judgment and Memorandum of Law in Reply to Max Specialty's Opposition to Plaintiffs' and Signal's motion for partial summary judgment against Max Specialty (Rec. Doc. 258). Max Specialty misrepresents the law applicable to the Excess Property Insurance Policy ("EPI Policy") it drafted and issued to Signal and submits declarations that directly contradict prior sworn testimony in further bad faith attempts to mislead the court and shirk its responsibility to its insured. Nevertheless, the undisputed and material facts are as follows:

- Max Specialty drafted its EPI Policy language;

- The EPI Policy Commercial Property Condition Article 3 requires Max Specialty to show Signal's intent to misrepresent or conceal material facts in obtaining insurance coverage in order to deny coverage;

- Max Specialty has no evidence of intent to misrepresent or conceal on Signal's part;

- Max Specialty did not make any inquiries regarding any of Signal's property prior to agreeing to coverage – because its underwriter "had all the information he needed" to underwrite the EPI Policy;

- Max Specialty was fully aware of the age of the AFDB-5 Drydock and chose not to request additional documents regarding the AFDB-5 Drydock's condition; and,

- Max Specialty does not address and, therefore, admits that its fraud claim is completely without merit and should be dismissed.

Signal is entitled to Summary Judgment dismissing Max Specialty's specious fraud, misrepresentation and concealment claims.   Likewise, Max Specialty's Cross-Motion for Summary Judgment should be denied.

I.   **MAX SPECIALTY IS BOUND BY THE UNAMBIGUOUS TERMS OF ITS EPI POLICY AND ANY AMBIGUITY MUST BE READ AGAINST MAX SPECIALTY**

Max Specialty alone drafted all of the terms and conditions of its EPI Policy.  This is the pivotal fact and is dispositive of this motion; Signal agreed to those terms when the coverage was bound.  Signal made no changes to Max Specialty's policy language (that Max Specialty now seeks to run away from).  When two parties execute a contract, that contract is the controlling law between the parties.  Under Texas, New York, and Mississippi law, an insurance policy, like other contracts, is the law between the parties.  *See Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800 (5th Cir. 2010);  *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208 (2d Cir. 1999);  *Nat'l Farmers Union Prop. & Cas. Co. v. First Columbus Nat. Bank*, 669 So. 2d 767, 769 (Miss. 1996).  Max Specialty's EPI Policy (the contract between Signal and Max Specialty that was written by Max Specialty to insure Signal's property) is, therefore, the controlling law between Signal and Max Specialty.  There is no conflict of laws between any states that requires the Court to perform a choice of law analysis regarding what law applies to Max Specialty's EPI Policy.

A.   **The Excess Property Policy is Unambiguous – It Requires a Showing of Intent in Order to Void the EPI Policy for Material Misrepresentation or Concealment**

The terms of Max Specialty's EPI Policy are unambiguous:  Max Specialty is only entitled to avoid the EPI Policy if it proves that Signal "*intentionally* conceals or misrepresents a

material fact concerning: (1) This Coverage Part; (2) The Covered Property; … [or] (4) A claim under this Coverage Part." Depo. Exh. 104, p. 6, Art. 3.[1] This is the law between Signal and Max Specialty. It is incorrect and would be a ridiculous interpretation of Max Specialty's EPI Policy provision to remove the element of intent explicitly required by Max Specialty's EPI Policy language to void its EPI Policy. Max Specialty has not, and cannot, prove any intent of Signal to conceal or misrepresent material facts. *See* Rec. Doc. 227, Memorandum in Support of Joint Motion for Summary Judgment, p. 20 to 24. [2]   Max Specialty's own witnesses have testified as such. Max Specialty's motion is completely devoid of any evidence of such intent. Therefore, Max Specialty's Motion for Summary Judgment should be denied and judgment entered in Signal's favor pursuant to Signal's Motion for Summary Judgment.

### B.      Any Ambiguity must be read Against Max Specialty

Even if the Court were to determine that the concealment or misrepresentation clause drafted by Max Specialty to be ambiguous, any ambiguity in the EPI Policy must be read against Max Specialty and in favor of coverage for Signal.  *See U.S. Underwriters Ins. Co. v. United Prac. Associates, LLC,* 2006 WL 1329756 (E.D.N.Y. 2006); *Am. Sw. Corp. v. Underwriters at Lloyds, London*, 333 F. Supp. 1333, 1338 (S.D. Miss. 1971); *Tex. Dept. of Housing and Community Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 522, 555 (Tex. 1991)).

