UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE CO., ONE BEACON INSURANCE CO., NATIONAL LIABILITY AND FIRE INSURANCE CO., and QBE MARINE & ENERGY SYNDICATE 1036,** *Plaintiffs* v. **GREAT AMERICAN INSURANCE CO. OF NEW YORK, MAX SPECIALITY INSURANCE CO. and SIGNAL INTERNATIONAL, LLC,** *Defendants* | CIVIL ACTION NO. 10-cv-1653 (LAK) |

**DEFENDANT GREAT AMERICAN INSURANCE CO. OF
NEW YORK'S RESPONSE TO PLAINTIFFS' AND SIGNALS'
SUPPLEMENTAL JOINT LOCAL RULE 56.1 STATEMENT (DOC. 274)**

MATTIONI, LTD.
George R. Zacharkow
Stephen J. Galati
399 Market Street, Suite 200
Philadelphia, PA 19106
Attorneys for Defendant
Great American Insurance Co. of
New York

(215) 629-1600 (T)
(215) 923-2227 (F)
gzacharkow@mattioni.com
sgalati@mattioni.com

1

Defendant Great American Insurance Co. of New York (Great American), by and through its attorneys, hereby responds to the Supplemental Joint Local Rule 56.1 Statement filed by Signal International, LLC (Signal), and Plaintiffs Fireman's Fund Insurance Co., One Beacon Insurance Co., National Liability and Fire Insurance Co., and QBE Marine, and Energy Syndicate 1036 (Plaintiffs) in Opposition to Great American's Motion for Summary Judgment seeking a declaration that the Great American Vessel Owner Pollution Policy is void *ab initio*.

Great American objects to the argumentative and misleading headings used by Signal and Plaintiffs and move to strike.

General Objection: To the extent it is being offered, Great American objects to the deposition testimony as hearsay. It also objects to the testimony on the basis of foundation and speculation, since the witnesses stated that they did not recall seeing and/or had not reviewed documents regarding the condition of the Drydock, and they did not have an opportunity to review them at their depositions.

1.  Disputed. This statement mischaracterizes the testimony and takes the testimony out of context. Both of Great American's underwriters, Reese Lever and Cindy Stringer, testified that although they may not ask for the information, they still require that the vessel be an acceptable hull risk. Typically, they presume that the pertinent information will be provided by the applicant to hull insurers. Copies of relevant portions of Mr. Lever's and Ms. Stringer's deposition transcripts are attached as Exhibits "A" and "B" respectively.

As Mr. Lever testified, it is required that the vessel be an acceptable hull risk (Lever Tr. 131:8-19). Mr. Lever would expect that the hull and P&I insurers had done their due diligence and that the vessels were good risks (Lever Tr. 132:7-21). If Mr. Lever was furnished surveys, he would want all surveys, not only the most recent. He would want as much information as he

could get on the vessel (Lever Tr. 137:21-138:3). While he would not expect to be provided with surveys for all vessels, he did believe that if there were any vessels not up to specification, the insured should let Great American know what they are doing to get those vessels back up and operational; that the assured would give an accurate picture of what state the vessels are in (Lever Tr. 138:10-19, 138:23-139:7). If there were major repairs being performed it is something Great American would like to know about (Lever Tr. 155:22-156:21). It goes to the duty of utmost good faith; if the vessel has a problem the underwriter should be aware of it (Lever Tr. 157:9-19). Signal was aware of serious problems with its vessels but did not tell Great American about them (Lever Tr. 157:20-25). It would be significant to an underwriter if a surveyor indicated that all the pontoons should be separately removed and drydocked for inspection of bottom plating and repairs (Lever Tr. 172:20-173:6).

