UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
FIREMAN'S FUND INSURANCE COMPANY, ONE
BEACON INSURANCE COMPANY, NATIONAL
LIABILITY AND FIRE INSURANCE COMPANY and
QBE MARINE & ENERGY SYNDICATE 1036,

10-cv-1653 (JPO) (JLC)

            Plaintiffs,

 – against –

GREAT AMERICAN INSURANCE COMPANY OF
NEW YORK, MAX SPECIALTY INSURANCE
COMPANY and SIGNAL INTERNATIONAL, LLC,

            Defendants.
----------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT BASED ON MISREPRESENTATION

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600

Attorneys for Defendant
Max Specialty Insurance Company

Of Counsel:
  Stephen D. Straus
  Jeremy P. Monosov

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1

**ARGUMENT**........................................................................................................................1

    **I.**

    **MISSISSIPPI LAW APPLIES TO THE MISREPRESENTATION ISSUE AND COMPELS SUMMARY JUDGMENT FOR MAX SPECIALTY RESCINDING THE POLICY**............................................................1

        **A.**    **Mississippi Law Requires Summary Judgment for Max Specialty on Its Rescission Claim** ................................................................5

        **B.**    **The Absence of a Formal Application is Immaterial**............................................8

        **C.**    **Signal's Attempt to Discredit the Declaration of Max Specialty's Underwriter Should be Disregarded**..........................................10

**CONCLUSION** ........................................................................................................................11

# **TABLE OF CONTENTS**

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) ..................................................................................................................1

*Allstate Ins. Co. v. Am. Home Prods. Corp.*,
  2010 U.S. Dist. LEXIS 32091 (S.D.N.Y. Mar. 31, 2010) ...........................................................1

*Aslanidis v. United States Lines, Inc.*,
  7 F.3d 1067 (2d Cir. 1993) ........................................................................................................1

*Balfour Maclaine Intern. Ltd.*,
  85 F.3d 68 (2d Cir. 1996) ..........................................................................................................4

*Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.*,
  36 A.D.3d 17 (1st Dep't 2006), aff'd, 9 N.Y.3d 928 (2007) .....................................................2

*Cifarelli v. Village of Babylon,*
  93 F.3d 47 (2d Cir. 1996) ..........................................................................................................1

*Conroy v. N.Y. State Dep't of Corr. Servs.*,
  333 F.3d 88 (2d Cir. 2003) ........................................................................................................1

*Great American E&S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.,*
  100 So. 3d 420 (Miss. 2012) .....................................................................................................9

*Hall v. State Farm Fire & Cas. Co.,*
  937 F.2d 210 (5th Cir. 1991) .....................................................................................................6

*McCord v. Gulf Guar. Life Ins. Co.,*
  698 So. 2d 89 (Miss. 1997) .......................................................................................................6

*Moore v. State*,
  676 So. 2d 244 (Miss. 1996) .....................................................................................................6

*Morgan Stanley Mortgage Capital Holdings, LLC v. Realty Mortgage Corp.*,
  2008 U.S. Dist. LEXIS 79861 (S.D. Miss. Sept. 11, 2008) .....................................................10

*Munzer v. St. Paul Fire & Mar. Ins. Co.*,
  203 A.D.2d 770 (N.Y. App. Div. 1st Dep't 1994) .....................................................................3

*Nationwide Mut. Fire Ins. Co. v. Pabon,*
  903 So. 2d 759 (Ala. 2004)...............................................................................................4

*Perrett v. Johnson*, 253 Miss. 194 (1965).......................................................................6

*Republic Fire & Cas. Ins. Co. v. Azlin*,
  2012 U.S. Dist. LEXIS 137869, 2012 WL 4482355 (N.D. Miss. 2012) .......................5

*Shelter Mut. Ins. Co. v. Brown*,
  345 F. Supp. 2d 645 (S.D. Miss. 2004) ..........................................................................8

*Taylor Elec. Servs. v. Armstrong Elec. Supply Co.*,
  167 S.W.3d 522 (Tex. App. 2005) .................................................................................7

