UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FIREMAN'S FUND INSURANCE COMPANY,
ONE BEACON INSURANCE COMPANY,
NATIONAL LIABILITY AND FIRE INSURANCE
COMPANY and QBE MARINE & ENERGY
SYNDICATE 1036,                                                      10-cv-1653 (JPO) (JLC)

                                    Plaintiffs,

                – against –

GREAT AMERICAN INSURANCE COMPANY OF
NEW YORK, MAX SPECIALTY INSURANCE
COMPANY and SIGNAL INTERNATIONAL, LLC,

                                    Defendants.
----------------------------------------------------------------X

**MAX SPECIALTY INSURANCE COMPANY'S RESPONSE TO SIGNAL
INTERNATIONAL'S RESPONSE [Doc. No. 280] TO MAX SPECIALTY'S LOCAL
RULE 56.1 STATEMENT OF UNCONTESTED MATERIAL FACTS**

        Defendant Max Specialty Insurance Company ("Max Specialty"), by its attorneys, Traub

Lieberman Straus & Shrewsberry LLP, as and for its Response to Signal International's

Response [Doc. No. 280] to Max Specialty's Local Rule 56.1 Statement of Uncontested Facts in

support of its motion for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure

granting summary judgment dismissing defendant Signal International, LLC's ("Signal") cross-

claim claim for insurance coverage, states as follows:

**Response to Signal's "Additional Undisputed Facts"**

        1.        Jimmy Dike is the Chairman of the Pleasure Island Commission in Port Arthur,

Texas.  Decl. of Bland, Attachment A.

                Undisputed.

2.      The Pleasure Island Commission is charged and commissioned with the management of the land owned by the City of Port Arthur and leased to the Port of Port Arthur Navigation District ("PANDIDC"), including the area commonly known as the "Dock Yard" that was leased to Signal prior to the AFDB-5 Drydock's sinking.

> Neither admit nor deny as the scope of PIC's authority is a matter of that entity's charter.

3.      PANDIDC assumed the Port of Port Arthur Navigation District's obligations under the original lease.  Decl. of Bland, Attachment A.

> Undisputed.

4.      Payments under that lease have always been paid to the Pleasure Island Commission.  Decl. of Bland, Attachment A.

> Undisputed.

5.      On September 24, 2007, Signal sent correspondence to PANDIDC, the Port of Port Arthur Navigation District and the Pleasure Island Commission stating its intention to renew the lease but for a period of less than 25 years.  Decl. of Bland, Attachment A.

> Neither admit nor deny as the contents of the referenced correspondence speak for themselves.

6.      Correspondence followed between Signal and attorneys retained on behalf of the Pleasure Island Commission about the renewal of the lease and other issues concerning the existing lease.  Decl. of Bland, Attachment A.

> Neither admit nor deny as the contents of the contents of the referenced correspondence speak for themselves.

7.      Ultimately, in August 2009, Jimmy Dike met with John Haley of Signal to discuss terms for renewal.  Decl. of Bland, Attachments A & B.

Undisputed.

8.      Jimmy Dike and John Haley agreed to a new lease between the Pleasure Island Commission and Signal that was to run for a six year [sic] from September 2009 to September 2015, with escalating rent and an option to renew.  Decl. of Bland, Attachments A & B.

Deny.  The contents of the proposal dated August 18, 2009, speak for themselves.

9.      Mr. Dike believed that the Pleasure Island Commission would have accepted the proposal and it would have been formalized into a new lease agreement.  Decl. of Bland, Attachment A.

Neither admit  nor deny the subjective belief of this witness.

10.     John Haley contacted Jimmy Dike shortly after the sinking of the AFDB-5 and explained that Signal no longer needed a six year lease for the site.  Rather, Signal required only a brief extension of the lease for the removal of the wreck of the AFDB-5, which was agreed instead.

Undisputed except that the verbiage "which was agreed instead" is vague and confusing and thus disputed if intended to mean an agreement for lease extension had been approved.  Max Specialty refers to the correspondence from Signal dated September 8, 2009, and the contents thereof, which speak for themselves.

11.     The wreck of the AFDB-5 was subsequently removed and on March 15, 2012, Jimmy Dike confirmed on behalf of the Pleasure Island Commission that Signal had met its obligations under the lease and its extension and that Signal's obligations were now terminated. Decl. of Bland, Attachment A.

3

Disputed as the Dike affidavit is not contemporaneous to the alleged events or supported by contemporaneous evidence.

12.    Neither Jimmy Dike, the City of Port Arthur, the Port Arthur Navigation District, the Port Arthur Navigation District and Industrial Development Corporation, nor the Pleasure Island Commission have any financial or other interest in the outcome of the insurance disputes between Signal and Max Specialty.  Decl. of Bland, Attachment A.

Max Specialty refers to the applicable paragraph of the referenced exhibit which speaks for itself.

**Further Facts in Support of Summary Judgment**

1.    The Pleasure Island Commission ("PIC") comprises nine (9) commissioners. Reply Declaration of Stephen D. Straus dated June 24, 2013 ("Reply Decl.") Ex. 1.

2.    PIC is a public body that may only exercise its authority by a majority of votes where a quorum is present.  *See* TEX. GOV'T CODE ANN. §311.013 (2012); Attorney General of Texas, OPEN MEETINGS 2012 HANDBOOK, §I.C., available at https://www.oag.state.tx.us/AG_Publications/pdfs/openmeeting_hb.pdf (last visited June 24, 2013) (citing *Comm'rs Court of Limestone Cnty. v. Garrett*, 236 S.W. 970, 972 (Tex. Comm'n App. 1922); Tex. Att'y Gen. Op. No. GA-0554 (2007)).

3.    A quorum is a majority of the public body.  TEX. GOV'T CODE ANN. §311.013(b).

4.    The position of PIC director is separate and apart from that of a voting commissioner.  *See* Reply Decl. Ex. 1.

5.    Signal admits that no independent source was consulted to support its subjective hope that the drydock would last any particular period of time after it was reconfigured.  *See* Reply Decl. Ex. 2 at 411-13.

6.     Signal did not have any prior experience implementing the repairs it said were carried out, or reconfiguring the drydock, purportedly to extend a drydock's useful life.  *See Id.*


Dated: Hawthorne, New York
       June 24, 2013

                         TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

                         By:     /s/ Stephen D. Straus
                                 Stephen D. Straus (SS 6183)
                                 Jeremy P. Monosov (JM 0089)
                                 Mid-Westchester Executive Park
                                 Seven Skyline Drive
                                 Hawthorne, New York 10532
                                 (914) 347-2600
                                 Attorneys for Max Specialty Insurance Company