Under Texas law, if the language of a coverage exclusion is ambiguous, the Court <u>must</u> adopt the interpretation of the insured if it would be reasonable to do so, <u>even</u> where the insurer's interpretation appears to be more reasonable.  *See Utica Nat'l. Ins. Co. v. Am. Indem. Co.*, 141

---

[1] *See also* Max Specialty Amended Crossclaims Against Signal, Rec. Doc. 89, ¶ 96 (emphasis added);  Depo. of Boesen, p. 94, ll. 6 – 20.

[2] Max Specialty's Memorandum tacitly admits that it cannot show intent by its unmitigated efforts to argue that no intent is required.

S.W.3d 198, 202 (Tex. 2004).  Thus, in the event that the Court determines the language of the EPI Policy to be ambiguous, any ambiguity must be read in Signal's favor, and Max Specialty should be required to offer evidence – not mere conjecture or speculation – of Signal's <u>intent</u> to misrepresent or conceal material facts during the underwriting of the EPI Policy.

As Signal has shown repeatedly in its Memorandum in Support of its and FFIC's Joint Motion for Summary Judgment **the record is completely devoid of any evidence that Signal intended to misrepresent or conceal material facts.**  *See* Rec. Doc. 227, p. 25.  Signal is therefore entitled to Summary Judgment under Federal Rule of Civil Procedure 56.

### C.    Max Specialty must Show Intent Regardless of what State Law May Apply

Regardless of what state law applies to the coverage dispute over the EPI Policy, the EPI Policy itself controls and clearly requires a showing of intent in order for Max Specialty to void the EPI Policy.  Thus, it does not matter whether Texas, Mississippi, or some other state's law applies to the interpretation of the EPI Policy language drafted by Max Specialty.  Max Specialty's policy language requires it to prove intent in order to avoid its own policy.  This should simply be the end of the inquiry.  Moreover, Max Specialty's attempt to create conflicts where none exists is borne out by the fact that Mississippi law also requires a showing of intent in order to void a policy under concealment clauses similar to the  one drafted by Max Specialty. *See* Section III, *infra*.

## II.    TEXAS LAW APPLIES TO THE CLAIMS OF THE PARTIES

Federal courts sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Maryland Casualty Co. v. Continental Casualty Co.*, 332 F.3d 145, 151 (2d Cir. 2003); *Olin Corp. v. Insurance Co. of North America*, 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990).  Thus, in the instant matter, New

York's choice-of-law rules must be applied.  Signal contends that Texas law applies, while Max Specialty asserts that Mississippi law governs this matter.

"The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Lumbermans Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 2009 WL 137055 (S.D.N.Y. 2009) (quoting *Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 937).  As discussed *supra*, whether the EPI Policy should be voided for material misrepresentation is governed by the EPI Policy itself.  By its very terms, the "Concealment, Misrepresentation or Fraud" Provision of the EPI Policy requires that any alleged misrepresentation or concealment by Signal <u>must</u> have been intentional.  Moreover, the required showing of intent is the same under Texas and Mississippi law.  Therefore, the legal question presented by Signal's Motion for Summary Judgment does not raise any conflict of laws issues.  However, even if such a conflict were presented, New York choice-of-law rules direct the application of Texas law.

### A.    New York Applies a Grouping of Contacts Analysis

New York law requires courts to apply the law of the jurisdiction "which has the most significant contacts with the matter in dispute." *Olin*, 743 F. Supp. at 1048-1049 (citing *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99 (1954)). Stated otherwise, New York courts look to see which jurisdiction has the greatest interest in the litigation using a "center of gravity" or "grouping of contacts" approach.  *Maryland Casualty*, 332 F.3d at 214.

In cases involving insurance contracts, New York courts have looked principally to the following factors: the location of the insured risk; the insured's principal place of business; where the EPI Policy was issued and delivered; the location of the broker or agent placing the EPI Policy; where the premiums were paid; and the insurer's place of business.  *See Golotrade*

*Shipping & Chartering, Inc. v. Travelers Indem. Co.,* 706 F.Supp. 214, 218 (S.D.N.Y. 1989) (principal place of business of insured; location of insurance broker; where policy delivered; where premiums paid); *Ethicon, Inc. v. Aetna Casualty and Surety Co.*, 688 F.Supp. 119, 123–24 (S.D.N.Y. 1988) ("state which the parties understood would be the principal location of the risk"; where policies issued; principal place of business and state of incorporation of the insured); *McGinniss v. Employers Reinsurance Corp.*, 648 F.Supp. 1263, 1267 (S.D.N.Y. 1986) (residence of insured; place where policy issued).  In this case, these factors dictate the application of Texas law.