Further, Cindy Stringer, one of the underwriters for Great American, testified that pertinent to the decision as to whether Great American would have agreed to issue the pollution policy would be the presence of Hull and P&I insurance. Ms. Stringer relies on the information that would have been given to those underwriters in considering the risk (Stringer Tr. 51:23-53:8). The reason the Great American pollution policy application does not specifically ask for information on the conditions of the vessels is because they presume that the appropriate information is provided to the insurance companies that provide the Hull and P&I insurance. (Stringer Tr. 66:17-24). According to Ms. Stringer, it was common sense that vessels would need to be an acceptable hull risk before pollution insurance was provided (Stringer Tr. 73:10-24). If Ms. Stringer had read the surveys on the drydock she would have been concerned (Stringer Tr. 141:14-18). If she knew the drydock was in bad shape and Signal told her that they were going to fix it up, she would not have wanted to provide insurance for the drydock until all

recommendations were completed (Stringer Tr. 141:21). Ms. Stringer would not have agreed to provide pollution insurance coverage for the drydock if she knew the facts as disclosed in the survey reports (Stringer Tr. 167:7-13). While on pollution policies it is not the general practice to ask for survey reports, if the insured had information that could materially affect the policy, it was their obligation to furnish that information to Great American (Stringer Tr. 175:3-7, 188:9-21). Ms. Stringer further testified that if an insured was aware of a condition that would put a vessel in jeopardy, they owe a duty to let the underwriters know of that condition (Stringer Tr. 190:10-17). As a prudent insured, Signal should have let the underwriters know of the condition (Stringer Tr. 228:8-15). As an underwriter, Ms. Stringer would want to know of information that is detrimental to the risk (Stringer Tr. 251:24-252:15). It would have been of a significant concern to her if she knew of the information contained in the July 16, 2007 E-mail from Robert Heger to Terry Ballard at Signal (Stringer Tr.265:10-267:20).

2. Disputed. This statement mischaracterizes the testimony and takes the testimony out of context. See information provided in response to Supplemental Statement 1, *supra*.

3. Disputed. This statement mischaracterizes the testimony and takes the testimony out of context. See information provided in response to Supplemental Statement 1, *supra*.

4. Disputed. This statement mischaracterizes the testimony and takes the testimony out of context. See information provided in response to Supplemental Statement 1, *supra*.

5. Disputed. They expected that the insured would operate with the utmost good faith and affirmatively disclose all material facts to interested underwriters. This statement mischaracterizes the testimony and takes the testimony out of context. See information provided in response to Supplemental Statement 1, *supra*.

6. Undisputed.

7. Undisputed, but implicit in this position is the expectation that the insured will operate with the utmost good faith and affirmatively will disclose all material facts to interested underwriters. This statement mischaracterizes the testimony and takes the testimony out of context. See information provided in response to Supplemental Statement 1, *supra*.

8. Undisputed, but irrelevant.

9. Undisputed, but irrelevant.

10. Undisputed, but irrelevant. See information provided in response to Supplemental Statements 4 and 5, *supra*.

11. Undisputed, but irrelevant.

12. Undisputed, but irrelevant. See information provided in response to Supplemental Statements 4 and 5, *supra*.

13. Undisputed.

14. Undisputed, but irrelevant.

15. Undisputed.

16. Partially disputed, but irrelevant. It is undisputed that Great American issued revised Underwriting Guidelines for its Vessel Owner Pollution Liability Policy in 2009 (Edition 4 dated 10/1/09), which was after the sinking of Signal's AFDB-5 drydock. It is disputed that the Underwriting Guidelines were specifically provided to Cindy Stringer and Reese Lever; they were posted in the electronic database for utilization by all underwriters, as in the past.

17. Undisputed, but irrelevant.

18. Irrelevant. The statement is not supported by evidence that would be admissible. Ms. Stringer was not involved with the preparation of the Underwriting Guidelines. Competence, FRE 602.

19. Undisputed, but irrelevant.

20. Undisputed, but irrelevant.

21. Undisputed.

22. Undisputed.

23. Undisputed, but irrelevant. Also see information provided in response to Supplemental Statements 1, 4, and 5, *supra*.