*U.S. v. Douglass,*
  476 F.2d 260 (5th Cir. 1973) ..........................................................................................6

*U.S. v. Pomponio*,
  429 U.S. 10 (1976) .........................................................................................................6

*Utica Nat'l Ins. Co. v. Am. Indem. Co.*,
  141 S.W.3d 198 (Tex. 2004) ..........................................................................................2

*Wausau Bus. Ins. Co. v. Horizon Admin. Services, LLC,*
  803 F. Supp. 2d 209 (E.D.N.Y. 2011) ....................................................................2, 4,5

**Rules**

Rule 56 of the Federal Rules of Civil Procedure ...........................................................1

**INTRODUCTION**

Defendant Max Specialty Insurance Company ("Max Specialty") submits this reply memorandum of law in further support of its cross-motion for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment (i) declaring Max Specialty insurance policy no. MAX2XP0004029, issued to defendant Signal International, LLC ("Signal"), void *ab initio*, (ii) ordering Signal to return the $2,920,000 paid by Max Specialty on Signal's claim for property loss under the policy, and (iii) awarding Max Specialty the fees and costs, including attorney's fees, incurred in this action.

**ARGUMENT**

**I.**

**MISSISSIPPI LAW APPLIES TO THE MISREPRESENTATION ISSUE AND COMPELS SUMMARY JUDGMENT FOR MAX SPECIALTY RESCINDING THE POLICY**

The party seeking summary judgment must establish that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Once the movant has met its initial burden, the burden shifts to the non-moving party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Allstate Ins. Co. v. Am. Home Prods. Corp.,* 2010 U.S. Dist. LEXIS 32091, *20 (S.D.N.Y. Mar. 31, 2010) (citing *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir. 1993)). Conclusory allegations, speculation or conjecture by the responding party will not defeat summary judgment. *See, e.g., Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)). Signal has failed to raise any issue of material fact precluding summary judgment for Max Specialty on its cross-claim against Signal. Summary judgment thus must be entered declaring the Policy void *ab initio*.

The arguments contained in the Joint Response in Opposition to Max Specialty Cross Motion for Summary Judgment and Reply to Max Specialty Opposition to FFIC and Signal Joint Motion for Summary Judgment (Doc. No. 281) ("Joint Response") do not change the fact that Mississippi law applies and requires rescission of the policy. In the Joint Response, Signal first argues that the language of the policy constitutes the law between the parties and thus that no conflict of laws exists. Joint Response at 2-3.[1] However, as set forth in Max Specialty's initial memorandum (Doc. No. 258) and as further discussed below, Mississippi courts have interpreted the very provision at issue here.[2]

Signal's choice of law analysis is materially flawed. Signal concedes that the risks insured under the Policy were evenly split between Mississippi and Texas. Joint Response at 6. As set forth in Max Specialty's motion, because the insured risks are spread more or less equally across multiple states, the location of the insured risk loses primary significance and the insured's principal place of business is afforded the greatest weight among the choice of law factors. *Wausau Bus. Ins. Co. v. Horizon Admin. Services, LLC,* 803 F. Supp. 2d 209, 214 (E.D.N.Y. 2011) (citing *Certain Underwriters at Lloyd's London v. Foster Wheeler Corp.,* 36 A.D.3d 17, 22-23 (1st Dep't 2006), *aff'd*, 9 N.Y.3d 928 (2007). At all relevant times, Signal's principal place of business was Mississippi. Straus Decl. Ex. 2 at WILLIS00697; Ex. 26; Ex.

---

[1] Signal incorrectly relies upon case law applicable to policy exclusions. *See* Joint Response at 3-4 (citing *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). The Concealment, Misrepresentation or Fraud provision in the policy is a condition, not an exclusion. Declaration of Stephen D. Straus dated April 17, 2013 (Doc. No. 259) ("Straus Decl.") at WILLIS00701.