### B.      The EPI Policy is Severable by Location and Insured

The EPI Policy provides excess coverage for casualties and business interruption (time element) sustained by Signal and its subsidiaries in their operations.  Coverage under the EPI Policy is based upon the location of insured property and encompasses multiple classes of property—buildings, dry docks, equipment, and other personal property.  The EPI Policy expressly incorporates the terms and conditions of the Primary Property Policy issued by Westchester Surplus Lines Insurance Company ("the PPI Policy"), which insures the "insurable interest of the Insured in all real and personal property of every kind and description, at a 'location' or within 1000 feet thereof . . ."  PPI Policy at III(A), p. 20; EPI Policy at "Excess Physical Damage Form," ¶2, p. 1.   A "location" is defined as "a site listed on a report provided the Insurer at inception."  PPI Policy at X(K)(1).  The assets covered by the PPI Policy and the EPI Policy are identified by owner and location in the Statement of Values submitted to the Primary Insurer and Max Specialty in connection with the issuance of both policies.  *See* Ex. 196, Statement of Values dated 1/16/2009 at p. 2.  In fact, the ratio of property insured by the EPI Policy was nearly 50% in Texas and 50% in Mississippi. Further, the statement of values

clearly breaks down coverage relative to what state the property is located in.  The conclusion is that the parties intended that the properties location control.  Coverage under the EPI Policy is, therefore, location-based and the EPI Policy is severable on this basis.

It is settled New York law that "where, by the same policy, different classes of property, each separately valued, are insured for distinct amounts, even if the premium for the aggregate amount is paid in gross, the contract is severable." *In re Balfour Maclaine Intern. Ltd.*, 85 F.3d 68, 81 (2d Cir. 1996); *Donley v. Glens Falls Ins. Co.*, 76 N.E. 914 (1906); *Prudential Prop. & Cas. Ins. Co. v. Pearce*, 484 N.Y.S.2d 464 (Sup. 1985).  The EPI Policy clearly falls into this category.  The separate classes of property covered by the EPI Policy are separately identified and valued on the Statement of Values and categorized by state..  *See* Ex. 196 Statement of Values dated 1/16/2009 at p. 2.  Thus, the EPI Policy is severable based upon the location of the insured assets.  In this case, the EPI Policy constitutes ten (10) separate policies that correspond to the ten separate locations of the insured property.[3]  The Max policy covering the Port Arthur location and AFDB-5 Drydock and Signal's property at other Texas locations is subject to Texas law.

### C.     Grouping of Contacts Analysis Favors Application of Texas Law

Texas clearly has the most significant contacts with this coverage dispute, which involves the loss of the Drydock.  Every aspect of this case points to Texas:

- the Drydock was owned by a Texas company—Signal International Texas, L.P (the "Insured");

- the Insured's principal place of business was Texas;

- the Drydock was operated exclusively in Texas;

---

[3]  The location of Signal's corporate headquarters has no bearing on what law should apply.  In fact, after the sinking of the AFDB-5 Drydock, the corporate headquarter location was moved to Mobile, AL, despite Signal not having any other assets in that location.

- the Drydock was located in Texas throughout the term of the EPI Policy; and

- the insured loss occurred in Texas.

Moreover, the impact of the loss of the Drydock was sustained exclusively in Texas. Without the Drydock, all operations at the Signal's facility in Port Arthur, Texas ceased, which had a direct effect on the local Texas economy. Finally, and possibly most importantly, any business interruption proceeds will be recovered by a Texas insured. The center of gravity for this case is undisputedly Texas.

### D.   Under Texas Law, Max Specialty's Claims must be Dismissed

It is clear that under Texas law, Max Specialty must show evidence of Signal's intent to misrepresent or conceal material facts. *See Mayes v. Mass Mut. Life Ins. Co.,* 608 S.W. 212, 216 (Tex. 1980); *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.,* 245 S.W.3d 488, 507 n. 27 (Tex. App. – Houston [14th Dist.] 2007, *pet. denied*) (*op. on reh'g*)(*citing Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001). As noted repeatedly, Max Specialty can point to no evidence of intent on Signal's part. Further, Max Specialty cannot establish the remaining elements required to void its EPI Policy under Texas law. Thus, its misrepresentation and concealment claims in Count I of its Crossclaims must be dismissed.