24. Undisputed, but irrelevant. Also, see information provided in response to Supplemental Statements 1, 4, and 5, *supra*.

25. Disputed. See information provided in response to Supplemental Statement 1, *supra*. It is abundantly clear from the record evidence that Signal and Willis, its broker, failed to operate with the utmost good faith and affirmatively disclose all material facts to any of its insurers (property, marine general liability, and pollution) regarding the condition of the AFDB-5 drydock, so none of these insurers had all of the information that was material.

26. Undisputed, but irrelevant.

27. Undisputed, but irrelevant.

28. Undisputed, but irrelevant.

29. Undisputed, but irrelevant.

30. Undisputed, but irrelevant.

31. Undisputed, but irrelevant.

32. Undisputed, but irrelevant.

33. Disputed, but irrelevant. Underwriters expected that the insured would operate with the utmost good faith and affirmatively disclose all material facts regarding the condition of the vessel. See information provided in response to Supplemental Statements 1, 4, and 5, *supra*.

34. Undisputed, but irrelevant. Underwriters expected that the insured would operate with the utmost good faith and affirmatively disclose all material facts regarding the condition of the vessel. See information provided in response to Supplemental Statements 1, 4, and 5, *supra*.

35. Disputed. Mr. Lever testified that he consulted with Mr. Weber (Lever Tr. 104:5-22).

36. Undisputed to the extent that this is referring to her binding limit, but irrelevant. Because Signal failed to operate with the utmost good faith and disclose the material facts regarding the condition of the AFDB-5 drydock, Ms. Stringer was not aware that the drydock was not an acceptable hull risk and otherwise was outside certain of the Underwriting Guidelines. See information provided in response to Supplemental Statements 1,4, and 5, *supra*.

37. Undisputed to the extent that this is referring to Ms. Stringer's testimony about her recollection, but irrelevant. See response to 36, *supra*.

38. Disputed, but irrelevant. Further, as evidenced by the totality of the transcript of Ms. Stringer's deposition testimony, she often stated that she did not recall information.

39. Disputed, but irrelevant.

40. Disputed. Mr. Lever so testified only with respect to a renewal (Lever Tr. 175:11-12). This presumes that Great American would have been given all material information about the condition of the drydock at the time the policy was initially written, which was not the case. See information provided in response to Supplemental Statement 1, *supra*. Further, there is a presumption that the repairs would be relatively limited (not that all decks and bottom plating required renewal) and that the materially poor condition of the drydock would not have existed for an appreciable period of time. Mr. Lever would rely on the insured's promise and good faith in this regard. (Lever Tr. 70: 5-9, 81-82:4).

MATTIONI, LTD.

By: _/s/ George R. Zacharkow_____
George R. Zacharkow
Stephen J. Galati

Dated: June 14, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Great American Insurance Company of New York's Response to Plaintiffs and Signal's Supplemental Joint Local Rule 56.1 Statement (Doc. 273) was served via electronic notification on June 14, 2013, to the following:

***Attorneys for Plaintiffs***
John A.V. Nicoletti, Esquire
Nicoletti Hornig & Sweeney
Wall Street Plaza
88 Pine Street, 7th Floor
New York, NY 10005
E-mail: jnicoletti@nicolettihornig.com

***Attorneys for Defendant Max Specialty Insurance Company***
Stephen D. Straus, Esquire
Traub Lieberman Straus & Shrewsbury, LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, NY 10532
E-mail: sstraus@traublieberman.com

***Attorneys for Defendant Signal International, LLC***
David S. Bland, Esquire
Matthew C. Guy, Esquire
LeBlanc Bland P.L.L.C.
909 Poydras Street, Suite 1860
New Orleans, LA 70112
E-mail: dbland@leblancbland.com; mguy@leblancbland.com

Stephen P. Kyne, Esquire
Burke & Parsons
100 Park Avenue
New York, NY 10017-5533
E-mail: kyne@burkeparsons.com

By: *[signature]*
George R. Zacharkow

9