[2] After acknowledging that the Concealment, Misrepresentation or Fraud provision of the policy is clear and unambiguous, Signal cites law addressing ambiguous contract terms. Joint Response at 3-4. Neither Signal nor Max Specialty argue that the provision at issue here is ambiguous. Signal is not presumptively entitled to a reading of the provision in its favor.

27 ¶3.[3]  Mississippi is also the place where the policy was delivered – a fact conceded by Signal.  Straus Decl. Ex. 2 at WILLIS00697; Reply Declaration of Stephen D. Straus dated June 21, 2013 ("Reply Decl.") Ex. 1 at Signal (NY) 000269.

     Signal alleges in a footnote that the location of its headquarters should have no bearing on the choice of law analysis.  Joint Response at 7, n.3.  Signal cites no authority to support this contention, which is overridden by the precedent cited above and discussed in Max Specialty's moving papers.  Moreover, New York courts hold that deferring to the insured's principal place of business rather than the location of the risk, where the risks are spread over several states, advances the same governmental interests, considers the parties' expectations at the time of contracting, and furthers the choice of law goals of "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied."  *See Foster Wheeler,* 36 A.D.3d at 22-24.[4]  It is clear under these sensible controlling principles that Mississippi law applies to the resolution of Max Specialty's rescission claim.

     Signal further alleges, without any citation to the factual record, that at some unspecified time after the AFDB-5 sank, Signal moved its headquarters to Alabama.  This vague and unsupported assertion should be given no weight.  The expectation of the parties at the time

---

[3] Signal alleges that the policy was delivered in Mississippi and Texas, but does not cite anything in the record to support this baseless claim.  *See* Signal's and plaintiff's response to Max Specialty's Rule 56.1 Statement of Undisputed Facts in Support of its Motions for Summary Judgment (Doc. No. 277) at Response to No. 61.  Signal thus fails to dispute, and therefore concedes, that the policy was delivered in Mississippi.  *See* Local Civil Rule 56.1(c) – (d); Fed. R. Civ. P. 56(c), (e); *Universal Calgary Church v. City of New York*, No. 96 Civ. 4606 (RPP), 2000 U.S. Dist. LEXIS 17037 at *5 n.5 (citing *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000); *Cooper v. Gottlieb*, No. 95 Civ. 10543 (JGK), 2000 U.S. Dist. LEXIS 12936 at *4 (S.D.N.Y. Sept. 8, 2000); *Wenzhou Wanli Food Co., Ltd. v. Hop Chong Trading Co., Inc.*, No. 98 Civ. 5045 (JFK), 2000 U.S. Dist. LEXIS 9554 at *10 (S.D.N.Y. July 11, 2000)).

[4] The insured's principal place of business should be considered over the place of incorporation, if different.  *Id.* at 24-25 (citing *Munzer v. St. Paul Fire & Mar. Ins. Co.*, 203 A.D.2d 770, 771, 772 (N.Y. App. Div. 1st Dep't 1994)).

insurance was sought and the policy was issued, based upon, *inter alia*, the policy declarations and place of delivery of the policy, was that Mississippi law would apply to policy disputes. *See also* Reply Decl. Ex. 2 (Property Insurance Submission dated January 28, 2009) at TRIPM 0064 ("Choice of Law: Mississippi."). Based on the pertinent facts and case law precedent discussed above, Mississippi law applies to the rescission claim in the instant matter. *See also Foster Wheeler,* 36 A.D.3d at 32 (citation omitted) ("contacts on which the choice-of-law determination depends should have been known to the parties at the time of contracting."). Even so, if Alabama law were applied, the result would be no different from Mississippi law. The law of Alabama similarly requires no showing of intent to void an insurance policy based on material misrepresentation. *See* CODE OF ALA. §27-14-7; *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 766-67 (Ala. 2004).