## III.   EVEN IF MISSISSIPPI LAW APPLIES, SIGNAL IS STILL ENTITLED TO SUMMARY JUDGMENT AS MAX SPECIALTY MISREPRESENTS THE CONTROLLING LAW

To be clear: the EPI Policy itself controls and clearly requires a showing of intent in order for Max Specialty to void the EPI Policy. No further interpretation of the policy is required. Even so, Max Specialty's specious arguments fail, as Mississippi law essentially recognizes this requirement in its application of a "knowing and willful" (synonymous with "intentional") standard when interpreting misrepresentation and concealment clauses. *See Moore v. State,*

*infra.* Moreover, it must be reiterated that it is undisputed that Signal did not complete or submit an insurance application to Max Specialty containing answers to inquiries posed by Max Specialty – a key fact fatal to Max Specialty's arguments regarding its alleged right to rescission under Mississippi common law.

**A.     Applying Mississippi Law, Max Specialty Cannot Void the EPI Policy per its Own Terms**

In a futile attempt to avoid <u>its own policy language</u>, Max Specialty now urges that, in the event the Court applies Mississippi law, its own EPI Policy language regarding intent must be disregarded by this Court and a separate judicial standard of "knowing and willfully made" false statements – that would somehow be different than the requirement in the EPI Policy that Signal intentionally misrepresent or conceal material facts – be imposed.  Rec. Doc. 258, p. 12.  Max Specialty's meritless argument fails.

First, it cannot be seriously argued that Max Specialty is not bound by the terms of the EPI Policy it drafted and provided to Signal.  *See Nat'l Farmers Union Prop. & Cas. Co. v. First Columbus Nat. Bank*, *supra.*  Max Specialty cannot be allowed to read in words that are simply not present in the controlling language of its EPI Policy.  Further, the Mississippi Supreme Court has stated that "willfully" means "knowingly" and that "'willful' means nothing more than doing an act intentionally."  *Moore v. State,* 676 So. 2d 244 (Ms.  1996); *Perrett v. Johnson*, 253 Miss. 194, 175 So. 2d 497 (1965).  The United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have reasoned likewise.  *See U.S. v. Pomponio*, 429 U.S. 10, 12 (1976) (reasoning that "willful" in a criminal context means voluntary or intentional); *U.S. v. Douglass*, 476 F.2d 260 (5th Cir. 1973) (reasoning that "willful" or "intentional" means it requires that the act be purposefully done with an awareness of the action and not just negligently or inadvertently).

9

Max Specialty must still, therefore, show that the acts of Signal were intentional.  Max Specialty's argument that "knowing and willful" somehow reduces the burden on it to show that Signal acted intentionally in any alleged material misrepresentation or concealment is without any merit whatsoever.

     **B.**    **Max Specialty Misrepresents Mississippi Common Law Applicable to Avoidance or Rescission**

In the event it is determined that Mississippi law applies <u>and</u> that Max Specialty has a separate avenue to avoid or rescind the EPI Policy under Mississippi law outside of the EPI Policy terms, Max Specialty has blatantly misrepresented to the Court the essential holdings of the cases it cites:  that an insured has a duty to answer questions in an insurance application truthfully.  Here, <u>it is undisputed that there was no insurance application; Max Specialty has, under oath, conceded this point.</u>  Depo. of Boesen, p. 16, l. 20 – p. 17, l. 6; p. 18, ll. 17 – 22. Moreover, Max Specialty did not make even <u>one</u> inquiry during the underwriting process.  It received an email from AmWins attaching the property submission on January 28, 2009 and bound the policy on January 30, 2009 without any recommendation, reservation, or condition. Rec. Doc. 227, p. 15.  It made no inquiry whatsoever to Signal or its brokers and thus received no affirmative answers from them.  Max Specialty's underwriter admitted he <u>never</u> spoke to Signal. Morano Depo. p. 127, ll. 6 – 10.  Signal had no duty to disclose any documents to Max Specialty as Max Specialty never requested them.