Signal's arguments concerning the alleged "severability" of the policy are also unavailing with respect to choice of law. Signal provides no legal authority for the proposition that where an insurance policy is allegedly "severable" the law applicable to disputes thereunder should be the alleged location of each risk. This is because applying multiple states' laws to a single insurance policy "'defies . . . the law . . . as well as the traditional concerns of judicial economy and uniformity.'" *Wausau Bus. Ins. Co.*, 803 F. Supp. 2d at 216 (quoting *Maryland Cas. Co. v. Cont'l Cas. Co.,* 332 F.3d 145, 152 (2d Cir. 2003)).[5]

---

[5] None of the cases cited by Signal at page 7 of the Joint Response support the proposition that multiple states' laws may be applied to individual assets insured under a single policy. *See In re Balfour Maclaine Intern. Ltd.*, 85 F.3d 68, 81 (2d Cir. 1996) (dealing with application of maritime law to marine, as opposed to non-marine, coverage); *Donley v. Glens Falls Ins. Co.*, 184 N.Y. 107 (1906) (holding that where a policy is severable, breach of warranty as to one subject of insurance does not affect the policy as to the others); *Prudential Prop. & Cas. Ins. Co. v. Pearce*, 126 Misc. 2d 1044 (N.Y. Sup. Ct. Jan. 4, 1985) (dealing with cancellation of policy covering multiple vehicles where insured failed to pay only a portion of the premium for one vehicle).

Likewise, Signal's argument that the policy is severable as to different named insureds has expressly been rejected by the New York courts. *Wausau Bus. Ins. Co.*, 803 F. Supp. 2d at 215-16. Signal's specious contention that Signal International Texas, L.P., is the insured under the Max Specialty policy is thus irrelevant. Moreover, it begs the question whether Signal International, LLC is a proper party to this litigation. In any event, Signal concedes that the policy was issued to a Mississippi insured and is subject to Mississippi law. Reply Decl. Ex. 1 at Signal (NY) 000269.

A. **Mississippi Law Requires Summary Judgment for Max Specialty on Its Rescission Claim**

The Concealment, Misrepresentation or Fraud provision in the Max Specialty policy is non-exclusive - i.e., the policy simply states that "[i]t is also void if the named insured . . . intentionally conceal[s] or misrepresent[s] a material fact. . . .", but does not state that such intent is required in every case. Mississippi law similarly does not hold that this provision is an exclusive remedy. *Republic Fire & Cas. Ins. Co. v. Azlin*, 2012 U.S. Dist. LEXIS 137869, 17, 2012 WL 4482355 (N.D. Miss. 2012). Signal does not dispute this legal precedent.

Signal mischaracterizes Max Specialty's argument as an attempt to insert a "knowing and willful" standard instead an "intent" standard into the Concealment, Misrepresentation or Fraud provision. This is simply wrong. Max Specialty cites cases interpreting policy language identical to or materially indistinguishable from the Concealment, Misrepresentation or Fraud provision at issue here. Under this clause, the case law precedent requires a knowing and willful failure to disclose. *Compare* Straus Decl. Ex. 2 at WILLIS00701 at ¶3 *with* Doc. No. 258 at 11 (citing *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 214 (5th Cir. 1991) (interpreting

5

clause which voided coverage "if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance whether before or after a loss"); *Azlin*, 2012 U.S. Dist. LEXIS 137689, 26 (interpreting policy provision identical to provision at issue here)); *see also McCord v. Gulf Guar. Life Ins. Co.*, 698 So. 2d 89, 92 (Miss. 1997) (a policy may be voided under a "concealment" clause where the insured's statements were false, material, and knowingly and willfully made).

Signal cites criminal cases and other decisions involving distinguishable circumstances equating "willful" with "intentional." *See* Joint Response at 9 (citing *U.S. v. Pomponio*, 429 U.S. 10, 12 (1976) (criminal case); *Moore v. State*, 676 So. 2d 244 (Miss. 1996) (same); *U.S. v. Douglass*, 476 F.2d 260 (5th Cir. 1973) (criminal case); *Perrett v. Johnson*, 253 Miss. 194 (1965) (discussing "willful" in context of U.S. Bankruptcy Code). Even accepting the definition urged by Signal, "willful" means nothing more than acting with intent; it does not require malice or intent to deceive. *See Pomponio*, 429 U.S. at 12 ("willful" merely requires voluntary act, not evil intent); *Moore*, 676 So. 2d at 246 (equating "willfully" with "knowingly"); *Douglass*, 476 F.2d at 263 (differentiating between evil motive and mere awareness of the act performed); *Perrett v. Johnson*, 253 Miss. at 202 ("willful" does not involve intent to do harm).