Max Specialty's <u>entire</u> underwriting of its EPI Policy consisted of eleven (11) emails with the broker, AmWins, and took a total of three (3) days.  Max Specialty's underwriter never asked for additional information.   The following email exchanges constitute the entire underwriting process:

10

| January 28, 2009 10:56 AM | Max Specialty receives 2009 Property Submission from AmWins of New York. (Morano Depo. Exh. 196). |
|---|---|
| January 28, 2009 11:24 AM | "Rush Clear" authority requested for Trip Morano by Tom Krause. (Morano Depo. Exh. 196). |
| January 28, 2009 5:30 PM | Morano informs AmWins that it "passes" on the layers outlined in the original submission email.  (Morano Depo. Exh. 197). |
| January 29, 2009 10:44 AM | AmWins requests that Max Specialty reconsider (Morano) "at a $15mm ex $10m, layer All Risk excluding" Cat exposure. (Morano Depo. Exh.197). |
| January 29, 2009 11:31 AM | AmWins provides Max Specialty (Morano) with Ace/Westchester Primary Property Insurance quote and request re-examine providing "some Cat limits" or continue to looke at the "nonCat $15mm ex $10mm". (Morano Depo. Exh. 199). |
| January 29, 2009 11:41 AM | Max Specialty (Morano) passes on Cat layers, but is willing to authorize "50% of the $15mm x/s $10mm." (Morano Depo. Exh. 200). |
| January 30, 2009 8:51 AM | Max Specialty (Morano) informs AmWins that it "lined up the remaining 50% of the non-CAT $15mm x/s $10mm @ $100,000 gross.  (Morano Depo. Exh. 201). |
| January 30, 2009 8:56 AM | AmWins request formal quote to present and get O.K. to bind. (Morano Depo. Exh. 201). |
| January 30, 2009 9:15 AM | Max Specialty (Morano) provides formal quote to AmWins. (Morano Depo. Exh. 201). |
| January 30, 2009 3:09 PM | AmWins provides authority to bind coverage.  (Morano Depo. Exh. 201). |
| January 30, 2009 3:25 PM | Max Specialty binds coverage as quoted.  (Morano Depo. Exh. 201). |

Max Specialty's entire underwriting process took approximately 52 hours.  For Max Specialty to now argue that it required voluminous reports and information in order to properly underwrite its EPI Policy flies in the face of the fact that all Max Specialty was really concerned about was the underlying coverage provider.  Thus, <u>the documents cited by Max Specialty that it</u>

alleges should have been disclosed were not material to Trip Morano's decision to underwrite the Max Specialty EPI Policy.   For that reason, Mr. Morano testified that he had "all of the information [he] needed to decide to underwrite [Max Specialty's EPI Policy]".  Morano Depo. p. 45, ll. 14 – 15.  He simply read through the Heller report prior to agreeing to underwrite Max Specialty's EPI Policy.  Morano Depo. p. 41 – 42.  The speed in which it agreed to underwrite Max Specialty's EPI Policy is convincing evidence of that fact.

It is also important to note that the AFDB-5 was just one piece of property constituting about 6.4% of Signal's total property.  To follow Max Specialty's premise to its ultimate absurd reality, if Signal were required to provide it with literally thousands of pages of documents concerning the AFDB-5 Drydock, then it logically follows that Max Specialty would need all documents concerning the remaining 83.4 % of Signal's property.  The sheer task to review such documents demonstrates the fallacy of Max Specialty's entire premise behind its bad faith denials.

1.    Max Specialty Underwrote the EPI Policy Based Solely on Submissions From Willis and AmWins in Three (3) Days, Without an Application or any Inquiries Whatsoever

Central to the cases that Max Specialty cites in an attempt to support its ill-fated common law rescission claim is the theme that an insured must answer questions in an insurance application truthfully.  "It is well settled under Mississippi law that 'misstatements of material fact **in an application for insurance** provide ground for declaring a policy issued in reliance thereon void ab initio.'"  *Republic Fire and Casualty Insurance Co. v. Azlin*, 2012 WL 4482355, *6 (N.D. Miss. 2012) (quoting *GuideOne Mut. Ins. Co. v. Rock*, 2009 WL 1854452 at 2 (N.D. Miss. 2008) (emphasis added).   Put another way, when an insurer asks a potential insured a question, the insured is required to answer fully and truthfully.  "To establish that, as a matter of

law, material misrepresentation has been made **in an insurance application,**  (1) it must contain **answers** that are false, incomplete or misleading and (2) the false, incomplete or misleading **answers** must be material to the risk insured against or contemplated by the EPI Policy." *Azlin*, 2012 WL 4482355 at *6 (emphasis added) (quoting *Carroll v. Metropolitan Ins. and Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999)).  The bottom line: Max Specialty did not ask Signal any questions during the three (3) day underwriting process.  The undisputed facts surrounding Max Specialty's EPI Policy placement bear out that:

- There was no application for insurance for the Max Specialty EPI Policy;[4]

- Max Specialty had no communication with Signal;[5]

- Max Specialty made no inquiries of AmWins, Willis, or Signal – thus there were no answers;[6]

- Mr. Morano never inspected Signal's property but knew Max Specialty had the right to do so;[7]

- Mr. Morano testified that he has never made inspections or requested updated surveys when underwriting a policy in his entire career;[8]

- Max Specialty's underwriter testified that the Property Insurance Submission was typical and covered "all the fundamentals" he looks for in underwriting a policy;[9] and,

- Max Specialty underwrote the EPI Policy in three (3) days.[10]

Mr. Morano testified that this was a "short fuse account" – a typical industry occurrence.[11] Moreover, Mr. Morano testified that he did not convey to AmWins, Willis, or Signal what he considered material to underwriting Max Specialty's EPI Policy, despite having done so on other

---

[4]  Depo. of Boesen, p. 16, l. 20 – p. 17, l. 6; p. 18, ll. 17 – 22.
[5]  Depo. of Morano, p. 37, ll. 5 – 13.
[6]  Depo. of Morano, p. 110.
[7]  Depo. of Morano, p. 20 -21; p. 31 – 32.
[8]  Depo. of Morano, p. 30.
[9] Depo. of Morano, p. 53.
[10] Depo. of Morano, p. 42, ll. 10 – 14.
[11] Depo. of Morano, p. 52.

accounts in the past.[12]  It is clear Mr. Morano did not consider the condition of the AFDB-5 or

any of Signal's other property to be material to his decision to underwrite Max Specialty's EPI

Policy.  Mr. Morano knew that he had the right to inspect Signal's property but chose not to do

so.  Morano Depo. p. 31 – 32.  Max Specialty simply did not make any inquiries to Signal

because it had all the information it needed, therefore Signal gave no answers to inquiries in an

application or otherwise.

Again, there was no insurance application requiring any affirmative answers on the part

of Signal. *See* Boesen Depo, p. 16, l. 20 – p. 17, l. 6; p. 18, ll. 17 – 22. Such an application and

answers to questions posed therein is absolutely central to the cases cited by Max Specialty.

Thus, the cases cited by Max Specialty are not in any way relevant or dispositive, and Max

Specialty has no legitimate argument for avoiding its EPI Policy, even under Mississippi law.

> 2.   Max Specialty did not make Inquiries through an Application or
>      Otherwise and therefore, has no Right to rescind its EPI Policy or Avoid
>      Coverage.

It is clear under Mississippi law that "[an insurer] has no right to rescind a policy because

there was information <u>not asked for</u> on the application and not volunteered by the applicant, the

knowledge of which would have caused the company to refuse to insure." *Mattox v. Western*

*Fidelity Ins. Co.*, 694 F. Supp. 210, 216 (N.D. Miss. 1988); *Chapman v. Safeco Ins. Co. of*

*America*, 722 F. Supp. 285 (N.D. Miss. 1989) (emphasis added).  Signal made no factual

misrepresentations to Max Specialty during the placement of its EPI Policy.  Max Specialty did

not request any information regarding the AFDB-5 Drydock.  Thus, Signal had no duty to

disclose any additional information other than that contained in the Property Insurance

---

[12] Depo. of Morano, p. 124 -127.

Submission prepared by Willis of Alabama.  Max Specialty thus has no right to rescind its EPI Policy.

Max Specialty is required to establish the existence of a <u>factual misrepresentation in the application</u> and <u>its materiality</u> by clear and convincing evidence.  *See Carroll v. Metropolitan Ins. and Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999); *see also Mass. Mut. Life Ins. Co. v. Nicholson*, 775 F. Supp. 954, 959 (N.D. Miss. 1991).   Max Specialty made no inquiries.  Signal provided no answers. Therefore, there cannot be clear and convincing evidence of false representations to inquiries of Max Specialty.  Max Specialty's Motion for Summary Judgment must fail and Signal's Motion for Summary Judgment should be granted dismissing Max Specialty's avoidance and rescission claims.