Signal also seeks to obfuscate the issue with a meaningless argument, that in effect, it did not have to provide prospective insurers with reports/information concerning the AFDB-5 because this would have required information be provided concerning other assets insured under the policy. This ignores the fact, conceded by Signal, that the AFDB-5 had far and away the highest alleged value of any asset at the Port Arthur facility and was the very reason Signal was at the facility. Straus Decl. Ex. 4 at 40. Moreover, Signal's argument misses the point. Signal

6

provided a report giving a favorable impression of its properties and providing a specific value for the drydock, yet knowingly withheld numerous reports and information concerning the drydock which materially contradicted the information that was provided and which was material to the risk. Signal was under a duty to provide this material information and its failure to do so entitles Max Specialty to rescind the policy under controlling case law.

Although it is clear Mississippi law applies, the policy would also be voided under Texas law. Signal provided a favorable report and particular value for the drydock, while knowingly withholding numerous reports of the dilapidated state of the drydock and contradicting the value that was provided. Under these facts and circumstances, there is no question that Signal withheld material information to persuade Max Specialty to issue the policy. Max Specialty clearly would not have issued such policy had Signal provided all information in its possession concerning the condition and value of the drydock. *See* Declaration of James F. Morano, III ("Morano Decl.") dated April 16, 2013 (Doc. No. 260). *See also Taylor Elec. Servs. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 528 (Tex. App. 2005) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986)) (knowing misrepresentation of fact constitutes evidence of fraudulent intent). At the very least, under Texas law (which does not apply in any event), an issue of fact is presented that Signal intended to deceive Max Specialty by withholding material information concerning AFDB-5's condition.

**B.**     **The Absence of a Formal Application is Immaterial**

Signal argues that rescission cannot be ordered under Mississippi law because Signal did not complete a formal application for the Max Specialty policy. Signal states no authority for this point. Moreover, it is clear under Mississippi law that a duty to disclose exists where an

7

insured has voluntarily undertaken to provide information "but fails to prevent his or her words from being misleading, or where one party has knowledge of material facts to which the other party does not have access." *Shelter Mut. Ins. Co. v. Brown*, 345 F. Supp. 2d 645, 652 (S.D. Miss. 2004) (citations omitted). Here, Signal voluntarily submitted the favorable Property Risk Assessment Report prepared by engineer Stephen Heller and Associates ("Heller report") as well as a value of $13,600,000 for the drydock. It cannot be disputed that Signal simultaneously withheld numerous other engineers' reports detailing the decrepit condition of the drydock and assigning far lower values if major repairs were not implemented. *See, e.g.*, Morano Decl. Ex. 6. Signal admits it never carried out the major repairs recommended by their engineers. Straus Decl. Ex. 15 at 55-6, Ex. 23 at 208, Ex. 24 at 77-79, 102.

Signal argues in the Joint Response that the Heller report was merely an opinion of potential insurance risks and thus contained no misrepresentation of fact. This ignores the fact that the report was "prepared to assist underwriters in evaluating . . . exposures, operations, and loss prevention." Straus Decl. Ex. 3 at TRIPM 0093. Signal induced Max Specialty's reliance on the report while knowingly and willfully withholding the string of reports of impending catastrophic failure absent necessary repairs. Signal had a duty to provide Max Specialty with all such reports. *See Brown*, 345 F. Supp. 2d at 652.[6]

Signal contends that Max Specialty does not point to anything suggesting Heller's assessment that Signal's facilities were "Above Average" was wrong or misleading. As set