### C.    Stephen Heller and Associates Property Risk Assessment Report Contained No Misrepresentations of Material Facts

The Stephen Heller and Associates Property Risk Assessment Report[13] (the "Heller Report") was not a condition and valuation survey for any of the items of property listed therein. It was an independent third party opinion of the potential insurance risks associated with insuring Signal's property.  While it may have contained certain statements of fact, such as the location of a given piece of property, its purpose was to convey a subjective opinion regarding the overall risk to an insurer of Signal's property by located.  It did not provide Max Specialty or any other insurer with an objective statement regarding property condition.   The Heller report rated the overall risk of Signal's property.  *See* Heller Report, p. 8.  As the Supreme Court of Mississippi has recognized, providing an opinion, even a bad one, is not a misrepresentation of fact. *See, e.g. Great American E&S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420 (Ms.

---

[13]  Depo. Exhibit 196, p. TRIPM0089 – TRIPM0148 (attached to Affidavit in Support of Signal and FFIC Joint Motion for Summary Judgment).

2012).  Thus, Max Specialty cannot rely upon the opinions of the Heller Report as a proxy for answers to inquiries it could have posed to Signal in an insurance application or during the underwriting process.

Max Specialty argues it was entitled to rely on a statement of opinion by Heller that Signal's overall property insurance risk was "above average".   Initially, Max Specialty cannot point to any evidence that this statement of opinion was objectively wrong or misleading.  Secondly, this statement of opinion did not refer to the AFDB-5 Drydock.  It was an opinion about the risk presented by <u>all of Signal's property.</u>  In fact, the Heller Report only mentions the AFDB-5 Drydock in limited context: in its general description of the Dock Yard location and the maximum foreseeable risk for that location.   At no time does the Heller Report provide a statement of the Drydock's physical condition.   Mr. Morano testified that the Heller report provide an overall view of all of Signal property.  Morano Depo. p. 87.

The Heller Report even pointed out that the Maximum Foreseeable Loss for the Port Arthur Dock Yard was "Major Dry Dock Equipment failure, structural failure or dropped heavy object; loss of dry dock results in loss of facility use."[14]   Despite such disclosure in the Heller Report, Max Specialty did not make any inquiry whatsoever regarding Signal's property.[15]  Its arguments – veiled or otherwise – are meritless.

## IV.   THE DOCUMENTS CITED BY MAX SPECIALTY IN SUPPORT OF ITS OPPOSITION/MOTION ARE IRRELEVANT AS THEY WERE NEVER REQUESTED DURING UNDERWRITING OF MAX SPECIALTY'S EPI POLICY

As noted in Section III (B)(2), *supra*, Signal had no duty to disclose anything to Max Specialty because Max Specialty never asked for such information – in an insurance application

---

[14]  Depo. Exhibit 196, p. TRIMPM0125.
[15]  Depo. of Morano, p.  110.

or otherwise.   Thus, by now insisting that Signal should have provided voluminous (and outdated) documentation regarding the AFDB-5 Drydock, <u>Max Specialty simply attempts to underwrite its EPI Policy after the fact</u>.  Consequently,  the documents cited by Max Specialty in its brief are completely irrelevant.   The only instance in which the documents would be relevant is <u>if Max Specialty had requested further information regarding the AFDB-5 Drydock during the placement of its EPI Policy and Signal provided none.</u>  See*, Mattox v. Western Fidelity Ins. Co.*, 694 F. Supp. 210, 216 (N.D. Miss. 1988), *Chapman v. Safeco Ins. Co. of America*, 722 F. Supp. 285 (N.D. Miss. 1989).  As they are irrelevant, all of Max Specialty's arguments regarding their contents should be disregarded.

## V.     MAX SPECIALTY HAS NOT DISPUTED THAT ITS FRAUD CLAIM SHOULD BE DISMISSED

Max Specialty does not dispute that its fraud claim should be dismissed, instead only noting that it need not prove that Signal committed fraud in order to void Max Specialty's EPI Policy.  Rec. Doc.  258, p. 12, n. 8.  Thus, Signal is entitled to Judgment dismissing the fraud allegations contained in Count I of Max Specialty's Cross Claim (Rec. Doc. 89).

## VI.    MAX SPECIALTY'S MOTION FOR SUMMARY JUDGMENT MUST ALSO FAIL BECAUSE TRIP MORANO'S DECLARATION DIRECTLY CONTRADICTS HIS OWN PRIOR SWORN DEPOSITION TESTIMONY

Max Specialty attempts to create a genuine issue of fact where there is none by submitting to the Court a self-serving declaration of its EPI Policy underwriter, James F. (Trip) Morano, III.   Mr. Morano's declaration directly contradicts his earlier sworn deposition testimony.