---

[6] Signal also did not provide Heller with prior engineering surveys and reports or any information concerning the imperative repairs recommended by the consultants Signal hired as recently as one (1) year prior to Heller's "onsite surveys" of Signal's facilities in December, 2008. Straus Decl. Ex. 3 at TRIPM 0093. The onsite surveys occurred before Signal commenced reconfiguration of the drydock, whereupon the defunct, hole-ridden pontoon H was removed and placed atop the drydock the day before it sank.

forth in Max Specialty's memorandum (Doc. No. 258), Heller's statements are inaccurate given the numerous inconsistent assessments by independent marine engineers and surveyors that the drydock (i) was leaking heavily, (ii) riddled with holes, with its outer shell significantly wasted and thinned, and (iii) lacking functioning electronics to adequately pump incoming water, and (iv) needed immediate renewal of multiple surfaces for continued safe operation (reported just seven months prior to sinking). Signal provided information to Heller (Straus Decl. Ex. 3 at TRIPM 0090) but failed to provide Heller any of the consistently dire engineers' surveys and reports concerning the drydock's dangerously feeble state. *Id.* at TRIPM 00137.

The sole case cited by Signal for the proposition that withholding an opinion is not a misrepresentation of fact is clearly distinguishable from the instant matter. In *Great American E&S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420 (Miss. 2012), an excess insurer sued the law firm retained to represent the policy holder in certain law suits. The insurer argued that the law firm misrepresented the forecasted values of the underlying lawsuits as each case settled for amounts higher than those stated in the firm's reports. *Id.* at 426. The court held that the case valuations were opinions concerning possible future exposure, not misrepresentations of fact. *Id.*

The instant case is not a professional negligence suit against a party that prepared the report(s) in question. This is an important distinction from the *Quintairos* case. Here, it cannot be disputed that Signal knowingly and willfully only provided the relatively favorable Heller report when it knew the conclusions stated therein, at least concerning the AFDB-5, were uniformly contradicted by numerous other engineers' reports. Here, unlike *Quintairos*, Signal had all reports in its possession and unquestionably withheld them while only providing the

Heller analysis. Signal thus breached its duty to provide all material information. *See Morgan Stanley Mortgage Capital Holdings, LLC v. Realty Mortgage Corp.*, 2008 U.S. Dist. LEXIS 79861, *11-12 (S.D. Miss. Sept. 11, 2008) (denying motion to dismiss misrepresentation counterclaim where plaintiff's opinion regarding future performance did not disclose information undermining such opinion).

The record is clear in this case that Signal breached its duty to disclose abundant written engineers' reports concerning the condition of the drydock and the imperative need to repair it, while simultaneously providing other information concerning condition and value.

### C. Signal's Attempt to Discredit the Declaration of Max Specialty's Underwriter Should be Disregarded

Signal asks the Court to disregard the Declaration of Max Specialty's underwriter, James F. Morano, III (Doc. No. 260), concerning the materiality of the information Signal withheld concerning the condition of the drydock. As discussed in Max Specialty's initial memorandum (Doc. No. 258 at 12-13), including the testimony cited therein, Mr. Morano clearly testified, *inter alia*, that while the Heller report painted a "rosy" picture of the condition of Signal's properties the information Signal withheld would have been material to Max Specialty's assessment of the potential risk. Mr. Morano clearly testified that the withheld information "gave a far less rosy view" of the drydock's deteriorating condition. Signal cannot contest the veracity of Mr. Morano's declaration concerning the materiality of the withheld engineers' reports and information, because Signal never questioned Mr. Morano about such materials and thus has no conflicting testimony. *See generally* Straus Decl. Ex. 4.

## CONCLUSION

For the reasons set forth above, it is respectfully requested that the Court issue an Order granting Max Specialty's Signal's Motion for Partial Summary Judgment voiding the Max Specialty Policy *ab initio*, and denying Signal's motion for partial summary judgment dated March 19, 2013, together with such other relief as this Court deems appropriate.

Dated: June 24, 2013
       Hawthorne, New York

        Respectfully Submitted,

        TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP


        By:   /s/ Stephen D. Straus
            Stephen D. Straus (SS 6183)
            Jeremy P. Monosov (JM 0089)