The Second Circuit has held in *Perma Research & Development Co. v. Singer Co*., 410 F.2d 572 (2d Cir. 1969) that a district court may grant summary judgment where an issue raised

by affidavit is clearly inconsistent with earlier deposition testimony. In that case, plaintiff Perma Research alleged that the defendant had fraudulently entered into a contract which it never intended to perform. The president of Perma Research was extensively deposed and disclosed no specifics of the fraud claim. In a subsequent affidavit, the president referred to a conversation in which a representative of the defendant allegedly stated that the defendant had no intention of performing on the contract. The Second Circuit concluded that the district court had properly granted summary judgment since the statement in the affidavit was blatantly inconsistent with the earlier deposition. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research*, 410 F.2d at 578.  The same rationale has been followed by other courts faced with a party's attempt to inject a factual dispute through a contradictory affidavit. See *Price v. Worldvision Enterprises, Inc.*, 455 F. Supp. 252, 260 (S.D.N.Y. 1978) (affidavit testimony departs "so markedly from the prior deposition of defendants' key witness . . . as to brand as bogus the factual issues sought to be raised"), *aff'd*, 603 F.2d 214 (2d Cir. 1979).

Trip Morano was deposed during a full day deposition in which he was questioned at length regarding the underwriting process for Max Specialty's EPI Policy.  Contrary to Max Specialty's current position, it is indisputable that Mr. Morano testified that he had all of the information needed to underwrite Max Specialty's EPI Policy:

> Q:   Did you have all the information that you needed to underwrite the Signal excess insurance policy?
>
> A.   Yes.
>
> Q.   Yes?

A.      Yes.

Depo. Of Morano p. 45, 11. 14-19.

Mr. Morano's answer was not qualified, objected to, or equivocated.  He <u>never</u> asked for anything further.  Trip Morano had all the information he needed to underwrite Max Specialty's EPI Policy.  His declaration, however, directly contradicts this statement and therefore must be completely disregarded.  All of his assertions in his declaration about additional documents he needed are simply attempts to raise bogus issues while underwriting after the loss.  Mr. Morano cannot escape the fact that Max Specialty <u>chose</u> not to make any inquiry of Signal or its brokers.  His declaration is a sham.

## VII.    CONCLUSION

Max Specialty's Opposition and Cross-Motion fail to point out any disputed issues of fact.  Instead, Max Specialty raises the same tired arguments in bad faith that it has raised throughout the pendency of this litigation.  It is past time that Signal be properly compensated for its loss.  Thus, Signal's Motion for Summary Judgment should be granted dismissing Max Specialty's Fraud, Misrepresentation, and Concealment claims (Count I of its Crossclaims) and Max Specialty's Cross-Motion for Summary Judgment should be denied.

Dated May 22, 2013
New Orleans, Louisiana                          By:  /s/ David S. Bland

                                        John A. V. Nicoletti
                                        Robert A. Novak
                                        NICOLETTI HORNIG & SWEENEY
                                        Attorneys for Plaintiffs
                                        Wall Street Plaza
                                        88 Pine Street, 7th Floor
                                        New York, New York 10005-1801
                                        Tel: (212) 220-3830

David S. Bland, Esq.
Matthew C. Guy, Esq.
LEBLANC BLAND P.L.L.C.
*Attorneys for Defendant*
*Signal International, LLC*
909 Poydras Street, Suite 1860
New Orleans, LA  70112
Tel: (504) 528-3088
Fax: (504) 586-3419
Email: dbland@leblancbland.com
        mguy@leblancbland.com

Stephen Patrick Kyne, Esq.
BURKE & PARSONS
100 Park Avenue, 30th Floor
New York, New York 10017
Ph: (212) 354-3814
Fax: (212) 221-1432
Email: kyne@burkeparsons.com

TO:

George Richard Zacharkow, Esq.
Stephen J. Galati, Esq.
MATTIONI, LTD.
*Attorneys for Defendant*
*Great American Insurance Company of New York*
399 Market Street, 2nd Floor
Philadelphia, Pennsylvania 19106
Ph: (215) 629-1600
Fax: (215) 923-2227
Email: gzachark@mattioni.com
      sgalati@mattioni.com

Stephen D. Straus, Esq.
Adam Krauss, Esq.
TRAUB LIEBERMAN STRAUS & SHREWSBERRY, LLP
*Attorneys for Defendant*
*Max Specialty Insurance Company*
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York  10532
Ph: (914) 347-2600
Fax: (914) 347-8898
Email: sstraus@traublieberman.com